

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 21, 2024

**BY ECF**
The Honorable Jennifer H. Rearden
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Arie Rangott*, S8 23 Cr. 004 (JHR)

Dear Judge Rearden:

      The Government writes in response to defendant Arie Rangott's letter of earlier today, which seeks to admit multiple communications about and with lawyers who represented Project Social Care Head Start Inc. ("PSCHS"). As explained below, the Government acknowledges that Rangott can elicit facts to demonstrate that other individuals were involved in the act of drafting the December 2021 letter by PSCHS. Rangott should nevertheless be barred—consistent with the Court's July 19, 2024 ruling (Dkt. 386)—from eliciting facts solely to demonstrate that those persons involved were lawyers or arguing that any such involvement of lawyers bears on the defendant's state of mind with respect to the December 2021 letter and the investigation by the U.S. Department of Health and Human Services ("HHS") Office of the Inspector General ("OIG").

    **I.**    **The Court's Ruling Does Not Preclude Evidence that Other Individuals Participated in the Act of Drafting of the December 2021 Letter**

      The Government agrees with Rangott that the Court's ruling should not, by itself, preclude Rangott from offering limited evidence that Rangott sent a draft of PSCHS's December 2021 response to other individuals, some of whom happen to be lawyers, and those lawyers later returned a draft with their own edits. As Rangott has articulated, Rangott is free to make arguments about how this sequence of events bears on his knowledge of, and responsibility for, the content that was ultimately submitted to HHS. Consistent with the Court's ruling, however, Rangott may not offer evidence or make argument that he or any other witness relied on the fact that the individuals who edited the letter were *lawyers* as it relates to Rangott's *mens rea*. That is because, as the Court concluded in the Court's July 19, 2024 ruling, "[a] lay jury could easily believe that the fact that a lawyer reviewed the December 2021 letter means that he or she must have implicitly 'blessed' the legality of all aspects of the letter and surrounding circumstances." (Dkt. 386 at 6).[1]

---

[1] Unless otherwise noted, case text quotations omit all internal quotation marks, footnotes, citations, and previous alterations.

In line with these principles, and subject both to certain redactions to avoid reference to legal advice and to Rangott otherwise establishing a proper basis for Rangott to admit the evidence, much of the evidence Rangott attached to his letter of earlier today in connection with the December 2021 letter is not barred by the Court's July 19, 2024 ruling.[2] For instance, the Government does not object on the basis of the Court's ruling to the admissibility of communications between Rangott and lawyers from Feldesman Leifer LLP ("Feldesman") that include draft responses to HHS, provided earlier communications in the same email chain that are inadmissible hearsay or reflect discussion of matters unrelated to the substance of the draft responses are redacted.[3] (*See* Def. Ltr. Ex. C, Ex. E). Nor does the Government object on the basis of the Court's ruling to the admissibility of purely internal emails among PSCHS personnel such as Rangott, Harold Schwartz, and Isidore Handler about the drafting of the letter, provided any inadmissible hearsay, references to "input provided by . . . the Head Start lawyers" or "[t]he lawyer's version," and any similar statements evincing lawyer counseling or advice, are redacted. (*See* Def. Ltr. Ex. A, Ex. B, Ex. G, Ex. I, Ex. J, Ex. L). Finally, the Government does not object on the basis of the Court's ruling to the admissibility of the "comparisons" (or redlines) the defense created comparing different drafts of the December 2021 letter, provided the defense lays an adequate foundation for establishing the authenticity and relevance of those documents. (*See* Def. Ltr. Ex. D, Ex. F, Ex. H, Ex. K).

Consistent with prior representations to defense counsel, and in light of the defense's apparent intention to emphasize the fact that Feldesman revised the draft response transmitted to them by Rangott, which was then submitted to HHS on behalf of PSCHS, the Government plans to call the lead Feldesman lawyer who prepared PSCHS's draft, Phillip Escoriaza, to explain his role. The Government agrees that—as a factual matter—Escoriaza revised the language that appears in the near-final version of PSCHS's December 2021 letter. The Government also acknowledges that the jury will undoubtedly learn—as a factual matter—that Escoriaza works for a law firm and is a lawyer. To avoid the misimpression that Escoriaza performed any independent

---

[2] Although the Government may offer many of these documents to establish the truth of the matter asserted as an opposing party's statement, Rangott himself lacks a reciprocal ability to offer his own prior statement or those of his co-conspirators for their truth. *See* Fed. R. Evid. 801(a); *United States v. Elmaani*, No. 20 Cr. 661 (CM), 2023 WL 2770742, at *6 (S.D.N.Y. Apr. 4, 2023) ("It is well-established that a defendant does not have a parallel ability to offer his own statement into evidence." (citing cases)). For example, Rangott cannot offer the content of Rangott's email to Schwartz and Isidore Handler on December 13, 2021 (*see* Ex. A ("We have made a few additional changes . . . . These changes include input provided by yourselves as well as the Head Start lawyers and the administrative team here at PSCHS)) to support his contention that Rangott "was in no way a substantive author or editor of the letter." (Def. Ltr. 3). In addition, insofar as Rangott plans to offer these documents in a defense case as prior inconsistent statements of Government witnesses, he must first establish a proper predicate for doing so, and such statements can be admitted only for impeachment purposes and not for their truth. *See* Fed. R. Evid. 613(b); *United States v. Ghailani*, 761 F. Supp. 2d 114, 117-18 (S.D.N.Y. 2011) (describing "consideration of factors" required to determine admissibility of extrinsic evidence of a prior inconsistent statement).

[3] Consistent with the Government's prior statements, the Government is prepared to meet and confer with defense counsel concerning these proposed redactions.

verification of the "findings" contained in that letter, the Government will offer only limited testimony from Escoriaza to establish that Escoriaza did no independent investigation and instead relied on his assumption that Rangott and others from PSCHS were truthful with Escoriaza. In this regard, Escoriaza will offer testimony like any other witness who edited or provided input to the documents, and Escoriaza will not testify about his legal practice or background other than as necessary to contextualize how he came to prepare a draft response on behalf of PSCHS.

In addition, to further avoid juror confusion and unfair prejudice to the Government, the Government respectfully requests the Court provide a limiting instruction at an appropriate time during trial, including at multiple points if warranted, to make clear the limited purpose for which the involvement of Feldesman is being admitted, as follows:

> You have just heard evidence that Project Social Care retained lawyers. A lawyer's involvement with an individual or entity does not itself constitute a defense to any of the charges in this case. The defense has not claimed, and cannot claim, that the defendant's conduct was lawful because he acted in good faith on the advice of lawyers.

Adapted from *United States v. Shea*, S2 20 Cr. 412 (AT), Dkt. 343 at 55 (Oct. 25, 2022) (instructing jury similarly following opening statement by defense that referenced retention of attorneys by entity where defendant worked).

## II. Provided a Proper Foundation Is Laid, Rangott Can Impeach Schwartz with Evidence that Third Parties, Including a Lawyer, Participated in the December 2021 Letter

Rangott seeks to rely on certain documents involving lawyers to support his claim that Schwartz falsely stated to the Government that "[R]angott wrote the letter." (Def. Ltr. 4). To do so, however, Rangott must first establish a basis for offering those documents. As relevant here, under Federal Rule of Evidence 613(b), "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement."

The faulty logic of Rangott's argument is that Schwartz has not been given an opportunity to explain or deny the statement in question. Rangott instead relies on a series of assumptions, including but not limited to the following: (a) shorthand notes not taken by Schwartz of a June 24, 2024 meeting between Schwartz and the Government memorializing Schwartz as saying "[R]angott wrote the letter" means that Schwartz in fact said (and meant) that Rangott and *only* Rangott wrote the *final draft* of the letter, (b) those shorthand notes necessarily mean that Schwartz had never before made the same statement to the Government, (c) Schwartz read and inferred from contemporaneous emails in December 2021 that Rangott did not in fact write the letter, (d) based on those contemporaneous emails in 2021, Schwartz knowingly lied to investigators in 2023 and 2024, and/or (e) Schwartz will deny when testifying that Schwartz said "[R]angott wrote the letter" for the first time on June 24, 2024—a denial that is inconsistent with the shorthand notes.

As the above list of "what ifs" illustrates, without Schwartz having testified, it is premature for the Court to rule that Rangott can admit any lawyer-involved emails for impeachment purposes.[4]

### III. The Emails the Defense Seeks to Offer Concerning the OIG Investigation Are Not Admissible

Rangott seeks to offer several emails with or involving Feldesman from August and September 2022 "to show Mr. Rangott's state of mind and motive . . . to help the lawyers." (Def. Ltr. 5). Thus, Rangott seeks to rely on the presence of lawyers during the investigation to make arguments before the jury about his *mens rea*. That argument is squarely foreclosed by the Court's order and the precedents on which the Court's order relied.

The Government may argue at trial that Rangott's meetings with witnesses in advance of their interviews and sharing of information is proof of Rangott's criminal acts. But the Government advancing that argument does not provide an excuse for Rangott to offer evidence—without asserting an advice of counsel defense—intended to establish that Rangott acted at the request of outside counsel. (*Id*. (arguing that Rangott should be permitted to rely on the emails in question to show that Rangott was acting "to help the lawyers at their request")). As an initial matter, Rangott misconstrues the Government's argument to be that Rangott's meetings with other witnesses are, by themselves, obstruction of an agency proceeding. That is not the Government's argument. Rather, it is only when those meetings are viewed together with other evidence, including that during those meetings Rangott explicitly or implicitly conveyed which false statements witnesses should relay to the OIG investigators, that those meetings become evidence of obstruction of an agency proceeding. Put differently, what matters is whether Rangott acted with corrupt intent in connection with those meetings—*i.e.*, whether Rangott acted with a criminal *mens rea* by exchanging information among the witnesses that he knew to be *false*.

Unlike Rangott's argument with respect to lawyer involvement with the December 2021 letter, Rangott is not seeking to offer evidence of lawyer involvement during the OIG investigation to demonstrate that a third party—rather than Rangott—committed an *act* in furtherance of a charged conspiracy. To the contrary, by his own admission, Rangott is instead seeking to offer statements and communications by lawyers in order to demonstrate Rangott's *state of mind*. And while the defense disclaims any intention to argue "it was proper [for Rangott] to reach out to [witnesses of the OIG investigation] because the lawyers advised it was lawful to do so" (Def. Ltr. 6), the admission of this evidence would pose a substantial risk of causing the jury to believe that

---

[4] The Government categorically rejects defense counsel's suggestion that Schwartz or the Government hid relevant emails from defense counsel until after defense counsel subpoenaed Schwartz for those emails. The Government began making efforts to obtain the documents from Schwartz on July 5, 2024—three days prior to defense counsel serving its trial subpoena on Schwartz's counsel. *See* 3503-096. The Government then produced the documents immediately upon receiving them from Schwartz. The close temporal relationship between the Government attempting to obtain, receiving and producing the documents, and the defense's subpoena, is merely coincidental.

Rangott acted with non-criminal intent because he was relying on lawyers being involved—precisely what the Court has already ruled is not permissible.

Accordingly, consistent with the Court's ruling, Rangott should be precluded from offering evidence or argument that lawyers advised Rangott to meet with other witnesses or that Rangott's state of mind was informed by the involvement of lawyers.[5]

\* \* \*

As described above, the Government does not object based on the Court's presence-of-counsel ruling to the admission of lawyer-related documents in order to establish various acts in furtherance of writing PSCHS's December 2021 letter. Both with respect to the December 2021 letter and the OIG investigation, however, the Government objects to any defense attempt to admit lawyer-related documents (or make arguments from those documents) aimed at establishing Rangott's *mens rea* at relevant times.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
Jacob R. Fiddelman
Stephanie Simon
Daniel H. Wolf
Assistant United States Attorneys
(212) 637-1024/-2581/-2337

cc:   Counsel of Record

---

[5] The facts that lawyers participated in OIG interviews and acted as conduits to produce to OIG documents provided to the lawyers by Rangott are unavoidably admissible. The Government does not intend to hide these facts from the jury, and those facts will be evident from documents the Government intends to introduce at trial.