UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v.-<br><br>ARIE RANGOTT,<br><br>　　　　　　　　　　Defendant. | 23 Cr. 004 (JHR)<br><br>MEMORANDUM OPINION & ORDER |

JENNIFER H. REARDEN, District Judge:

On May 29, 2024, the Government filed a three-count superseding indictment against Defendant Arie Rangott. ECF No. 291. Count One charges Rangott with conspiring, from at least in or about 2019 through in or about January 2023, to defraud the United States by obstructing the function of the U.S. Department of Health and Human Services ("HHS") to administer the federal Head Start program, in violation of 18 U.S.C. § 371. Count Two charges Rangott with conspiring, in or about December 2021, to submit a letter to HHS that falsely denied allegations of wrongdoing by Rangott and others concerning the operation of a Head Start program at PSCHS, in violation of 18 U.S.C. § 371. Count Three charges Rangott with conspiring, from in or about August 2022 through in or about September 2022, to obstruct an investigation by the Office of the Inspector General of HHS ("HHS OIG") concerning whistleblower retaliation at PSCHS, in violation of 18 U.S.C. § 371. Before the Court are two motions *in limine*. The Government moves to admit as non-hearsay evidence certain purported co-conspirator statements. ECF No. 298. Rangott moves to preclude the testimony of a former PSCHS officer (the "Fiscal Officer") concerning the reasons for that officer's resignation. ECF No. 377. The parties oppose each other's motions. ECF Nos. 333, 378. For the reasons set forth below, the Court GRANTS the parties' respective motions.

## DISCUSSION

### A. Statements of Alleged Co-Conspirators

The Government moves to admit for their truth out-of-court statements made by certain purported co-conspirators, on the basis that those statements are admissible as non-hearsay pursuant to Federal Rule of Evidence 801(d)(2)(E). In broadest terms, the Government identifies three categories of such statements: (1) statements concerning Martin Handler's and Menachem Lieberman's "secret ownership" of PSCHS; (2) statements concerning the response to HHS's December 2021 inquiry; and (3) statements concerning HHS OIG's whistleblower retaliation investigation. As discussed below, "[t]he Court finds that statements within these three categories likely will be admissible as co-conspirator statements." *United States v. Adelekan*, 567 F. Supp. 3d 459, 468 (S.D.N.Y. 2021).

   **1. Applicable Law**

"In general, hearsay is an out of court statement offered for the truth of the matter asserted, and such a statement is not admissible at trial unless it falls into an exclusion or exception to the hearsay rule." *United States v. Ilori*, No. 21 Cr. 746 (MKV), 2022 WL 2452258, at *2 (S.D.N.Y. July 5, 2022) (citing Fed. R. Evid. 801(c), 802). "However, Rule 801(d)(2)(E) excludes from the definition of hearsay a statement that 'is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy.'" *United States v. Phillips*, No. 22 Cr. 138 (LJL), 2023 WL 6620146, at *10 (S.D.N.Y. Oct. 10, 2023) (quoting Fed. R. Evid. 801(d)(2)(E)). To admit a statement under Rule 801(d)(2)(E), "a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v.*

2

*Graham*, 477 F. App'x 818, 822 (2d Cir. 2012) (citation omitted).

As to the first factor, "[i]n determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). "Although Rule 801(d)(2)(E) requires that both the declarant and the party against whom the statement is offered be members of the conspiracy, there is no requirement that the person to whom the statement is made also be a member." *United States v. James*, 712 F.3d 79, 106 (2d Cir. 2013). Moreover, "[w]here statements are made in the course of an existing conspiracy in which the defendant later joins, those statements may be admitted against him, even though he was not a member of the conspiracy at the time the statements were made, on the theory that he assumes the risk for what has already happened in the scheme." *United States v. Farhane*, 634 F.3d 127, 161 n.35 (2d Cir. 2011) (citations and quotation marks omitted).

"As to the 'in furtherance' requirement, 'the touchstone is that the statement be designed to promote the accomplishment of the conspiracy's goals.'" *Adelekan*, 567 F. Supp. 3d at 466 (alterations omitted) (quoting *United States v. Johnson*, 469 F. Supp. 3d 193, 212 (S.D.N.Y. 2019)). "[T]he standard for what qualifies as a statement 'in furtherance' of a conspiracy is not very restrictive." *United States v. Weingarten*, No. 19 Cr. 497 (NSR), 2024 WL 677995, at *13 (S.D.N.Y. Feb. 15, 2024). To wit, "[t]he requirement that the challenged statement be 'in furtherance of' the conspiracy is satisfied if the statement's objective is 'designed to promote or facilitate achievement of the goals of the conspiracy.'" *United States v. Htut*, No. 22 Cr. 671 (NSR), 2023 WL 4399049, at *13 (S.D.N.Y. July 7, 2023) (quoting *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994)).

"[S]tatements proffered as coconspirator statements may be admitted in evidence on a

conditional basis, subject to the later submission of the necessary evidence of th[e] [two] prerequisites" identified above. *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) (citing *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969)). "However, the statements are subject to a motion to strike if the Government fails at trial to establish by a preponderance of the evidence the existence of these foundational facts." *United States v. Esparra*, No. 12 Cr. 844 (RWS), 2014 WL 1569607, at *5 (S.D.N.Y. Apr. 17, 2014).

"Courts in the Second Circuit routinely follow th[e] [foregoing] practice." of conditionally admitting co-conspirator statements. *Phillips*, 2023 WL 6620146, at *11; *see, e.g.*, *Adelekan*, 567 F. Supp. 3d at 468 & n.4; *United States v. Guo*, No. 23 Cr. 118 (AT), 2024 WL 1939221, at *3 (S.D.N.Y. May 2, 2024); *United States v. Neumann*, No. 21 Cr. 439 (NSR), 2023 WL 8700974, at *3-4 (S.D.N.Y. Dec. 14, 2023); *United States v. Washington*, No. 21 Cr. 603 (VEC), 2023 WL 6219203, at *8 (S.D.N.Y. Sept. 22, 2023); *United States v. Torres*, 435 F. Supp. 3d 526, 531-32 (S.D.N.Y. 2020); *United States v. Paredes*, 176 F. Supp. 2d 183, 188-89 (S.D.N.Y. 2001). The Court finds "no reason to deviate from that procedure here." *United States v. Fallas*, No. 09 Cr. 342 (LAP), 2010 WL 3468605, at *4 (S.D.N.Y. Aug. 19, 2010).

**2. Analysis**

The Government contends that "a preponderance of the evidence demonstrates [that Rangott] was part of conspiracies that existed and the communications at issue were made in furtherance of those conspiracies." ECF No. 298 at 19. As to Rule 801(d)(2)(E)'s requirement that "a conspiracy that included the defendant and the declarant existed," *Neumann*, 2023 WL 8700974, at *3, the Government attests that the evidence will show the existence of several conspiracies involving Rangott. Specifically, the Government alleges the commission of conspiracies to "impair the functions of HHS" from 2019 through January 2023, "falsify

4

PSCHS's December 2021 letter to HHS" in December 2021, and "obstruct . . . . a whistleblower retaliation investigation by HHS OIG" in summer and fall 2022. *See* ECF No. 298 at 8-16, 19-20. The Government intends to establish the existence of these conspiracies, and Rangott's participation therein, through "emails, text messages, voice notes, business records, and anticipated witness testimony." *Id.* at 19; *see United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) ("[T]he hearsay statement itself may be considered in establishing the existence of the conspiracy" when combined with "some independent corroborating evidence"). The Court finds that, "[f]or purposes of this motion, this combined evidence 'fulfills the threshold determination required that [ ] there was a conspiracy . . . [that] included the declarants . . . [and] the Defendant.'" *Esparra*, 2014 WL 1569607, at *5 (quoting *Paredes*, 176 F. Supp. 2d at 188) (holding that the Government established the existence of a conspiracy based on its representation that it "intend[ed] to establish that [the defendant] was a member of the conspiracy through the [co-conspirator] statements themselves, as well as through documentary evidence and testimony from cooperating witnesses"); *accord Adelekan*, 567 F. Supp. 3d at 467.

Regarding Rule 801(d)(2)(E)'s "in furtherance" requirement, the statements within the three categories identified by the Government (*see supra* at 2) could be reasonably understood as "promot[ing] or facilitat[ing] achievement of the goals of the conspirac[ies]." *Htut*, 2023 WL 4399049, at *13. With respect to the first category (statements concerning M. Handler's and Lieberman's "secret ownership" of PSCHS), the Government seeks to introduce, *inter alia*, WhatsApp communications and other correspondence between M. Handler and Lieberman "explain[ing] how the parties would divide ownership" of PSCHS; "chats among Martin Handler, Lieberman, and Isidore Handler about the August 2021 transaction [effectuating the sale of an ownership interest in PSCHS]"; messages from I. Handler to M. Handler "outlining

5

the terms of Lieberman's offer, including the ability for Martin Handler to continue reaping the benefits of the EHS CCP grant"; and communications from M. Handler "agree[ing] to accept the offer." ECF No. 298 at 21. Such "[s]tatements regarding the activities of the enterprise and the various roles of [the co-conspirators] in it clearly were in furtherance of the enterprise." *United States v. Persico*, 832 F.2d 705, 716 (2d Cir. 1987). "Among other purposes, the statements 'prompted [the listening co-conspirators] to respond in a way that facilitated the carrying out of criminal activity,'" *id.* (alterations and citation omitted); were "intended to convey information to the listening coconspirator[s]," *United States v. Zandstra*, No. 00 CR 209 (RWS), 2001 WL 26211, at *4 (S.D.N.Y. Jan. 10, 2001); and "reasonably [could] be interpreted as encouraging [the] co-conspirator[s] . . . to advance the conspiracy," *Htut*, 2023 WL 4399049, at *13 (citation omitted). Accordingly, the aforementioned statements are conditionally admitted.[1]

In terms of the second category of statements (regarding the response to HHS's December 2021 inquiry), the Government cites, *inter alia*, communications between "Martin Handler and Lieberman discuss[ing] whether [Harold] Schwartz would accede to the goal of responding falsely to the inquiry." ECF No. 298 at 22. "Those types of statements may be admissible because they 'promote[d] the criminal activities of the conspiracy by enforcing discipline among its members,'" *Adelekan*, 567 F. Supp. 3d at 468 (alterations omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991)); "s[ought] to induce a co-conspirator's assistance," *Neumann*, 2023 WL 8700974, at *4; and reflected the co-conspirators'

---

[1] To the extent Rangott challenges the admission of statements in this category on constitutional grounds, *see* ECF No. 333 at 5-11, that challenge is rejected as untimely and as having been improperly asserted in a motion *in limine*, *see United States v. Palmer*, No. 20 Cr. 379 (MKV), 2021 WL 1614837, at *10 (S.D.N.Y. Apr. 26, 2021) (clarifying that a motion *in limine* is the "appropriate[]" vehicle for an application "premised on a Rule of Evidence, not an alleged constitutional violation").

efforts to "inform each other as to the progress or status of the conspiracy," *United States v. Desena*, 260 F.3d 150, 159 (2d Cir. 2001) (citation omitted).

With respect to the third category of statements (concerning HHS OIG's whistleblower retaliation investigation), the Government states that it intends to introduce, *inter alia*, "Lieberman's communications with Isidore Handler in September 2022 [discussing] . . . the identity of Individual-1 and [expressing] a desire to bribe Individual-1 to withdraw the whistleblower complaint," ECF No. 298 at 22; as well as "Isidore Handler's statements to Rangott about falsifying board materials," *id.* at 23. These statements are admissible on the ground that they "provid[ed] information or reassurance to a coconspirator," *Paredes*, 176 F. Supp. 2d at 187; "solicited [a co-conspirator's] assistance," *Persico*, 832 F.2d at 716; and "prompted the [co-conspirator] 'to respond in a way that promotes or facilitates the carrying out of a criminal activity,'" *Adelekan*, 567 F. Supp. 3d at 468 (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990)).

In view of the foregoing, "the Court conditionally admits the co-conspirator statements described in the[] [Government's] motion, 'subject to the Government's submission of the necessary evidence of relevant prerequisites.'"[2] *Weingarten*, 2024 WL 677995, at *14 (quoting *Tracy*, 12 F.3d at 1199).

## B. Fiscal Officer's Testimony Regarding Reasons for Resignation

Rangott moves to exclude the Fiscal Officer's testimony concerning her reasons for resigning from PSCHS. Specifically, he seeks to preclude the Government "from eliciting from

---

[2] Certain statements identified in the Government's motion were made before Rangott joined the alleged conspiracy. *See, e.g.*, ECF No. 298 at 22 (describing statements "made in April 2019"). The Court will not exclude a statement on that basis, provided that the statement satisfies Rule 801(d)(2)(E)'s prerequisites and is otherwise admissible.

the Fiscal Officer that she left Project Social Care after she raised a compliance concern at the summer 2021 meeting in the Bronx." ECF No. 377 at 3.[3]  The Fiscal Officer's testimony will be precluded on several grounds.

First, the "compliance concern" does not relate to the alleged conspiracies with which Rangott has been charged.  To the contrary, the Fiscal Officer raised an issue regarding a distinct program (New York City childcare voucher payments) administered by a distinct agency (New York City Administration for Children's Services) with a distinct for-profit entity (Simche Kinder).  The requisite "close parallel" between the charges against Rangott, on the one hand, and the circumstances surrounding the Fiscal Officer's resignation, on the other hand, simply does not exist.  *United States v. Corey*, 566 F.2d 429, 431 (2d Cir. 1977).  That is to say, testimony concerning the Fiscal Officer's reasons for resigning would have questionable probative value.

Second, "an inquiry into [the Fiscal Officer's reasons for her resignation] risks confusing the jury and creating undue prejudice under Rule 403." *United States v. Konstantinovskiy*, No. 19 Cr. 408 (MKB), 2024 WL 3360379, at *7 (E.D.N.Y. July 10, 2024).  "[T]he central inquiry in this case [is] whether [Rangott] committed the specific crimes charged," namely whether he conspired to impair HHS's administration of the Head Start program.  *United States v. Durham*, No. 07 Cr. 345 (LEK), 2008 WL 5111286, at *3 (N.D.N.Y. Dec. 3, 2008).  While the unrelated compliance concern underlying the Fiscal Officer's resignation "'may provide additional context for the jury, the schemes are not inextricably linked[,]' . . . as the charged [conspiracies], if

---

[3] The parties do not dispute that the fiscal officer may testify that she resigned, and the Court will not preclude testimony to that effect.

proven, exist[] with or without evidence of the [reasons for the Fiscal Officer's resignation]." *Konstantinovskiy*, 2024 WL 3360379, at *7 (citation omitted).

Permitting the Fiscal Officer to testify "at the high level of generality" proposed by the Government would not cure the above concerns. Rather, such testimony would ineluctably render the Fiscal Officer's testimony incomplete, devoid of the necessary (yet highly prejudicial) context for her resignation.

For the foregoing reasons, Rangott's motion *in limine* is granted.

SO ORDERED.

Dated: July 22, 2024
      New York, New York

                                        JENNIFER H. REARDEN
                                        United States District Judge