UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   8/6/2024
```

UNITED STATES OF AMERICA,

-v.-

ARIE RANGOTT,

Defendant.

23 Cr. 004 (JHR)

ORDER

JENNIFER H. REARDEN, District Judge:

Attached to this Order are the following Court Exhibits:

- Exhibits 1-16: Notes received from the jury.

- Exhibit 17: Voir dire questionnaire.

- Exhibit 18: The draft jury charge that was considered at the charge conference held on the record on July 31, 2024.

- Exhibit 19: The draft jury charge that was circulated to counsel on August 1, 2024.

- Exhibit 20: The Government's PowerPoint presentation used during summation on August 1, 2024.

- Exhibit 21: The jury charge that was read into the record on August 1, 2024.

- Exhibit 22: The jury charge that was marked-up by counsel after it was read into the record and then used to explain revisions to the jury on August 1, 2024.

- Exhibit 23: The witness list.

- Exhibit 24: The exhibit list.

- Exhibit 25: The S8 Indictment.

- Exhibit 26: The jury's verdict form.

- Exhibits 27-33: Notes received from the jury.

- Exhibit 34: Response from the Court to the jury and reply from the jury, both dated August 1, 2024.

- Exhibit 35-36: Notes received from the jury.

- Exhibit 37: The jury's completed verdict form.

SO ORDERED.

Dated: August 6, 2024
     New York, New York

JENNIFER H. REARDEN
United States District Judge

7/17/24

US v. A. Rangott     23 cr 4 (JHR).

#1        Court Ex. #1

Juror #61 Lisa K. Graff

States she just remembers that her
children have a doctor's appointment
at 4pm in Westchester.
   Also, they have a condition.
And no one else is authorized to bring
them to said appointment.

Court
Ex. #2

7/17/24 @ 2:53. US v. A. Rangoff 23 Cr 4(JHR).

Juror # 29 Jonathan Jimines

Is outside having a panic
attack. He just took his
medication.
    He is red & in tears.

· What would you like me to do?

7/18/24 @ 9.32       US v. A. Rangotl   23 Cr 4 (JHR)

#3       Court Ex. 3.

Juror #22 Nicole
            Rebori

**WESTIN**
HOTELS & RESORTS

Cousin is Peter Mancuso
• Trial Counsel US SEC,
  Division of Enforcement
• Prior position - Trial Attorney
  US Dept of Justice Civil Division
  Commercial Litigation Branch

7/18/2024 @        U.S. v H. Rangott        23 CR 4 (JHR)
Cout        12:43.
Ex. #4

Juror #37 said she overslept
She did not hear her alarm.
She is 10-15 minutes away and
~~does~~ do we want her to ~~come in~~
come in?

#4

Court Ex. 5

0   Juror # 11   (DeQuinzio)

I am leaving for a Vacation
on August 9th and will not
be able to serve after that date.

Thank You.

Juror #19 (Hau Cai)

- Traveling outside of the country Aug. 4th.
- Is there a possibility the trial will go beyond this date?

7/22/24 @
9:25am

US v. A. Rangott     23 CR 4 (JHR)

Court Ex. 7

Juror #11 - Joseph DeQuinzio
Stated he needs to talk to you
about leaving. His aunt is dying.

Juror # 24 Robert M Petit
Also needs to talk to you

Are we able to order in? pizza, salad, pasta, veggies (fresh) we will pay? Thank you

We will get a longer lunch hour?

Court Ex. # 8

7/26/2024
@ 3:05 pm.

Last night I came across an email between my boss and a few attorneys at Goodwin Proctor LLP, most specifically Kingsley Taft. I have not been involved in the correspondence but could be involved in scheduling things. I think it is related to contracts, but I am not in the "know."

Christine Martin
(Juror 12)

7/29/24 @ 9:22
Court Ex. #9

**Jennifer Rearden**

| | |
|---|---|
| **From:** | Darryl Jacobson ████████████████ |
| **Sent:** | Tuesday, July 30, 2024 8:57 AM |
| **To:** | Khalilah Williams; Rearden NYSD Chambers |
| **Subject:** | Believe Juror was sleeping yesterday during testimony |

CAUTION - EXTERNAL:

I feel ethically bound to inform the court that I believe I observed juror #1 asleep a number of times during testimony yesterday, Monday, July 29th.

As I was not constantly monitoring her I could not say how long or brief these episodes were, only that she appeared to be asleep on a number of occasions.

Sincerely,

Juror #2

Darryl M. Jacobson

████████████████████

Sent from my iPhone
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

Court Ex.
#10

July 30th, 2024

Your Honor,

My name is Karol Lopez, I am juror #6.

I would like to inform you that I have an upcoming Doc's aptt on August 2nd @ 4pm.

Thank you,

Court Ex.
#11

07/30/24

Your Honor,

Can you please ask the
witness Sara Neuman to
Speak Louder.

Thank you

Court Ex.
#12



Can the court officer secure the public restroom. ~~of the a small~~ for the jurors for a set time.

The jury room is small and it can be a bit uncomfortable to use the restroom

7/30/2024

Court Ex. #13

Feedback (Juror)

7/30/2024
@ Court Ex.
#14

1. Temperature in the junor room and courtroom
    - Very cold

2. Food
    - is there an option to place an order for lunch and/or
        breakfast when we are unable to leave the junor
            room? Some jurors will be willing to pay for
        food. ~~I~~ It's very unfair that we are unable
    to use the ~~can~~ cafeteria in the other building. We're
        hungry!

3. Bathroom
    - It's very nice to have restrooms in the junor room
        but it can be a bit uncomfortable to use the faulities
        when having stomach issues, etc.

4. Bigger garbage ~~bc~~ can.

5. Ordering food outside — who can we list as contact,
    if possible

6. refill / clean bathroom supplies.

7. ~~allAwho~~ Some jurors may have allergies —

7/30/2024

Court Ex. #15.

Can barely hear Ms. Neuman's
testimony.
Please speak louder.
Needs to project her voice

Thank you

Hello

CAN we get the limiting instructions in writing at some
Point?

THANK YOU!

Joe #10

7/31/2024
Court Ex. #16.



**Court Exhibit #17**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               -v.-<br><br>ARIE RANGOTT,<br><br>               Defendant. | 23 Cr. 004 (JHR) |

JENNIFER H. REARDEN, District Judge:

<u>**Questions for Jurors**</u>

**A.  General Questions**

1. Do you believe that you have personal knowledge of the charges contained in the Indictment as I have described it?

2. Would you have any problem following my instruction that a defendant in a criminal case is presumed innocent, and that the burden of proof remains at all times with the Government to prove the defendant guilty of a charge against him beyond a reasonable doubt?

3. Would you have any problem following my instruction that an indictment is only an accusation, and that the fact that an individual has been indicted does not mean that that individual is guilty of any offense?

4. Would you have any problem following my instruction that a defendant in a criminal case is under no obligation to present any evidence at trial?

5. Would you have any problem following my instruction that neither sympathy nor prejudice may enter into your deliberations, and that only the evidence introduced in the courtroom may be used by you to determine whether the Government has proven beyond a reasonable doubt that the defendant is guilty of the charges in the Indictment?

6. A defendant in a criminal case has the right not to testify.  If a defendant does not testify, the jury may not draw any inference against that defendant based on that decision.  The fact that a defendant chooses not to testify may not enter into the jury's deliberation at all.  Would you have any problem following this instruction?

7. Would you have any problem following my instruction that the question of punishment is for the Court alone to decide, and that any possible punishment must not enter into your deliberations as to whether the defendant is guilty or not guilty of the charges in the Indictment?

8.  Do you have any religious, moral, or ethical beliefs that would prevent you from passing judgment on another person?

9.  Do you have any ideas or prejudices that would make it difficult for you to follow my instructions as to the law?

10. Do you have any doubt that you will be able to apply the law as I explain it, even if you disagree with it?

11. Do you believe that—for reasons that have nothing to do with the law or the evidence—you might be reluctant to render a verdict of guilty?

12. Do you believe that—for reasons that have nothing to do with the law or the evidence—you might be reluctant to return a verdict of not guilty?

**B.    Knowledge of the Trial Participants**

13. The defendant in this case is Arie Rangott.  Do you know, or have you had any dealings, directly or indirectly, with Mr. Rangott, or with any relative, friend, or associate of his?

14. Mr. Rangott is represented at trial by attorneys Bill Harrington and Annie Railton of the law firm Goodwin Procter LLP.  They will be assisted by Sneha Suresh and Josie Morales-Thomason.  Do you know any of them, or have you, or has anyone close to you, had any dealings with them or their law firm, Goodwin Procter?

15. The Government is represented here by the United States Attorney for the Southern District of New York, who is Damian Williams.  The conduct of the trial will be in the immediate charge of Assistant United States Attorneys Jacob R. Fiddelman, Stephanie Simon, and Daniel H. Wolf.  They will be assisted by paralegal specialist Jayda Foote, and Special Agents John Hubbard and Geoffrey Zelek of the Federal Bureau of Investigation.  Do you know any of these individuals?  Have you, or has anyone close to you, had any dealings, directly or indirectly, with any of them?

16. Do you, or has anyone close to you, had any dealings with me, my deputy, Khalilah Williams, or my law clerk Michael Bloom?

17. The following individuals may be mentioned during the trial, and some may be witnesses in this case:

> a.  Chaim Adler
> b.  Carolyn Baker
> c.  Mordechai Berger
> d.  Phillip Escoriaza
> e.  Tania Garcia
> f.  Isidore Handler
> g.  Martin Handler
> h.  Israel Herbst

    i.   Eric Knapp
    j.   Elie Lefkowitz
    k.   Menachem "Max" Lieberman
    l.   Sara Neuman
    m.  Courtney O'Donnell
    n.   Mindy Pava
    o.   Tanesha Peralta
    p.   David Rangott
    q.   Shayna Rangott
    r.   Josephine Restivo
    s.   Ananya Sankar
    t.   Harold Schwartz
    u.   Michelle Sperruggia
    v.   Ted Waters
    w.  Chelsea Zhang
    x.   Yehuda Zorger

Do you know any of these individuals?  Have you, or has anyone close to you, had any dealings with any of these individuals?

18.   I am now going to read a list of entities that may be mentioned during the trial.

    a.   Brightside Academy
    b.   Feldesman Liefer LLP, f/k/a Feldesman Tucker Liefer Fidell LLP
    c.   Kiddies Transport
    d.   New York City Administration for Children's Services
    e.   New York City Early Learning Co. d/b/a Beanstalk Academy
    f.   Office of Head Start
    g.   Project Social Care Head Start Inc.
    h.   Simche Kinder
    i.   Simche Tots
    j.   U.S. Department of Health and Human Services
    k.   Robert Wood Johnson University Hospital

Have you, or has anyone close to you, had any dealings with these entities?  Do not answer yes if your dealings with an entity were routine dealings, like that of a customer at a bank or a patient at a hospital.

19.   You will hear about events that occurred at or around several locations in this trial. These include:

    a.   Airmont, New York
    b.   Bayonne, New Jersey
    c.   Toms River, New Jersey
    d.   New Brunswick, New Jersey

Do you have any familiarity with these locations?

C.    **Prior Juror Experiences**

20.    Do you know, or do you have any association—professional or social, direct or indirect—with anyone employed at the United States Attorney's Office for the Southern District of New York, the Federal Bureau of Investigation, or the U.S. Department of Health and Human Services (or "HHS" for short)?

21.    Have you, either through any experience you have had or anything you have seen or read, developed any bias, prejudice, or other feelings for or against these agencies or any other law enforcement agency?

22.    Have you, or has anyone close to you, been employed by any law enforcement agency or prosecuting office, whether federal, state, or local?

23.    Do you have any opinions or feelings about the criminal justice system that would interfere with your ability to be fair and impartial in this case?

24.    Have you, or has anyone close to you, ever been a party to any legal action or dispute with the United States, or with any of the officers, departments, agencies, or employees of the United States?

25.    Have you ever served as a member of a jury or a grand jury in any court?

26.    Have you ever been a witness or a complainant in any federal or state prosecution?

27.    Are you, or is anyone close to you, now under subpoena or, to your knowledge, about to be subpoenaed in any criminal case?

28.    Have you, or has anyone close to you, ever been the subject of any investigation or accusation by any federal or state grand jury?

29.    Have you, or has anyone close to you, ever been charged with a crime?

30.    Have you, or has anyone close to you, ever been the victim of a crime?

31.    Have you, or has anyone close to you, ever studied or practiced law or worked in any capacity for a law office?

32.    Do you, or does anyone close to you, practice in the area of criminal law, either as a prosecutor or a defense lawyer?

D.    **Ability to Render a Fair and Impartial Verdict**

33.    Earlier, I described to you the charges against Mr. Rangott and provided a brief summary of the case. Would anything about the case as I have described it affect your ability to render a fair and impartial verdict in this case?

34.  Do you believe that the actions described in the Indictment, as I have described them to you, should not be against the law?

35.  Have you or has any person close to you been involved in a conspiracy to defraud the United States or a government agency?

36.  Have you or has any person close to you ever worked for a Head Start program?

37.  Do you or does any person close to you have a child who has participated in a Head Start program?

38.  Do you feel that those who run Head Start programs should be held to a higher standard than the rest of the public?

39.  Have you or has any person close to you ever worked for a daycare provider?

40.  Is there anything about the nature of this case, including the fact that it involves accusations of dishonesty and obstruction by a person working at a Head Start program, that would make it difficult for you to be a fair and impartial juror?

41.  Some of the individuals in this case have lived outside of the United States and have contacts with individuals from other countries.  Is there anything about that fact that would affect your ability to be a fair and impartial juror?

42.  Would anything about the physical appearance of Mr. Rangott influence you in this case and/or cause you to doubt in any way your ability to be a fair and impartial juror in this case?

43.  You may hear testimony in languages other than English, which will be translated by a sworn translator.  Even if you speak that language, you must take the sworn translator's translation as fact.  Can you do that?

**E.  Evidence & Witnesses**

44.  There will be various types of evidence that I expect the Government will present in this trial.  Would you have any difficulty accepting my instruction that the Government is not required to use any particular investigative techniques in presenting evidence of a crime?

45.  Some of the evidence admitted at trial may come from searches performed by law enforcement officers.  Would you have any problem following my instruction that those searches were legal and the evidence obtained from those searches is admissible in this case?

46.  The Government witnesses in this case may consist of one or more cooperating witnesses, that is, witnesses who were previously involved in illegal activity, but who have pleaded guilty to various crimes or are testifying pursuant to agreements with the

Government. Such cooperating witnesses hope to receive a reduction in their sentences as a result of their cooperation with the Government. The use of testimony from cooperating witnesses is lawful and is often a necessary law enforcement tool. Do you have any experience or personal feelings about the Government's use of cooperating witnesses which would affect your ability to be fair and impartial in this case?

47. You may hear testimony in this case from one or more witnesses who may testify under a grant of immunity from this Court. What this means is that the testimony of the witness may not be used against him or her in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of this Court. Like cooperating witnesses, the use of immunized witnesses is also legal and is often a necessary law enforcement tool. Do you have any experience with or feelings about the Government's use of immunized witnesses which would prevent affect your ability to be fair and impartial in this case?

48. Mr. Rangott is charged with acting with others in committing certain alleged crimes. Those other individuals are not on trial in this case. You may not draw any inference, favorable or unfavorable, toward Mr. Rangott or the Government from that fact. You also may not speculate as to the reason why other persons are not on trial at this time. Would you have any difficulty following this instruction regarding the other individuals not on trial?

## F.  Difficulties in Understanding or Serving

49. This trial is expected to last approximately two weeks. The jury will typically sit from 9:30 a.m. to 3:00 p.m. Monday through Friday. Is there any *significant* hardship that would prevent you from serving as a juror for that period of time?

50. Do you have any problems with your hearing or vision that would prevent you from giving full attention to all of the evidence at this trial?

51. Are you taking any medication, or do you have any medical condition, that would prevent you from giving full attention to all of the evidence at this trial?

52. Do you have any difficulty in reading or understanding English?

53. Would you have any trouble accepting the proposition that you should absolutely avoid reading about this case in the newspapers, or listening to any radio or television or Internet reports concerning the case, until after it is over?

54. In these questions, I have tried to direct your attention to possible reasons why you might not be able to sit as a fair and impartial juror in this case. Apart from any prior questions, do you have the slightest doubt in your mind, for any reason whatsoever, concerning your ability to serve conscientiously, fairly, and impartially in this case, and to render a true and just verdict without fear, favor, sympathy, bias, or prejudice—and according to the law as it will be explained to you?

## Questions for Individual Prospective Jurors

1.  How long have you lived in this country?  Have you lived in any other country?

2.  Without mentioning your exact address, what neighborhood do you live in?  How long have you lived there?

3.  What is the highest level of education that you completed and what did you study?

4.  Over the last five years, what has been your occupation?  What is the name and general location of your present employer and the period of time during which you worked for this employer?  What is the nature of your work for this employer?  If you are retired, what is your former occupation?

5.  Who are the members of your household?  What do they do for a living?

6.  Do you have adult children living outside your home?  What do they do for a living?

7.  Have you, or has any member of your immediate family, served in the military?  If so, which branch, and when?

8.  What do you like to do in your spare time?

9.  What news publications do you read on a regular basis?

10. Do you listen to talk radio or podcasts?  If so, what stations or programs?

11. Do you regularly visit any websites or utilize social media?  Which ones?

12. What television programs do you typically watch?

13. Are you a member of any organizations, clubs, or associations?

14. Name a famous person (dead or alive) whom you admire, and briefly say why.

1  UNITED STATES DISTRICT COURT
2  SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v.-                                    23 Cr. 004 (JHR)

ARIE RANGOTT,

Defendant.

3
4  JENNIFER H. REARDEN, District Judge:

5
6
7
8
9
10                              **[DRAFT] JURY CHARGE**
11
12                                  JULY 31, 2024
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

CONTENTS

**I.    General Instructions** ...................................................................................................... **4**

   A.   Introductory Remarks .................................................................................... 4

   B.   Role of the Court ............................................................................................ 5

   C.   Role of the Jury ............................................................................................. 5

   D.   Role of Counsel ............................................................................................. 6

   E.   Sympathy or Bias .......................................................................................... 6

   F.   All Persons Equal Before the Law ............................................................... 8

   G.   Presumption of Innocence and Burden of Proof .......................................... 8

   H.   Proof Beyond a Reasonable Doubt ............................................................... 9

   I.   Number of Witnesses and Uncontracted Testimony ................................... 10

   J.   What Is and Is Not Evidence ....................................................................... 11

   K.   Direct and Circumstantial Evidence ........................................................... 12

   L.   Inferences ................................................................................................... 13

   M.   Credibility of Witnesses ............................................................................. 15

   N.   Bias/Interest of Witnesses .......................................................................... 17

   O.   Preparation of Witnesses ............................................................................ 17

   P.   Law Enforcement or Government Witnesses .............................................. 18

   Q.   Cooperating Witnesses Testimony ............................................................. 18

   R.   Immunized Witnesses ................................................................................. 20

   S.   Character Witnesses .................................................................................... 21

   T.   False Exculpatory Statements ..................................................................... 22

   U.   Similar Acts ................................................................................................ 22

   V.   Stipulations of Fact .................................................................................... 23

   W.   Stipulations of Testimony ........................................................................... 23

   X.   Charts and Summaries: Admitted as Evidence ........................................... 24

   Y.   Redaction of Evidence ................................................................................ 24

   Z.   Use of Audio and Video Recordings and Transcripts ................................. 24

   AA. Use of Evidence Obtained Pursuant to Searches ........................................ 25

   BB. Uncalled Witnesses—Equally Available or Unavailable ............................ 26

   CC. Defendant's Testimony ............................................................................... 26

   DD. Defendant's Right Not to Testify ................................................................ 27

**II.    Substantive Instructions** ............................................................................................ **27**

   A.   The Indictment ........................................................................................... 27

B.  All Three Counts: Conspiracy Offenses ............................................................ 29

   1.  Background and Elements of Conspiracy ................................................. 29

   2.  First Element: Existence of a Conspiracy ............................................... 30

   3.  Second Element: Participation .................................................................. 32

   4.  Third Element: Overt Act .......................................................................... 34

C.  Count One: Conspiracy to Defraud the United States .................................... 35

   1.  Additional Instructions Regarding Count One ...................................... 38

D.  Count Two: Conspiracy to Falsify Documents and Records ......................... 40

   1.  First Element: Falsification of Document ............................................... 41

   2.  Second Element: Knowing Conduct ........................................................ 41

   3.  Third Element: Intent to Impede Investigation ..................................... 41

E.  Count Three: Conspiracy to Obstruct an Agency Proceeding ...................... 42

   1.  First Element: Proceeding Was Pending ................................................ 43

   2.  Second Element: Knowledge of Proceeding .......................................... 43

   3.  Third Element: Act of Obstructing or Impeding ................................... 44

F.  Multiple Conspiracies ........................................................................................ 45

G.  Conscious Avoidance .......................................................................................... 46

H.  Motive ................................................................................................................... 48

I.  Variance in Dates ................................................................................................ 48

J.  Venue .................................................................................................................... 49

K.  Defense Theory of the Case ............................................................................... 50

**III. Deliberations of the Jury** .................................................................................. **50**

A.  Right to See Exhibits and Hear Testimony ...................................................... 50

B.  Communication with the Court .......................................................................... 50

C.  Notes ..................................................................................................................... 51

D.  Duty to Deliberate; Unanimous Verdict .......................................................... 51

E.  Verdict Form ....................................................................................................... 52

F.  Duties of Foreperson .......................................................................................... 53

G.  Return of Verdict ................................................................................................ 53

**IV. Conclusion** ........................................................................................................ **54**

1    **I.    GENERAL INSTRUCTIONS**
2
3         **A.    Introductory Remarks**

4         Members of the jury, you have now heard all of the evidence in the case as well as the final

5    arguments of the parties.  We have reached the point where you are about to undertake your final

6    function as jurors.  You have paid careful attention to the evidence, and I am confident that you

7    will act together with fairness and impartiality to reach a just verdict in the case.

8         Now it is time for me to instruct you as to the law that governs the case.  There are three

9    parts to these instructions.  First, I am going to give you general instructions about your role and

10   about how you are to decide the facts of the case, including the burden of proof you must apply.

11   Many of these instructions would apply to any trial.  Second, I will give you some more specific

12   instructions about the legal rules applicable to this particular case, including a description of the

13   elements of the charges against the defendant.  Third, I will give you instructions on the rules

14   governing your deliberations.

15        Listening to these instructions may not be easy.  It is important, however, that you listen

16   carefully and concentrate.  I ask you for patient cooperation and attention.  You will notice that I

17   am reading these instructions from a prepared text.  As I said earlier, it would be livelier, no doubt,

18   if I just improvised.  But it is important that I not do that.  The law is made up of words, and those

19   words are very carefully chosen.  So, when I tell you the law, it is critical that I use exactly the

20   right words.

21        Because my instructions cover many points, I have given you a copy of them so that you

22   may follow along.  In addition, you will have a copy of these instructions with you in the jury

23   room, so you can refer to them if you want to re-read any portion to facilitate your deliberations.

1   You should not single out any instruction as alone stating the law; instead, you should consider

2   my instructions as a whole when you retire to deliberate in the jury room.

3        You will also have with you in the jury room a verdict form on which to record your verdict.

4   That form will list the questions you should consider.

5   **B.    Role of the Court**

6        I have instructed you during the trial as to various matters, and you should of course

7   continue to follow those instructions.  My duty at this point is to instruct you as to the law.  It is

8   your duty to accept these instructions of law and to apply them to the facts as you determine them.

9   With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated

10  a legal principle different from any that I state to you in my instructions, it is my instructions that

11  you must follow.  You must not substitute your own notions or opinions of what the law is or ought

12  to be.[1]

13  **C.    Role of the Jury**

14       As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon

15  the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there

16  may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the

17  facts as you have determined them, and you determine the weight of the evidence.

18       Do not conclude from any of my questions or any of my rulings on objections or anything

19  else I have done during this trial that I have any view as to the credibility of the witnesses or how

20  you should decide the case.

21       It is your sworn duty, and you have taken the oath as jurors, to determine the facts.  Any

22  opinion I might have regarding the facts is of absolutely no consequence.[2]

---

[1] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).
[2] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1    **D.    Role of Counsel**

2    It is the duty of the attorneys to object when the other side offers testimony or other

3    evidence that the attorney believes is not properly admissible.  It is my job to rule on those

4    objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your

5    business.  You should draw no inference from the fact that an attorney objects to any evidence.

6    Nor should you draw any inference from the fact that I might have sustained or overruled an

7    objection.

8    The personalities and the conduct of counsel in the courtroom are not in any way at issue.

9    If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable,

10    whether you approved or disapproved of their behavior as advocates, those reactions should not

11    enter into your deliberations.

12    From time to time, the lawyers and I had conferences out of your hearing.  These

13    conferences involved procedural and other matters, and none of the events relating to these

14    conferences should enter into your deliberations at all.[3]

15    **E.    Sympathy or Bias**

16    Under your oath as jurors, you are not to be swayed by sympathy or prejudice.  All of us,

17    no matter how hard we try, tend to look at others and weigh what they have to say through the lens

18    of our own experience and background.  We each have a tendency to stereotype others and make

19    assumptions about them.  Often, we see life and evaluate evidence through a clouded filter that

20    tends to favor those like ourselves.  You must do the best you can to put aside such stereotypes,

21    for all litigants and witnesses are entitled to a level playing field in which we do the best we can

22    to put aside our stereotypes and prejudices.  You are to be guided solely by the evidence in this

---

[3] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1  case, and the crucial, bottom-line question that you must ask yourselves as you sift through the

2  evidence is: has the Government proven the guilt of the defendant beyond a reasonable doubt?

3        It is for you alone to decide whether the Government has proven that the defendant is guilty

4  of the crimes charged.  You must decide solely on the basis of the evidence presented, subject to

5  the law as I explain it to you.  It must be clear to you that once you let fear or prejudice, or bias or

6  sympathy, interfere with your thinking, there is a risk that you will not arrive at a true and just

7  verdict.

8        If you have a reasonable doubt as to the defendant's guilt, you should not hesitate for any

9  reason to find a verdict of acquittal for the defendant.  But on the other hand, if you should find

10  that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt,

11  you should not hesitate, because of sympathy or any other reason, to render a verdict of guilty.

12        The question of possible punishment of the defendant is of no concern to the jury and

13  should not enter into or influence your deliberations.  The duty of imposing sentence rests

14  exclusively upon the Court.  Your function is to weigh the evidence in the case and to determine

15  whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such

16  evidence.  Under your oath as jurors, you cannot allow a consideration of the punishment which

17  may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or,

18  in any sense, enter into your deliberations.

19        Similarly, it would be improper for you to allow any feelings you might have about the

20  nature of the crimes charged to interfere with your decision-making process.  Your verdict must

21  be based exclusively upon the evidence or the lack of evidence in the case.[4]

---

[4] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

**F.      All Persons Equal Before the Law**

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States.  The fact that the Government is a party, and the prosecution is brought in the name of the United States, does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party.  By the same token, you must give it no less deference.  The Government and the defendant stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the defendant's race, religion, national origin, sex, or age.  All persons are entitled to the same presumption of innocence, and the Government has the same burden of proof with respect to all persons.  Your verdict must be based solely on the evidence or the lack of evidence.[5]

**G.      Presumption of Innocence and Burden of Proof**

Now I will instruct you on the presumption of innocence and the Government's burden of proof in this case.  The defendant has pleaded not guilty to the charges in the Indictment.  In so doing, he has denied every allegation charged against him.  As a result of the defendant's plea of not guilty, the Government has the burden of proving each charge in the Indictment beyond a reasonable doubt.  This burden never shifts to the defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of testifying, or calling any witnesses, or locating or producing any evidence.

The law presumes the defendant to be innocent of the charges against him.  I therefore instruct you that she is to be presumed by you to be innocent throughout your deliberations.

---

[5] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1    The defendant does not have to prove his innocence.  To the contrary, the law presumes

2    the defendant to be innocent of the charges against him.  This presumption of innocence alone is

3    sufficient to acquit him unless you as jurors are unanimously convinced beyond a reasonable doubt

4    of her guilt, after a careful and impartial consideration of all the evidence in this case.  If the

5    Government fails to sustain its burden as to a particular charge in the Indictment, then you must

6    find the defendant not guilty of that charge.

7        This presumption of innocence was in the defendant's favor at the start of the trial; it

8    continued in his favor throughout the entire trial; it is in his favor even as I instruct you now; and

9    it continues in his favor during the course of your deliberations.  I therefore instruct you that the

10   defendant is to be presumed by you to be innocent throughout your deliberations in the jury room.

11   That presumption is removed if and only if you, as members of the jury, are satisfied that the

12   Government has sustained its burden of proving the guilt of the defendant beyond a reasonable

13   doubt.[6]

14   **H.      Proof Beyond a Reasonable Doubt**

15
16       The question that naturally arises is, "What is a reasonable doubt?"  The words almost

17   define themselves.  It is a doubt that a reasonable person has after carefully weighing all of the

18   evidence, or lack of evidence. It is a doubt that would cause a reasonable person to hesitate to act

19   in a matter of importance in his or her personal life.  Reasonable doubt is a doubt that appeals to

20   your reason, your judgment, your experience, and your common sense.  Proof beyond a reasonable

21   doubt must, therefore, be proof of such a convincing character that a reasonable person would not

22   hesitate to rely and act upon it in the most important of his or her own affairs.  A reasonable doubt

---

[6] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Cristobal*, 20 Cr. 463 (KPF) (S.D.N.Y. Sept. 6, 2022).

[9]

1  is not caprice or whim.  It is not speculation or suspicion. It is not an excuse to avoid the

2  performance of an unpleasant duty.  And it is not sympathy.

3      At the same time, reasonable doubt does not mean beyond all possible doubt.  It is

4  practically impossible for a person to be absolutely and completely convinced of any disputed fact

5  that by its nature is not susceptible of mathematical certainty.  In consequence, the law in a criminal

6  case is that it is sufficient if the guilt of a defendant is established beyond a reasonable doubt, not

7  beyond all possible doubt.

8      If, after a fair and impartial consideration of all the evidence, you are not satisfied of the

9  defendant's guilt, if you do not have an abiding conviction of the defendant's guilt—in sum, if you

10  have such a doubt as would cause you, as prudent persons, to hesitate before acting in in important

11  matters in the personal affairs of your own life—then you have a reasonable doubt, and in that

12  circumstance it is your duty to acquit the defendant.

13      On the other hand, if after a fair and impartial consideration of all the evidence you are

14  convinced of the defendant's guilt of a particular charge beyond a reasonable doubt, then you must

15  convict him of that charge.[7]

16  **I.      Number of Witnesses and Uncontracted Testimony**

17      The fact that one party called more witnesses or introduced more evidence does not mean

18  that you should necessarily find the facts in favor of the side offering the most witnesses and the

19  most evidence.  By the same token, you do not have to accept the testimony of any witness who

20  has not been contradicted or impeached, if you find the witness to be not credible.  You must

21  decide which witnesses to believe and determine which facts are true.  To do this, you must look

22  at all the evidence or lack of evidence, drawing upon your own common sense and personal

---

[7] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Cristobal*, 20 Cr. 463 (KPF) (S.D.N.Y. Sept. 6, 2022).

1    experience.  After examining all the evidence, you may decide that the party calling the most

2    witnesses has not persuaded you because you do not believe its witnesses, or because you do

3    believe the fewer witnesses called by the other side.

4         Again, you should also keep in mind that the burden of proof is always on the Government.

5    The defendant is not required to call any witnesses or offer any evidence, since he is presumed to

6    be innocent.  On the other hand, the Government is not required to prove each element of the

7    offense by any particular number of witnesses.  The testimony of a single witness may be enough

8    to convince you beyond a reasonable doubt of the existence of the elements of the charged offenses

9    — if you believe that the witness has truthfully and accurately related what he or she has told you.

10   The testimony of a single witness may also be enough to convince you that reasonable doubt exists,

11   in which case you must find the defendant not guilty.[8]

12         **J.    What Is and Is Not Evidence**

13         In determining the facts, you must rely upon your own recollection of the evidence.  The

14   evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence,

15   and the stipulations of the parties.

16         However, testimony that I have stricken or excluded is not evidence and may not be

17   considered by you in rendering your verdict.  Also, if certain testimony was received for a limited

18   purpose, you must follow the limiting instructions I have given, and use the evidence only for the

19   purpose I indicated.

20         The only exhibits that are evidence in this case are those that were received in evidence.

21   Exhibits marked for identification but not admitted are not evidence, nor are materials that were

22   used only to refresh a witness's recollection.

---

[8] Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

1    As I told you at the start of this case, statements and arguments by lawyers are not evidence,

2    because the lawyers are not witnesses.  What they have said to you in their opening statements and

3    in their summations is intended to help you understand the evidence to reach your verdict.

4    However, if your recollection of the facts differs from the lawyers' statements, it is your

5    recollection that controls.

6    For the same reasons, you are not to consider a lawyer's questions as evidence.  It is the

7    witnesses' answers that are evidence, not the lawyers' questions.

8    Finally, any statements that I may have made do not constitute evidence.  It is for you alone

9    to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have

10   seen.[9]

11   **K.      Direct and Circumstantial Evidence**

12   Generally, as I mentioned at the start of the case, there are two types of evidence that you

13   may consider in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence

14   is testimony by a witness about something he knows by virtue of his own senses—something he

15   has seen, felt, touched, or heard.  For example, if a witness testified that when he left his house

16   this morning, it was raining, that would be direct evidence about the weather.

17   The second type of evidence is circumstantial evidence. Circumstantial evidence is

18   evidence that tends to prove a disputed fact indirectly by proof of other facts. There is a simple

19   example of circumstantial evidence that is frequently used in this Courthouse.  Assume that when

20   you came into the Courthouse this morning, the sun was shining and it was a nice day outdoors.

21   Also assume that the courtroom blinds were drawn, and you could not look outside.  Assume

22   further that, as you were sitting here, someone walked in with an umbrella that was dripping wet,

---

[9] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1   and then, a few moments later, somebody else walked in with a raincoat that was also dripping

2   wet.  Now, because you could not look outside the courtroom, and you could not see whether it

3   was raining, you would have no direct evidence of the fact that it was raining.  But, on the

4   combination of facts that I have asked you to assume, it would be reasonable and logical for you

5   to conclude that it was raining.  That is all there is to circumstantial evidence.  You infer on the

6   basis of reason and experience and common sense from one established fact the existence or non-

7   existence of some other fact.

8        Many facts, such as a person's state of mind, can only rarely be proven by direct evidence.

9   Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law

10  makes no distinction between direct and circumstantial evidence, but simply requires that in order

11  to convict a defendant, the jury must be convinced of that defendant's guilt beyond a reasonable

12  doubt from the evidence in the case.[10]

13  **L.    Inferences**

14

15       You just heard me refer a moment ago to "inferences" to be drawn from the evidence, and

16  you may have also heard the attorney use that term throughout this trial—specifically, the attorneys

17  have asked you to "infer" on the basis of your reason, experience, and commonsense from one or

18  more established facts the existence of some other fact.  An inference is a reasoned, logical

19  deduction or conclusion that you, the jury, are permitted to draw—but are not required to draw—

20  from the facts that have been established by either direct or circumstantial evidence.  In drawing

21  inferences, you should exercise your common sense.

22       You do not leave your common sense, good judgment, or life experiences behind you when

23  you walk into the Courtroom.  You carry that background into the jury room during your

---

[10] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Cristobal*, 20 Cr. 463 (KPF) (S.D.N.Y. Sept. 6, 2022).

1    deliberations.  While you are considering the evidence presented to you, you are permitted to draw,

2    from the facts that you find to be proven, such reasonable inferences as would be justified in light

3    of your experience.  Please remember, however, that you may not use your experience and

4    common sense to fill in or create evidence that does not exist.  You use them only to draw

5    reasonable inferences from proven facts or to weigh and evaluate the evidence provided during the

6    trial.

7        There are times when different inferences may be drawn from facts, whether proved by

8    direct or circumstantial evidence. The Government may ask you to draw one set of inferences,

9    while the defendant may ask you to draw another.

10        Some inferences, however, are impermissible.  For example, you may not infer that a

11   defendant is guilty of participating in criminal conduct if you find merely that he or she was present

12   at the time the crime was being committed and had knowledge that it was being committed.

13   Likewise, you may not infer that a defendant is guilty of participating in criminal conduct merely

14   from the fact that he or she may have associated with other people who were guilty of wrongdoing,

15   or merely because he or she may have had knowledge of the wrongdoing of others.  Nor may you

16   use evidence that I have instructed you was admitted for a limited purpose for any inference beyond

17   that limited purpose.

18        Here again, let me remind you that, whether based upon direct or circumstantial evidence,

19   or upon the logical, reasonable inferences drawn from such evidence, you must be satisfied that

20   the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt

21   before you may convict him of the particular count that you are considering.

[14]

1      Ultimately, it is for you, and you alone, to decide what reasonable inferences to draw.[11]

2      **M.      Credibility of Witnesses**

3      You have had the opportunity to observe the witnesses testify at this trial.  It is now your

4   job to decide how credible, or believable, each witness was in his or her testimony.  You are the

5   sole judges of the credibility of each witness and of the importance of his or her testimony.

6      How do you evaluate the credibility, or believability, of the witnesses?  The answer is that

7   you use your common sense, your good judgment, and your experience.

8      First, consider how well the witness was able to observe or hear what he or she testified

9   about.  The witness may be honest, but mistaken.  How did the witness's testimony impress you?

10  Did the witness appear to be testifying honestly, openly, and candidly?  Were the witness's answers

11  direct or were they evasive?  How responsive was the witness to the questions asked on direct

12  examination and on cross-examination?  Consider the witness's demeanor, manner of testifying,

13  and the strength and accuracy of the witness's recollection.  Consider whether any outside factors

14  might have affected a witness's ability to perceive events.

15     Consider also the substance of the testimony.  How does the witness's testimony compare

16  with other proof in the case?  Does it seem implausible or otherwise unworthy of belief?  Is it

17  corroborated or is it contradicted by other evidence?  If there is a conflict, does any version appear

18  reliable, and if so, which version seems more reliable?

19     In addition, you should specifically note any evidence of hostility or affection that the

20  witness may have had for or against the Government or the defendant.  Likewise, you should

21  consider evidence of any interest or motive that the witness may have had in cooperating with or

---

[11] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Menendez*, 23 Cr. 490 (SHS) (S.D.N.Y. 2024); *United States v. Cristobal*, 20 Cr. 463 (KPF) (S.D.N.Y. Sept. 6, 2022); *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022).

[15]

1   helping either party.  It is your duty to consider whether the witness has permitted any such bias

2   or interest to color his or her testimony.  If you find that a witness is biased or interested, you

3   should view his or her testimony with caution, weigh it with care, and subject it to close and

4   searching scrutiny.

5         Of course, the mere fact that a witness has an interest in this case does not mean the witness

6   has not told the truth.  It is for you to decide from your observations, applying your common sense

7   and experience, and all the other considerations mentioned, whether an interest has intentionally

8   or otherwise colored or distorted the witness's testimony.  You are not required to believe or

9   disbelieve a biased or an interested witness; you may accept as much of the testimony as you deem

10  reliable and reject as much as you deem unworthy of belief.

11        If a witness made statements in the past that are inconsistent with his or her trial testimony

12  concerning facts that are at issue here, you may consider that fact in deciding how much of the

13  witness's testimony, if any, to believe.  In making this determination, you may consider whether

14  the witness purposely made a false statement, or whether it was an innocent mistake.  You may

15  also consider whether the inconsistency concerns an important fact or merely a small detail, as

16  well as whether the witness had an explanation for the inconsistency, and, if so, whether that

17  explanation appealed to your common sense.

18        If you find that a witness has testified falsely as to any material fact, or if you find that a

19  witness has been previously untruthful when testifying under oath or otherwise, you may reject

20  that witness's testimony in its entirety or you may accept only those parts that you believe to be

21  truthful or that are corroborated by other independent evidence in the case.

1    It is for you, the jury, and for you alone, not the lawyers, or the witnesses, or me as the

2    judge, to decide the credibility of the witnesses who testified and the weight that their testimony

3    deserves.[12]

4    **N.    Bias/Interest of Witnesses**

5    In deciding whether to believe a witness, you should specifically note any evidence of

6    hostility or affection that the witnesses may have towards one of the parties.  Likewise, you should

7    consider evidence of any other interest or motive that the witness may have in cooperating with a

8    particular party.  You should also take into account any evidence of any benefit that a witness may

9    receive from the outcome of the case.

10    It is your duty to consider whether the witness has permitted any such bias or interest to

11    color his or her testimony.  In short, if you find that a witness is biased, you should view his or her

12    testimony with caution, weigh it with care, and subject it to close and searching scrutiny.  Of

13    course, the mere fact that a witness is interested in the outcome of the case does not mean he or

14    she has not told the truth.  It is for you to decide from your observations and applying your common

15    sense and experience and all the other considerations mentioned whether the possible interest of

16    any witness has intentionally or otherwise colored or distorted his or her testimony.  You are not

17    required to disbelieve an interested witness; you may accept as much of his or her testimony as

18    you deem reliable and reject as much as you deem unworthy of acceptance.

19    **O.    Preparation of Witnesses**

20    You have heard evidence during the trial that witnesses had discussed the facts of the case

21    and their testimony with the lawyers before the witnesses appeared in court.  Although you may

22    consider that fact when you are evaluating a witness's credibility, I should tell you that there is

---

[12] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Cristobal*, 20 Cr. 463 (KPF) (S.D.N.Y. Sept. 6, 2022); *United States v. Shin*, 19 Cr. 552 (JPC) (S.D.N.Y. 2022).

1    nothing either unusual or improper about a witness meeting with lawyers before testifying, so that

2    the witness can be made aware of the subjects that he or she will be questioned about, focus on

3    those subjects, and have the opportunity to review relevant exhibits before being questioned about

4    them.  In fact, it would be unusual for a lawyer to call a witness without such consultation.  Again,

5    the weight you give to the fact or the nature of the witness's preparation for his or her testimony

6    and what inferences you draw from such preparation are matters completely within your

7    discretion.[13]

8    **P.    Law Enforcement or Government Witnesses**

9    You have heard the testimony of law enforcement and other government witnesses.  The

10    fact that a witness may be employed as a law enforcement official or government employee does

11    not mean that his or her testimony is necessarily deserving of more or less consideration or greater

12    or lesser weight than that of an ordinary witness.

13    It is your decision, after reviewing all the evidence, whether to accept all, part of, or none

14    of the testimony of the law enforcement witness or government witnesses—as it is with every other

15    type of witness—and to give to that testimony the weight you find it deserves.[14]

16    **Q.    Cooperating Witnesses Testimony**

17
18    You have heard from a witness who testified pursuant to a cooperation agreement with the

19    Government.

20    The law allows the use of the testimony of cooperators and other witnesses who have

21    participated in crimes.  Indeed, in federal courts, the law is that the testimony of even one such

---

[13] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022).

[14] Adapted from *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 7-16.

1  witness in itself may be enough for conviction, if the jury finds that the testimony establishes guilt

2  beyond a reasonable doubt.  The testimony of such witnesses is properly considered by the jury.

3      However, because of the possible interest a witness with a cooperation agreement may

4  have in testifying, the witness's testimony should be examined with greater scrutiny because such

5  witnesses may believe that it is in their interest to give testimony favorable to the Government.

6  The fact that a witness has an agreement with the Government can be considered by you as bearing

7  upon his or her credibility.  It does not follow, however, that simply because a person has

8  participated in a crime or has entered into such an agreement, he is incapable of telling the truth,

9  and it is no concern of yours why the Government made an agreement with the witness.  Your sole

10  concern is whether a witness has given truthful testimony here in this courtroom before you.

11      In evaluating the testimony of such a witness, you should ask yourselves whether the

12  witness would benefit more by lying, or by telling the truth.  Was his or her testimony made up in

13  any way because he or she believed or hoped that he or she would somehow receive favorable

14  treatment by testifying falsely?  Or did he or she believe that his or her interests would be best

15  served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal

16  gain, was the motivation one that would cause him or her to lie, or was it one that would cause him

17  or her to tell the truth?  And did this motivation color his or her testimony?

18      You may also consider whether an accomplice witness has an interest in the outcome of

19  the case and, if so, whether it has affected the witness's testimony.  For instance, you may consider

20  whether the witness believes the government has provided him or her with any benefits or

21  promises, and whether that belief provides the witness with a motive to testify either falsely or

22  truthfully at this trial.

[19]

1      If you find that the testimony was false, you should reject it.  However, if, after a cautious

2   and careful examination of the witness's testimony and demeanor upon the witness stand, you are

3   satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

4      As with any witness, let me emphasize that the issue of credibility need not be decided in

5   an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still may

6   accept his or her testimony in other parts or may disregard all of it.  That is a determination entirely

7   for you, the jury.

8      The cooperating witness from whom you heard testimony pleaded guilty to charges arising

9   out of the same facts that are at issue in this case.  You are not to draw any inference of any kind

10   about the guilt of the defendant merely from the fact that the witness pleaded guilty to charges

11   similar to those with which the defendant in this case has been charged.  The witness made personal

12   decisions based on their evaluation of the facts and circumstances.  A witness's decision to

13   cooperate with the Government is not evidence that the defendant committed a crime.[15]

14      **R.      Immunized Witnesses**

15      You have heard the testimony of witnesses who have testified under a grant of immunity

16   from this court.  What this means is that the testimony of those witnesses may not be used against

17   them in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise

18   failing to comply with the immunity order of this court.

19      You are instructed that the Government is entitled to call, as a witness, a person who has

20   been granted immunity by order of this court and that you may convict a defendant on the basis of

---

[15] Adapted from *United States v. Menendez*, 23 Cr. 490 (SHS) (S.D.N.Y. 2024); *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021); *United States v. Wade*, No. 21 Cr. 472 (KPF) (S.D.N.Y. Dec. 5, 2023).

1   such a witness's testimony alone, if you find that the testimony proves the defendant guilty beyond

2   a reasonable doubt.

3       Such testimony should be scrutinized with great care.  You should examine it closely to

4   determine whether or not it is colored in such a way as to place guilt upon the defendant in order

5   to further the witness's own interests.  If you believe the testimony to be true and determine to

6   accept it, you may give it such weight, if any, as you believe it deserves.

7       It is no concern of yours why a witness received court-ordered immunity. Your sole

8   concern is whether the witness has given truthful testimony in this trial. That is a determination

9   entirely for you, the jury.[16]

10   **S.     Character Witnesses**

11   [APPLICABILITY OF THIS CHARGE TBD]

12       The defendant has called witnesses who have given their opinion of his character or

13   reputation.  This testimony is not to be taken as the witness's opinion as to whether the defendant

14   is guilty or not guilty.  That question is for you alone to determine.  You should, however, consider

15   this evidence together with all the other facts and evidence in the case in determining whether the

16   defendant is guilty or not guilty of the charges.

17       Accordingly, if after considering all the evidence including the testimony regarding the

18   witness's opinion of the defendant's character or reputation, you find a reasonable doubt has been

19   created, you must acquit.  On the other hand, if after considering all the evidence including the

20   testimony regarding the witness's opinion of the defendant's character or reputation, you are

21   satisfied beyond a reasonable doubt that the defendant is guilty, you should not acquit the

---

[16] Adapted from *United States v. Calk*, No. 19 Cr. 366 (LGS) (S.D.N.Y. June 10, 2021); *United States v. Garelick*, No. 23 Cr. 307 (LJL) (S.D.N.Y. Apr. 29, 2024); 1 *Modern Federal Jury Instructions-Criminal*, Instr. 7-8.

1  defendant merely because you believe the defendant, or the witness believes the defendant, to be

2  a person of good character or to have a good reputation.[17]

3  **T.    False Exculpatory Statements**

4  You have heard testimony that the defendant made statements in which he claimed that his

5  conduct was consistent with innocence and not with guilt.  The Government claims that these

6  statements in which the defendant attempted to exculpate himself are false.  If you find that the

7  defendant gave a false statement in order to divert suspicion from himself, you may infer that the

8  defendant believed that he was guilty.  You may not, however, infer on the basis of this alone that

9  the defendant is, in fact, guilty of the crimes for which he is charged.

10  Whether or not the evidence as to a defendant's statements shows that the defendant

11  believed that he was guilty, and the significance, if any, to be attached to any such evidence, are

12  matters for you, the jury, to decide.[18]

13  **U.    Similar Acts**

14  There has been evidence received during the trial that the defendant engaged in conduct

15  which was similar in nature to the conduct charged in the Indictment.

16  Let me remind you that the defendant is on trial only for committing the acts alleged in the

17  Indictment.  Accordingly, you may not consider this evidence of the similar act as a substitute for

18  proof that the defendant committed the crimes charged.  Nor may you consider this evidence as

19  proof that the defendant has a criminal personality or bad character.  This other-act evidence was

20  admitted for a more limited purpose, namely, as potential evidence of the defendant's motive,

---

[17] Adapted from 1 *Modern Federal Jury Instructions-Criminal*, Instr. 5-15; *see United States v. Pujana-Mena*, 949 F.2d 24, 27-32 (2d Cir. 1991) (criticizing instruction that character evidence "standing alone" is enough for acquittal as "potentially misleading and confusing").

[18] Adapted from 1 *Modern Federal Jury Instructions-Criminal*, Instr. 6-11.

1    opportunity, intent, knowledge, plan, and/or absence of mistake, and to provide background for

2    the alleged conspiracy, and you may consider it for those purposes only.

3        If you determine that the defendant committed the acts charged in the Indictment and the

4    similar acts as well, then you may, but you need not, draw an inference that in doing the acts

5    charged in the Indictment, the defendant acted knowingly and intentionally and not because of

6    some mistake, accident, or other reasons.

7        However, the evidence of similar conduct is to be considered by you only on the issues of

8    motive, opportunity, intent, knowledge, plan, and/or absence of mistake. It may not be considered

9    by you for any other purpose. Specifically, you may not consider it as evidence that the defendant

10   is of bad character or has a propensity to commit crimes. You may not conclude that merely

11   because the defendant may have engaged in similar conduct, without more, that he must also have

12   committed the acts charged in the Indictment.[19]

13   **V.    Stipulations of Fact**

14       In this case you have heard evidence in the form of stipulations of fact. A stipulation of

15   fact is an agreement between the parties that a certain fact is true. You must regard such agreed-

16   upon facts as true. However, it is for you to determine the effect to be given to those facts.[20]

17   **W.    Stipulations of Testimony**

18       In this case you have also heard evidence in the form of stipulations of testimony. A

19   stipulation of testimony is an agreement between the parties that, if called as a witness, the person

---

[19] Adapted from 1 *Modern Federal Jury Instructions-Criminal*, Instr. 5-25, 5-26.

[20] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1  would have given certain testimony.  You must accept as true the fact that the witness would have

2  given that testimony.  However, it is for you to determine the effect to be given that testimony.[21]

3  **X.        Charts and Summaries: Admitted as Evidence**

4  Some of the exhibits that were admitted into evidence were in the form of charts and

5  summaries.  These exhibits purport to summarize the underlying evidence that was used to prepare

6  them.  I decided to admit these charts in order to save time and avoid unnecessary inconvenience.

7  You should consider these charts and summaries as you would any other evidence.[22]

8  **Y.        Redaction of Evidence**

9  Some of the exhibits received in evidence have been redacted.  "Redacted" means that part

10  of the underlying item was removed or covered.  You are to concern yourself only with the part of

11  the item that has been admitted into evidence.  You should not consider any possible reason why

12  the other part has been redacted.[23]

13  **Z.        Use of Audio and Video Recordings and Transcripts**
14
15  Audio and video recordings have been admitted into evidence and transcripts of those

16  recordings were provided to use as aids.

17  Whether you approve or disapprove of the recording of the activity may not enter your

18  deliberations.  I instruct you that these recordings were made in a lawful manner and that no one's

19  rights were violated, and that the Government's use of this evidence is entirely lawful, and it was

20  properly admitted into evidence at this trial.[24]

---

[21] Adapted from *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 5-7.
[22] Adapted from *United States v. Simmons*, 22 Cr. 399 (VEC) (S.D.N.Y. 2023); *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 5-12.
[23] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).
[24] Adapted from *United States v. Avenatti*, No. 19 Cr. 373 (PGG) (S.D.N.Y. Feb. 12, 2020); *United States v. Reynoso-Hiciano*, No. 20 Cr. 388 (DLC) (S.D.N.Y. Jan. 4, 2022); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instrs. 5-9, 5-10.

1    You must, therefore, regardless of any personal opinions about this type of evidence, give

2    this evidence full consideration along with all the other evidence in the case in determining whether

3    the Government has proved beyond a reasonable doubt the guilt of the defendant.

4    In connection with the recordings that you have heard, you were provided with transcripts

5    of the conversations to assist you while listening to the recordings.  Transcripts were provided only

6    as an aid to you in listening to the English-language recordings.  It is for you to decide whether the

7    transcripts correctly present the conversations recorded on the recordings that you heard.

8    If you wish to hear any of the recordings again, they will be made available to you during

9    your deliberations.

10   **AA.    Use of Evidence Obtained Pursuant to Searches**

11   You have heard testimony about evidence seized in connection with certain searches or

12   seizures conducted by law enforcement officers, and in particular, of email and other electronic

13   evidence obtained pursuant to court-approved search warrants.  Evidence obtained from these

14   searches and seizures was properly admitted in this case and may be properly considered by you.

15   Such searches and seizures were entirely appropriate law enforcement actions.  Whether you

16   approve or disapprove of how evidence was obtained should not enter into your deliberations,

17   because I instruct you that the Government's use of the evidence is entirely lawful.

18   You must, therefore, regardless of your personal opinions, give this evidence full

19   consideration along with all the other evidence in the case in determining whether the Government

20   has proven the defendant's guilt beyond a reasonable doubt.[25]

---

[25] Adapted from *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022).

1    **BB.    Uncalled Witnesses—Equally Available or Unavailable**

2    There are several persons whose names you have heard during the course of the trial but

3    who did not appear here to testify.  I instruct you that each party had an equal opportunity, or lack

4    of opportunity, to call any of these witnesses.  Therefore, you should not draw any inferences or

5    reach any conclusions as to what they would have testified to had they been called.  Their absence

6    should not affect your judgment in any way.

7    You should remember that there is no duty on either side to call a witness whose testimony

8    would be merely cumulative of testimony already in evidence, or who would merely provide

9    additional testimony to facts already in evidence.  Please also remember my instruction that the

10    law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses

11    or producing any evidence, and that the burden always rests with the Government to prove the

12    defendant's guilt beyond a reasonable doubt.[26]

13    **CC.    Defendant's Testimony**

14    [Include if the Defendant testifies]

15    A defendant in a criminal case never has any duty to testify or come forward with any

16    evidence.  This is because, as I have told you, it is the Government's burden to prove the defendant

17    guilty beyond a reasonable doubt.  In this case, however, the defendant chose to testify and was

18    subject to cross-examination like any other witness.  You should examine and evaluate the

19    defendant's testimony just as you would the testimony of any witness.[27]

---

[26] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022); *see also United States v. Brown*, 511 F.2d 920, 925 (2d Cir. 1975); *United States v. Super*, 492 F.2d 319, 323 (2d Cir. 1974); 1 *Modern Federal Jury Instructions-Criminal*, Instr. 6-7.
[27] *United States v. Almaleh*, No. S1 17 Cr. 25 (ER) (S.D.N.Y. Mar. 2, 2022); *see United States v. Brutus*, 505 F.3d 80, 87-88 (2d Cir. 2007); *United States v. Gaines*, 457 F.3d 238, 249 & n.9 (2d Cir. 2006).

1    **DD.    Defendant's Right Not to Testify**

2    [Include if the Defendant does not testify]

3    The defendant, Arie Rangott, did not testify in this case.  Under our Constitution, a

4    defendant has no obligation to testify or to present any evidence.  This is because, as I have told

5    you, it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That

6    burden remains with the Government throughout the entire trial and never shifts to a defendant.

7    A defendant is never required to prove that he is innocent.

8    You may not attach any significance to the fact that the defendant did not testify.  No

9    adverse inference against him may be drawn by you because he did not take the witness stand.

10    You may not consider this against the defendant in any way in your deliberations.

11    **II.    SUBSTANTIVE INSTRUCTIONS**

12    I will turn now to my instructions relating to the charges brought against the defendant in

13    this case.

14    **A.    The Indictment**

15    The defendant, Arie Rangott, has been formally charged in what is called an Indictment.

16    An indictment is simply an accusation.  It is not evidence of the crimes charged; it is not proof of

17    a defendant's guilt.  It is simply a procedure by which the Government presents charges in a

18    criminal case.

19    Before you begin your deliberations, you will be provided a copy of the Indictment.  I will

20    not read the entire Indictment to you at this time.  For now, I will summarize the offenses charged

21    in the Indictment and then explain in detail the elements of each offense.

22    The Indictment contains three counts against the defendant.  Each count constitutes a

23    separate offense which must be considered separately by you, and for which you must return a

1    separate verdict.  I am briefly going to summarize each count, and then will give you the law in

2    greater detail.

3            Count One charges the defendant with conspiracy to defraud the United States, in violation

4    of Title 18, United States Code, Section 371.  This count alleges that, between in or about 2019 to

5    in or about January 2023, the defendant agreed with others to impair, impede, or obstruct the lawful

6    functions of the U.S. Department of Health and Human Services, often known as "HHS," including

7    by impairing, impeding, or obstructing HHS's function to conduct appropriate oversight of, and

8    ensure compliance by, organizations receiving funding pursuant to the federal Head Start and Early

9    Head Start programs.

10           Count Two charges the defendant with conspiracy to falsify documents, in violation of

11    Title 18, United States Code, Sections 371 and 1519.  This count alleges that, in or about December

12    2021, the defendant agreed with others to knowingly alter, destroy, mutilate, conceal, cover up,

13    falsify, or make a false entry in a record or document with the intent to impede, obstruct, or

14    influence the investigation or proper administration of a matter within the jurisdiction of a

15    department or agency of the United States, specifically by submitting a letter to HHS that he knew

16    contained false statements and denials in response to an HHS inquiry.

17           Count Three charges the defendant with conspiracy to obstruct an official agency

18    investigation, in violation of Title 18, United States Code, Sections 371 and 1505.  This count

19    alleges that, in or about August and September 2022, the defendant agreed with others to corruptly

20    influence, obstruct, or impede the due and proper administration of the law under which a pending

21    proceeding was being had before any department or agency of the United States, specifically by

22    obstructing an investigation by the HHS Office of Inspector General.[28]

---

[28] Adapted from 1 *Modern Federal Jury Instructions-Criminal*, Instrs. 3-1, 3-2.

1    All you may have just noted, Counts One, Two, and Three all charge conspiracy offenses,

2    so let me explain to you what a conspiracy is.  These instructions about conspiracy apply to all

3    three Counts.  After instructing you on what a conspiracy is, I will instruct you on the specific law

4    governing each of the three Counts.

5    **B.       All Three Counts: Conspiracy Offenses**

6         **1.       Background and Elements of Conspiracy**

7    A conspiracy is a kind of criminal partnership -- a combination or agreement of two or

8    more persons to join together to accomplish some unlawful purpose.  The crime of conspiracy to

9    violate a federal law is an independent offense.  It is separate and distinct from the violation of any

10   specific federal laws, which the law refers to as "substantive crimes."

11   If a conspiracy exists, even if it should fail in its purpose, it is still punishable as a crime.

12   Indeed, you may find a defendant guilty of conspiracy to commit an offense even though the

13   substantive crime which was the object of the conspiracy was not actually committed.  Congress

14   has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the

15   conspiracy is not successful.  This is because collective criminal activity poses a greater threat to

16   the public's safety and welfare than individual conduct and increases the likelihood of success of

17   a particular criminal venture.

18   In order for a defendant to be guilty of conspiracy, the Government must prove beyond a

19   reasonable doubt the following three elements:

20   *first*, that the charged conspiracy existed;

21   *second*, that at some point during the conspiracy's existence the defendant knowingly and

22   willfully joined the alleged conspiracy with the intent to accomplish the conspiracy's unlawful

23   purpose; and

[29]

1     *third*, that that at least one overt act occurred, that is, some member of the conspiracy—not

2 necessarily the defendant—knowingly took some action in furtherance of the conspiracy.[29]

3         **2.    First Element: Existence of a Conspiracy**

4     Starting with the first element, what is a conspiracy?  A conspiracy is an agreement or an

5 understanding between two or more people to violate the law.

6     The gist, or the essence, of the crime of conspiracy is the unlawful agreement of two or

7 more people to violate the law.  As I mentioned earlier, the ultimate success of the conspiracy, or

8 the actual commission of the crime that is the object of the conspiracy, is not required for a

9 conspiracy to have existed.  Rather, the Government is required to prove beyond a reasonable

10 doubt only that two or more persons, in some way or manner, explicitly or implicitly, came to an

11 understanding to accomplish the unlawful object.

12     To prove the existence of a conspiracy, the Government is not required to show that two

13 or more people sat around a table and entered into solemn pact, orally or in writing, stating that

14 they had formed a conspiracy to violate the law and spelling out who would do what in order to

15 carry out the unlawful project.  Similarly, you need not find that the alleged conspirators stated, in

16 words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme

17 or the means by which its object or purpose was to be accomplished.  What the Government must

18 prove is that there was a mutual understanding, either spoken or unspoken, between two or more

19 people to cooperate with each other to accomplish an unlawful act.

20     In determining whether there has been an unlawful agreement as alleged in the Indictment,

21 you may consider the actions and conduct of all the alleged co-conspirators that were taken to

22 carry out the apparent criminal purpose.  The old adage, "actions speak louder than words," applies

---

[29] Adapted from *United States v. Liu*, No. 19 Cr. 804 (VEC) (S.D.N.Y. Mar. 15, 2022); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 19-2.

[30]

1    here.  Often, the only evidence that is available with respect to the existence of a conspiracy is that

2    of disconnected acts and conduct on the part of the alleged individual co-conspirators.  When taken

3    all together and considered as a whole, however, these acts and conduct may warrant the inference

4    that a conspiracy existed just as conclusively as more direct proof, such as evidence of an express

5    agreement.

6           The object of a conspiracy is the illegal goal that the co-conspirators hoped to achieve.

7           The object of the conspiracy charged in Count One is to defraud the United States or an

8    agency thereof, specifically HHS.

9           The object of the conspiracy charged in Count Two is to falsify a letter to HHS in or about

10   December 2021 in response to an HHS inquiry.

11          The object of the conspiracy charged in Count Three is to obstruct an investigation by the

12   HHS Office of Inspector General.

13          You should keep in mind that you need not find the conspirators accomplished the object

14   or goal of each conspiracy.  Instead, an agreement to accomplish the goal of defrauding the United

15   States or an agency thereof is sufficient with respect to finding the first element of a conspiracy

16   has been satisfied for Count One; an agreement to accomplish the goal of falsifying a letter to HHS

17   in response to an HHS inquiry in or about December 2021 is sufficient with respect to finding the

18   first element of a conspiracy has been satisfied for Count Two; and an agreement to accomplish

19   the goal of obstructing an investigation by the HHS Office of Inspector General is sufficient with

20   respect to finding the first element of a conspiracy has been satisfied for Count Three.

21          Further, it is not essential that the Government prove that the conspiracy in question started

22   and ended on the specific dates alleged in the Indictment or that it existed throughout that entire

[31]

1   period.  Rather, it is sufficient to satisfy the first element if you find that in fact the charged

2   conspiracy was formed and that it existed for any time within the charged period.

3      [30]

4          **3.**      **Second Element: Participation**

5        If you conclude that the Government has proven beyond a reasonable doubt that a charged

6   conspiracy existed, then you must consider the second element: whether the defendant knowingly

7   and willfully became a member of the conspiracy.

8        To act "knowingly" means to act voluntarily and deliberately rather than mistakenly or

9   inadvertently.

10       To act "willfully" means to act voluntarily and with a wrongful purpose.

11       Put differently, an act is done knowingly and willfully if it is done purposefully and

12   deliberately with an intent to do something the law forbids, that is, a defendant's act must have

13   been the product of that defendant's conscious determination rather than the product of a mistake,

14   accident, mere negligence, or some other innocent reason.

15       Now, science has not yet devised a manner of looking into a person's mind and knowing

16   what that person is thinking.  However, you have before you evidence of certain acts,

17   conversations, and statements alleged to have been made by, with, or in the presence of the

18   defendant, and others.  The ultimate facts of knowledge and criminal intent may be established by

19   words and conduct and all the surrounding circumstances, as well as acts, and all of the

20   circumstances disclosed by the evidence and logical and reasonable inferences from them.  It is

---

[30] Adapted from *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021); *United States v. Olivo*, No. 22 Cr. 582 (VEC) (S.D.N.Y. Feb. 26, 2024); *United States v. Ganiyu*, No. 23 Cr. 331 (LAK) (S.D.N.Y. Apr. 19, 2024); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022).

1   for you to determine whether the Government has established beyond a reasonable doubt such

2   knowledge and intent on the part of the defendant.

3        It is not necessary for the Government to show that a defendant was fully informed as to

4   all the details of the conspiracy in order for you to infer knowledge on his part.  Nor does the

5   defendant need to know the full extent of the conspiracy or all its participants.  Indeed, it is not

6   necessary that a defendant know more than one other member of the conspiracy.  It is also not

7   necessary that the defendant receive any monetary benefit from participating in the conspiracy.  It

8   is enough if he participated in the conspiracy willfully and knowingly, as I have defined those

9   terms.  While proof of a financial interest in the outcome of the scheme is not essential, if you find

10  that the defendant had such an interest, that is a factor you may properly consider in determining

11  whether he was a member of the conspiracy.  The presence or absence of motive, however, is a

12  circumstance that you may consider as bearing on the intent of the defendant.

13       If you determine that the defendant became a member of the conspiracy, the duration and

14  extent of the defendant's participation has no bearing on the issue of that defendant's guilt.  Some

15  conspirators play major roles, while others play minor roles.  An equal role is not required.  In fact,

16  even a single act may be sufficient to draw a defendant within the ambit of the conspiracy if it

17  meets the elements I have described.  Moreover, a defendant need not have joined the conspiracy

18  at the outset.  He may have joined it at any time – at the beginning, in the middle, or at the end.

19  And if he joined, he will still be held responsible for all that was done before he joined as well as

20  all that was done during the conspiracy's existence while the defendant was a member.

21       However, I want to caution you that mere association with a member of a conspiracy by

22  one person with another person does not make that first person a member of the conspiracy, even

23  when that association is coupled with knowledge that the second person is committing a crime.

[33]

1   Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place,

2   is not sufficient to support a conviction.  In other words, knowledge without participation is not

3   sufficient to satisfy the second element.  What is necessary is that the defendant participated in the

4   conspiracy with knowledge of its unlawful purpose and with intent to aid in that accomplishment

5   of its unlawful object or objects.

6         In sum, if you find the defendant, with an understanding of the unlawful nature of the

7   charged conspiracy, intentionally engaged, advised, or assisted in the conspiracy for the purpose

8   of furthering the illegal undertaking, you should conclude that the defendant became a knowing

9   and willing participant in the unlawful agreement—that is to say, a conspirator.[31]

10         **4.     Third Element: Overt Act**

11         The third element that the Government must prove beyond a reasonable doubt for all three

12   counts is that at least one member of the conspiracy, not necessarily the defendant, knowingly

13   committed at least one overt act in furtherance of the conspiracy.  There must have been something

14   more than mere agreement; some overt step or action must have been taken by at least one of the

15   conspirators in furtherance of the conspiracy.

16         In order for the Government to satisfy its burden of proof with respect to the overt act

17   requirement, it is not necessary for the Government to prove all or even any of the particular overt

18   acts alleged in the Indictment.  Nor must you find that the defendant himself committed any overt

19   act, since such an act becomes, in the eyes of the law, the act of all of the members of the

20   conspiracy.

21         You should bear in mind that an innocent lawful act, standing alone, can constitute an overt

22   act.  An apparently innocent act sheds its harmless character if it is a step in carrying out,

---

[31] Jury Charges in *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021); *United States v. Ganiyu*, No. 23 Cr. 331 (LAK) (S.D.N.Y. Apr. 19, 2024); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022).

1    promoting, aiding, or assisting the conspiratorial scheme to violate the law.  Therefore, an overt

2    act does not have to be an act that is in and of itself criminal.  Similarly, an overt act does not itself

3    have to constitute the objective of the conspiracy, but it does have to be committed by a conspirator

4    in furtherance of the conspiracy.[32]

5    **C.    Count One: Conspiracy to Defraud the United States**

6        I have just instructed you on the elements of a conspiracy charge generally.  I will now

7    instruct you how those instructions apply to Counts One, Two, and Three, starting with Count One

8    and focusing on the object of each conspiracy.

9        The object of the conspiracy charged in Count One is to defraud the United States or its

10   government agencies, by impairing, impeding, and obstructing the lawful functions of HHS.Please

11   bear in mind that the actual commission of an objective of the conspiracy—here, defrauding the

12   United States and its government agencies, by impairing, impeding, and obstructing the lawful

13   functions of HHS—is not an element of the crime of conspiracy.  Thus, you need not find that the

14   conspirators actually impaired, impeded, and obstructed the lawful functions of HHS, but only that

15   they agreed to do so.

16       In order to find that a person conspired to "impair, impede, or obstruct" a legitimate

17   governmental function, you must find beyond a reasonable doubt that the object of the conspiracy

18   was to interfere with or obstruct one or more of the United States' lawful governmental functions

19   by deceit, craft, or trickery, or by means that are dishonest.  Obstructing a lawful governmental

20   function, for purposes of the object of the conspiracy charged in Count One, includes making it

21   more difficult for an agency of the U.S. government to carry out its lawful functions and that the

---

[32] Adapted from *United States v. Liu*, 19 Cr. 804 (VEC) (S.D.N.Y. Mar. 15, 2022); *United States v. Garelick*, No. 23 Cr. 307 (LJL) (S.D.N.Y. Apr. 29, 2024); 1 *Modern Federal Jury Instructions*, Instrs. 19-7, 19-8; *see also United States v. Kozeny*, 667 F.3d 122, 131-32 (2d Cir. 2011); *United States v. Rutkoske*, 506 F.3d 170, 175 (2d Cir. 2007).

1   scheme depended on dishonest or deceitful means.  Actual contact between the defendant and an

2   official of the U.S. government is not an element of the crime, nor is it necessary for you to find

3   that the government was subjected to any loss of money or property as a result of the conspiracy.

4   It also is not necessary for you to find that the impairment violated any separate law, or that the

5   U.S. government's lawful functions were in fact impaired, impeded, or obstructed.  All that is

6   required is that the object of the conspiracy was to interfere with or obstruct one of the United

7   States' lawful governmental functions by deceit, craft, or trickery, or by means that are dishonest.

8       The lawful governmental functions that the Government alleges the charged conspiracy

9   intended to interfere with or obstruct are certain functions of HHS.  I am instructing you as a matter

10  of law that HHS is a government agency of the United States, and that one of HHS's lawful

11  functions is to administer the federal Head Start program.  By law, that program is designed "to

12  promote the school readiness of low-income children by enhancing their cognitive, social, and

13  emotional development."  To exercise that function, HHS issues grants to entities known as

14  "agencies," such as non-profit corporations, for the purpose of having those agencies deliver Head

15  Start services.  HHS sets and enforces standards for agencies to deliver Head Start services, as well

16  as administrative and financial management standards for agencies to meet.  HHS is responsible

17  for monitoring agencies to ensure that the goals of the Head Start program are met, and that

18  agencies adhere to standards for the delivery of educational services, the administration of grants,

19  and the fiscal management of grants.

20      Among other things, Head Start grantees must have in place a "governing body" with "legal

21  and fiscal responsibility for the Head Start agency,"[33] comprised of members who do "not have a

22  financial conflict of interest with the Head Start agency."[34]  In addition, Head Start agencies are

---

[33] 42 U.S.C. § 9837(c)(1)(A).
[34] 42 U.S.C. § 9837(c)(1)(C).

[36]

1  prohibited from earning *any* profit from grant proceeds or from using grant proceeds for personal

2  gain.[35]  Rather, the proceeds of Head Start grants must be expended in a "reasonable" manner with

3  "reasonableness" considered by assessing, among other factors, whether the individuals concerned

4  engaged in "arm's-length bargaining."[36]

5          Specifically, the Government has argued that Mr. Rangott interfered with HHS by

6  corruptly misrepresenting the activities of Project Social Care's governing board in connection

7  with a particular HHS proceeding.  I instruct you that the Head Start Act requires grantees like

8  Project Social Care to maintain a governing board.

9          You heard testimony at trial about the Head Start Act and the Head Start Performance

10  Standards in connection with a grantee, like Project Social Care.  These laws and regulations

11  prohibit payments to board members or policy council members of a grantee that create a financial

12  conflict of interest.  These laws and regulations do not otherwise restrict influence that those doing

13  business with the grantee may have over the board members or policy members.  Nor do these

14  laws and regulations contain any conflict of interest rules that apply to partners of grantees.  Nor

15  do they impose any arms-length bargaining rules.

16          You heard testimony at trial about the Uniform Guidance.  Those regulations are issued by

17  OMB, an agency different than HHS.  They require that federal agencies ensure that grantees

18  expend grant funds in a "reasonable manner."  HHS may consider a number of factors in deciding

19  whether funds are expended in a reasonable manner, including whether the cost is of a type

20  generally recognized as ordinary and necessary for the operation of the non-Federal entity or the

21  proper and efficient performance of the Federal award; the restraints or requirements imposed by

22  such factors as: Sound business practices; arm's-length bargaining; Federal, state, local, tribal, and

---

[35] 45 C.F.R. § 75.216(b); 45 C.F.R. § 75.445(a).
[36] 45 C.F.R. § 75.404.

1   other laws and regulations; and terms and conditions of the Federal award; market prices for

2   comparable goods or services for the geographic area; whether the individuals concerned acted

3   with prudence in the circumstances considering their responsibilities to the non-Federal entity, its

4   employees, where applicable its students or membership, the public at large, and the Federal

5   Government; and whether the non-Federal entity significantly deviates from its established

6   practices and policies regarding the incurrence of costs, which may unjustifiably increase the

7   Federal award's cost.  The regulations do not specify what qualifies arms-length bargaining.

8       I also instruct you that, under the laws governing not-for-profit entities in New York, not-

9   for-profit corporations do not have any owners or shareholders. There is no concept under the law

10  of "ownership" of a not-for-profit corporation. Rather, not-for-profit corporations exist solely to

11  serve the public interest, and control of such organizations rests with a board of directors that is

12  subject to a number of procedural rules to ensure the organization is run according to law.[37]

13              **1.    Additional Instructions Regarding Count One**

14      I have two additional instructions with respect to Count One.

15
16                  ***a.  Good Faith***

17      First, a defendant's good faith is an absolute defense to a charge of conspiracy to defraud

18  the United States.  This is because good faith is inconsistent with the intent to defraud, which is an

19  essential part of the mail fraud charge.

20      Under the mail fraud statute, even false representations or statements or omissions of

21  material facts do not amount to a fraud unless done with fraudulent intent.   However misleading

22  or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.  If the

---

[37] Adapted from *United States v. Liu*, No. 19 Cr. 804 (VEC) (S.D.N.Y. Mar. 15, 2022); *United States v. Atilla*, No. 15 Cr. 867 (RMB) (S.D.N.Y. Dec. 20, 2017); *see* 42 U.S.C. § 9831; N.Y. Not-For-Profit Corp. Law §§ 201, 202, 204, 501, 701-26.

1    defendant believed in good faith that he was acting properly, even if he was mistaken in that belief,

2    and even if others were injured by his conduct, there is no crime.

3        Yet if the defendant knew that his representations were false and material, it is not a defense

4    that he believed that the victim would recognize their falsity and decide not to rely on those

5    statements.

6        Likewise, a venture commenced in good faith may become fraudulent if it is continued

7    after a fraudulent intent has been formed.  Therefore, good faith is no defense when the defendant

8    first made representations in good faith but later, during the time charged in the Indictment, the

9    defendant realized that the representations were false and nevertheless deliberately continued to

10   make them.  You must review and put together all the circumstances in deciding whether it has

11   been established beyond a reasonable doubt that the defendant devised or participated in a scheme

12   to defraud knowingly, willfully, and with the intent to defraud, or whether he acted in good faith.

13       Furthermore, if the defendant participated in the scheme to defraud, then the defendant's

14   belief, if such a belief existed, that ultimately everything would work out so that no one would lose

15   any money does not require a finding by you that he acted in good faith.  If the defendant

16   participated in the scheme for the purpose of causing financial or property loss to another, then no

17   amount of honest belief on the part of the defendant that the scheme will cause ultimately make a

18   profit or cause no harm will excuse fraudulent actions or false representations by him.

19       The burden of establishing a defendant's lack of good faith and criminal intent rests upon

20   the Government.  Stated another way, a defendant is under no burden to prove his good faith;

21   rather, the prosecution must prove bad faith or knowledge of falsity beyond a reasonable doubt.[38]

---

[38] Adapted from *United States v. Gillier*, 11 Cr. 409 (PAE) (S.D.N.Y. Sept. 27, 2022).

[39]

1          ***b.   Negligence of the Alleged Victim***

2          Second, it does not matter whether any particular victim might have discovered the fraud

3     had it probed further or been more careful.  If you find that a scheme to defraud existed, it is

4     irrelevant whether you believe that any alleged victims were careless, gullible, or even negligent.[39]

5          That concludes my instructions on Count One.

6     **D.      Count Two: Conspiracy to Falsify Documents and Records**

7          I will now turn to Count Two of the Indictment.  Count Two charges the defendant with

8     conspiring to falsify documents.  As I told you before, you need not find that the defendant actually

9     committed the crime of falsifying documents, but only that he agreed with others to do so.

10         The object of the conspiracy charged in Count Two is the crime of falsification of

11    documents, which is set forth in Title 18, United States Code, Section 1519.  Section 1519

12    provides:

13              Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or
14              makes a false entry in any record, document, or tangible object with the intent to
15              impede, obstruct, or influence the investigation or proper administration of any
16              matter within the jurisdiction of any department or agency of the United States . . .
17              , or in relation to or contemplation of any such matter . . . , shall be [guilty of a
18              crime].
19
20         In order to sustain its burden of proof against the defendant with respect to Count Two, the

21    Government must prove beyond a reasonable doubt the following three elements:

22              *first*, that the defendant falsified or caused the falsification of a document;

23              *second*, that the defendant acted knowingly; and

24              *third*, that the defendant acted with the intent to impede, obstruct, or influence an

---

[39] Adapted from *United States v. Gillier*, 11 Cr. 409 (PAE) (S.D.N.Y. Sept. 27, 2022); *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021).

1   investigation within the jurisdiction of a department or agency of the United States Government.[40]

2       As I did with Count One, I will explain each of these elements in more detail.

3           **1.    First Element: Falsification of Document**

4       The first element the Government must prove on Count Two is that the defendant falsified

5   any document.  Both tampering with preexisting documents and creating a new document may

6   constitute falsifying a document.  A document may be "falsified" if it contains a misrepresentation

7   or false denial.[41]

8           **2.    Second Element: Knowing Conduct**

10      The second element that the Government must prove is that the defendant acted knowingly.

11  A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance,

12  mistake, accident, or carelessness.  Whether the defendant acted knowingly may be proven by the

13  defendant's conduct and by all of the facts and circumstances surrounding the case.  In determining

14  whether the defendant acted knowingly, you may consider evidence of the defendant's words, acts,

15  and omissions, along with all of the facts and circumstances surrounding the case.[42]

16          **3.    Third Element: Intent to Impede Investigation**

17      The third and final element of Count Two that the Government must prove beyond a

18  reasonable doubt is that that the defendant acted with the intent to impede, obstruct, or influence

19  an investigation within the jurisdiction of an agency of the United States Government.  I instruct

---

[40] Adapted from *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Oct. 13, 2021); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022); *see also* 2 *Modern Federal Jury Instructions-Criminal*, Instrs. 46-78, 46-79.

[41] Adapted from *United States v. Coll*, 15 Cr. 360 (LAP) (S.D.N.Y. Dec. 14, 2016); *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Oct. 13, 2021); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022); *see also United States v. Rowland*, 826 F.3d 100, 110-11 (2d Cir. 2016); *United States v. Yielding*, 657 F.3d 688, 715-16 (8th Cir. 2011); 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-80.

[42] Adapted from *United States v. Coll*, 15 Cr. 360 (LAP) (S.D.N.Y. Dec. 14, 2016); *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Oct. 13, 2021); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022); *see also* 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-81.

1   you as a matter of law that HHS is an agency of the United States and that monitoring compliance

2   by recipients of Head Start funding with Head Start standards are matters within the jurisdiction

3   of that Office.

4        The Government is not required to prove that the defendant knew that the investigation

5   was a federal investigation, or that a federal investigation would take place, or that the matter was

6   within the jurisdiction of a federal agency.  However, the Government is required to prove that the

7   investigation that the defendant intended to impede, obstruct, or influence did, in fact, concern a

8   matter within the jurisdiction of an agency of the United States.[43]

9        **E.**      **Count Three: Conspiracy to Obstruct an Agency Proceeding**
10

11        As noted, Count Three charges the defendant with conspiring to obstruct an agency

12  proceeding.  As I told you before, you need not find that the defendant actually committed the

13  obstruction of an agency proceeding that is the object of the conspiracy, but only that he agreed

14  with others to do so.

15        The object of the conspiracy charged in Count Three is the crime of obstruction of an

16  agency proceeding, which is set forth in Title 18, United States Code, Section 1505.  Section 1505

17  provides:

18                  Whoever corruptly, or by threats of force, or by any threatening
19                  letter or communication influences, obstructs, or impedes, or
20                  endeavors to influence, obstruct or impede the due and proper
21                  administration of law under which any proceeding is being held
22                  before any department or agency of the United States … [shall be
23                  guilty of a crime].
24

25        The elements of obstruction of an agency proceeding, each of which must be proved

26  beyond a reasonable doubt, are as follows:

---

[43] Adapted from *United States v. Coll*, 15 Cr. 360 (LAP) (S.D.N.Y. Dec. 14, 2016); *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Oct. 13, 2021); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022); *see also* 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-82.

1    *first*, that on or about the date set forth in the Indictment, a proceeding was pending before

2    an agency of the United States;

3    *second*, that the defendant knew that a proceeding was pending before an agency of the

4    United States; and

5    *third*, that the defendant corruptly endeavored to influence, obstruct or impede the due and

6    proper administration of the law under which the proceeding was being conducted.[44]

7    **1.    First Element: Proceeding Was Pending**

8    The first element of the object of the conspiracy charged in Count Three is that at or about

9    the date set forth in the Indictment, a proceeding was pending before an agency of the United

10   States.  In this regard, you are instructed that HHS is an agency of the United States and that a

11   proceeding includes an HHS Office of Inspector General investigation.  The question for you with

12   respect to this element is whether that proceeding was pending in or about August and September

13   2022.[45]

14   **2.    Second Element: Knowledge of Proceeding**

15   The second element of the object of the conspiracy charged in Count Three is that the

16   defendant knew that the administrative proceeding was in progress.  In order to satisfy this element,

17   you need only determine that the defendant knew at or about the date charged that the HHS Office

18   of Inspector General was investigating Project Social Care Head Start for alleged whistleblower

19   retaliation.  In this regard, you may consider all of the facts and circumstances surrounding the

20   conduct with which the defendant is charged in order to determine whether he knew or had a

21   reasonable basis for belief that a proceeding was pending.[46]

---

[44] Adapted from 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-24; *see also United States v Quattrone*, 441 F.3d 153, 174 (2d Cir. 2006).
[45] Adapted from 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-25.
[46] Adapted from 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-26.

### 3.    Third Element: Act of Obstructing or Impeding

The third element of the object of the conspiracy charged in Count Three is that the defendant did corruptly obstruct or impede, or endeavor to obstruct or impede the administrative proceeding.[47] The word "corruptly" means that the defendant acted voluntarily, deliberately, and dishonestly with the specific intent to sway, change, or prevent an action likely to be taken in the proceeding.

Obstructing justice need not have been the sole motivation for the defendant's conduct as long as the defendant acted, at least in part, with that improper purpose. If you are considering whether the defendant may have had multiple motives, you should ask whether the defendant's motives were *primarily* corrupt—in other words, whether the bad motive outweighed the innocent motive.

When you consider whether the defendant committed obstruction of justice, I instruct you that it is not, by itself, illegal in New York or New Jersey to record a conversation or meeting with another person without consent and without disclosing that you are doing so—even if that conversation or meeting is with a law enforcement officer conducting an investigation. Similarly, it is not, by itself, illegal for a person to discuss interviews with law enforcement agents with other people, even if the law enforcement agent has asked him not to do so. But as with any other conduct that, absent a corrupt intent, would not be illegal standing alone, if these actions are engaged in with corrupt intent to obstruct an investigation, they can constitute obstruction of justice.

---

[47] Adapted from 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-27; Eleventh Circuit Pattern Jury Instructions, § O58.1 (2022) : *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Lundwall*, 1 F. Supp. 2d 249, 251 (S.D.N.Y. 1998); *United States v. Fayer*, 523 F.2d 661, 663 (2d Cir. 1975).

[44]

1      **F.    Multiple Conspiracies**

2      The Government must prove the existence of each conspiracy as charged in Count One,

3 Two and Three.

4      Whether there existed a single unlawful agreement, or many such agreements, or indeed,

5 no agreement at all, is a question of fact for you, the jury, to determine in accordance with the

6 instructions I have given you. When two or more people join together to further one common

7 unlawful design or purpose, a single conspiracy exists. By way of contrast, multiple conspiracies

8 exist when there are separate unlawful agreements to achieve distinct purposes.

9      Proof of several separate and independent conspiracies is not proof of the single, overall

10 conspiracy charges in a particular Count of the Indictment unless one of the conspiracies proved

11 happens to be the single conspiracy described in a particular Count.

12      You may find that there was a single conspiracy as charged in each Count despite the fact

13 that there were changes in either personnel, or activities, or both, so long as you find that some of

14 the co-conspirators continued to act for the entire duration of the conspiracy for the purpose

15 charged in that particular Count. The fact that the members of a conspiracy are not always identical

16 does not necessarily imply that separate conspiracies exist.

17      On the other hand, if you find that the conspiracy charged in a particular Count did not

18 exist, you cannot find the defendant guilty of the single conspiracy charged in that particular Count.

19 This is so even if you find that some conspiracy other than the one charged in that particular Count

20 existed, even though the purposes of both conspiracies may be been the same and even though

21 there may have been some overlap in membership.

1    Similarly, if you find that the defendant was a member of another conspiracy, and not the

2    one charged in a particular Count, then you must acquit the defendant of the conspiracy charged

3    in that particular Count.[48]

4    **G.    Conscious Avoidance**

5    As I have explained, each of the counts charged in the Indictment requires the Government

6    to prove that the defendant acted knowingly, as I have already defined that term.

7    If a person is actually aware of a fact, then he knows that fact.  But, in determining whether

8    the defendant acted knowingly, you may also consider whether the defendant deliberately closed

9    his eyes to what otherwise would have been obvious.  This because of a concept in the law called

10    "conscious avoidance" or "willful blindness."

11    To be clear, the necessary knowledge on the part of the defendant with respect to any

12    particular charge cannot be established by showing that that defendant was careless, negligent, or

13    foolish.  However, one may not willfully and intentionally remain ignorant of a fact material and

14    important to one's conduct in order to escape the consequences of criminal law.  In other words, a

15    defendant cannot avoid criminal responsibility for his own conduct by "deliberately closing his

16    eyes," or remaining purposefully ignorant of facts which would confirm to him that he was

17    engaged in unlawful conduct.

18    Thus, if you find beyond a reasonable doubt that the defendant was aware that there was a

19    high probability a crime was being committed, but that the defendant deliberately and consciously

20    avoided confirming this fact, such as by purposely closing his or her eyes to it or intentionally

21    failing to investigate it, then you may treat this deliberate avoidance of positive knowledge as the

---

[48] [[Defense to clarify source]]: Adapted from Sand, et al., Modern Federal Jury Instructions, Instr., 19-5.

1    equivalent of knowledge, unless you find that the defendant actually believed that he was not

2    engaged in such unlawful behavior.

3         As I have instructed you, the Government must prove beyond a reasonable doubt that the

4    defendant joined each of the conspiracies with knowledge of their unlawful objectives. In

5    determining whether a defendant joined a conspiracy with knowledge of its unlawful objective,

6    you may consider whether the defendant deliberately closed her eyes to what otherwise would

7    have been obvious. In other words, if you find beyond a reasonable doubt that the defendant was

8    aware of a high probability that the object of the conspiracy was the object alleged in the

9    Indictment but deliberately and consciously avoided confirming that fact, then you should treat

10   this deliberate avoidance of positive knowledge as the equivalent of knowledge, unless you find

11   that the defendant actually believed that this was not the object of the conspiracy.

12        You must keep in mind that there is an important difference between willfully and

13   intentionally joining a conspiracy – which I previously explained to you – and knowing the specific

14   object of a conspiracy. You may consider conscious avoidance in deciding whether the defendant

15   knew the object of a conspiracy, that is, whether he reasonably believed that there was a high

16   probability that a goal of the conspiracy was to commit the alleged object of the conspiracy and

17   took deliberate and conscious action to avoid confirming that fact but participated in the conspiracy

18   anyway. But "conscious avoidance" cannot be used as a substitute for finding that a defendant

19   willfully and intentionally joined the conspiracy in the first place. It is logically impossible for a

20   defendant to intend and agree to join a conspiracy if he or she does not actually know it exists or

21   does not intend to join it. However, if you find beyond a reasonable doubt that the defendant

22   willfully chose to participate in such a joint undertaking, you may consider whether the defendant

1    took deliberate and conscious action to avoid confirming otherwise obvious facts about the purpose

2    of that undertaking.

3        In sum, if you find that a defendant believed there was a high probability that a fact was so

4    and that the defendant took deliberate and conscious action to avoid learning the truth of that fact,

5    you may find that the defendant acted knowingly with respect to that fact.  However, if you find

6    that the defendant actually believed the fact was not so, then you may not find that he acted

7    knowingly with respect to that fact.[49]

8    **H.    Motive**

9        Proof of motive is not a necessary element of the crimes with which the defendant is

10    charged.  Proof of motive does not establish guilt, nor does the lack of proof of motive establish

11    that the defendant is not guilty.

12        If the guilt of the defendant is shown beyond a reasonable doubt, it is immaterial what the

13    defendant's motive for the crime or crimes may be, or whether the defendant's motive was shown

14    at all.  The presence or absence of motive is, however, a circumstance that you may consider as

15    bearing on the intent of the defendant.[50]

16    **I.    Variance in Dates**

17        The Indictment charges that certain acts occurred on or about a date or in or about a

18    particular period of time.  It is not essential that the Government prove that the crimes happened

19    on any specific dates.  It does not matter if a specific event is alleged to have occurred on or about

20    a certain date, but the evidence at trial indicates that in fact it was a different date.  The law requires

---

[49] Adapted from *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021), *United States v. Perryman*, No. 23 Cr. 117 (DLC) (S.D.N.Y. Feb. 20, 2024); *United States v. Ganiyu*, No. 23 Cr. 331 (LAK) (S.D.N.Y. Apr. 19, 2024) (Tr. 386); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 3A-2.

[50] Adapted from *United States v. Ortega*, 22 Cr. 91 (RA) (S.D.N.Y. Jan. 27, 2023); *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022).

1    only a substantial similarity between the dates alleged in the Indictment and the dates established

2    by the testimony and other evidence.[51]

3    **J.      Venue**

4           As to each charge, the Government, in addition to proving the essential elements of that

5    charge, must also establish that venue was proper in the Southern District of New York, which

6    includes all of Manhattan and the Bronx, as well as Westchester, Rockland, Putnam, Dutchess,

7    Orange, and Sullivan Counties.  Unlike the elements of the offenses, which must be proven beyond

8    a reasonable doubt, the Government is only required to prove venue by a preponderance of the

9    evidence.  A preponderance of the evidence means that it is more probable than not that something

10   occurred.

11          The Government does not have to prove that a completed crime was committed within the

12   Southern District of New York, or that the defendant was ever in the Southern District of New

13   York.  It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged

14   occurred in this District.  The act itself may not be a criminal act.  And the act need not have been

15   taken by the defendant, so long as the act was part of the crime that you find the defendant

16   committed.

17          The defendant's presence in this district to further the charged crime is sufficient but not

18   necessary to establish venue. For instance, if communications in furtherance of the charged scheme

19   were transmitted into or out of this District, that is sufficient to establish venue.

20          With respect to Counts One, Two, and Three, you need to find that it is more likely than

21   not that an act in furtherance of the charged conspiracy was committed or caused to be committed

---

[51] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1  in the Southern District of New York by the defendant or a coconspirator during the life of the

2  conspiracy.[52]

3  **K.    Defense Theory of the Case**
4
5  [*The defense requests that the jury be charged with the defense theory of the case, to be*

6  *supplied following the close of trial, prior to the charging conference.*]

7  **III.    DELIBERATIONS OF THE JURY**
8
9  **A.    Right to See Exhibits and Hear Testimony**

10    Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions

11  to you.  You are about to go into the jury room and begin your deliberations.  If during deliberations

12  you want to see a hard copy of any of the exhibits, you may request that they be brought into the

13  jury room.  If you want any of the testimony read, you may also request that.  Please remember

14  that it is not always easy to locate what you might want, so be as specific as you possibly can in

15  requesting exhibits or portions of the testimony.  And please be patient—with respect to requests

16  for testimony, it can sometimes take counsel and the Court some time to identify the portions that

17  are responsive to your request.  If you want any further explanation of the law as I have explained

18  it to you, you may also request that.

19    To assist you in your deliberations, I am providing you with a list of witnesses, in the order

20  in which they testified; a list of exhibits; a verdict form, which I will discuss in a moment; and a

21  copy of these instructions.  There is one of each of these for each juror.  I am also providing you

22  with a copy of the Indictment.  I remind you that the Indictment is not evidence.[53]

23  **B.    Communication with the Court**

---

[52] Adapted from *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021); *United States v. Perryman*, 23 Cr. 117 (DLC) (S.D.N.Y. Feb. 20, 2024); 1 *Modern Federal Jury Instructions-Criminal*, Instr. 3-11.
[53] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1    Your requests for exhibits or testimony—in fact any communications with the Court—

2    should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In

3    any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous

4    verdict is reached.[54]

5    **C.    Notes**

6    Some of you have taken notes periodically throughout this trial.  I want to emphasize to

7    you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes

8    that any of you may have made may not be given any greater weight or influence than the

9    recollections or impressions of other jurors, whether from notes or memory, with respect to the

10    evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors'

11    recollections are equal.  If you cannot agree on what you remember the testimony was, you can

12    ask to have the transcript read back.[55]

13    **D.    Duty to Deliberate; Unanimous Verdict**

14    You will shortly retire to decide the case.  Your function is to weigh the evidence in this

15    case and to determine the guilt or lack of guilt of the defendant with respect to the count charged

16    in the Indictment.  You must base your verdict solely on the evidence and these instructions as to

17    the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you

18    agree or disagree with the particular law in question.

19    It is your duty as jurors to consult with one another and to deliberate with a view to reaching

20    an agreement.  Each of you must decide the case for himself or herself, but you should do so only

21    after a consideration of the case with your fellow jurors, and you should not hesitate to change an

22    opinion when convinced that it is erroneous.   Discuss and weigh your respective opinions

---

[54] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).
[55] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1    dispassionately, without regard to sympathy, without regard to prejudice or favor for either party,

2    and adopt that conclusion which in your good conscience appears to be in accordance with the

3    truth.

4          When you are deliberating, all 12 jurors must be present in the jury room.  If a juror is

5    absent, you must stop deliberations.

6          Again, your verdict must be unanimous, but you are not bound to surrender your honest

7    convictions concerning the effect or weight of the evidence for the mere purpose of returning a

8    verdict or solely because of the opinion of other jurors.  Each of you must make your own decision

9    about the proper outcome of this case based on your consideration of the evidence and your

10   discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs

11   solely for the purpose of returning a unanimous verdict.

12         Remember at all times, you are not partisans.  You are judges—judges of the facts.  Your

13   sole interest is to seek the truth from the evidence in the case.

14         If you are divided, do <u>not</u> report how the vote stands.  If you reach a verdict, do not report

15   what it is until you are asked in open court.[56]

16   **E.      Verdict Form**

17         I have prepared a verdict form for you to use in recording your decision.  Please use that

18   form to report your verdict.[57]

---

[56] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).
[57] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1    **F.    Duties of Foreperson**

2    Finally, I referred a moment ago to a foreperson.  The first thing you should do when you

3    retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a

4    note indicating whom you have chosen.[58]

5    The foreperson doesn't have any more power or authority than any other juror, and his or

6    her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The

7    foreperson is merely your spokesperson to the court.  He or she will send out any notes, and when

8    the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict,

9    and you will come into open court and give the verdict.

10    **G.    Return of Verdict**

11    After you have reached a verdict, your foreperson will fill in and date the form that has

12    been given to you.  All jurors must sign the form reflecting each juror's agreement with the verdict.

13    The foreperson should then advise the marshal outside your door that you are ready to return to

14    the courtroom.

15    I will stress that each of you must be in agreement with the verdict which is announced in

16    court.  Once your verdict is announced by your foreperson in open court and officially recorded,

17    it cannot ordinarily be revoked.

18    In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow

19    jurors and if you apply your own common sense, you will reach a fair verdict here.

---

[58] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1    **IV.    CONCLUSION**

2          Members of the jury, that concludes my instructions to you.  I will ask you to remain seated

3    while I confer with the attorneys to see if there are any additional instructions that they would like

4    me to give to you or anything I may not have covered in my previous statement.

5                                              * * *

6          Before you retire into the jury room, I must excuse our three alternates with the thanks of

7    the Court.  You have been very attentive and very patient.  I am sorry that you will miss the

8    experience of deliberating with the jury, but the law provides for a jury of 12 persons in this case.

9    So before the rest of the jury retires into the jury room, if you have any clothing or objects there

10   you are asked to pick them up and to withdraw before any deliberations start.

11         Please do not discuss the case with anyone, or research the case, over the next few days.  It

12   is possible that unexpected developments such as a juror's serious illness may require the

13   substitution of a deliberating juror by an alternate.  Accordingly, it is vital that you not speak to

14   anyone about the case or research the case until you have been notified that the jury's deliberations

15   are over and the jury has been excused.  And if you would like to be advised of the outcome of the

16   trial, please make sure that Ms. Williams has a phone number and an email address at which you

17   can be reached.

18               (Alternates excused)

19         Members of the jury, you may now retire.  The marshal will be sworn before we retire.

20               (Marshal sworn)

[54]

1  UNITED STATES DISTRICT COURT
2  SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

         -v.-                      23 Cr. 004 (JHR)

ARIE RANGOTT,

               Defendant.

3
4  JENNIFER H. REARDEN, District Judge:

5
6
7
8
9
10                        **[Draft] Jury Charge**
11
12                  ~~July 31~~August 1, 2024
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

[1]

1   **CONTENTS**

2
3   **I.  General Instructions** .................................................................................................. **4**
4       A.  Introductory Remarks .................................................................................... 4
5       B.  Role of the Court ............................................................................................ 5
6       C.  Role of the Jury .............................................................................................. 5
7       D.  Role of Counsel .............................................................................................. 6
8       E.  Sympathy or Bias ........................................................................................... 6
9       F.  All Persons Equal Before the Law ................................................................. 8
10      G.  Presumption of Innocence and Burden of Proof ........................................... 8
11      H.  Proof Beyond a Reasonable Doubt ................................................................ 9
12      I.  Number of Witnesses and Uncontracted Testimony .................................... 10
13      J.  What Is and Is Not Evidence ....................................................................... 11
14      K.  Direct and Circumstantial Evidence ............................................................ 12
15      L.  Inferences ..................................................................................................... 13
16      M.  Credibility of Witnesses .............................................................................. 15
17      N.  Bias/Interest of Witnesses ........................................................................... 17
18      O.  Preparation of Witnesses ............................................................................. 17
19      P.  Law Enforcement or Government Witnesses ............................................... 18
20      Q.  Cooperating Witnesses Testimony ............................................................... 18
21      R.  Character Witnesses ..................................................................................... 21~~21~~
22      S.  Similar Acts ................................................................................................. 22~~22~~
23      T.  Stipulations of Fact ..................................................................................... 23~~23~~
24      U.  Stipulations of Testimony ........................................................................... 23~~23~~
25      V.  Summary Charts ........................................................................................... 24~~24~~
26      W.  Redaction of Evidence ................................................................................. 24~~24~~
27      X.  Use of Audio and Video Recordings and Transcripts .................................. 24~~24~~
28      Y.  Use of Evidence Obtained Pursuant to Searches ......................................... 25~~25~~
29      Z.  Uncalled Witnesses—Equally Available or Unavailable ............................. 26~~26~~
30      AA. Immunized Witnesses .................................................................................. 26~~26~~
31      BB. Defendant's Right Not to Testify ................................................................. 27~~27~~
32  **II.  Substantive Instructions** .......................................................................................... **28**~~28~~
33      A.  The Indictment ............................................................................................. 28~~28~~
34      B.  All Three Counts: Conspiracy Offenses ...................................................... 29~~30~~
35          1.  Background and Elements of Conspiracy ............................................. 30~~30~~

2.    First Element: Existence of a Conspiracy .................................................. 31~~31~~

3.    Second Element: Participation .................................................................. 34~~34~~

4.    Third Element: Overt Act ........................................................................ 36~~36~~

C.   Count One: Conspiracy to Defraud the United States ........................................... 37~~37~~

1.   Additional Instructions Regarding Count One ....................................... 40~~40~~

D.   Count Two: Conspiracy to Falsify Documents and Records ................................ 42~~42~~

1.   First Element: Falsification of Document ............................................... 43~~43~~

2.   Second Element: Knowing Conduct ....................................................... 43~~43~~

3.   Third Element: Intent to Impede a Matter .............................................. 43~~43~~

E.   Count Three: Conspiracy to Obstruct an Agency Proceeding .............................. 44~~44~~

1.   First Element: Proceeding Was Pending ................................................ 45~~45~~

2.   Second Element: Knowledge of Proceeding ........................................... 45~~45~~

3.   Third Element: Act of Obstructing or Impeding ..................................... 46~~46~~

F.   Conscious Avoidance .......................................................................................... 48~~48~~

G.   18 U.S.C. § 1001 Not Charged ........................................................................... 50~~50~~

H.   Motive ................................................................................................................ 50~~50~~

I.   Attorney Involvement Not Itself a Defense ......................................................... 51~~51~~

J.   Variance in Dates ............................................................................................... 51~~51~~

K.   Venue ................................................................................................................. 51~~51~~

**III. Deliberations of the Jury** ................................................................................ 52~~52~~

A.   Right to See Exhibits and Hear Testimony .......................................................... 52~~52~~

B.   Communication with the Court ........................................................................... 53~~53~~

C.   Notes .................................................................................................................. 53~~53~~

D.   Duty to Deliberate; Unanimous Verdict ............................................................. 54~~54~~

E.   Verdict Form ...................................................................................................... 55~~55~~

F.   Duties of Foreperson .......................................................................................... 55~~55~~

G.   Return of Verdict ............................................................................................... 55~~55~~

H.   Alternate Jurors ................................................................................................. 56~~56~~

**IV.  Conclusion** ................................................................................................... 57~~57~~

1   **I.**     **GENERAL INSTRUCTIONS**
2
3       **A.**     **Introductory Remarks**

4       Members of the jury, you have now heard all of the evidence in the case as well as the final

5 arguments of the parties. We have reached the point where you are about to undertake your final

6 function as jurors. You have paid careful attention to the evidence, and I am confident that you

7 will act together with fairness and impartiality to reach a just verdict in the case.

8       Now it is time for me to instruct you as to the law that governs the case. There are three

9 parts to these instructions. First, I am going to give you general instructions about your role and

10 about how you are to decide the facts of the case, including the burden of proof you must apply.

11 Many of these instructions would apply to any trial. Second, I will give you some more specific

12 instructions about the legal rules applicable to this particular case, including a description of the

13 elements of the charges against the defendant. Third, I will give you instructions on the rules

14 governing your deliberations.

15       Listening to these instructions may not be easy. It is important, however, that you listen

16 carefully and concentrate. I ask you for patient cooperation and attention. You will notice that I

17 am reading these instructions from a prepared text. As I said earlier, it would be livelier, no doubt,

18 if I just improvised. But it is important that I not do that. The law is made up of words, and those

19 words are very carefully chosen. So, when I tell you the law, it is critical that I use exactly the

20 right words.

21       Because my instructions cover many points, I have given you a copy of them so that you

22 may follow along. In addition, you will have a copy of these instructions with you in the jury

23 room, so you can refer to them if you want to re-read any portion to facilitate your deliberations.

[4]

You should not single out any instruction as alone stating the law; instead, you should consider my instructions as a whole when you retire to deliberate in the jury room.

You will also have with you in the jury room a verdict form on which to record your verdict. That form will list the questions you should consider.

**B.    Role of the Court**

I have instructed you during the trial as to various matters, and you should of course continue to follow those instructions.  My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You must not substitute your own notions or opinions of what the law is or ought to be.[1]

**C.    Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts.  Any opinion I might have regarding the facts is of absolutely no consequence.[2]

---

[1] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).
[2] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

[5]

1      **D.    Role of Counsel**

2            It is the duty of the attorneys to object when the other side offers testimony or other

3 evidence that the attorney believes is not properly admissible.  It is my job to rule on those

4 objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your

5 business.  You should draw no inference from the fact that an attorney objects to any evidence.

6 Nor should you draw any inference from the fact that I might have sustained or overruled an

7 objection.

8            The personalities and the conduct of counsel in the courtroom are not in any way at issue.

9 If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable,

10 whether you approved or disapproved of their behavior as advocates, those reactions should not

11 enter into your deliberations.

12           From time to time, the lawyers and I had conferences out of your hearing.  These

13 conferences involved procedural and other matters, and none of the events relating to these

14 conferences should enter into your deliberations at all.[3]

15      **E.    Sympathy or Bias**

16           Under your oath as jurors, you are not to be swayed by sympathy or prejudice.  All of us,

17 no matter how hard we try, tend to look at others and weigh what they have to say through the lens

18 of our own experience and background.  We each have a tendency to stereotype others and make

19 assumptions about them.  Often, we see life and evaluate evidence through a clouded filter that

20 tends to favor those like ourselves.  You must do the best you can to put aside such stereotypes,

21 for all litigants and witnesses are entitled to a level playing field in which we do the best we can

22 to put aside our stereotypes and prejudices.  You are to be guided solely by the evidence in this

---

[3] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

[6]

1  case, and the crucial, bottom-line question that you must ask yourselves as you sift through the

2  evidence is: has the Government proven the guilt of the defendant beyond a reasonable doubt?

3       It is for you alone to decide whether the Government has proven that the defendant is guilty

4  of the crimes charged.  You must decide solely on the basis of the evidence presented, subject to

5  the law as I explain it to you.  It must be clear to you that once you let fear or prejudice, or bias or

6  sympathy, interfere with your thinking, there is a risk that you will not arrive at a true and just

7  verdict.

8       If you have a reasonable doubt as to the defendant's guilt, you should not hesitate for any

9  reason to find a verdict of acquittal for the defendant.  But on the other hand, if you should find

10  that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt,

11  you should not hesitate, because of sympathy or any other reason, to render a verdict of guilty.

12       The question of possible punishment of the defendant is of no concern to the jury and

13  should not enter into or influence your deliberations.  The duty of imposing sentence rests

14  exclusively upon the Court.  Your function is to weigh the evidence in the case and to determine

15  whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such

16  evidence.  Under your oath as jurors, you cannot allow a consideration of the punishment which

17  may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or,

18  in any sense, enter into your deliberations.

19       Similarly, it would be improper for you to allow any feelings you might have about the

20  nature of the crimes charged to interfere with your decision-making process.  Your verdict must

21  be based exclusively upon the evidence or the lack of evidence in the case.[4]

---

[4] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1     **F.    All Persons Equal Before the Law**

2         In reaching your verdict, you must remember that all parties stand equal before a jury in

3   the courts of the United States.  The fact that the Government is a party, and the prosecution is

4   brought in the name of the United States, does not entitle the Government or its witnesses to any

5   greater consideration than that accorded to any other party.  By the same token, you must give it

6   no less deference.  The Government and the defendant stand on equal footing before you.

7         It would be improper for you to consider, in reaching your decision as to whether the

8   Government sustained its burden of proof, any personal feelings you may have about the

9   defendant's race, religion, national origin, sex, or age.  All persons are entitled to the same

10  presumption of innocence, and the Government has the same burden of proof with respect to all

11  persons.  Your verdict must be based solely on the evidence or the lack of evidence.[5]

12     **G.    Presumption of Innocence and Burden of Proof**

13        Now I will instruct you on the presumption of innocence and the Government's burden of

14  proof in this case.  The defendant has pleaded not guilty to the charges in the Indictment.  In so

15  doing, he has denied every allegation charged against him.  As a result of the defendant's plea of

16  not guilty, the Government has the burden of proving each charge in the Indictment beyond a

17  reasonable doubt.  This burden never shifts to the defendant for the simple reason that the law

18  never imposes upon a defendant in a criminal case the burden or duty of testifying, or calling any

19  witnesses, or locating or producing any evidence.

20        The law presumes the defendant to be innocent of the charges against him.  I therefore

21  instruct you that she is to be presumed by you to be innocent throughout your deliberations.

---

[5] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1        The defendant does not have to prove his innocence.  To the contrary, the law presumes

2    the defendant to be innocent of the charges against him.  This presumption of innocence alone is

3    sufficient to acquit him unless you as jurors are unanimously convinced beyond a reasonable doubt

4    of his~~er~~ guilt, after a careful and impartial consideration of all the evidence in this case.  If the

5    Government fails to sustain its burden as to a particular charge in the Indictment, then you must

6    find the defendant not guilty of that charge.

7        This presumption of innocence was in the defendant's favor at the start of the trial; it

8    continued in his favor throughout the entire trial; it is in his favor even as I instruct you now; and

9    it continues in his favor during the course of your deliberations.  I therefore instruct you that the

10   defendant is to be presumed by you to be innocent throughout your deliberations in the jury room.

11   That presumption is removed if and only if you, as members of the jury, are satisfied that the

12   Government has sustained its burden of proving the guilt of the defendant beyond a reasonable

13   doubt.[6]

14   **H.    Proof Beyond a Reasonable Doubt**

15

16       The question that naturally arises is, "What is a reasonable doubt?"  The words almost

17   define themselves.  It is a doubt that a reasonable person has after carefully weighing all of the

18   evidence, or lack of evidence. It is a doubt that would cause a reasonable person to hesitate to act

19   in a matter of importance in his or her personal life.  Reasonable doubt is a doubt that appeals to

20   your reason, your judgment, your experience, and your common sense.  Proof beyond a reasonable

21   doubt must, therefore, be proof of such a convincing character that a reasonable person would not

22   hesitate to rely and act upon it in the most important of his or her own affairs.  A reasonable doubt

---

[6] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Cristobal*, 20 Cr. 463 (KPF) (S.D.N.Y. Sept. 6, 2022).

[9]

1    is not caprice or whim.  It is not speculation or suspicion. It is not an excuse to avoid the

2    performance of an unpleasant duty.  And it is not sympathy.

3         At the same time, reasonable doubt does not mean beyond all possible doubt.  It is

4    practically impossible for a person to be absolutely and completely convinced of any disputed fact

5    that by its nature is not susceptible of mathematical certainty.  In consequence, the law in a criminal

6    case is that it is sufficient if the guilt of a defendant is established beyond a reasonable doubt, not

7    beyond all possible doubt.

8         If, after a fair and impartial consideration of all the evidence, you are not satisfied of the

9    defendant's guilt, if you do not have an abiding conviction of the defendant's guilt—in sum, if you

10   have such a doubt as would cause you, as prudent persons, to hesitate before acting in in important

11   matters in the personal affairs of your own life—then you have a reasonable doubt, and in that

12   circumstance it is your duty to acquit the defendant.

13        On the other hand, if after a fair and impartial consideration of all the evidence you are

14   convinced of the defendant's guilt of a particular charge beyond a reasonable doubt, then you must

15   convict him of that charge.[7]

16   **I.    Number of Witnesses and Uncontracted Testimony**

17        The fact that one party called more witnesses or introduced more evidence does not mean

18   that you should necessarily find the facts in favor of the side offering the most witnesses and the

19   most evidence.  By the same token, you do not have to accept the testimony of any witness who

20   has not been contradicted or impeached, if you find the witness to be not credible.  You must

21   decide which witnesses to believe and determine which facts are true.  To do this, you must look

22   at all the evidence or lack of evidence, drawing upon your own common sense and personal

---

[7] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Cristobal*, 20 Cr. 463 (KPF) (S.D.N.Y. Sept. 6, 2022).

[10]

1    experience.  After examining all the evidence, you may decide that the party calling the most

2    witnesses has not persuaded you because you do not believe its witnesses, or because you do

3    believe the fewer witnesses called by the other side.

4          Again, you should also keep in mind that the burden of proof is always on the Government.

5    The defendant is not required to call any witnesses or offer any evidence, since he is presumed to

6    be innocent.  On the other hand, the Government is not required to prove each element of the

7    offense by any particular number of witnesses.  The testimony of a single witness may be enough

8    to convince you beyond a reasonable doubt of the existence of the elements of the charged offenses

9    — if you believe that the witness has truthfully and accurately related what he or she has told you.

10    The testimony of a single witness may also be enough to convince you that reasonable doubt exists,

11    in which case you must find the defendant not guilty.[8]

12    **J.    What Is and Is Not Evidence**

13          In determining the facts, you must rely upon your own recollection of the evidence.  The

14    evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence,

15    and the stipulations of the parties.

16          However, testimony that I have stricken or excluded is not evidence and may not be

17    considered by you in rendering your verdict.  Also, if certain testimony was received for a limited

18    purpose, you must follow the limiting instructions I have given, and use the evidence only for the

19    purpose I indicated.

20          The only exhibits that are evidence in this case are those that were received in evidence.

21    Exhibits marked for identification but not admitted are not evidence, nor are materials that were

22    used only to refresh a witness's recollection.

---

[8] Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

1    As I told you at the start of this case, statements and arguments by lawyers are not evidence,

2    because the lawyers are not witnesses.  What they have said to you in their opening statements and

3    in their summations is intended to help you understand the evidence to reach your verdict.

4    However, if your recollection of the facts differs from the lawyers' statements, it is your

5    recollection that controls.

6    For the same reasons, you are not to consider a lawyer's questions as evidence.  It is the

7    witnesses' answers that are evidence, not the lawyers' questions.

8    Finally, any statements that I may have made do not constitute evidence.  It is for you alone

9    to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have

10   seen.[9]

11   **K.      Direct and Circumstantial Evidence**

12   Generally, as I mentioned at the start of the case, there are two types of evidence that you

13   may consider in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence

14   is testimony by a witness about something he knows by virtue of his own senses—something he

15   has seen, felt, touched, or heard.  For example, if a witness testified that when he left his house

16   this morning, it was raining, that would be direct evidence about the weather.

17   The second type of evidence is circumstantial evidence. Circumstantial evidence is

18   evidence that tends to prove a disputed fact indirectly by proof of other facts. There is a simple

19   example of circumstantial evidence that is frequently used in this Courthouse.  Assume that when

20   you came into the Courthouse this morning, the sun was shining and it was a nice day outdoors.

21   Also assume that the courtroom blinds were drawn, and you could not look outside.  Assume

22   further that, as you were sitting here, someone walked in with an umbrella that was dripping wet,

---

[9] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

[12]

1    and then, a few moments later, somebody else walked in with a raincoat that was also dripping

2    wet. Now, because you could not look outside the courtroom, and you could not see whether it

3    was raining, you would have no direct evidence of the fact that it was raining. But, on the

4    combination of facts that I have asked you to assume, it would be reasonable and logical for you

5    to conclude that it was raining. That is all there is to circumstantial evidence. You infer on the

6    basis of reason and experience and common sense from one established fact the existence or non-

7    existence of some other fact.

8    Many facts, such as a person's state of mind, can only rarely be proven by direct evidence.

9    Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law

10    makes no distinction between direct and circumstantial evidence, but simply requires that in order

11    to convict a defendant, the jury must be convinced of that defendant's guilt beyond a reasonable

12    doubt from the evidence in the case.[10]

13    **L.**     **Inferences**

14

15    You just heard me refer a moment ago to "inferences" to be drawn from the evidence, and

16    you may have also heard the attorney use that term throughout this trial—specifically, the attorneys

17    have asked you to "infer" on the basis of your reason, experience, and commonsense from one or

18    more established facts the existence of some other fact. An inference is a reasoned, logical

19    deduction or conclusion that you, the jury, are permitted to draw—but are not required to draw—

20    from the facts that have been established by either direct or circumstantial evidence. In drawing

21    inferences, you should exercise your common sense.

22    You do not leave your common sense, good judgment, or life experiences behind you when

23    you walk into the Courtroom. You carry that background into the jury room during your

---

[10] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Cristobal*, 20 Cr. 463 (KPF) (S.D.N.Y. Sept. 6, 2022).

[13]

1     deliberations.  While you are considering the evidence presented to you, you are permitted to draw,

2     from the facts that you find to be proven, such reasonable inferences as would be justified in light

3     of your experience.   Please remember, however, that you may not use your experience and

4     common sense to fill in or create evidence that does not exist.   You use them only to draw

5     reasonable inferences from proven facts or to weigh and evaluate the evidence provided during the

6     trial.

7          There are times when different inferences may be drawn from facts, whether proved by

8     direct or circumstantial evidence. The Government may ask you to draw one set of inferences,

9     while the defendant may ask you to draw another.

10         Some inferences, however, are impermissible.  For example, you may not infer that a

11    defendant is guilty of participating in criminal conduct if you find merely that he or she was present

12    at the time the crime was being committed and had knowledge that it was being committed.

13    Likewise, you may not infer that a defendant is guilty of participating in criminal conduct merely

14    from the fact that he or she may have associated with other people who were guilty of wrongdoing,

15    or merely because he or she may have had knowledge of the wrongdoing of others.  Nor may you

16    use evidence that I have instructed you was admitted for a limited purpose for any inference beyond

17    that limited purpose.

18         Here again, let me remind you that, whether based upon direct or circumstantial evidence,

19    or upon the logical, reasonable inferences drawn from such evidence, you must be satisfied that

20    the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt

21    before you may convict him of the particular count that you are considering.

[14]

1    Ultimately, it is for you, and you alone, to decide what reasonable inferences to draw.[11]

2    **M.    Credibility of Witnesses**

3    You have had the opportunity to observe the witnesses testify at this trial.  It is now your

4    job to decide how credible, or believable, each witness was in his or her testimony.  You are the

5    sole judges of the credibility of each witness and of the importance of his or her testimony.

6    How do you evaluate the credibility, or believability, of the witnesses?  The answer is that

7    you use your common sense, your good judgment, and your experience.

8    First, consider how well the witness was able to observe or hear what he or she testified

9    about.  The witness may be honest, but mistaken.  How did the witness's testimony impress you?

10   Did the witness appear to be testifying honestly, openly, and candidly?  Were the witness's answers

11   direct or were they evasive?  How responsive was the witness to the questions asked on direct

12   examination and on cross-examination?  Consider the witness's demeanor, manner of testifying,

13   and the strength and accuracy of the witness's recollection.  Consider whether any outside factors

14   might have affected a witness's ability to perceive events.

15   Consider also the substance of the testimony.  How does the witness's testimony compare

16   with other proof in the case?  Does it seem implausible or otherwise unworthy of belief?  Is it

17   corroborated or is it contradicted by other evidence?  If there is a conflict, does any version appear

18   reliable, and if so, which version seems more reliable?

19   In addition, you should specifically note any evidence of hostility or affection that the

20   witness may have had for or against the Government or the defendant.  Likewise, you should

21   consider evidence of any interest or motive that the witness may have had in cooperating with or

---

[11] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Menendez*, 23 Cr. 490 (SHS) (S.D.N.Y. 2024); *United States v. Cristobal*, 20 Cr. 463 (KPF) (S.D.N.Y. Sept. 6, 2022); *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022).

[15]

1    helping either party.  It is your duty to consider whether the witness has permitted any such bias

2    or interest to color his or her testimony.  If you find that a witness is biased or interested, you

3    should view his or her testimony with caution, weigh it with care, and subject it to close and

4    searching scrutiny.

5         Of course, the mere fact that a witness has an interest in this case does not mean the witness

6    has not told the truth.  It is for you to decide from your observations, applying your common sense

7    and experience, and all the other considerations mentioned, whether an interest has intentionally

8    or otherwise colored or distorted the witness's testimony.   You are not required to believe or

9    disbelieve a biased or an interested witness; you may accept as much of the testimony as you deem

10   reliable and reject as much as you deem unworthy of belief.

11        If a witness made statements in the past that are inconsistent with his or her trial testimony

12   concerning facts that are at issue here, you may consider that fact in deciding how much of the

13   witness's testimony, if any, to believe.  In making this determination, you may consider whether

14   the witness purposely made a false statement, or whether it was an innocent mistake.  You may

15   also consider whether the inconsistency concerns an important fact or merely a small detail, as

16   well as whether the witness had an explanation for the inconsistency, and, if so, whether that

17   explanation appealed to your common sense.

18        If you find that a witness has testified falsely as to any material fact, or if you find that a

19   witness has been previously untruthful when testifying under oath or otherwise, you may reject

20   that witness's testimony in its entirety or you may accept only those parts that you believe to be

21   truthful or that are corroborated by other independent evidence in the case.

[16]

1       It is for you, the jury, and for you alone, not the lawyers, or the witnesses, or me as the

2   judge, to decide the credibility of the witnesses who testified and the weight that their testimony

3   deserves.[12]

4       **N.      Bias/Interest of Witnesses**

5       In deciding whether to believe a witness, you should specifically note any evidence of

6   hostility or affection that the witnesses may have towards one of the parties.  Likewise, you should

7   consider evidence of any other interest or motive that the witness may have in cooperating with a

8   particular party.  You should also take into account any evidence of any benefit that a witness may

9   receive from the outcome of the case.

10      It is your duty to consider whether the witness has permitted any such bias or interest to

11  color his or her testimony.  In short, if you find that a witness is biased, you should view his or her

12  testimony with caution, weigh it with care, and subject it to close and searching scrutiny.  Of

13  course, the mere fact that a witness is interested in the outcome of the case does not mean he or

14  she has not told the truth.  It is for you to decide from your observations and applying your common

15  sense and experience and all the other considerations mentioned whether the possible interest of

16  any witness has intentionally or otherwise colored or distorted his or her testimony.  You are not

17  required to disbelieve an interested witness; you may accept as much of his or her testimony as

18  you deem reliable and reject as much as you deem unworthy of acceptance.

19      **O.      Preparation of Witnesses**

20      You have heard evidence during the trial that witnesses had discussed the facts of the case

21  and their testimony with the lawyers before the witnesses appeared in court.  Although you may

22  consider that fact when you are evaluating a witness's credibility, I should tell you that there is

---

[12] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Cristobal*, 20 Cr. 463 (KPF) (S.D.N.Y. Sept. 6, 2022); *United States v. Shin*, 19 Cr. 552 (JPC) (S.D.N.Y. 2022).

[17]

1  nothing either unusual or improper about a witness meeting with lawyers before testifying, so that

2  the witness can be made aware of the subjects that he or she will be questioned about, focus on

3  those subjects, and have the opportunity to review relevant exhibits before being questioned about

4  them.  In fact, it would be unusual for a lawyer to call a witness without such consultation.  Again,

5  the weight you give to the fact or the nature of the witness's preparation for his or her testimony

6  and what inferences you draw from such preparation are matters completely within your

7  discretion.[13]

8        **P.**     **Law Enforcement or Government Witnesses**

9        You have heard the testimony of law enforcement and other government witnesses.  The

10  fact that a witness may be employed as a law enforcement official or government employee does

11  not mean that his or her testimony is necessarily deserving of more or less consideration or greater

12  or lesser weight than that of an ordinary witness.

13        It is your decision, after reviewing all the evidence, whether to accept all, part of, or none

14  of the testimony of the law enforcement witness or government witnesses—as it is with every other

15  type of witness—and to give to that testimony the weight you find it deserves.[14]

16        **Q.**     **Cooperating Witnesses Testimony**
17
18        You have heard from a witness who testified pursuant to a cooperation agreement with the

19  Government.

20        The law allows the use of the testimony of cooperators and other witnesses who have

21  participated in crimes.  Indeed, in federal courts, the law is that the testimony of even one such

---

[13] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022).

[14] Adapted from *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 7-16.

[18]

1   witness in itself may be enough for conviction, if the jury finds that the testimony establishes guilt

2   beyond a reasonable doubt.  The testimony of such witnesses is properly considered by the jury.

3          However, because of the possible interest a witness with a cooperation agreement may

4   have in testifying, the witness's testimony should be examined with additional~~greater~~ scrutiny

5   because such witnesses may believe that it is in their interest to give testimony favorable to the

6   Government.  The fact that a witness has an agreement with the Government can be considered by

7   you as bearing upon his or her credibility.  It does not follow, however, that simply because a

8   person has participated in a crime or has entered into such an agreement, he is incapable of telling

9   the truth, and it is no concern of yours why the Government made an agreement with the witness.

10  Your sole concern is whether a witness has given truthful testimony here in this courtroom before

11  you.

12          In evaluating the testimony of such a witness, you should ask yourselves whether the

13  witness would benefit more by lying, or by telling the truth.  Was his or her testimony made up in

14  any way because he or she believed or hoped that he or she would somehow receive favorable

15  treatment by testifying falsely?  Or did he or she believe that his or her interests would be best

16  served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal

17  gain, was the motivation one that would cause him or her to lie, or was it one that would cause him

18  or her to tell the truth?  And did this motivation color his or her testimony?

19          You may also consider whether an accomplice witness has an interest in the outcome of

20  the case and, if so, whether it has affected the witness's testimony.  For instance, you may consider

21  whether the witness believes the government has provided him or her with any benefits or

22  promises, and whether that belief provides the witness with a motive to testify either falsely or

23  truthfully at this trial.

[19]

1    If you find that the testimony was false, you should reject it.  However, if, after a cautious

2    and careful examination of the witness's testimony and demeanor upon the witness stand, you are

3    satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

4    As with any witness, let me emphasize that the issue of credibility need not be decided in

5    an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still may

6    accept his or her testimony in other parts or may disregard all of it.  That is a determination entirely

7    for you, the jury.

8    The cooperating witness from whom you heard testimony pleaded guilty to charges arising

9    out of the same facts that are at issue in this case.  You are not to draw any inference of any kind

10    about the guilt of the defendant merely from the fact that the witness pleaded guilty to charges

11    similar to those with which the defendant in this case has been charged.  The witness made personal

12    decisions based on their evaluation of the facts and circumstances.  A witness's decision to

13    cooperate with the Government is not evidence that the defendant committed a crime.[15]

14    ~~R.A.    Immunized Witnesses~~

15    ~~You have heard the testimony of witnesses who have testified under a grant of immunity~~

16    ~~from this court.  What this means is that the testimony of those witnesses may not be used against~~

17    ~~them in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise~~

18    ~~failing to comply with the immunity order of this court.~~

19    ~~You are instructed that the Government is entitled to call, as a witness, a person who has~~

20    ~~been granted immunity by order of this court and that you may convict a defendant on the basis of~~

---

[15] Adapted from *United States v. Menendez*, 23 Cr. 490 (SHS) (S.D.N.Y. 2024); *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021); *United States v. Wade*, No. 21 Cr. 472 (KPF) (S.D.N.Y. Dec. 5, 2023).

[20]

1    ~~such a witness's testimony alone, if you find that the testimony proves the defendant guilty beyond~~

2    ~~a reasonable doubt.~~

3    ~~Such testimony should be scrutinized with great care. You should examine it closely to~~

4    ~~determine whether or not it is colored in such a way as to place guilt upon the defendant in order~~

5    ~~to further the witness's own interests. If you believe the testimony to be true and determine to~~

6    ~~accept it, you may give it such weight, if any, as you believe it deserves.~~

7    ~~It is no concern of yours why a witness received court-ordered immunity. Your sole~~

8    ~~concern is whether the witness has given truthful testimony in this trial. That is a determination~~

9    ~~entirely for you, the jury.[16]~~

10    **~~S.~~R.    Character Witnesses**

11    The defendant has called a ~~witnesses~~ who ha~~ve~~s given ~~his~~their opinion of the

12    defendant's~~his~~ character or reputation. This testimony is not to be taken as the witness's opinion

13    as to whether the defendant is guilty or not guilty. That question is for you alone to determine.

14    You should, however, consider this evidence together with all the other facts and evidence in the

15    case in determining whether the defendant is guilty or not guilty of the charges.

16    Accordingly, if after considering all the evidence including the testimony regarding the

17    witness's opinion of the defendant's character or reputation, you find a reasonable doubt has been

18    created, you must acquit. On the other hand, if after considering all the evidence including the

19    testimony regarding the witness's opinion of the defendant's character or reputation, you are

20    satisfied beyond a reasonable doubt that the defendant is guilty, you should not acquit the

---

[16] ~~Adapted from *United States v. Calk*, No. 19 Cr. 366 (LGS) (S.D.N.Y. June 10, 2021); *United States v. Garelick*, No. 23 Cr. 307 (LJL) (S.D.N.Y. Apr. 29, 2024); 1 *Modern Federal Jury Instructions-Criminal*, Instr. 7-8.~~

[21]

1     defendant merely because you believe the defendant, or the witness believes the defendant, to be

2     a person of good character or to have a good reputation.[17]

3     ~~**T.**~~     ~~**False Exculpatory Statements**~~

4     ~~You have heard testimony that the defendant made statements in which he claimed~~

5     ~~that his conduct was consistent with innocence and not with guilt. The Government claims that~~

6     ~~these statements in which the defendant attempted to exculpate himself are false. If you find that~~

7     ~~the defendant gave a false statement in order to divert suspicion from himself, you may infer that~~

8     ~~the defendant believed that he was guilty. You may not, however, infer on the basis of this alone~~

9     ~~that the defendant is, in fact, guilty of the crimes for which he is charged.~~

10     ~~Whether or not the evidence as to a defendant's statements shows that the defendant~~

11     ~~believed that he was guilty, and the significance, if any, to be attached to any such evidence, are~~

12     ~~matters for you, the jury, to decide.[18]~~

13     ~~U.~~**S.**    **Similar Acts**

14     There has been evidence received during the trial that the defendant engaged in conduct

15     which was similar in nature to the conduct charged in the Indictment.

16     Let me remind you that the defendant is on trial only for committing the acts alleged in the

17     Indictment. Accordingly, you may not consider this evidence of the similar act as a substitute for

18     proof that the defendant committed the crimes charged. Nor may you consider this evidence as

19     proof that the defendant has a criminal personality or bad character. This other-act evidence was

20     admitted for a more limited purpose, namely, as potential evidence of the defendant's motive,

---

[17] Adapted from 1 *Modern Federal Jury Instructions-Criminal*, Instr. 5-15; *see United States v. Pujana-Mena*, 949 F.2d 24, 27-32 (2d Cir. 1991) (criticizing instruction that character evidence "standing alone" is enough for acquittal as "potentially misleading and confusing").

~~[18] Adapted from 1 *Modern Federal Jury Instructions-Criminal,* Instr. 6-11.~~

1   opportunity, intent, knowledge, plan, and/or absence of mistake, and to provide background for

2   the alleged conspiracy, and you may consider it for those purposes only.

3       If you determine that the defendant committed the acts charged in the Indictment and the

4   similar acts as well, then you may, but you need not, draw an inference that in doing the acts

5   charged in the Indictment, the defendant acted knowingly and intentionally and not because of

6   some mistake, accident, or other reasons.

7       However, the evidence of similar conduct is to be considered by you only on the issues of

8   motive, opportunity, intent, knowledge, plan, and/or absence of mistake.  It may not be considered

9   by you for any other purpose.  Specifically, you may not consider it as evidence that the defendant

10  is of bad character or has a propensity to commit crimes.  You may not conclude that merely

11  because the defendant may have engaged in similar conduct, without more, that he must also have

12  committed the acts charged in the Indictment.[19]

13  **~~V.~~T.    Stipulations of Fact**

14      In this case you have heard evidence in the form of stipulations of fact.  A stipulation of

15  fact is an agreement between the parties that a certain fact is true.  You must regard such agreed-

16  upon facts as true.  However, it is for you to determine the effect to be given to those facts.[20]

17  **~~W.~~U.    Stipulations of Testimony**

18      In this case you have also heard evidence in the form of stipulations of testimony.  A

19  stipulation of testimony is an agreement between the parties that, if called as a witness, the person

20  would have given certain testimony.  You must accept as true the fact that the witness would have

21  given that testimony.  However, it is for you to determine the effect to be given that testimony.[21]

---

[19] Adapted from 1 *Modern Federal Jury Instructions-Criminal*, Instr. 5-25, 5-26.
[20] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).
[21] Adapted from *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 5-7.

[23]

1    ~~X.~~V.    ~~Charts and~~ **Summar~~y Charts~~ies: Admitted as Evidence**

2        Some of the exhibits that were admitted into evidence were in the form of summary charts

3    ~~and summaries.~~ ~~These exhibits purport to summarize the underlying evidence that was used to~~

4    ~~prepare them.~~ I decided to admit these charts in order to save time and avoid unnecessary

5    inconvenience. ~~You should consider these charts and summaries as you would any other~~

6    ~~evidence.~~[22]  The charts themselves do not constitute independent evidence, and it is the jury's duty

7    to determine that the charts actually reflect the evidence on which they are based.

8        ~~Y.~~W.    **Redaction of Evidence**

9        Some of the exhibits received in evidence have been redacted.  "Redacted" means that part

10    of the underlying item was removed or covered.  You are to concern yourself only with the part of

11    the item that has been admitted into evidence.  You should not consider any possible reason why

12    the other part has been redacted.[23]

13    ~~Z.~~X.    **Use of Audio and Video Recordings and Transcripts**
14
15        Audio and video recordings have been admitted into evidence and transcripts of those

16    recordings were provided to use as aids.

17        Whether you approve or disapprove of the recording of the activity may not enter your

18    deliberations.  I instruct you that these recordings were made in a lawful manner and that no one's

19    rights were violated, and that the Government's use of this evidence is entirely lawful, and it was

20    properly admitted into evidence at this trial.[24]

---

[22] Adapted from *United States v. Simmons*, 22 Cr. 399 (VEC) (S.D.N.Y. 2023); *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 5-12.
[23] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).
[24] Adapted from *United States v. Avenatti*, No. 19 Cr. 373 (PGG) (S.D.N.Y. Feb. 12, 2020); *United States v. Reynoso-Hiciano*, No. 20 Cr. 388 (DLC) (S.D.N.Y. Jan. 4, 2022); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instrs. 5-9, 5-10.

1    You must, therefore, regardless of any personal opinions about this type of evidence, give

2    this evidence full consideration along with all the other evidence in the case in determining whether

3    the Government has proved beyond a reasonable doubt the guilt of the defendant.

4    In connection with the recordings that you have heard, you were provided with transcripts

5    of the conversations to assist you while listening to the recordings.  Transcripts were provided only

6    as an aid to you in listening to the English-language recordings.  It is for you to decide whether the

7    transcripts correctly present the conversations recorded on the recordings that you heard.

8    If you wish to hear any of the recordings again, they will be made available to you during

9    your deliberations.

10   **AA.Y.  Use of Evidence Obtained Pursuant to Searches**

11   You have heard testimony about evidence seized in connection with certain searches or

12   seizures conducted by law enforcement officers, and in particular, of email and other electronic

13   evidence obtained pursuant to court-approved search warrants.  Evidence obtained from these

14   searches and seizures was properly admitted in this case and may be properly considered by you.

15   Such searches and seizures were entirely appropriate law enforcement actions.  Whether you

16   approve or disapprove of how evidence was obtained should not enter into your deliberations,

17   because I instruct you that the Government's use of the evidence is entirely lawful.

18   You must, therefore, regardless of your personal opinions, give this evidence full

19   consideration along with all the other evidence in the case in determining whether the Government

20   has proven the defendant's guilt beyond a reasonable doubt.[25]

---

[25] Adapted from *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022).

[25]

1    ~~BB.~~Z.  Uncalled Witnesses—Equally Available or Unavailable

2         There are several persons whose names you have heard during the course of the trial but

3    who did not appear here to testify.  I instruct you that each party had an equal opportunity, or lack

4    of opportunity, to call any of these witnesses.  Therefore, you should not draw any inferences or

5    reach any conclusions as to what they would have testified to had they been called.  Their absence

6    should not affect your judgment in any way.

7         You should remember that there is no duty on either side to call a witness whose testimony

8    would be merely cumulative of testimony already in evidence, or who would merely provide

9    additional testimony to facts already in evidence.  Please also remember my instruction that the

10   law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses

11   or producing any evidence, and that the burden always rests with the Government to prove the

12   defendant's guilt beyond a reasonable doubt.[26]

13   **AA.    Immunized Witnesses**

14        You have heard the testimony of witnesses who have testified under a grant of immunity

15   from this court.  What this means is that the testimony of those witnesses may not be used against

16   them in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise

17   failing to comply with the immunity order of this court.

18        You are instructed that the Government is entitled to call, as a witness, a person who has

19   been granted immunity by order of this court and that you may convict a defendant on the basis of

20   such a witness's testimony alone, if you find that the testimony proves the defendant guilty beyond

21   a reasonable doubt.

---

[26] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023); *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022); *see also United States v. Brown*, 511 F.2d 920, 925 (2d Cir. 1975); *United States v. Super*, 492 F.2d 319, 323 (2d Cir. 1974); 1 *Modern Federal Jury Instructions-Criminal*, Instr. 6-7.

[26]

Such testimony should be scrutinized with great care. You should examine it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness's own interests. If you believe the testimony to be true and determine to accept it, you may give it such weight, if any, as you believe it deserves.

It is no concern of yours why a witness received court-ordered immunity. Your sole concern is whether the witness has given truthful testimony in this trial. That is a determination entirely for you, the jury.[27]

CC.    Defendant's Testimony

[Include if the Defendant testifies]

A defendant in a criminal case never has any duty to testify or come forward with any evidence. This is because, as I have told you, it is the Government's burden to prove the defendant guilty beyond a reasonable doubt. In this case, however, the defendant chose to testify and was subject to cross-examination like any other witness. You should examine and evaluate the defendant's testimony just as you would the testimony of any witness.[28]

DD.BB.       **Defendant's Right Not to Testify**

The defendant, Arie Rangott, did not testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any evidence. This is because, as I have told you, it is the Government's burden to prove a defendant guilty beyond a reasonable doubt. That burden remains with the Government throughout the entire trial and never shifts to a defendant. A defendant is never required to prove that he is innocent.

---

[27] Adapted from *United States v. Calk*, No. 19 Cr. 366 (LGS) (S.D.N.Y. June 10, 2021); *United States v. Garelick*, No. 23 Cr. 307 (LJL) (S.D.N.Y. Apr. 29, 2024); 1 *Modern Federal Jury Instructions-Criminal*, Instr. 7-8.

[28] *United States v. Almaleh*, No. S1 17 Cr. 25 (ER) (S.D.N.Y. Mar. 2, 2022); *see United States v. Brutus*, 505 F.3d 80, 87-88 (2d Cir. 2007); *United States v. Gaines*, 457 F.3d 238, 249 & n.9 (2d Cir. 2006).

[27]

1    You may not attach any significance to the fact that the defendant did not testify.  No

2    adverse inference against him may be drawn by you because he did not take the witness stand.

3    You may not consider this against the defendant in any way in your deliberations.

4    **II.    SUBSTANTIVE INSTRUCTIONS**

5    I will turn now to my instructions relating to the charges brought against the defendant in

6    this case.

7    **A.    The Indictment**

8    The defendant, Arie Rangott, has been formally charged in what is called an Indictment.

9    An indictment is simply an accusation.  It is not evidence of the crimes charged; it is not proof of

10   a defendant's guilt.  It is simply a procedure by which the Government presents charges in a

11   criminal case.

12   Before you begin your deliberations, you will be provided a copy of the Indictment.  I will

13   not read the entire Indictment to you at this time.  For now, I will summarize the offenses charged

14   in the Indictment and then explain in detail the elements of each offense.

15   The Indictment contains three counts against the defendant.  Each count constitutes a

16   separate offense which must be considered separately by you, and for which you must return a

17   separate verdict.  I am briefly going to summarize each count, and then will give you the law in

18   greater detail.

19   Count One charges the defendant with conspiracy to defraud the United States, in violation

20   of Title 18, United States Code, Section 371.  This count alleges that, between in or about 2019 to

21   in or about January 2023, the defendant agreed with others to impair, impede, or obstruct the lawful

22   functions of the U.S. Department of Health and Human Services, often known as "HHS," including

23   by impairing, impeding, or obstructing HHS's function to conduct appropriate oversight of, and

[28]

1   ensure compliance by, organizations receiving funding pursuant to the federal Head Start and Early

2   Head Start programs.

3          Count Two charges the defendant with conspiracy to falsify documents, in violation of

4   Title 18, United States Code, Sections 371 and 1519.  This count alleges that, in or about December

5   2021, the defendant agreed with others to knowingly alter, destroy, mutilate, conceal, cover up,

6   falsify, or make a false entry in a record or document with the intent to impede, obstruct, or

7   influence ~~the investigation or proper administration of~~ any matter within the jurisdiction of a

8   department or agency of the United States, specifically by submitting a letter to HHS that he knew

9   contained false statements and denials in response to an HHS inquiry.

10         Count Three charges the defendant with conspiracy to obstruct an official agency

11  investigation, in violation of Title 18, United States Code, Sections 371 and 1505.  This count

12  alleges that, in or about August and September 2022, the defendant agreed with others to corruptly

13  influence, obstruct, or impede the due and proper administration of the law under which a pending

14  proceeding was being had before any department or agency of the United States, specifically by

15  obstructing an investigation by the HHS Office of Inspector General.[29]

16         All you may have just noted, Counts One, Two, and Three all charge conspiracy offenses,

17  so let me explain to you what a conspiracy is.  These instructions about conspiracy apply to all

18  three Counts.  After instructing you on what a conspiracy is, I will instruct you on the specific law

19  governing each of the three Counts.

20         **B.**      **All Three Counts: Conspiracy Offenses**

---

[29] Adapted from 1 *Modern Federal Jury Instructions-Criminal*, Instrs. 3-1, 3-2.

[29]

1          **1.    Background and Elements of Conspiracy**

2          A conspiracy is a kind of criminal partnership -- a combination or agreement of two or

3  more persons to join together to accomplish some unlawful purpose.  The crime of conspiracy to

4  violate a federal law is an independent offense.  It is separate and distinct from the violation of any

5  specific federal laws, which the law refers to as "substantive crimes."

6          If a conspiracy exists, even if it should fail in its purpose, it is still punishable as a crime.

7  Indeed, you may find a defendant guilty of conspiracy to commit an offense even though the

8  substantive crime which was the object of the conspiracy was not actually committed.  Congress

9  has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the

10 conspiracy is not successful.  This is because collective criminal activity poses a greater threat to

11 the public's safety and welfare than individual conduct and increases the likelihood of success of

12 a particular criminal venture.

13         In order for a defendant to be guilty of conspiracy, the Government must prove beyond a

14 reasonable doubt the following three elements:

15         *first*, that the charged conspiracy existed;

16         *second*, that at some point during the conspiracy's existence the defendant knowingly and

17 willfully joined the alleged conspiracy with the intent to accomplish the conspiracy's unlawful

18 purpose; and

[30]

1    *third*, that that at least one overt act occurred, that is, some member of the conspiracy—not

2    necessarily the defendant—knowingly took some action in furtherance of the conspiracy.[30]

3    **2.    First Element: Existence of a Conspiracy**

4    Starting with the first element, what is a conspiracy?  A conspiracy is an agreement or an

5    understanding between two or more people to violate the law.

6    The gist, or the essence, of the crime of conspiracy is the unlawful agreement of two or

7    more people to violate the law.  As I mentioned earlier, the ultimate success of the conspiracy, or

8    the actual commission of the crime that is the object of the conspiracy, is not required for a

9    conspiracy to have existed.  Rather, the Government is required to prove beyond a reasonable

10   doubt only that two or more persons, in some way or manner, explicitly or implicitly, came to an

11   understanding to accomplish the unlawful object.

12   To prove the existence of a conspiracy, the Government is not required to show that two

13   or more people sat around a table and entered into solemn pact, orally or in writing, stating that

14   they had formed a conspiracy to violate the law and spelling out who would do what in order to

15   carry out the unlawful project.  Similarly, you need not find that the alleged conspirators stated, in

16   words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme

17   or the means by which its object or purpose was to be accomplished.  What the Government must

18   prove is that there was a mutual understanding, either spoken or unspoken, between two or more

19   people to cooperate with each other to accomplish an unlawful act.

20   ~~It is rare that~~ ~~A~~a conspiracy ~~can~~ need not be proven by direct evidence of an explicit

21   agreement.  Rather, ~~i~~In determining whether there has been an unlawful agreement as alleged in

22   the Indictment, you may consider the actions and conduct of all the alleged co-conspirators that

---

[30] Adapted from *United States v. Liu*, No. 19 Cr. 804 (VEC) (S.D.N.Y. Mar. 15, 2022); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 19-2.

[31]

1    were taken to carry out the apparent criminal purpose.  The old adage, "actions speak louder than

2    words," applies here.  Often, the only evidence that is available with respect to the existence of a

3    conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-

4    conspirators.  When taken all together and considered as a whole, however, these acts and conduct

5    may warrant the inference that a conspiracy existed just as conclusively as more direct proof, such

6    as evidence of an express agreement.

7         The object of a conspiracy is the illegal goal that the co-conspirators hoped to achieve.

8         The object of the conspiracy charged in Count One is to defraud the United States or an

9    agency thereof, specifically HHS.

10        The object of the conspiracy charged in Count Two is to falsify a letter to HHS in or about

11   December 2021 in response to an HHS inquiry.

12        The object of the conspiracy charged in Count Three is to obstruct an investigation by the

13   HHS Office of Inspector General.

14        You should keep in mind that you need not find the conspirators accomplished the object

15   or goal of each conspiracy.  Instead, an agreement to accomplish the goal of defrauding the United

16   States or an agency thereof is sufficient with respect to finding the first element of a conspiracy

17   has been satisfied for Count One; an agreement to accomplish the goal of falsifying a letter to HHS

18   in response to an HHS inquiry in or about December 2021 is sufficient with respect to finding the

19   first element of a conspiracy has been satisfied for Count Two; and an agreement to accomplish

20   the goal of obstructing an investigation by the HHS Office of Inspector General is sufficient with

21   respect to finding the first element of a conspiracy has been satisfied for Count Three.

22        Further, it is not essential that the Government prove that the conspiracy in question started

23   and ended on the specific dates alleged in the Indictment or that it existed throughout that entire

[32]

1  period.  Rather, it is sufficient to satisfy the first element if you find that in fact the charged

2  conspiracy was formed and that it existed for any time within the charged period.

3                      Liability for Acts and Declarations of Co-Conspirators

4          First you must determine whether or not the proof established beyond a reasonable doubt

5  the existence of the conspiracy charged. In considering the first element of conspiracy generally,

6  you will recall that I have admitted into evidence against the defendant the acts and statements of

7  others because these acts and statements were committed or made by persons who, the Government

8  alleges, were also confederates or co-conspirators of the defendant.

9          The reason for allowing this evidence to be received against the defendant has to do, in

10  part, with the nature of the crime of conspiracy.  As I have said, a conspiracy is often referred to

11  as a partnership in crime: as in other types of partnerships, when people enter into a conspiracy to

12  accomplish an unlawful end, each and every member becomes an agent for the other conspirators

13  in carrying out the conspiracy.

14          Therefore, the reasonably foreseeable declarations, statements, and omissions of any

15  member of the conspiracy and in furtherance of the common purpose of the conspiracy, are

16  deemed, under the law, to be the acts of all of the members, and all of the members are responsible

17  for such acts, declarations, statements, and omissions.

18          If you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy

19  charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy

20  by a person also found by you to have been a member of the same conspiracy may be considered

[33]

1    against the defendant.  This is so even if such acts were committed or such statements were made

2    in the defendant's absence, and/or without his knowledge.[31]

3    **3.    Second Element: Participation**

4    If you conclude that the Government has proven beyond a reasonable doubt that a charged

5    conspiracy existed, then you must consider the second element: whether the defendant knowingly

6    and willfully became a member of the conspiracy.

7    To act "knowingly" means to act voluntarily and deliberately rather than mistakenly or

8    inadvertently.

9    To act "willfully" means to act voluntarily and with a wrongful purpose.

10    Put differently, an act is done knowingly and willfully if it is done purposefully and

11    deliberately with an intent to do something the law forbids, that is, a defendant's act must have

12    been the product of that defendant's conscious determination rather than the product of a mistake,

13    accident, mere negligence, or some other innocent reason.

14    Now, science has not yet devised a manner of looking into a person's mind and knowing

15    what that person is thinking.  However, you have before you evidence of certain acts,

16    conversations, and statements alleged to have been made by, with, or in the presence of the

17    defendant, and others.  The ultimate facts of knowledge and criminal intent may be established by

18    words and conduct and all the surrounding circumstances, as well as acts, and all of the

19    circumstances disclosed by the evidence and logical and reasonable inferences from them.  It is

20    for you to determine whether the Government has established beyond a reasonable doubt such

21    knowledge and intent on the part of the defendant.

---

[31] Adapted from *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021); *United States v. Olivo*, No. 22 Cr. 582 (VEC) (S.D.N.Y. Feb. 26, 2024); *United States v. Ganiyu*, No. 23 Cr. 331 (LAK) (S.D.N.Y. Apr. 19, 2024); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022).

1    It is not necessary for the Government to show that a defendant was fully informed as to

2    all the details of the conspiracy in order for you to infer knowledge on his part.  Nor does the

3    defendant need to know the full extent of the conspiracy or all its participants.  Indeed, it is not

4    necessary that a defendant know more than one other member of the conspiracy.  It is also not

5    necessary that the defendant receive any monetary benefit from participating in the conspiracy.  It

6    is enough if he participated in the conspiracy willfully and knowingly, as I have defined those

7    terms.  While proof of a financial interest in the outcome of the scheme is not essential, if you find

8    that the defendant had such an interest, that is a factor you may properly consider in determining

9    whether he was a member of the conspiracy.  The presence or absence of motive, however, is a

10    circumstance that you may consider as bearing on the intent of the defendant.

11    If you determine that the defendant became a member of the conspiracy, the duration and

12    extent of the defendant's participation has no bearing on the issue of that defendant's guilt.  Some

13    conspirators play major roles, while others play minor roles.  An equal role is not required.  In fact,

14    even a single act may be sufficient to draw a defendant within the ambit of the conspiracy if it

15    meets the elements I have described.  Moreover, a defendant need not have joined the conspiracy

16    at the outset.  He may have joined it at any time —at the beginning, in the middle, or at the end.

17    And if he joined, he will still be held responsible for all that was done before he joined as well as

18    all that was done during the conspiracy's existence while the defendant was a member.

19    However, I want to caution you that mere association with a member of a conspiracy by

20    one person with another person does not make that first person a member of the conspiracy, even

21    when that association is coupled with knowledge that the second person is committing a crime.

22    Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place,

23    is not sufficient to support a conviction.  Similarly, a defendant's mere position, employment, or

[35]

1    supervisory authority at an organization by itself is not participation.  In other words, knowledge

2    without participation is not sufficient to satisfy the second element.  What is necessary is that the

3    defendant participated in the conspiracy with knowledge of its unlawful purpose and with intent

4    to aid in that accomplishment of its unlawful object or objects.

5        In sum, if you find the defendant, with an understanding of the unlawful nature of the

6    charged conspiracy, intentionally engaged, advised, or assisted in the conspiracy for the purpose

7    of furthering the illegal undertaking, you should conclude that the defendant became a knowing

8    and willing participant in the unlawful agreement—that is to say, a conspirator.[32]

9            **4.    Third Element: Overt Act**

10        The third element that the Government must prove beyond a reasonable doubt for all three

11    counts is that at least one member of the conspiracy, not necessarily the defendant, knowingly

12    committed at least one overt act in furtherance of the conspiracy.  There must have been something

13    more than mere agreement; some overt step or action must have been taken by at least one of the

14    conspirators in furtherance of the conspiracy.

15        In order for the Government to satisfy its burden of proof with respect to the overt act

16    requirement, it is not necessary for the Government to prove all or even any of the particular overt

17    acts alleged in the Indictment.  Nor must you find that the defendant himself committed any overt

18    act, since such an act becomes, in the eyes of the law, the act of all of the members of the

19    conspiracy.

20        You should bear in mind that an innocent lawful act, standing alone, can constitute an overt

21    act.  An apparently innocent act sheds its harmless character if it is a step in carrying out,

22    promoting, aiding, or assisting the conspiratorial scheme to violate the law.  Therefore, an overt

---

[32] Jury Charges in *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021); *United States v. Ganiyu*, No. 23 Cr. 331 (LAK) (S.D.N.Y. Apr. 19, 2024); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022).

[36]

1    act does not have to be an act that is in and of itself criminal.  Similarly, an overt act does not itself

2    have to constitute the objective of the conspiracy, but it does have to be committed by a conspirator

3    in furtherance of the conspiracy.[33]

4        **C.**      **Count One: Conspiracy to Defraud the United States**

5           I have just instructed you on the elements of a conspiracy charge generally.  I will now

6    instruct you how those instructions apply to Counts One, Two, and Three, starting with Count One

7    and focusing on the object of each conspiracy.

8           The object of the conspiracy charged in Count One is to defraud the United States or its

9    government agencies, by impairing, impeding, and obstructing the lawful functions of HHS.Please

10    bear in mind that the actual commission of an objective of the conspiracy—here, defrauding the

11    United States and its government agencies, by impairing, impeding, and obstructing the lawful

12    functions of HHS—is not an element of the crime of conspiracy.  Thus, you need not find that the

13    conspirators actually impaired, impeded, and obstructed the lawful functions of HHS, but only that

14    they agreed to do so.

15           In order to find that a person conspired to "impair, impede, or obstruct" a legitimate

16    governmental function, you must find beyond a reasonable doubt that the object of the conspiracy

17    was to interfere with or obstruct one or more of the United States' lawful governmental functions

18    by deceit, craft, or trickery, or by means that are dishonest.  Obstructing a lawful governmental

19    function, for purposes of the object of the conspiracy charged in Count One, includes making it

20    more difficult for an agency of the U.S. government to carry out its lawful functions ~~and that the~~

21    ~~scheme depended on~~by dishonest or deceitful means.  Actual contact between the defendant and

---

[33] Adapted from *United States v. Liu*, 19 Cr. 804 (VEC) (S.D.N.Y. Mar. 15, 2022); *United States v. Garelick*, No. 23 Cr. 307 (LJL) (S.D.N.Y. Apr. 29, 2024); 1 *Modern Federal Jury Instructions*, Instrs. 19-7, 19-8; *see also United States v. Kozeny*, 667 F.3d 122, 131-32 (2d Cir. 2011); *United States v. Rutkoske*, 506 F.3d 170, 175 (2d Cir. 2007).

1   an official of the U.S. government is not an element of the crime, nor is it necessary for you to find

2   that the government was subjected to any loss of money or property as a result of the conspiracy.

3   It also is not necessary for you to find that the impairment violated any separate law, or that the

4   U.S. government's lawful functions were in fact impaired, impeded, or obstructed.  All that is

5   required is that the object of the conspiracy was to interfere with or obstruct one of the United

6   States' lawful governmental functions by deceit, craft, or trickery, or by means that are dishonest.

7         The lawful governmental functions that the Government alleges the charged conspiracy

8   intended to interfere with or obstruct are certain functions of HHS.  I am instructing you as a matter

9   of law that HHS is a government agency of the United States, and that one of HHS's lawful

10   functions is to administer the federal Head Start program.  By law, that program is designed "to

11   promote the school readiness of low-income children by enhancing their cognitive, social, and

12   emotional development."  To exercise that function, HHS issues grants to entities known as

13   "agencies," such as non-profit corporations, for the purpose of having those agencies deliver Head

14   Start services.  HHS sets and enforces standards for agencies to deliver Head Start services, as well

15   as administrative and financial management standards for agencies to meet.  HHS is responsible

16   for monitoring agencies to ensure that the goals of the Head Start program are met, and that

17   agencies adhere to standards for the delivery of educational services, the administration of grants,

18   and the fiscal management of grants.

19         Among other things, Head Start grantees must have in place a "governing body" with "legal

20   and fiscal responsibility for the Head Start agency,"[34] comprised of members who do "not have a

21   financial conflict of interest with the Head Start agency."[35]  In addition, Head Start agencies are

22   prohibited from earning *any* profit from grant proceeds or from using grant proceeds for personal

---

[34] 42 U.S.C. § 9837(c)(1)(A).
[35] 42 U.S.C. § 9837(c)(1)(C).

[38]

1  gain.[36]  Rather, the proceeds of Head Start grants must be expended in a "reasonable" manner with

2  "reasonableness" considered by assessing, among other factors, whether the individuals concerned

3  engaged in "arm's-length bargaining."[37]

4  ~~Specifically, the Government has argued that Mr. Rangott interfered with HHS by~~

5  ~~corruptly misrepresenting the activities of Project Social Care's governing board in connection~~

6  ~~with a particular HHS proceeding.  I instruct you that the Head Start Act requires grantees like~~

7  ~~Project Social Care to maintain a governing board.~~

8  ~~You heard testimony at trial about the Head Start Act and the Head Start Performance~~

9  ~~Standards in connection with a grantee, like Project Social Care.  These laws and regulations~~

10  ~~prohibit payments to board members or policy council members of a grantee that create a financial~~

11  ~~conflict of interest.  These laws and regulations do not otherwise restrict influence that those doing~~

12  ~~business with the grantee may have over the board members or policy members.  Nor do these~~

13  ~~laws and regulations contain any conflict of interest rules that apply to partners of grantees.  Nor~~

14  ~~do they impose any arms-length bargaining rules.~~

15  ~~You heard testimony at trial about the Uniform Guidance.  Those regulations are issued by~~

16  ~~OMB, an agency different than HHS.  They require that federal agencies ensure that grantees~~

17  ~~expend grant funds in a "reasonable manner."  HHS may consider a number of factors in deciding~~

18  ~~whether funds are expended in a reasonable manner, including whether the cost is of a type~~

19  ~~generally recognized as ordinary and necessary for the operation of the non-Federal entity or the~~

20  ~~proper and efficient performance of the Federal award; the restraints or requirements imposed by~~

21  ~~such factors as: Sound business practices; arm's-length bargaining; Federal, state, local, tribal, and~~

22  ~~other laws and regulations; and terms and conditions of the Federal award; market prices for~~

---

[36] 45 C.F.R. § 75.216(b); 45 C.F.R. § 75.445(a).
[37] 45 C.F.R. § 75.404.

[39]

1  ~~comparable goods or services for the geographic area; whether the individuals concerned acted~~

2  ~~with prudence in the circumstances considering their responsibilities to the non-Federal entity, its~~

3  ~~employees, where applicable its students or membership, the public at large, and the Federal~~

4  ~~Government; and whether the non-Federal entity significantly deviates from its established~~

5  ~~practices and policies regarding the incurrence of costs, which may unjustifiably increase the~~

6  ~~Federal award's cost. The regulations do not specify what qualifies arms-length bargaining.~~

7      I also instruct you that, under the laws governing not-for-profit entities in New York, not-

8  for-profit corporations do not have any owners or shareholders. There is no concept under the law

9  of "ownership" of a not-for-profit corporation. Rather, not-for-profit corporations exist solely to

10  serve the public interest, and control of such organizations rests with a board of directors that is

11  subject to a number of procedural rules to ensure the organization is run according to law.[38]

12          **1.**     **Additional Instructions Regarding Count One**

13      I have two additional instructions with respect to Count One.

15          ***a. Good Faith***

16      First, a defendant's good faith is an absolute defense to a charge of conspiracy to defraud

17  the United States. This is because good faith is inconsistent with the intent to defraud, which is an

18  essential part of the Count One charge.

19      Under th~~e mail fraud~~ statute governing Count One, even false representations or statements

20  or omissions of material facts do not amount to a fraud unless done with fraudulent intent.

21  However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried

[38] Adapted from *United States v. Liu*, No. 19 Cr. 804 (VEC) (S.D.N.Y. Mar. 15, 2022); *United States v. Atilla*, No. 15 Cr. 867 (RMB) (S.D.N.Y. Dec. 20, 2017); *see* 42 U.S.C. § 9831; N.Y. Not-For-Profit Corp. Law §§ 201, 202, 204, 501, 701-26.

[40]

1   out in good faith.  If the defendant believed in good faith that he was acting properly, even if he

2   was mistaken in that belief, and even if others were injured by his conduct, there is no crime.

3        Yet if the defendant knew that his representations were false and material, it is not a defense

4   that he believed that the victim would recognize their falsity and decide not to rely on those

5   statements.

6        Likewise, a venture commenced in good faith may become fraudulent if it is continued

7   after a fraudulent intent has been formed.  Therefore, good faith is no defense when the defendant

8   first made representations in good faith but later, during the time charged in the Indictment, the

9   defendant realized that the representations were false and nevertheless deliberately continued to

10  make them.  You must review and put together all the circumstances in deciding whether it has

11  been established beyond a reasonable doubt that the defendant devised or participated in a scheme

12  to defraud knowingly, willfully, and with the intent to defraud, or whether he acted in good faith.

13       Furthermore, if the defendant participated in the scheme to defraud, then the defendant's

14  belief, if such a belief existed, that ultimately everything would work out so that no one would lose

15  any money does not require a finding by you that he acted in good faith.  If the defendant

16  participated in the scheme for the purpose of causing financial or property loss to another, then no

17  amount of honest belief on the part of the defendant that the scheme will cause ultimately make a

18  profit or cause no harm will excuse fraudulent actions or false representations by him.

19       The burden of establishing a defendant's lack of good faith and criminal intent rests upon

20  the Government.  Stated another way, a defendant is under no burden to prove his good faith;

21  rather, the prosecution must prove bad faith or knowledge of falsity beyond a reasonable doubt.[39]

---

[39] Adapted from *United States v. Gillier*, 11 Cr. 409 (PAE) (S.D.N.Y. Sept. 27, 2022).

[41]

1    ***b.   Negligence of the Alleged Victim***

2    Second, it does not matter whether any particular victim might have discovered the fraud

3    had it probed further or been more careful.  If you find that a scheme to defraud existed, it is

4    irrelevant whether you believe that any alleged victims were careless, gullible, or even negligent.[40]

5    That concludes my instructions on Count One.

6    **D.    Count Two: Conspiracy to Falsify Documents and Records**

7    I will now turn to Count Two of the Indictment.  Count Two charges the defendant with

8    conspiring to falsify documents.  As I told you before, you need not find that the defendant actually

9    committed the crime of falsifying documents, but only that he agreed with others to do so.

10    The object of the conspiracy charged in Count Two is the crime of falsification of

11    documents, which is set forth in Title 18, United States Code, Section 1519.   Section 1519

12    provides:

13    Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or
14    makes a false entry in any record, document, or tangible object with the intent to
15    impede, obstruct, or influence the investigation or proper administration of any
16    matter within the jurisdiction of any department or agency of the United States . . .
17    , or in relation to or contemplation of any such matter . . . , shall be [guilty of a
18    crime].
19
20    In order to sustain its burden of proof against the defendant with respect to Count Two, the

21    Government must prove beyond a reasonable doubt the following three elements:

22    *first*, that the defendant falsified or caused the falsification of a document;

23    *second*, that the defendant acted knowingly; and

24    *third*, that the defendant acted with the intent to impede, obstruct, or influence any~~n~~

25    ~~investigation~~ matter  within the jurisdiction of a department or agency of the United States

---

[40] Adapted from *United States v. Gillier*, 11 Cr. 409 (PAE) (S.D.N.Y. Sept. 27, 2022); *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021).

1    Government.[41]

2        As I did with Count One, I will explain each of these elements in more detail.

3        **1.    First Element: Falsification of Document**

4        The first element the Government must prove on Count Two is that the defendant falsified

5    any document.  Both tampering with preexisting documents and creating a new document may

6    constitute falsifying a document.  A document may be "falsified" if it contains a misrepresentation

7    or false denial.[42]

8        **2.    Second Element: Knowing Conduct**
9
10       The second element that the Government must prove is that the defendant acted knowingly.

11   A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance,

12   mistake, accident, or carelessness.  Whether the defendant acted knowingly may be proven by the

13   defendant's conduct and by all of the facts and circumstances surrounding the case.  In determining

14   whether the defendant acted knowingly, you may consider evidence of the defendant's words, acts,

15   and omissions, along with all of the facts and circumstances surrounding the case.[43]

16       **3.    Third Element: Intent to Impede a Matter~~Investigation~~**

17       The third and final element of Count Two that the Government must prove beyond a

18   reasonable doubt is that ~~that~~ the defendant acted with the intent to impede, obstruct, or influence

19   a~~ny~~n matter~~investigation~~ within the jurisdiction of an agency of the United States Government.  I

---

[41] Adapted from *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Oct. 13, 2021); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022); *see also* 2 *Modern Federal Jury Instructions-Criminal*, Instrs. 46-78, 46-79.

[42] Adapted from *United States v. Coll*, 15 Cr. 360 (LAP) (S.D.N.Y. Dec. 14, 2016); *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Oct. 13, 2021); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022); *see also United States v. Rowland*, 826 F.3d 100, 110-11 (2d Cir. 2016); *United States v. Yielding*, 657 F.3d 688, 715-16 (8th Cir. 2011); 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-80.

[43] Adapted from *United States v. Coll*, 15 Cr. 360 (LAP) (S.D.N.Y. Dec. 14, 2016); *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Oct. 13, 2021); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022); *see also* 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-81.

[43]

1   instruct you as a matter of law that HHS is an agency of the United States and that monitoring

2   compliance by recipients of Head Start funding with Head Start standards are matters within the

3   jurisdiction of that Office.

4        The Government is not required to prove that the defendant knew that the investigation

5   was a federal investigation, or that a federal investigation would take place, or that the matter was

6   within the jurisdiction of a federal agency.  However, the Government is required to prove that the

7   investigation that the defendant intended to impede, obstruct, or influence did, in fact, concern a

8   matter within the jurisdiction of an agency of the United States.[44]

9        **E.    Count Three: Conspiracy to Obstruct an Agency Proceeding**
10
11       As noted, Count Three charges the defendant with conspiring to obstruct an agency

12  proceeding.  As I told you before, you need not find that the defendant actually committed the

13  obstruction of an agency proceeding that is the object of the conspiracy, but only that he agreed

14  with others to do so.

15       The object of the conspiracy charged in Count Three is the crime of obstruction of an

16  agency proceeding, which is set forth in Title 18, United States Code, Section 1505.  Section 1505

17  provides:

18           Whoever corruptly, or by threats of force, or by any threatening
19           letter or communication influences, obstructs, or impedes, or
20           endeavors to influence, obstruct or impede the due and proper
21           administration of law under which any proceeding is being held
22           before any department or agency of the United States … [shall be
23           guilty of a crime].
24
25       The elements of obstruction of an agency proceeding, each of which must be proved

26  beyond a reasonable doubt, are as follows:

---

[44] Adapted from *United States v. Coll*, 15 Cr. 360 (LAP) (S.D.N.Y. Dec. 14, 2016); *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Oct. 13, 2021); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Oct. 24, 2022); *see also* 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-82.

[44]

1    *first*, that on or about the date set forth in the Indictment, a proceeding was pending before

2    an agency of the United States;

3    *second*, that the defendant knew that a proceeding was pending before an agency of the

4    United States; and

5    *third*, that the defendant corruptly endeavored to influence, obstruct or impede the due and

6    proper administration of the law under which the proceeding was being conducted.[45]

7         **1.    First Element: Proceeding Was Pending**

8    The first element of the object of the conspiracy charged in Count Three is that at or about

9    the date set forth in the Indictment, a proceeding was pending before an agency of the United

10   States. In this regard, you are instructed that HHS is an agency of the United States and that a

11   proceeding includes an HHS Office of Inspector General investigation. The question for you with

12   respect to this element is whether that proceeding was pending in or about August and September

13   2022.[46]

14        **2.    Second Element: Knowledge of Proceeding**

15   The second element of the object of the conspiracy charged in Count Three is that the

16   defendant knew that the administrative proceeding was in progress. In order to satisfy this element,

17   you need only determine that the defendant knew at or about the date charged that the HHS Office

18   of Inspector General was investigating Project Social Care Head Start for alleged whistleblower

19   retaliation. In this regard, you may consider all of the facts and circumstances surrounding the

20   conduct with which the defendant is charged in order to determine whether he knew or had a

21   reasonable basis for belief that a proceeding was pending.[47]

---

[45] Adapted from 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-24; *see also United States v Quattrone*, 441 F.3d 153, 174 (2d Cir. 2006).
[46] Adapted from 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-25.
[47] Adapted from 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-26.

[45]

### 3.    Third Element: Act of Obstructing or Impeding

The third element of the object of the conspiracy charged in Count Three is that the defendant did corruptly obstruct or impede, or endeavor to obstruct or impede the administrative proceeding.[48] ~~The word "corruptly" means that the defendant acted voluntarily, deliberately, and~~ ~~dishonestly with the specific intent to sway, change, or prevent an action likely to be taken in the~~ ~~proceeding. So a defendant who has acted inadvertently or with an innocent motive has not~~ ~~obstructed justice.~~ The term "endeavor" is designed to reach all conduct that is aimed at influencing, intimidating, or impeding the proceedings. Thus, it is sufficient to satisfy this element if you find that the defendant corruptly made any effort or did any act for the purpose of obstructing or impeding the proceeding. The word "corruptly" means that the defendant acted voluntarily, deliberately, and dishonestly with the specific intent to sway, change, or prevent an action likely to be taken in the proceeding. So a defendant who has acted inadvertently or with an innocent motive has not obstructed justice.

Obstructing justice need not have been the sole motivation for the defendant's conduct as long as the defendant acted, at least in part, with that improper purpose. If you are considering whether the defendant may have had multiple motives, you should ask whether the defendant's motives were *primarily* corrupt—in other words, whether the bad motive outweighed the innocent motive. A defendant who has acted inadvertently or with an innocent motive has not obstructed justice.

When you consider whether the defendant committed obstruction of justice, I instruct you that it is not, by itself, illegal in New York or New Jersey to record a conversation or meeting with

---

[48] Adapted from 2 *Modern Federal Jury Instructions-Criminal*, Instr. 46-27; Eleventh Circuit Pattern Jury Instructions, § O58.1 (2022) : *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Lundwall*, 1 F. Supp. 2d 249, 251 (S.D.N.Y. 1998); *United States v. Fayer*, 523 F.2d 661, 663 (2d Cir. 1975).

[46]

1    another person without consent and without disclosing that you are doing so—even if that

2    conversation or meeting is with a law enforcement officer conducting an investigation.  Similarly,

3    it is not, by itself, illegal for a person to discuss interviews with law enforcement agents with other

4    people, even if the law enforcement agent has asked him not to do so.  But as with any other

5    conduct that, absent a corrupt intent, would not be illegal standing alone, if these actions are

6    engaged in with corrupt intent to obstruct an investigation, they can constitute obstruction of

7    justice.

8    ~~F.    Multiple Conspiracies~~

9    ~~The Government must prove the existence of each conspiracy as charged in Count One,~~

10   ~~Two and Three.~~

11   ~~Whether there existed a single unlawful agreement, or many such agreements, or indeed,~~

12   ~~no agreement at all, is a question of fact for you, the jury, to determine in accordance with the~~

13   ~~instructions I have given you.  When two or more people join together to further one common~~

14   ~~unlawful design or purpose, a single conspiracy exists. By way of contrast, multiple conspiracies~~

15   ~~exist when there are separate unlawful agreements to achieve distinct purposes.~~

16   ~~Proof of several separate and independent conspiracies is not proof of the single, overall~~

17   ~~conspiracy charges in a particular Count of the Indictment unless one of the conspiracies proved~~

18   ~~happens to be the single conspiracy described in a particular Count.~~

19   ~~You may find that there was a single conspiracy as charged in each Count despite the fact~~

20   ~~that there were changes in either personnel, or activities, or both, so long as you find that some of~~

21   ~~the co-conspirators continued to act for the entire duration of the conspiracy for the purpose~~

22   ~~charged in that particular Count.  The fact that the members of a conspiracy are not always identical~~

23   ~~does not necessarily imply that separate conspiracies exist.~~

[47]

1    ~~On the other hand, if you find that the conspiracy charged in a particular Count did not~~

2    ~~exist, you cannot find the defendant guilty of the single conspiracy charged in that particular Count.~~

3    ~~This is so even if you find that some conspiracy other than the one charged in that particular Count~~

4    ~~existed, even though the purposes of both conspiracies may be been the same and even though~~

5    ~~there may have been some overlap in membership.~~

6    ~~Similarly, if you find that the defendant was a member of another conspiracy, and not the~~

7    ~~one charged in a particular Count, then you must acquit the defendant of the conspiracy charged~~

8    ~~in that particular Count.~~[49]

9    ~~G.~~**F.**    **Conscious Avoidance**

10    As I have explained, each of the counts charged in the Indictment requires the Government

11    to prove that the defendant acted knowingly, as I have already defined that term.

12    If a person is actually aware of a fact, then he knows that fact.  But, in determining whether

13    the defendant acted knowingly, you may also consider whether the defendant deliberately closed

14    his eyes to what otherwise would have been obvious.  This because of a concept in the law called

15    "conscious avoidance" or "willful blindness."

16    To be clear, the necessary knowledge on the part of the defendant with respect to any

17    particular charge cannot be established by showing that that defendant was careless, negligent, or

18    foolish.  However, one may not willfully and intentionally remain ignorant of a fact material and

19    important to one's conduct in order to escape the consequences of criminal law.  In other words, a

20    defendant cannot avoid criminal responsibility for his own conduct by "deliberately closing his

21    eyes," or remaining purposefully ignorant of facts which would confirm to him that he was

22    engaged in unlawful conduct.

---

~~[49] Adapted from Sand, et al., Modern Federal Jury Instructions, Instr., 19-5.~~

[48]

1       Thus, if you find beyond a reasonable doubt that the defendant was aware that there was a

2    high probability a crime was being committed, but that the defendant deliberately and consciously

3    avoided confirming this fact, such as by purposely closing his or her eyes to it or intentionally

4    failing to investigate it, then you may treat this deliberate avoidance of positive knowledge as the

5    equivalent of knowledge, unless you find that the defendant actually believed that he was not

6    engaged in such unlawful behavior.

7       As I have instructed you, the Government must prove beyond a reasonable doubt that the

8    defendant joined each of the conspiracies with knowledge of their unlawful objectives. In

9    determining whether a defendant joined a conspiracy with knowledge of its unlawful objective,

10   you may consider whether the defendant deliberately closed his~~er~~ eyes to what otherwise would

11   have been obvious.  In other words, if you find beyond a reasonable doubt that the defendant was

12   aware of a high probability that the object of the conspiracy was the object alleged in the

13   Indictment but deliberately and consciously avoided confirming that fact, then you should treat

14   this deliberate avoidance of positive knowledge as the equivalent of knowledge, unless you find

15   that the defendant actually believed that this was not the object of the conspiracy.

16      You must keep in mind that there is an important difference between willfully and

17   intentionally joining a conspiracy——which I previously explained to you——and knowing the

18   specific object of a conspiracy.  You may consider conscious avoidance in deciding whether the

19   defendant knew the object of a conspiracy, that is, whether he reasonably believed that there was

20   a high probability that a goal of the conspiracy was to commit the alleged object of the conspiracy

21   and took deliberate and conscious action to avoid confirming that fact but participated in the

22   conspiracy anyway.  But "conscious avoidance" cannot be used as a substitute for finding that a

23   defendant willfully and intentionally joined the conspiracy in the first place.  It is logically

[49]

1    impossible for a defendant to intend and agree to join a conspiracy if he or she does not actually

2    know it exists or does not intend to join it. However, if you find beyond a reasonable doubt that

3    the defendant willfully chose to participate in such a joint undertaking, you may consider whether

4    the defendant took deliberate and conscious action to avoid confirming otherwise obvious facts

5    about the purpose of that undertaking.

6        In sum, if you find that a defendant believed there was a high probability that a fact was so

7    and that the defendant took deliberate and conscious action to avoid learning the truth of that fact,

8    you may find that the defendant acted knowingly with respect to that fact. However, if you find

9    that the defendant actually believed the fact was not so, then you may not find that he acted

10   knowingly with respect to that fact.[50]

11   **G.    18 U.S.C. § 1001 Not Charged**

12   You have heard reference in some of the transcripts to another federal crime, 18 U.S.C. §

13   1001. I am instructing you that that crime is not charged in this case.

14   **H.    Motive**

15       Proof of motive is not a necessary element of the crimes with which the defendant is

16   charged. Proof of motive does not establish guilt, nor does the lack of proof of motive establish

17   that the defendant is not guilty.

18       If the guilt of the defendant is shown beyond a reasonable doubt, it is immaterial what the

19   defendant's motive for the crime or crimes may be, or whether the defendant's motive was shown

---

[50] Adapted from *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021), *United States v. Perryman*, No. 23 Cr. 117 (DLC) (S.D.N.Y. Feb. 20, 2024); *United States v. Ganiyu*, No. 23 Cr. 331 (LAK) (S.D.N.Y. Apr. 19, 2024) (Tr. 386); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 3A-2.

[50]

1  at all.  The presence or absence of motive is, however, a circumstance that you may consider as

2  bearing on the intent of the defendant.[51]

3      **I.**    **Attorney Involvement Not Itself a Defense**

4      An attorney's involvement with an individual or entity does not itself constitute a defense

5  to any of the charges in this case.  The defense has not claimed, and cannot claim, that the

6  defendant's conduct was lawful because he acted in good faith on the advice of one or more

7  attorneys.

8      **J.**    **Variance in Dates**

9      The Indictment charges that certain acts occurred on or about a date or in or about a

10  particular period of time.  It is not essential that the Government prove that the crimes happened

11  on any specific dates.  It does not matter if a specific event is alleged to have occurred on or about

12  a certain date, but the evidence at trial indicates that in fact it was a different date.  The law requires

13  only a substantial similarity between the dates alleged in the Indictment and the dates established

14  by the testimony and other evidence.[52]

15      **K.**    **Venue**

16      As to each charge, the Government, in addition to proving the essential elements of that

17  charge, must also establish that venue was proper in the Southern District of New York, which

18  includes all of Manhattan and the Bronx, as well as Westchester, Rockland, Putnam, Dutchess,

19  Orange, and Sullivan Counties.  Unlike the elements of the offenses, which must be proven beyond

20  a reasonable doubt, the Government is only required to prove venue by a preponderance of the

---

[51] Adapted from *United States v. Ortega*, 22 Cr. 91 (RA) (S.D.N.Y. Jan. 27, 2023); *United States v. Avenatti*, No. 19 Cr. 373 (JMF) (S.D.N.Y. Feb. 2, 2022).
[52] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

1   evidence.  A preponderance of the evidence means that it is more probable than not that something

2   occurred.

3        The Government does not have to prove that a completed crime was committed within the

4   Southern District of New York, or that the defendant was ever in the Southern District of New

5   York.  It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged

6   occurred in this District.  The act itself may not be a criminal act.  And the act need not have been

7   taken by the defendant, so long as the act was part of the crime that you find the defendant

8   committed.

9        The defendant's presence in this district to further the charged crime is sufficient but not

10   necessary to establish venue. For instance, if communications in furtherance of the charged scheme

11   were transmitted into or out of this District, that is sufficient to establish venue.

12        With respect to Counts One, Two, and Three, you need to find that it is more likely than

13   not that an act in furtherance of the charged conspiracy was committed or caused to be committed

14   in the Southern District of New York by the defendant or a coconspirator during the life of the

15   conspiracy.[53]

16   ~~I.     Defense Theory of the Case~~

17

18   ~~[*The defense requests that the jury be charged with the defense theory of the case, to be*~~

19   ~~*supplied following the close of trial, prior to the charging conference.*]~~

20   **III.**   **DELIBERATIONS OF THE JURY**

21

22        **A.**   **Right to See Exhibits and Hear Testimony**

23        Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions

24   to you.  You are about to go into the jury room and begin your deliberations.  If during deliberations

---

[53] Adapted from *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021); *United States v. Perryman*, 23 Cr. 117 (DLC) (S.D.N.Y. Feb. 20, 2024); 1 *Modern Federal Jury Instructions-Criminal*, Instr. 3-11.

[52]

1    you want to see a hard copy of any of the exhibits, you may request that they be brought into the

2    jury room.  If you want any of the testimony read, you may also request that.  Please remember

3    that it is not always easy to locate what you might want, so be as specific as you possibly can in

4    requesting exhibits or portions of the testimony.  And please be patient—with respect to requests

5    for testimony, it can sometimes take counsel and the Court some time to identify the portions that

6    are responsive to your request.  If you want any further explanation of the law as I have explained

7    it to you, you may also request that.

8         To assist you in your deliberations, I am providing you with a list of witnesses, in the order

9    in which they testified; a list of exhibits; a verdict form, which I will discuss in a moment; and a

10   copy of these instructions.  There is one of each of these for each juror.  I am also providing you

11   with a copy of the Indictment.  I remind you that the Indictment is not evidence.[54]

12   **B.    Communication with the Court**

13        Your requests for exhibits or testimony—in fact any communications with the Court—

14   should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In

15   any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous

16   verdict is reached.[55]

17   **C.    Notes**

18        Some of you have taken notes periodically throughout this trial.  I want to emphasize to

19   you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes

20   that any of you may have made may not be given any greater weight or influence than the

21   recollections or impressions of other jurors, whether from notes or memory, with respect to the

22   evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors'

---

[54] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).
[55] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

[53]

1   recollections are equal.  If you cannot agree on what you remember the testimony was, you can

2   ask to have the transcript read back.[56]

3        **D.**     **Duty to Deliberate; Unanimous Verdict**

4        You will shortly retire to decide the case.  Your function is to weigh the evidence in this

5   case and to determine the guilt or lack of guilt of the defendant with respect to the count charged

6   in the Indictment.  You must base your verdict solely on the evidence and these instructions as to

7   the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you

8   agree or disagree with the particular law in question.

9        It is your duty as jurors to consult with one another and to deliberate with a view to reaching

10   an agreement.  Each of you must decide the case for himself or herself, but you should do so only

11   after a consideration of the case with your fellow jurors, and you should not hesitate to change an

12   opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions

13   dispassionately, without regard to sympathy, without regard to prejudice or favor for either party,

14   and adopt that conclusion which in your good conscience appears to be in accordance with the

15   truth.

16        When you are deliberating, all 12 jurors must be present in the jury room.  If a juror is

17   absent, you must stop deliberations.

18        Again, your verdict must be unanimous, but you are not bound to surrender your honest

19   convictions concerning the effect or weight of the evidence for the mere purpose of returning a

20   verdict or solely because of the opinion of other jurors.  Each of you must make your own decision

21   about the proper outcome of this case based on your consideration of the evidence and your

---

[56] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

[54]

1    discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs

2    solely for the purpose of returning a unanimous verdict.

3          Remember at all times, you are not partisans.  You are judges—judges of the facts.  Your

4    sole interest is to seek the truth from the evidence in the case.

5          If you are divided, do <u>not</u> report how the vote stands.  If you reach a verdict, do not report

6    what it is until you are asked in open court.[57]

7    **E.    Verdict Form**

8          I have prepared a verdict form for you to use in recording your decision.  Please use that

9    form to report your verdict.[58]

10    **F.    Duties of Foreperson**

11          Finally, I referred a moment ago to a foreperson.  The first thing you should do when you

12    retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a

13    note indicating whom you have chosen.[59]

14          The foreperson doesn't have any more power or authority than any other juror, and his or

15    her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The

16    foreperson is merely your spokesperson to the court.  He or she will send out any notes, and when

17    the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict,

18    and you will come into open court and give the verdict.

19    **G.    Return of Verdict**

20          After you have reached a verdict, your foreperson will fill in and date the form that has

21    been given to you.  All jurors must sign the form reflecting each juror's agreement with the verdict.

---

[57] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).
[58] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).
[59] Adapted from *United States v. Powell*, 18 Cr. 287 (PAE) (S.D.N.Y. May 18, 2023).

[55]

1    The foreperson should then advise the marshal outside your door that you are ready to return to

2    the courtroom.

3    I will stress that each of you must be in agreement with the verdict which is announced in

4    court.  Once your verdict is announced by your foreperson in open court and officially recorded,

5    it cannot ordinarily be revoked.

6    In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow

7    jurors and if you apply your own common sense, you will reach a fair verdict here.

8    **H.    Alternate Jurors**

9

10    At this time, the first twelve jurors will begin their deliberations in the case.  The final

11    three—all of whom are alternates—will not deliberate at this time.  Nevertheless, the alternate

12    jurors are not quite excused.  While the jury conducts its deliberations, you do not have to be in

13    court, but you should give Ms. Williams phone numbers where you can be reached, because it is

14    possible that one or more of you could be needed to deliberate if a juror is unable to continue.  Ms.

15    Williams will call you when deliberations are completed so that you will know you are completely

16    finished.  Between now and then, you must continue to observe all the restrictions I have instructed

17    you on throughout the trial.  That is, you must not discuss this case with anyone, including your

18    fellow alternate jurors, the other jurors, other people involved in the trial, members of your family,

19    friends, co-workers, or anyone else.  And until a verdict is reached, as I have already instructed,

20    you may not communicate with anyone about the case in any way.  If anyone approaches you and

21    tries to talk to you about the case, please report that to me, through Ms. Williams or through the

22    contact information for the Court with which you were provided, immediately.

23    Do not listen to or watch or read any news reports concerning this trial if there were to be

24    any; do not do any research on the Internet or otherwise.  The reason for this of course is that

[56]

1    should you be asked to participate in reaching a verdict in this case, the only information you will

2    be allowed to consider is what you learned in this Courtroom during the trial.  Please accept my

3    heartfelt gratitude for your service.

4          I am sorry that you may miss the experience of deliberating with the jury but the law

5    provides for a jury of twelve persons in this case.  So before the rest of the jury retires to the jury

6    room, if you have any clothing or objects there, you are asked to pick them up and to withdraw

7    before any deliberations start.  Without discussing the case, you may also say your goodbyes to

8    your fellow jurors.

9          (Alternates excused)

10   **IV.   CONCLUSION**

11         Members of the jury, that concludes my instructions to you.  I will ask you to remain seated

12   while I confer with the attorneys to see if there are any additional instructions that they would like

13   me to give to you or anything I may not have covered in my previous statement.

14                              * * *

15   ──────  Before you retire into the jury room, I must excuse our three alternates with the thanks of

16   the Court.  You have been very attentive and very patient.  I am sorry that you will miss the

17   experience of deliberating with the jury, but the law provides for a jury of 12 persons in this case.

18   So before the rest of the jury retires into the jury room, if you have any clothing or objects there

19   you are asked to pick them up and to withdraw before any deliberations start.

20   ──────  Please do not discuss the case with anyone, or research the case, over the next few days.

21   In the event that one of the jurors is unable to complete the deliberation process, you may be called

22   back..It is possible that unexpected developments such as a juror's serious illness may require the

23   substitution of a deliberating juror by an alternate.  Accordingly, it is vital that you not speak to

[57]

1   anyone about the case or research the case until you have been notified that the jury's deliberations

2   are over and the jury has been excused. And if you would like to be advised of the outcome of the

3   trial, please make sure that Ms. Williams has a phone number and an email address at which you

4   can be reached.

5                   (Alternates excused)

6          Members of the jury, you may now retire. The marshal will be sworn before we retire.

7                   (Marshal sworn)

[58]

# UNITED STATES OF AMERICA

## v.

# ARIE RANGOTT,

### Defendant



# Government's Closing Statement

# ROADMAP

1. The Charges and the Existence of the Conspiracies

2. Reasons You Know the Defendant Is Guilty

2

# The Charges

3

# Elements of Each Charge

1. Existence of an Agreement to Commit the Crime

2. The Defendant Knowingly and Willfully Joined

3. Overt Act in Furtherance

4

# The Charges

Count 1:   Conspiracy to Defraud the United States

Count 2:   Conspiracy to Falsify a Document (Dec. 2021 Letter)

Count 3:   Conspiracy to Obstruct Justice (OIG Investigation)

5

- 1 -

בס"ד

# שטר שותפות

זכרון דברים מפרט תנאי ואופני השותפות שנעשה בין הצדדים חיה מורה מנהל מנגצל העבדלער ג'יין, הבעלים של הפירמה הנודע בשם יפ'רא'ושאינקס מאושעל קעירי' — שיקרא להלן צד א'.

ובין הקונה חשותף מו'ית פנחס לימערמאן ג'יין, מעיר מאנטריאל עבדה — שיקרא להלן צד ב'.

בדבר מכירת חלק שהמנהל בהפירמה הנ'יל, שמהנהו ניהל והרחקנו מוסד בשם יתעדסטאַרטני — יאורלי העדסטארטני אשר השולטן מרוחק כל צרכיו והוצאותיו.

אן היות שצד א' המנהל ובעלים של הפירמה הנ'יל, יש לו רשיון ואושור מהשולטן לטבוח ולהזמה כל הנ'יל, ויש ברשותו וברצונו למכור לצד ב', חמישים אחוזים שותפות בהפירמה, ולחלוק ביניהם השולטנטס באופן המבואר להלן.

והיות שבאופן חוקי מן הנמצא למכור ולמסור לאחרים באופן רגיל, אמנם יש אפשרות ותהבלה לחשוב המסורה, עיי שצד א' יסדר שעלשה מהוסד הנבחרי [בארד-מעמבערים] יוכלו איע מעש באופן חוקי, וצד ב' יכנס במקומם שלשה אנשים אחרים משלו, שיעגו שם בעונימני, ודיל.

והצדדים הסכימו על כל פרטי המבוחייו וחשותפות והעבדת הזכיות וחמתחקר וכדי שיהא לו תוקף הראוי לפסוק דין הנוחציו הקן, הקנו ותגחוחבוו איע אך לוה בשעבוד הגוף והנכסים, בקנינים ואופנים היותר מועילים, עלבן תמבואר ומפרש להלן באשר.

ב] צד א' מכר לצד ב', במכירה גמורה, ובקנינים ואופנים היותר מועילים עפ'י דתה'ק, חמישים אחוזים שותפות בהפירמה הנ'יל, שיכולק עפ'י התנאים דלחק, וסעד'ה צד א' את צד ב', שותף בהפירמה הנ'יל, ויש לו חמישים אחוזים שם, עפ'י התנאים האמונו המבואר להלן כאשר שיוכלק זכיות'ק של השותפות והפירמה.

ג] לצד א', יהא סך 119 שאלטס במד הפעטסארטס HS, ובזיד למשות חטבם עם מחזוחו שאטסאר כהנוו וופצחו, ואין לצד ב' שום זכות בהם.

וכמויכ יהא לצד א' לבד, סך 180 שלאטס של אורלי-חעדסטארט'ט E.H.S.CCP ואין לצד ב' זכות בהם.

וכמויכ סך 115 שלאטס הודשום HS שנתקבל לאחרות בארא'ח פארק יהא לצד א' לבד ואין לצד ב' שום זכות בהם.

וכמויכ באם יקבל בקרוב עד סך 116 שלאטס חדשום E.H.S.CCP פאַרקגנערשיף יהא לצד א' לבד ואין לצד ב' שום זכות בהם.

ד] אמנם סך 116 יאורלי-חעדסטארט'ט, E.H.S.CCP יהא אך ורק לצד ב' לבד, ואין לצד א' שום זכות בהם.

וכמויכ הסלאטס של קראָנ-היימס, שיף לצד ב' לבד, ואין לצד א' שום זכות בה וישאר שם על כלות הלימה, וכן הסך 102 שלאטס חודשוים שנתקבל מבבר של אורלי-חעדסטארט'ט, E.H.S שנתקבל מעד בארא פארק, יהא לצד ב' לבד, ואין לצד א' שום זכות בהם.

GOVERNMENT
EXHIBIT
601
23 Cr. 004 (JHR)

- 2 -

ה] ואחון סלאטס חדשים שיתקבל בעתיד במשך העניים תבואה בעזות השם, יהא בבעלות משותפת בין הצדדים זכות וכות שוה בחלק לכ'יא.

ו] הוסכם שהתוצאות וחזקקא האפיס והמטאיעין, יחולקו ביניהם, כפי ערך וחעבון חסלאטס שיש לכל אחד מהם בהפירמא וכנ'זר.

ז] כל ההתחלקות שיבצולך לרחעשות בחפורמאן, יתקיימם אך ורק בחסבמת שני הצדדים, ובנתגע בשאר שותפות, ובאם לא יוכלו להגוע פלומז השות, יקבלו עצת ביקי שיובחר עיי להכריע הספריקום וכנוגע.

ח] דמי המבירה בעד חמשים אחויים של הפירמא וכות בחסלאטסיס הנוכר הוא סך מיליאון אח'ד שלוש מאות ... $1,550,000.00 U.S

ט] החתנה באופן היותר מעיל, שטום אחד מהצדדים לא יכול לטעון קום לו, נגד שטר זה כדי לבטלו או לגרוע כחו, רק החתנה אהדבה שכל ומן שימצא אפילו דיעה יחודאה, המקיים כח שטר זה, יהא בתוקפו וודזנו אך פוו לכל פרטיה.

יג] החתנה באופן המעיל, שבאופן שיתהוזה איזה דויר או ספק בכל הנוגע לשטר התחתיבות זה, יתדיינו אך ורק אצל בידריו שיבחרו, ולא בערכאות חיע בלי רשות ביד.

_____

ומחיים אנו בזה בחזדאה גמורה, ובמודה פנצי בית דין חשוב, דלא למיחזר בית הלעם, וחתימה ידינו דלמטה תעד עלינו במאמצ עדים כשרים, שכל המבואר בשטר שותפות זה נעשה בקנין גמור אנב סודר, ובאער קניונם ואופנים היותר מועילים על פי דין תורתינו הק', ועפ'י חוקי המדינה, מרצוננו חטוב בלי שום אונס ופיתוי, ובהבנת כל הענינים ובהתחייבות גמורה, בשעבוד הגוף והנכסים מענשוו ובזריר חשוב, דלא כאסמכתא ודלא כטופסי דשטרי, וכדינו תנאו כתיקון וחבמיו וכרומם לברכה, בלי שום טנאום נוספים שאוגם מבוארים בשטר זה, וחתונה שכל מי שיבא כדי רות שבעולם, וישרשו על שטר שותפות זה לבטלו או לבירעו כהו, יהא דבירו בטלך ומבוטל, ולא יועצר לי דינם, לא בדני ישראל ולא בדיניהם, ולעולם יהא וד בעל השטר על העליונח, ויד המוערער על התחתונה, ובזטפו כל המודעות עד סוף כל המדרגות, וצחרוחן וחזמנ ונתנקף שטר שותפות זה, קיובלנו על עצמנו לאחריות וחזק תוקף שטרי שותפות בדחיר בישראל, העשוי כתיקון חבמיו זכרונם לברכה. ולאות אמת וצדק באנו על החתום, יום ... ...

נאם _____ צד א'

נאם _____ צד ב'



**Joint Board of Directors and Policy Council Special Meeting Minutes**
**Zoom Conference Call, April 26th, 2022 (5:30 PM – 6:00 PM)**

**Meeting Participants:**

| | |
|---|---|
| Mr. Yehuda Zorger | BOD, Chairperson |
| Mr. Mordechai A. Weiss | BOD, Member |
| Mr. Shulom (Shaya) Singer | BOD, Member |
| Mr. Eliezer Spitzer | BOD, Member |
| Mr. Mordechai Berger | BOD, Member |
| Ms. Nechama Appel | Policy Council Chairperson |
| Ms. Chana Weiss | Policy Council, Member |
| Mr. Harold Schwartz | PSCHS, Executive Director |
| Ms. Josephine Restivo | PSCHS Program and Operations Director |
| Ms. Chelsea Zhang | PSCHS, Fiscal Officer |

**Call to Order (5:30 PM)**

After thanking participants for joining, Ms. **Nechama Appel**, PC Chairperson, called the special joint BOD and Policy Council special meeting to order and asked Ms. **Josephine Restivo** to speak to the purpose and agenda of the special meeting.

Ms. **Josephine Restivo**, Head Start Director, shared that, in addition to reviewing general updates within the program and providing an open forum for members to discuss progress, questions, and concerns, that the final application for the non-competitive continuation application including Cost-of-Living Adjustment (COLA) and Quality Improvement (QI) was completed and ready for submission by 5/1/2022.

Mr. **Eliezer Spitzer**, a BOD member, asked for clarification on the non-competitive continuation application process and the purpose of COLA and QI funds.

Ms. **Josephine Restivo** went on to explain that each year, direct federal grantees with the Office of Head Start must prepare a budget in advance of the upcoming program year for approval by the Regional Office. As a direct grantee, PSCHS has collaborated with the BOD and PC to review and finalize a budget for the upcoming year.

Ms. **Chelsea Zhang** went on to review some of the specific detailed embedded within the budget narrative. Ms. Zhang explained that this year's COLA supports a 2.28



percent adjustment to increase the pay scales of Head Start and Early Head Start staff, including vacant positions, fringe benefits, and to offset higher operating costs. Quality Improvement funds will allow for meaningful investments to support children, families and staff impacted by trauma.

Ms. **Josephine Restivo** then explained that the application gives a detailed look into the program's plans for the upcoming year across all service areas. While there are no major changes, once the applications are finalized and submitted, it is important that the BOD and PC review and approve everyone for submission to the Regional Office.

Mr. **Shulom Singer**, a BOD member, asked if the application included specific plans and details around parent engagement and family workshops for the next program year.

Ms. **Restivo** confirmed explained that, yes, as was discussed at the previous meeting, the T/TA plan and budget justifications for the EHS-CCP funding application detail preliminary plans for family engagement and ongoing staff professional development; Ms. Restivo then proceeded to share her screen on the Zoom call, reading aloud from the T/TA documentation embedded within the grant's funding application.

Mr. **Yehuda Zorger** thanked Mr. Spitzer and Mr. Springer for their questions, which served as a nice reminder of the details of the applications. He also thanked Ms. Restivo for her recap of the application and a general overview of the steps needed for submission, as well as Ms. Zhang for her thorough review of the budget narrative. Mr. Zorger asserted that it will be a great benefit to the PSCHS community to continue with our EHS-CCP programming and he then opened the floor for questions and comments.

Conversation ensued around orientation/training plans for the upcoming months, to best prepare staff for the new program year.

Mr. **Zorger** initiated a vote for approval of the continuation application's submission including COLA and QI to OHS.

Mr. **Mordechai A. Weiss** a BOD member, seconded the vote, which ultimately received 100% approval from the Board of Directors and the Policy Council.

Mr. **Zorger** thanked the BOD, Policy Council, and all members in attendance for their participation and adjourned the meeting.

GOVERNMENT
EXHIBIT
119
23 Cr. 004 (JHR)

7

December 21, 2021

Ms. Tania Garcia
Supervisory Program Specialist
Office of Head Start, Region II
26 Federal Plaza, Room 4114
New York, N.Y. 10278

**Project Social Care Head Start, Inc.**
**Grant 02HP000274**

Dear Ms. Garcia,

All the best,

Yehuda Zorger, *Chairman of the Board*

Thank you for your continued support and collaboration with Project Social Care Head Start, Inc. ("PSCHS"). Our Board of Directors, Policy Council, and Executive Staff are deeply committed to the provision of high-quality Head Start services to our communities, in full compliance with all federal, state and local laws and regulations.

We have received your letter dated December 7, 2021 and we have completed an investigation of the four (4) complaints set forth therein. Along with our findings, we may report that all of the complaints are unfounded and without merit, that all Federal funds have been used appropriately, and that we have found no violations of our local standards of conduct, our Policies and Procedures, the Head Start Act or the Head Start Program Performance Standards.

GOVERNMENT
EXHIBIT
126
23 Cr. 004 (JHR)

8

# Elements of Each Count

1. Existence of an Agreement to Commit the Crime

2. The Defendant Knowingly and Willfully Joined

3. Overt Act in Furtherance

9

# Elements of Each Count

 1.  Existence of an Agreement to Commit the Crime

 2.  The Defendant Knowingly and Willfully Joined

 3.  Overt Act in Furtherance

10

# Reasons You Know the Defendant Is Guilty

# Elements of Each Count

 1.  Existence of an Agreement to Commit the Crime

 2.  The Defendant Knowingly and Willfully Joined

 3.  Overt Act in Furtherance

12

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes

| No. | Date | Time (ET) | From | To | Detail |
|---|---|---|---|---|---|
| 8 | February 7, 2022 | 12:35:20 PM | A. Rangott | I. Handler | Voice Note: "Good morning, Sruly. Uh, just a quick question to confirm that I have the right names for the board of directors. I need to send this to Chelsea now. It's Yehuda Lieb Zorger, Mordechai A. Weiss, [I/U] Singer, and Ezra Spitzer. Is that correct?" (GX 227A) |
| 9 | February 7, 2022 | 12:48:42: PM | I. Handler | A. Rangott | Text: "Yes" (GX 227) |
| 10 | February 7, 2022 | 1:00:00 PM | A. Rangott | C. Zhang | Email from Rangott PSCHS email account to Zhang under subject line "Board members" providing "the list of board members," listing the title for Zorger as "Chairman of the Board" but not listing titles for any other members (GX 430) |
| 11 | February 7, 2022 | 1:00:26 PM | A. Rangott | I. Handler | Text: "Perfect. Thanks." (GX 227) |



GOVERNMENT
EXHIBIT
1306
23 Cr. 004 (JHR)

14

| 12 | February 7, 2022 | 1:02:03 PM | A. Rangott | I. Handler | Text: "Do you know who has which titles (other then chairmen, for example treasurer etc)" (GX 227) |
|----|------------------|------------|------------|------------|------|
| 13 | February 7, 2022 | 1:02:17 PM | I. Handler | A. Rangott | Text: "We never have them titles" (GX 227) |
| 14 | February 7, 2022 | 1:02:50 PM | A. Rangott | I. Handler | Text: "For the last form( 990) I think we did." (GX 227) |
| 15 | February 7, 2022 | 1:03:06 PM | I. Handler | A. Rangott | Text: "I wasn't involved" (GX 227) |
| 16 | February 7, 2022 | 1:03:15 PM | A. Rangott | I. Handler | Text: "Ok" (GX 227) |



GOVERNMENT
EXHIBIT
1306
23 Cr. 004 (JHR)

| 22 | February 8, 2022 | 12:39:29 PM | A. Rangott | I. Handler | Text: "On a separate note, I need to send to the accountants the titles for the board members. Menachem asked if you can please provide the titles and the adoption date (of position)." (GX 229) |
| 23 | February 8, 2022 | 1:16:52 PM | I. Handler | A. Rangott | Voice Note: "Regarding the titles, it really depends on whatever you want it to be. You'll make one, make Weiss the treasurer, make, uh, make, uh, what's it called? Um, make the guy that, uh, um, make Spitzer, the, the Secretary and shine. And you good, you're done. The other ones are members. That's it. No, there's no, there's no official titles that have to be in there."(GX 229B) |
| 24 | February 8, 2022 | 1:19:38 PM | A. Rangott | I. Handler | Text: "Thank you" (GX 229) |


GOVERNMENT
EXHIBIT
1306
23 Cr. 004 (JHR)

16

| 25 | February 8, 2022 | 3:51:08 PM | A. Rangott | I. Handler | Voice Note: "Okay, so the meeting at this point is, uh, we're done. I just wanted to speak to you at some point to go over with you, the timelines for the new board, um, in the email I think you had sent me was October 28th, 2020. However, we didn't report anything to Head Start, um, and if, except for Zorger, which was added, but, um, we'd have to make that change, I guess at the end of last year. So 2021, where the new board comes in." (GX 229C) |
| 26 | February 8, 2022 | 3:51:25 PM | A. Rangott | I. Handler | Voice Note: "I will, I will have to finalize with Menachem to confirm some details about, um, positions and all that, and also the stuff that might be missing, whether it's the, um, fiscal management slash accountant or the, uh, licensed attorney." (GX 229D) |
| 27 | February 8, 2022 | 3:51:33 PM | A. Rangott | I. Handler | Voice Note: "The main thing I just need from you, if you can confirm the date that we should be using." (GX 229E) |



GOVERNMENT
EXHIBIT
1306
23 Cr. 004 (JHR)

17

| 29 | February 22, 2022 | 2:11:01 PM | A. Rangott | I. Handler | Voice Note: "On a separate notes, do you know, I'm, I'm just looking for any documentation that we have that lists our board members. Do we have, uh, minutes of a meeting that would indicate that we've, these members were nominated or elected? Do we have any official documentation?" (GX 231A) |
|----|-------------------|------------|------------|------------|---|
| 30 | February 22, 2022 | 2:34:45 PM | I. Handler | A. Rangott | Voice Note: "I did create an entire meeting, um, for the, for the move, for the election of those three new members, um, for Spitzer, Singer, and Weiss. Not for Zorger. Zorger, I wasn't involved in. Um, I can create the same thing. I just have to find it. I, I couldn't find it in my emails. I know that I sent it to someone. I have to, I have to look for it. I know that it's somewhere. See, now I have like three computers. I don't know where it is, but it's somewhere and I'm gonna send it to you as soon as I have it." (GX 231B) |
| 31 | February 22, 2022 | 2:36:23 PM | A. Rangott | I. Handler | Text: "I need it urgently. If you can send it if you find it soon. Thanks!" (replying to Voice Note identified as GX 231B) (GX 244) |



GOVERNMENT
EXHIBIT
1306
23 Cr. 004 (JHR)

18

| No. | Date | Time (ET) | From | To | Detail |
|---|---|---|---|---|---|
| 34 | March 2, 2022 | 11:00:13 AM | A. Rangott | I. Handler | Text: "Hi Sruly do you have the minutes? Can you make the dates for ? Can we put the dates for November, December and January ?" (GX 232) |
| 35 | March 2, 2022 | 11:02:05 PM | A. Rangott | I. Handler | Text: "Can you include the words rhe 'board reviewed the fiscal reports including budget reports and credit card reports'" (GX 232) |
| 36 | March 2, 2022 | 11:03:22 AM | A. Rangott | I. Handler | Text: "We need to submit to the fa2 reviewer. She's waiting for them" (GX 232) |
| 37 | March 2, 2022 | 11:04:29 AM | I. Handler | A. Rangott | Text: "I'm in the Bronx, don't think I can have them today. My understanding was that you need by Monday" (GX 232) |
| 38 | March 2, 2022 | 11:05:31 AM | A. Rangott | I. Handler | Text: "Ok. Can you do it for tomorrow? We have to upload them this week" (GX 232) |
| 39 | March 2, 2022 | 11:06:37 AM | I. Handler | A. Rangott | Voice Note: "Um, yes, I'll try to have it by tomorrow." (GX 232A) |
| 40 | March 2, 2022 | 11:07:30 AM | A. Rangott | I. Handler | Voice Note: "Um, is it just we need three months. It's November, December, January, so if you can break them up until three months, it seems that according to the information we have here now, the board is supposed to be meeting monthly. Uh, we had in our notes that they meet twice a year. Maybe physically they meet twice a year, I'm not sure, but they're supposed to be meeting monthly 'cause they're supposed to be reviewing financial statements, um, like the budgets and the credit cards, expenses, et cetera." (GX 232B) |
| 41 | March 2, 2022 | 11:07:39 AM | A. Rangott | I. Handler | Text: "Thank you again." (GX 232) |



GOVERNMENT EXHIBIT 1306
23 Cr. 004 (JHR)

| No. | Date | Time (ET) | From | To | Detail |
|-----|------|-----------|------|-----|--------|
| 42 | March 2, 2022 | 11:09:00 AM | I. Handler | A. Rangott | Voice Note: "We did twice a year. If you wanna do four times a year.  There's no reason to do three months in a row every month. I don't think that makes any sense." (GX 232C) |
| 43 | March 2, 2022 | 11:12:00 AM | A. Rangott | I. Handler | Text: "They are asking us for the board meetings for the last '4 consecutive months'" (GX 232) |
| 44 | March 2, 2022 | 11:12:25 AM | A. Rangott | I. Handler | Text: "Seems to be indicating that the board is supposed to meet monthly" (GX 232) |
| 45 | March 2, 2022 | 11:15:09 AM | I. Handler | A. Rangott | Voice Note: "I am pretty sure that's incorrect. Would you mind asking Belinda, um, what the requirements are? I think it's completely up to each agency. That's been my experience, but, um, find out for sure. Ask Belinda. Email her." (GX 232D) |
| 46 | March 2, 2022 | 11:16:25 AM | A. Rangott | I. Handler | Text: "Ok" (GX 232) |



GOVERNMENT
EXHIBIT
1306
23 Cr. 004 (JHR)

| 52 | March 3, 2022 | 10:37:12 AM | A. Rangott | I. Handler | Text: "Let me know when the minutes are ready so that I can review and then send them off with the other documents to the FA2 mock review team. Thanks" (GX 232) |
| --- | --- | --- | --- | --- | --- |
| 53 | March 3, 2022 | 11:51:47 AM | A. Rangott | I. Handler | Voice Note: "I got the minutes. I just reviewed it. It's perfect. Uh, absolutely perfect. Thank you very much. We need one more, Sruly. If you can just do them, if it's a short one with regards to the C-A-C-F-P issue. 'cause it's obviously a serious issue and, um, you can probably say, um, um, that, uh." (GX 232E) |
| 54 | March 3, 2022 | 11:52:26 AM | A. Rangott | I. Handler | Voice Note: "The C-A-C-F-P was the first one. The second one also is just that there's still a, and now that the grants have been merged or the grants were -- are being merged, there was a another issue that's come up. The only thing is if you can change the dates. I think the one that you sent me before January should really be probably November, December, if possible. And then the one with regards to C-A-C-F-P and the grant merging should be the one for January. 'cause that's the more current one." (GX 232F) |
| 55 | March 3, 2022 | 11:52:33 AM | A. Rangott | I. Handler | Voice Note: "And it does not have to be long. It can be one page. Very short, because this is an interim type of meeting for an urgent matters." (GX 232G) |



GOVERNMENT
EXHIBIT
1306
23 Cr. 004 (JHR)

21

| 61 | March 3, 2022 | 11:56:14 AM | I. Handler | A. Rangott | Text: "When did you submit Chelsea's name to Ohs?" (GX 232) |
|----|----|----|----|----|----|
| 62 | March 3, 2022 | 11:58:17 AM | I. Handler | A. Rangott | Text: "👍" (GX 232) |
| 63 | March 3, 2022 | 11:58:32 AM | A. Rangott | I. Handler | Text: "Checking" (GX 232) |
| 64 | March 3, 2022 | 11:59:43 AM | A. Rangott | I. Handler | Text: "Beginning January" (GX 232) |
| 65 | March 3, 2022 | 12:00:10 PM | I. Handler | A. Rangott | Text: "I'll do a short meeting in December to approval her" (GX 232) |
| 66 | March 3, 2022 | 12:01:37 PM | A. Rangott | I. Handler | Voice Note: "So with regards to the question for, for Chelsea, it was January 12th was when that was agreed. January 13th when it was sent off to Head Start. So the other minutes that you sent me earlier, it says January 5th, which, which would precede when, um, which would be preceding the actual date we submitted, which is makes sense. 'cause we had the meeting on the fifth. On the 12th, we submitted it to them. And then the 13th, 12th week we, we, we, uh, send out the letter to them and the 13th we have it at, uh, the office of Head Start." (GX 232J) |
| 67 | March 3, 2022 | 12:01:50 PM | A. Rangott | I. Handler | Text: "Ok 👍" (direct reply to "I'll do a short meeting in December to approval her") (GX 232) |



GOVERNMENT
EXHIBIT
1306
23 Cr. 004 (JHR)

| 68 | March 3, 2022 | 12:46:07 PM | A. Rangott | I. Handler | Voice Note: "Sruly, I just review the uh, minutes. They're perfect. The only thing if you can just change on the last minutes for February, just remove my name from that list. There's just one small, tiny paragraph. If you want to put anything, maybe you can put Zaharia Wechsler, the uh, accountant, but otherwise I would just remove it out completely." (GX 232N) |
| 69 | March 3, 2022 | 12:46:20 PM | A. Rangott | I. Handler | Voice Note: "But overall, these minutes are excellent. Thank you very much again." (GX 232O) |
| 70 | March 3, 2022 | 12:46:36 PM | I. Handler | A. Rangott | Voice Note: "I'm not in the office anymore. Go ahead. Just do it. Change the names. It's in Word." (GX 232P) |
| 71 | March 3, 2022 | 12:49:58 PM | A. Rangott | I. Handler | Voice Note: "Thanks. I made the change. I just sent you a copy for yourself." (GX 232Q) |

GOVERNMENT
EXHIBIT
1306
23 Cr. 004 (JHR)

23

24

# Reasons You Know the Defendant Is Guilty

1.  His Voice Notes with Isidore Handler About Making Up Board Minutes

25

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes
2. He Was Hired to Be Lieberman's Inside Man

26

## Employment Agreement

Project Social Care Head Start located at 1380 59th St, Brooklyn, NY 11219, United States (hereinafter called "The Employer") and Arie Rangott residing at 102 Lavenham ct. Toms River New Jersey (hereinafter called "The Employee") hereby agree as follows:

### Article 1 - Employment
The Employer hereby agrees to employ the Employee as the Director and the Employee agrees to be employed by the Employer.

### Article 2- Job Description
The Employee shall perform the following duties and report to the President:
As Director of the organization, the Employee will oversee all senior staff and ensure they are working towards the goals, set out jointly by the Board and the Employee.

### Article 4 - Date of Hire
The Employer hereby agrees to employ the Employee as of May 24, 2021

### Article 5 - Employment Term
The Employer hereby agrees to employ the Employee for a minimum 1 year term.

---

**Sent:** Tuesday, June 8, 2021 10:10:58 PM
**From:** Max Lieberman <maxlieberman@yahoo.com>
**To:** Arie Rangott <arangott@gmail.com>
**Cc:** Martin Handler <mhandler@beanstalkacademy.com>
**Subject:** Emailing CCF06082021_0001-1.pdf
CCF06082021_0001-1.pdf

The parties have entered into this Agreement on _____ May 24 2021

Employee (Signature)

Employer (Signature)

Employer (Signature)

**GOVERNMENT EXHIBIT 402**
23 Cr. 004 (JHR)

---

**From:** Marty H [martinhandler1@gmail.com]
**Sent:** 6/11/2021 1:00:25 PM
**To:** Arie Rangott [arangott@gmail.com]
**Subject:** Signed agreement
**Attachments:** Rangott employment May 24 2021.pdf;

The parties have entered into this Agreement on _____ May 24 2021

Employee (Signature)



Employer (Signature)

Employer (Signature)

**GOVERNMENT EXHIBIT 405**
23 Cr. 004 (JHR)

27

**Employment Agreement**

Project Social Care Head Start located at 1380 59th St, Brooklyn, NY 11219, United States (hereinafter called "The Employer") and Arie Rangott residing at 102 Lavenham ct. Toms River New Jersey (hereinafter called "The Employee") hereby agree as follows:

**Article 1 - Employment**
The Employer hereby agrees to employ the Employee as the Director and the Employee agrees to be employed by the Employer

**Article** 
The Er
As Dir
they ar

**Article**
The Er

**Article**
The Er

**GOVERNMENT EXHIBIT**
402
23 Cr. 004 (JHR)

## Article 6 – Salary

1. The Employer agrees to pay the Employee a base annual salary of USD$125,000 payable biweekly until May 23, 2021.
2. The Employer agrees to pay the Employee a base annual salary of USD$150,000 payable biweekly beginning August 24, 2021.
3. The Employee will receive 4 weeks paid vacation annually. Additionally, the Employee will not have to work on Jewish holidays including Chol Hamoed.
4. The Employee and his family will be entitled to and be provided with full medical benefits.
5. The Employee will have an annual salary increase review.

28

Q.  Were you yourself involved in Mr. Rangott's hiring?

A.  No.

Q.  Did you have any conversations with anyone regarding Mr. Rangott's hiring at Project Social Care?

A.  Yes.

Q.  With whom?

A.  Isidore Handler and Martin Handler and Max Lieberman.

Q.  Well, what did you discuss with them?

A.  That he was — he was their — that Max Lieberman hired Mr. Rangott to fill the position eventually as executive director.

Q.  To fill your position?

A.  Yes.

29

On Jun 24, 2021, at 11:51 AM, Chelsea Zhang
<chelsea@pscheadstart.com> wrote:


Good morning Arie,

I noticed that on your invoices there is a note to make the check payable to
Arie Rangott, however, the invoice is from AR Consulting Services.
We can only make the check to what's on the invoice, so either you can
change the invoice from "AR Consulting Services" to "Arie Rangott", or I
can make the check to AR consulting Services.

Please let me know, thanks!

Chelsea
<W9 blank.pdf>



30

**From:** Arie Rangott [Arie@pscheadstart.com]
**Sent:** 6/23/2021 1:54:58 PM
**To:** Arie Rangott [arangott@gmail.com]
**Subject:** Internal Contract - Sara May 24 2021
**Attachments:** CCF06232021.pdf

Your message is ready to be sent with the following file or link attachments:

CCF06232021

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

---

**EXHIBIT A**

**DUTIES, TERM, AND COMPENSATION**

**DUTIES:** The Contractor will perform the work or service described in the Scope of Work (Exhibit B). [He or she] will report directly to __The Review Board__ and to any other party designated by __The Executive Director__ in connection with the performance of the duties under this Agreement and shall fulfill any other duties reasonably requested by the PSCHS and agreed to by the Contractor.

**FURNISHED BY PSCHS:** PSCHS shall furnish the following services, data and/or information to the Contractor:

- All materials and documents necessary to produce work product. Materials may be purchased by the contractor with prior approval and receipts submitted to PSCHS for reimbursement.

- Access to all PSCHS directors and committee members to gain information and assistance in completing the contract

**FURNISHED BY THE CONTRACTOR:** The Contractor shall furnish the equipment and software necessary to perform the duties in Exhibit B.

**TERM:**     This engagement shall commence upon execution of this Agreement and shall continue in full force and effect through __December 2020__ or earlier upon completion of the Contractor's duties under this Agreement. The Agreement may only be extended thereafter by mutual agreement, unless terminated earlier by operation of and in accordance with this Agreement.

**COMPENSATION:** As full compensation for the services rendered pursuant to this Agreement, PSCHS shall pay the Contractor at the hourly rate of __$165__ per hour, with total payment not to exceed $150,000 without prior written approval by an authorized representative of PSCHS. Such compensation shall be payable within 30 days of receipt of Contractor's monthly invoice for services rendered supported by reasonable documentation.

**GOVERNMENT EXHIBIT 461**
23 Cr. 004 (JHR)

**FURNISHED BY THE CONTRACTOR:** The Contractor shall furnish the equipment and software necessary to perform the duties in Exhibit B.

**TERM:**  This engagement shall commence upon execution of this Agreement and shall continue in full force and effect through _December 31, 2021_ or earlier upon completion of the Contractor's duties under this Agreement. The Agreement may only be extended thereafter by mutual agreement, unless terminated earlier by operation of and in accordance with this Agreement.

**COMPENSATION:** As full compensation for the services rendered pursuant to this Agreement, PSCHS shall pay the Contractor at the hourly rate of _$165_ per hour, with total payment not to exceed $150,000 without prior written approval by an authorized representative of PSCHS. Such compensation shall be payable within 30 days of receipt of Contractor's monthly invoice for services rendered supported by reasonable documentation.

GOVERNMENT
EXHIBIT
461
23 Cr. 004 (JHR)

**Notices.** Any and all notices, demands, or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service. If such notice, demand or other communication is given by mail, such notice shall be conclusively deemed given five days after deposit thereof in the United States mail addressed to the party to whom such notice, demand or other communication is to be given as follows:

If to the Contractor: _AR Consulting_
Name: _Arie Rangott_
Street address: _102 Haven hun Ct._
City, state, zip: _Toms River, NJ, 08755_

If to PSCHS:
Project Social Care Head Start, Inc.
5902 14th Avenue
Brooklyn, NY 11219

Any party hereto may change its address for purposes of this paragraph by written notice given in the manner provided above.

**Modification or Amendment.** No amendment, change or modification of this Agreement shall be valid unless in writing signed by the parties hereto.

**Entire Understanding.** This document and any exhibit attached constitute the entire understanding and agreement of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

**Unenforceability of Provisions.** If any provision of this Agreement, or any portion thereof, is held to be invalid and unenforceable, then the remainder of this Agreement shall nevertheless remain in full force and effect.

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and year first written above. The parties hereto agree that facsimile signatures shall be as effective as if originals.

| PSCHS/Name | Title | Signature | Date |
|---|---|---|---|

_AR Consulting / Arie Rangott_    _Consultant_    _[signature]_    _May 3, 2021_

| Contractor/Name | Title | Signature | Date |
|---|---|---|---|

GOVERNMENT
EXHIBIT
461
23 Cr. 004 (JHR)

33

**From:** Arie Rangott [Arie@pscheadstart.com]
**Sent:** 6/23/2021 2:18:55 PM
**To:** Arie Rangott [arangott@gmail.com]
**Attachments:** 2021_06_23_08_16_38.pdf; 2021_06_23_08_17_30.pdf; 2021_06_23_08_17_52.pdf; 2021_06_23_08_19_18.pdf;
2021_06_23_08_19_49.pdf; Headstart Payments.xlsx; Inv_1030_from_Arie_Rangott_19588.pdf;
Inv_1030_from_Arie_Rangott_V2.pdf; Inv_1031_from_Arie_Rangott_18996.pdf;
Inv_1031_from_Arie_Rangott_V2.pdf; PSCH Consultant Contract Template ($150k cap).pdf



**Notices.** Any and all notices, demands, or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service. If such notice, demand or other communication is given by mail, such notice shall be conclusively deemed given five days after deposit thereof in the United States mail addressed to the party to whom such notice, demand or other communication is to be given as follows:

If to the Contractor: _____
Name: _____
Street address: _____
City, state, zip: _____

If to PSCHS:
Project Social Care Head Start, Inc.
5902 14th Avenue
Brooklyn, NY 11219

Any party hereto may change its address for purposes of this paragraph by written notice given in the manner provided above.

**Modification or Amendment.** No amendment, change or modification of this Agreement shall be valid unless in writing signed by the parties hereto.

**Entire Understanding.** This document and any exhibit attached constitute the entire understanding and agreement of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

**Unenforceability of Provisions.** If any provision of this Agreement, or any portion thereof, is held to be invalid and unenforceable, then the remainder of this Agreement shall nevertheless remain in full force and effect.

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and year first written above. The parties hereto agree that facsimile signatures shall be as effective as if originals.

| PSCHS/Name | Title | Signature | Date |
|---|---|---|---|
| Contractor/Name | Title | Signature | Date |

GOVERNMENT
EXHIBIT
460
23 Cr. 004 (JHR)

From:        Arie Rangott [Arie@pscheadstart.com]
Sent:        6/23/2021 1:54:58 PM
To:          Arie Rangott [a-rangott@gmail.com]
Subject:     Internal Contract - Sara May 24 2021
Attachments: CCF06232021.pdf

Your message is ready to be sent with the following file or link attachments:

CCF06232021

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

---

**Notices.** Any and all notices, demands, or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to  another party if personally served, or if deposited  in the United States mail, certified or  registered, postage prepaid, return receipt requested.  If such notice or demand is served  personally, notice shall be deemed constructively made at the time of such personal service.  If such notice, demand or other communication is given by mail, such notice shall be  conclusively deemed given five days after deposit thereof in the United States mail  addressed to the party to whom such notice, demand or other communication is to be given  as follows:

If to the Contractor: _____AR Consulting_____
Name: _____Aris Rangott_____
Street address: ____182  Idlewham Ct.____
City, state, zip: Toms River, NJ, 08755

If to PSCHS:
Project Social Care Head Start, Inc.
5902 14th Avenue
Brooklyn, NY 11219

Any party hereto may change its address for purposes of this paragraph by written notice given  in the manner provided above.

**Modification or Amendment.** No amendment, change or modification of this Agreement  shall be valid unless in writing signed by the parties hereto.

**Entire  Understanding.** This document and any exhibit attached constitute the entire understanding and agreement of the parties, and any and all prior agreements,  understandings, and representations are hereby terminated and canceled in their entirety  and are of no further force and effect.

**Unenforceability of Provisions.** If any provision of this Agreement, or any portion thereof, is  held to be invalid and unenforceable, then the remainder of this Agreement shall  nevertheless remain in full force and effect.

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and  year first written above.  The parties hereto agree that facsimile signatures shall be effective  as if originals.

| PSCHS/Name | Title | Signature | Date |
|---|---|---|---|
| AR Consulting/ Arie Rangott | Consultant | | May 3, 2021 |
| Contractor/Name | Title | Signature | Date |

GOVERNMENT
EXHIBIT
461
23 Cr. 004 (JHR)

**From:** Arie Rangott <arangott@gmail.com>
**Sent:** Tuesday, June 15, 2021 8:16 AM
**To:** Max Lieberman <maxlieberman@yahoo.com>
**Subject:** Contract for my wife

Hi Menachem,

Please review the attached contract.
I need to send it today to Chaim (your brother's guy).

Thank you,
-Arie



Employee Signature                May 24, 2021
                                          Date

Company Official Signature       May 24, 2021
                                          Date

GOVERNMENT
EXHIBIT
614
23 Cr. 004 (JHR)

Simche Kinder Inc.
808 Myrtle Ave.
Brooklyn New York 11206
718-596-3632

Aliza Engehausen
102 Lavenham Ct.
Toms River, New Jersey  08755

Employment Contract

This contract, dated on the 24 day of May in the year 2021, is made between Simche Kinder Inc. of Brooklyn, New York, and Aliza Engehausen of Toms River, New Jersey. This document constitutes an employment agreement between these two parties and is governed by the laws of New York.

3. Compensation
As compensation for the services provided, the Employee shall be paid a wage of $120,000/per annum and will be subject to an annual performance review. All payments shall be subject to mandatory employment deductions (State & Federal Taxes, Social Security, Medicare).

36

**From:** judy@wellingtonabstract.com [judy@wellingtonabstract.com]
**Sent:** 8/2/2021 3:51:31 PM
**To:** arangott@gmail.com
**Subject:** 1689 AMANDA CT, TOMS RIVER, NJ 08755
**Attachments:** egenhausenloandocs.pdf

Please see attached scanned closing docs per your request.

# Closing Disclosure

This form is a statement of final loan t...
document with your Loan Estimate.

## Closing Information

| | |
|---|---|
| Date Issued | 7/30/2021 |
| Closing Date | 7/30/2021 |
| Disbursement Date | 7/30/2021 |
| Settlement Agent | Wellington Abstract, LLC |
| File # | WA-6716 |
| Property | 1689 Amanda Ct Toms River , NJ 08753 |
| Sale Price | $820,000 |

## Transaction Information

| | |
|---|---|
| Borrower | Aliza Engehausen 102 Lavenham Court Toms River , NJ 08755 |
| Seller | Del Pizzo Nancy 25 NJ-37 W Toms River , NJ 08753 |
| Lender | United Wholesale Mortgage, LLC |

Aliza Engehausen

attest that the following statements regarding their ability to qualify for the Purchase
1689 AMANDA CT, TOMS RIVER, NEW JERSEY 08753    are accurate.

## I.  EMPLOYMENT/INCOME

> I, Aliza Engehausen, **am** currently actively employed with
> Simche Kinder Inc as of JULY 30, 2021,
> I am still compensated $ 10,000.00 monthly.

Initial here: 

### 1b. Current Employment/Self Employment and Income

☐ *Does not apply*

Employer or Business Name: Simche Kinder Inc          Phone (718)596-3632

Street 808 Myrtle Avenue _____ Unit #_____

City Brooklyn _____ State NY  Zip 11206 Country US

Position or Title Director
Start Date 05/24/2021 _____ (mm/dd/yyyy)
How long in this line of work? _____ Years 2 Months

**Check if this statement applies:**
☐ I am employed by a family member, property seller, real estate agent, or other party to the transaction.

☐ Check if you are the Business Owner or Self-Employed
○ I have an ownership share of less than 25%.
○ I have an ownership share of 25% or more.

**Gross Monthly Income**

| | | |
|---|---|---|
| Base | $ 10,000.00 | /month |
| Overtime | $ _____ | /month |
| Bonus | $ _____ | /month |
| Commissions | $ _____ | /month |
| Military Entitlements | $ _____ | /month |
| Other | $ _____ | /month |
| **TOTAL** | $ 10,000.00 | /month |

Monthly Income (or Loss) $_____



GOVERNMENT EXHIBIT
464
23 Cr. 004 (JHR)

37

From:       Gitty Mertz [gmertz@themintcapital.com]
Sent:       6/28/2021 5:27:11 PM
To:         Arie Rangott [arangott@gmail.com]
CC:         Chaim Tarkieltaub [chaim@themintcapital.com]; Ruchy Greenfeld [rgreenfeld@themintcapital.com]
Subject:    RE: Mortgage-1689 Amanda Ct Toms River, NJ 08753

Hi,

I still need the following.

- Copy of your most recent 30-day paystubs.
- Copy of cleared check given for deposit, along with a bank statement evidencing the withdrawal.

Thank you.



GOVERNMENT
EXHIBIT
462
23 Cr. 004 (JHR)

38

**From:** Max Lieberman [maxlieberman@yahoo.com]
**Sent:** 6/29/2021 7:06:58 PM
**To:** Arie Rangott [arangott@gmail.com]
**Subject:** Fw: Aliza Engehausen
**Attachments:** Document1.docx; Pay Stub_7_1_2021.pdf

**Personal Earning Statement**

| Company | Employee |
|---|---|
| SIMCHE KINDER INC | Aliza Engehausen - 010253 |
| 808 MYRTLE AVENUE | XXX-XX-3417 |
| BROOKLYN, NY 11206 | 102 Lavenham Ct |
| (718)596-3632 ext 130 | Toms River, NJ 08755 |

To: Aliza Engehausen
From: Payroll department
Subject: First paycheck payment

Please find enclosed your first paycheck. As you started in the middle of our payroll cycle, your first weeks' pay is included in the June 15th paycheck.

Thank you.

| Earnings | | | | | | |
|---|---|---|---|---|---|---|
| Earnings | Department | Job | | Rate | Hours | Amount |
| Salary | SA | | | $- | 0.00 | $7,500.00 |
| **Total Gross** | | | | | 0.00 | $7,500.00 |

$120,000 (annual pay), paid over 24 payment (the 1st and the 15th of the month).

$120,000 /24 = $5,000

Payment for May 24-June 1 = $2,500

Payment for June 1 – June 15th = $5,000

Total $7,500

GOVERNMENT EXHIBIT 463 23 Cr. 004 (JHR)

39

This letter is in response to the enclosed subpoena/investigative request dated July 26, 2024 and received in this office on July 29, 2024, regarding the above referenced file number.

Please be advised that based on the information provided, the Department performed a diligent search and did not locate any responsive records during the requested timeframe for the following individuals/entities:

- Aliza Engehausen
  SSN: ▮▮▮▮▮▮▮
  DOB: December 14, 1975



**GOVERNMENT EXHIBIT 1605**
23 Cr. 004 (JHR)

40

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes

2. He Was Hired to Be Lieberman's Inside Man

41

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes
2. He Was Hired to Be Lieberman's Inside Man
3. He Acted Like Lieberman Was His Boss

42

**From:** Arie Rangott <arangott@gmail.com>
**Sent:** Tuesday, August 31, 2021 6:50:21 PM
**Subject:** Status
**To:** Max Lieberman <maxlieberman@yahoo.com>

Hi Menachem,

In order not to let something slip through the cracks, Here is a list of items we spoke about (and voice noted) today.

1. Setup an appointment with Bank of America for tomorrow at 1pm.
2. Arrange for a meeting / email exchange with the "bosses" at Head Start (Keith Chin etc), regarding the merging of grants and to discuss the implication.
3. Notify Headstart of the changes to the Board of Directors.
4. Notify Headstart of the departure of Harold and the new acting Executive Director.
5. Notify Headstart of the interim Fiscal person filling in for Sara.
6. Obtain the resignation letters from the outgoing board members.
7. Find out if any teacher from Tot Spot has not been processed (Sapphire).
8. Obtain the letter needed from the board for the Bank.


Status Update:

1. Done. Appointment is set for 1pm.
2. Working on this with Josephine tomorrow.
3. Spoke to Sruly and we will work on this over the next week.
4. See #3
5. Sruly believes that Chelsea should simply notify Headstart that she is taking care of the Fiscal. I would suggest we wait until next week, and work overtime to find someone now, so that we can include the new Fiscal person with the other changes.
6. Waiting for that from you. Also please confirm that Herbst is staying on for now.
7. Currently Suri Oberlander and Gitty Moskowitz have not been finger printed yet. They are scheduled to do so in the following weeks. As for the last teacher, Chumy Lefkowitz, we don't have documentation for her yet.
8. Sruly is working on that now.

Thanks
-Arie



GOVERNMENT
EXHIBIT
415
23 Cr. 004 (JHR)

Ms. Zhang, as time passed, did your understanding of who the defendant reported to change or develop in any way?

A.   Yes.

Q.   How so?

A.   It was during the just daily observation I realized he was reporting to Max Lieberman.

Zhang Testimony – PP. 607

Q.  In September 2021, who was acting as the assistant or shadow executive director of Project Social Care?

A.  Mr. Rangott.

Q.  At the time you received this email in September 2021, did you understand why your password was being changed?

A.  Yes.

Q.  Based on what?

A.  Based on Mr. Zorger coming in and Mr. Max Lieberman coming in and the board of directors changing.

Q.  What was your understanding of why you received this email?

A.  That they were taking all control of Project Social Care away from me.

Q.  When you say "they," who are you referring to?

A.  Max Lieberman, Mr. Zorger, and Mr. Rangott.

Schwartz Testimony – PP. 1011-1012

45

Q.  After Simche Kinder became a partner, how often, if at all, did you begin seeing Mr. Lieberman at the Project Social Care offices?

A.  He would come there from time to time.

Q.  What was your understanding about why he was asking you about payments to other entities?

A.  He was very involved in Project Social Care's leadership.

Q.  But you used the word "interest," so what did you mean by that?

A.  Financial interest.

Q.  When you say financial interest, what do you mean by that?

A.  Being a part owner.

Q.  A part owner of what?

A.  Project Social Care.

Neuman Testimony – PP. 1262 - 1264

46

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes

2. He Was Hired to Be Lieberman's Inside Man

3. He Acted Like Lieberman Was His Boss

47

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes
2. He Was Hired to Be Lieberman's Inside Man
3. He Acted Like Lieberman Was His Boss
4. His Lies to OIG About Lieberman

48

Exhibit Number:                   GX 106

Date of Recording:                September 2, 2022

Participants:

    Speaker 1: Michelle Sperruggia

    Speaker 2: Arie Rangott

    Speaker 3: Marissa Hill

    Speaker 4: Mindy Pava



GOVERNMENT
EXHIBIT
106-T
23 Cr. 004 (JHR)

| Sperruggia: | Okay, great. And so when you had gotten the job as a consultant for social care in May of 2021, who was it that hired you? |
|---|---|
| Rangott: | Um, Mr. Schwartz. Harold Schwartz. |



Q. Were you yourself involved in Mr. Rangott's hiring?

A. No.

Q. Did you have any conversations with anyone regarding Mr. Rangott's hiring at Project Social Care?

A. Yes.

Q. With whom?

A. Isidore Handler and Martin Handler and Max Lieberman.

Q. Well, what did you discuss with them?

A. That he was — he was their — that Max Lieberman hired Mr. Rangott to fill the position eventually as executive director.

Q. To fill your position?

**Schwartz Testimony – PP. 997-998**

A. Yes.

## Employment Agreement

Project Social Care Head Start located at 1380 59th St, Brooklyn, NY 11219, United States (hereinafter called "The Employer") and Arie Rangott residing at 102 Lavenham ct. Toms River New Jersey (hereinafter called "The Employee") hereby agree as follows:

### Article 1 - Employment
The Employer hereby agrees to employ the Employee as the Director and the Employee agrees to be employed by the Employer.

### Article 2- Job Description
The Employee shall perform the following duties and report to the President: As Director of the organization, the Employee will oversee all senior staff and ensure they are working towards the goals, set out jointly by the Board and the Employee.

### Article 4 - Date of Hire
The Employer hereby agrees to employ the Employee as of May 24, 2021

### Article 5- Employment Term
The Employer hereby agrees to employ the Employee for a minimum 1 year term.

---

**Sent:** Tuesday, June 8, 2021 10:10:58 PM
**From:** Max Lieberman <maxlieberman@yahoo.com>
**To:** Arie Rangott <arangott@gmail.com>
**Cc:** Martin Handler <mhandler@beanstalkacademy.com>
**Subject:** Emailing CCF06082021_0001-1.pdf
CCF06082021_0001-1.pdf

The parties have entered into this Agreement on _____ May 24 2021

Employee (Signature)

Employer (Signature)

Employer (Signature)

> **GOVERNMENT EXHIBIT**
> **402**
> 23 Cr. 004 (JHR)

---

**From:** Marty H [martinhandler1@gmail.com]
**Sent:** 6/11/2021 1:00:25 PM
**To:** Arie Rangott [arangott@gmail.com]
**Subject:** Signed agreement
**Attachments:** Rangott employment May 24 2021.pdf;

The parties have entered into this Agreement on _____ May 24 2021

Employee (Signature)

Employer (Signature)

Employer (Signature)

> **GOVERNMENT EXHIBIT**
> **405**
> 23 Cr. 004 (JHR)



51

| Exhibit Number: | GX 106 |
|---|---|
| Date of Recording: | September 2, 2022 |
| Participants: | |

Speaker 1: Michelle Sperruggia

Speaker 2: Arie Rangott

Speaker 3: Marissa Hill

Speaker 4: Mindy Pava

**GOVERNMENT EXHIBIT 106-T**
23 Cr. 004 (JHR)

[Start of Clip 9 at 0:15:10]

Sperruggia:     Okay. I have a few names that I would like to ask you if you're familiar with. Um, are you familiar with an individual named Max Lieberman?

Rangott:        Yes, he's one of our partner sites.

Sperruggia:     Okay. And the, which partner site is he with?

Rangott:        Uh, the, or the, the name of the, that organization is Simcha Kinder.

Sperruggia:     Can you spell that please?

Rangott:        It's S-I-M-C-H-A-K-I-N-D-E-R.

Sperruggia:     Okay. And, and what is his position at that site?

Rangott:        I believe he's the, the director of that site, partner site. Uh, there's, uh, we have a few, a few different partners and, um, they're directors of those sites itself that we deal with directly.

[End of Clip 9 at 0:16:01]



# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes
2. He Was Hired to Be Lieberman's Inside Man
3. He Acted Like Lieberman Was His Boss
4. His Lies to OIG About Lieberman

54

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes
2. He Was Hired to Be Lieberman's Inside Man
3. He Acted Like Lieberman Was His Boss
4. His Lies to OIG About Lieberman
5. His Lies to OIG About Isidore Handler

| Exhibit Number: | GX 106 |
|---|---|
| Date of Recording: | September 2, 2022 |

Participants:

Speaker 1: Michelle Sperruggia

Speaker 2: Arie Rangott

Speaker 3: Marissa Hill

Speaker 4: Mindy Pava

**GOVERNMENT EXHIBIT 106-T**
23 Cr. 004 (JHR)

| Sperruggia: | Do you know of an individual named Isidore Handler? |
|---|---|
| Rangott: | Isidore Handler is, was a consultant that they had in the past. |
| Sperruggia: | Oh, so he had kind of the same position that you did? |
| Rangott: | I think he was, he was, he was doing consultant for compliancy, if I remember. 'cause I spoke to him think twice in the past, um, as I was starting up to ask him questions specifically related to the Head Start performance and standards. But he was a consultant that they used to use in the past. |
| Sperruggia: | Oh, okay. So he's not with the, with the organization any longer? |
| Rangott: | No. He's, he is not a, he's not an employee for sure not. |

56

| Participants | Date Range | Number of Communications |
| --- | --- | --- |
| Arie Rangott (5144975677)<br>Isidore Handler[2] | August 23, 2021 | 9 |
| 15144975677@s.whatsapp.net Arie Rangott<br>19179687854@s.whatsapp.net Isidore Handler (owner) | June 20, 2021 –<br>December 14, 2022 | 593 |
| 19179687854@s.whatsapp.net Isidore Handler (owner)<br>1347534654@s.whatsapp.net Arie Rangott | July 6, 2021 –<br>August 2, 2021 | 45 |
| | | **647 (total)** |

GOVERNMENT
EXHIBIT
1309
23 Cr. 004 (JHR)

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes
2. He Was Hired to Be Lieberman's Inside Man
3. He Acted Like Lieberman Was His Boss
4. His Lies to OIG About Lieberman
5. His Lies to OIG About Isidore Handler

58

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes
2. He Was Hired to Be Lieberman's Inside Man
3. He Acted Like Lieberman Was His Boss
4. His Lies to OIG About Lieberman
5. His Lies to OIG About Isidore Handler
6. He Tampered with Zhang's OIG Interview and Helped Coordinate Everyone's Lies

59

Q. All right. You mentioned having two laptops. Can you describe what the first laptop was being used for.

A. The first laptop is being used for this Microsoft Teams interview with the OIG staff.

Q. And what was the second laptop being used for?

A. The second laptop is being used to have the Zoom meeting with Arie.

**Zhang Testimony — PP. 633**

A. So my second laptop is on Microsoft — is on a Zoom meeting which Arie shared his screen.

Q. What does it mean for the defendant to have shared his screen?

A. Meaning I can see his screen from that Zoom meeting.

Q. So, in other words, what was appearing on the screen that you were looking at was the defendant's computer screen?

A. Correct.

Q. And what was displayed on the defendant's computer screen that you could see through the Zoom meeting?

A. Word document, Microsoft Word.

Q. And what was in that document? Anything?

A. No, nothing. It's blank.

Q. And we'll get to specific instances in a minute, but what happened with that blank document during your interview?

A. Arie sometimes type words and sentences there, and I read it.

**Zhang Testimony — PP. 635-636**

Q. At the top of this clip or slightly earlier, when you asked

again for a copy of the complaint, why did you ask that?

A. I got a message from my second screen.

Zhang Testimony – PP. 644

| Exhibit Number: | GX 102 |
|---|---|
| Date of Recording: | August 5, 2022 |
| Participants: | |

Speaker 1: Michelle Sperruggia

Speaker 2: Chelsea Zhang

Speaker 3: Marissa Hill

**GOVERNMENT EXHIBIT 102-T**
23 Cr. 004 (JHR)

| Zhang: | So, we provide a few documents, but I believe those document you can ask Head Start for. Head Start has everything. |
|---|---|
| Sperruggia: | Okay. Do you recall which documents those were? |
| Zhang: | I, I don't, but, um, I'm not comfortable answering those questions. I feel it's, it's more about internal, our internal documents with Head Start. |
| Sperruggia: | Ok. |

62

| | |
|---|---|
| Exhibit Number: | GX 102 |
| Date of Recording: | August 5, 2022 |
| Participants: | |

**GOVERNMENT EXHIBIT 102-T**
23 Cr. 004 (JHR)

    Speaker 1: Michelle Sperruggia

    Speaker 2: Chelsea Zhang

    Speaker 3: Marissa Hill

Hill:               Are you talking to someone else during this

                    interview?

Zhang:              No.

Hill:               You're not emailing with someone?

Zhang:              No.

Hill:               Or like Teams chatting with them?

Zhang:              No.

63

Q.  Did you ultimately follow this request to keep your
interview confidential?

A.  No.

Q.  Who did you speak with about your interview after it was
over?

A.  I spoke with Arie, and I spoke with Max Lieberman.

Q.  Did you speak to them together or separately?

A.  The next business day, on Monday, I spoke with -- in the
same office.

Zhang Testimony – PP. 644

64

A.  At the meeting there was Isidore Handler, Chelsea Zhang,
Josephine Restivo, Arie Rangott, and Yehuda Zorger was there
for part of the meeting.  I don't think he was there for the
entire meeting.  And I vaguely recollect that Max Lieberman
walked in and out of the meeting.

Q.  Was this meeting held in person or virtually?

A.  In person at the Project Social Care conference room.

Q.  How did you learn of the meeting?

A.  I was asked to attend the meeting, either by email or by
phone call.

Q.  Who, to the best of your recollection, asked you to attend?

A.  Mr. Rangott.

Q.  What was discussed at that meeting?

A.  The topics of the OIG — that the OIG asked of Chelsea and
Josephine.

Q.  What did you understand the purpose of that meeting to be?

A.  That we should — the purpose was to coordinate our
responses because it seemed the OIG was asking to interview me,
to interview — Mr. Rangott, I think, wasn't interviewed yet at
that time, and to interview Isidore Handler and Martin Handler
and maybe others.  So to coordinate our response to the OIG
with regard to who's running the day-to-day operations.

Q.  Before your interview, did anyone at Project Social Care

provide you with information to prepare?

A.  Yes.

Q.  Who did you speak with?

A.  Josephine.

Q.  Do you know Josephine's last name?

A.  No.

Q.  Did you speak with anyone besides Josephine?

A.  Spoke to Josephine.  I spoke to Max.  I spoke to Arie.

Q.  What type of information were you given?

A.  Board member information, names of certain reports.

**From:** Arie Rangott <arangott@gmail.com>
**Sent:** Mon, 05 Sep 2022 12:40:04 -0400
**To:** Harry Schwartz <hershyschwartz@icloud.com>, Yehuda Zorger <yehuda@precisionpaintplus.com>
**Subject:** Meeting at PSC

---

Good morning,
Menachem asked me to schedule a meet for tomorrow.

Please confirm if you are available at 10:30 or 11am.
Thank you,
-Arie



**GOVERNMENT EXHIBIT**
907
23 Cr. 004 (JHR)

**Arie Rangott** <arangott@gmail.com>                                  Wed, Sep 7, 2022 at 10:51 AM
To: "Harold J. Schwartz" <haroldjschwartz@gmail.com>

Hi Harold,

You will find the transcript attached to this email, however please keep in mind that the transcription was performed by a
computer so it is NOT accurate.

The recording is attached as well.

Thanks
-Arie

2 attachments

 **New Recording 29.docx**
89K

 **New Recording 29.m4a**
22952K



GOVERNMENT
EXHIBIT
804
23 Cr. 004 (JHR)

**From:** Arie Rangott <arangott@gmail.com>
**Sent:** Tue, 06 Sep 2022 16:39:42 +0000
**To:** Yehuda Zorger <yehuda@precisionpaintplus.com>
**Subject:** Fwd: New Recording 29
**Attachments:**
· New Recording 29.m4a *(30 mb)*

GOVERNMENT
EXHIBIT
908
23 Cr. 004 (JHR)

68

On Sep 7, 2022, at 11:00 AM, Arie Rangott <arangott@gmail.com> wrote:

Hi Harold,

I am not as familiar with android phone recording apps, however I did find these (the 4th one looks similar to the one I have on Iphone):

## 1. Easy Voice Recorder

## 2. Easy Voice Recorder Pro

## 3. Voice Recorder & Audio Editor

## 4. ASR Voice Recorder

## Re: Voice recorders
1 message

**Arie Rangott** <arangott@gmail.com>                                      Thu, Sep 8, 2022 at 6:45 PM
To: "Harold J. Schwartz" <haroldjschwartz@gmail.com>

https://wetransfer.com/

Sent from my iPhone



GOVERNMENT
EXHIBIT
805
23 Cr. 004 (JHR)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
UNITED STATES OF AMERICA                            :     S8 23 Cr. 004 (JHR)
                                                    :
          - v. -                                    :     **REV.COM STIPULATION**
                                                    :
ARIE RANGOTT,                                       :
                                                    :
               Defendant.                           :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4.    On August 24, 2022, at approximately 11:16 a.m. Eastern Standard Time, the

Rangott Rev.com Account placed an order for Rev.com to transcribe speech in audio files that the

Rangott Rev.com Account uploaded to Rev.com. Government Exhibits 1001 through 1006 are true

and accurate copies of those audio files. Government Exhibits 1007 and 1008 are transcripts of

certain of those audio files that Rev.com created for and made available to the Rangott Rev.com

Account on August 24, 2022, at approximately 1:14 p.m. Eastern Standard Time.

**GOVERNMENT
EXHIBIT
S-5**
23 Cr. 004 (JHR)

70

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes

2. He Was Hired to Be Lieberman's Inside Man

3. He Acted Like Lieberman Was His Boss

4. His Lies to OIG About Lieberman

5. His Lies to OIG About Isidore Handler

6. He Tampered with Zhang's OIG Interview and Helped Coordinate Everyone's Lies

72

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes
2. He Was Hired to Be Lieberman's Inside Man
3. He Acted Like Lieberman Was His Boss
4. His Lies to OIG About Lieberman
5. His Lies to OIG About Isidore Handler
6. He Tampered with Zhang's OIG Interview and Helped Coordinate Everyone's Lies
7. He and Schwartz Altered Fake Board Minutes to Send to OIG

73



August 30th, 2021

To whomever this may concern:

Please be advised that a meeting of the Board of Directors of Project Social Care Head Start Inc. was held on August 30th, 2021. At the meeting the Board of Directors resolved as follows:

A) As the Board of Directors has accepted Mr. Harold Schwartz's resignation from his post as Executive Director of the Organization, Mr. Schwartz shall be removed as an authorized signer from all Bank Accounts related to Project Social Care Head Start Inc.

B) A member of the Board of Directors, Mr. Yehuda Zorger, has been appointed by the Board of Directors to be added to the Organization's bank accounts as an authorized signer for all checks on behalf of Project Social Care Head Start Inc.

Sincerely,

Mordechai A. Weiss
Chairman of the Board

GOVERNMENT
EXHIBIT
806
23 Cr. 004 (JHR)

74

**Arie Rangott** <Arie@pscheadstart.com>                                    Tue, Sep 13, 2022 at 2:34 PM
To: "Harold J. Schwartz" <haroldjschwartz@gmail.com>

Hello Mindy,


The answers to the questions asked by Sperruggia are listed below.

Supporting documents are attached.


- Elye Lefkowitz employee file is attached. (NOTE: Page 26 of the employee file states the position he applied for is "Assistant", which is in his handwriting)
- Board authorizing Mr. Zorger to be a signatory – See document attached
- Board of Directors (Mr. Zorger, Mr. Spitzer, Mr. Singer and Mr. Weiss),  Leadership team including the Executive Director (Harold Schwartz), Fiscal Officer (Chelsea Zhang), Program & Operations Director (Josephine Restivo)
- Martin Handler mhandler@beanstalkacademy.com, Max Lieberman maxlieberman@yahoo.com, Izzy Handler isidorehandler@gmail.com


Harold



GOVERNMENT
EXHIBIT
807
23 Cr. 004 (JHR)

75

**Special Governing Board Meeting Minutes**

**Project Social Care Head Start, Inc.**

Meeting Date: 8/29/21

Meeting Time: 5:00pm-5:10pm

Meeting Type: Conference Call

Meeting Participants:

- BOD: Judah Zorger; Mordechai A. Weiss; Shulom Singer; Eliezer Spitzer
- PSCHS Staff: Harold Schwartz, Executive Director

**CALL TO ORDER:**

**Mr. Schwartz** explained that the purpose of this meeting is to discuss a method for the management of bank accounts, due to his gradually stepping back from day-to-day functions within the company. Since he would not always be available, he felt that the Board should take direct control of all bank accounts in the Company.

**Mr. Weiss** proposed that Mr. Zorger be appointed as the authorized signatory of all checks and financial transactions for PSCHS.

The Board unanimously agreed and directed Mr. Schwartz to go to the banks with Mr. Zorger to effect the Board's decision.

**Mr. Schwartz** thanked all for their participation and the meeting was adjourned.

GOVERNMENT
EXHIBIT
807
23 Cr. 004 (JHR)

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes

2. He Was Hired to Be Lieberman's Inside Man

3. He Acted Like Lieberman Was His Boss

4. His Lies to OIG About Lieberman

5. His Lies to OIG About Isidore Handler

6. He Tampered with Zhang's OIG Interview and Helped Coordinate Everyone's Lies

7. He and Schwartz Altered Fake Board Minutes to Send to OIG

77

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes
2. He Was Hired to Be Lieberman's Inside Man
3. He Acted Like Lieberman Was His Boss
4. His Lies to OIG About Lieberman
5. His Lies to OIG About Isidore Handler
6. He Tampered with Zhang's OIG Interview and Helped Coordinate Everyone's Lies
7. He and Schwartz Altered Fake Board Minutes to Send to OIG
8. He Was Involved in the December 2021 Letter and then Lied About It to OIG

78

| No. | Date | Time (ET) | From | To | Detail |
|---|---|---|---|---|---|
| 1 | December 8, 2021 | 2:33:02 PM | A. Rangott | M. Lieberman | Email attaching "Notification of Complaint_December 7. 2021.pdf" (GX 424) |
| 2 | December 8, 2021 | 2:33:14 PM | A. Rangott | I. Handler | Text: "Hi Sruly" (GX 217) |
| 3 | December 8, 2021 | 2:33:23 PM | A. Rangott | I. Handler | Text: "I need to speak with you" (GX 217) |
| 4 | December 8, 2021 | 2:33:40 PM | A. Rangott | I. Handler | Text: "Urgent. (GX 217) |
| 5 | December 8, 2021 | 2:33:41 PM | A. Rangott | I. Handler | Text: "Thanks" (GX 217) |
| 6 | December 8, 2021 | 3:25:41 PM | M. Handler | M. Lieberman | Text: "Send me the letter please" (GX 312) |
| 7 | December 8, 2021 | 3:25:42 PM | M. Lieberman | M. Handler | Attachment: "Notification of Complaint_December_7_2021-3.pdf" (GX 312; 312A) |
| 8 | December 8, 2021 | 7:20:46 PM | A. Rangott | I. Handler | Voice Note: "Hi, Sruly. Thank you first of all for coming down earlier today. Um, we've had a few other conversations since then. I know you spoke to Menachem also when you came in. Um, we had some productive conversations, which was good across the board. I'm hoping tomorrow to be me meeting or speaking with a Head Start lawyer. I had two things for you to speak to you about. One of them was with regards to Sara and training. I'll elaborate when we talk next, [U/I], hopefully tomorrow morning. And the second thing is also with regards to Harold and the resignation thing. Um, so I just wanted to touch base with you now and I will try to speak to you tomorrow morning just to go over those two points in case I don't get through to you first. And you reach out to me, I will fill you in on those as well. Thank you." (GX 217A) |
| 9 | December 13, 2021 | 2:09:26 PM | A. Rangott | I. Handler | Text: "Hi Sruly" (GX 219) |
| 10 | December 13, 2021 | 2:09:33 PM | A. Rangott | I. Handler | Text: "Are u in the building?" (GX 219) |
| 11 | December 13, 2021 | 2:09:51 PM | I. Handler | A. Rangott | Text: "No" (GX 219) |

GOVERNMENT
EXHIBIT
1305
23 Cr. 004 (JHR)

| 17 | December 14, 2021 | 6:47:34 AM | M. Handler | M. Lieberman | Text: "I'm in my way to miami this morning from Orlando and want to meet Harold. Wanna know where you are up to" (GX 313) |
|----|----|----|----|----|----|
| 18 | December 14, 2021 | 6:48:10 AM | M. Lieberman | M. Handler | Text: "I'm not coming. Harrold said to do on the phone" (GX 313) |
| 19 | December 14, 2021 | 6:48:18 AM | M. Lieberman | M. Handler | Text: "I hope u were not going because of this" (GX 313) |
| 20 | December 14, 2021 | 6:48:23 AM | M. Lieberman | M. Handler | Text: If yes turn back" (GX 313) |
| 21 | December 14, 2021 | 6:48:40 AM | M. Handler | M. Lieberman | Text: "Ok. No no I'm going anyway I'm in Orlando now and I am going to miami anyway" (GX 313) |
| 22 | December 14, 2021 | 6:48:46 AM | M. Handler | M. Lieberman | Text: "Ok." (GX 313) |
| 23 | December 14, 2021 | 6:49:02 AM | M. Handler | M. Lieberman | Text: "But I want to make sure Harold cooperates are you talking to him "(GX 313) |
| 24 | December 14, 2021 | 6:49:05 AM | M. Lieberman | M. Handler | Text: (direct reply to "Ok. No no I'm going anyway I'm in Orlando now and I am going to miami anyway") "U told me Friday to call Harold and he did everything by phone" (GX 313) |
| 25 | December 14, 2021 | 6:49:23 AM | M. Handler | M. Lieberman | Text: Ok good. Is he doing the right thing (GX 313) |
| 26 | December 14, 2021 | 6:49:37 AM | M. Lieberman | M. Handler | Text: (direct reply to "Ok good. Is he doing the right thing") "Yes he is bh fully in board" (GX 313) |



GOVERNMENT
EXHIBIT
1305
23 Cr. 004 (JHR)

**Arie Rangott** <Arie@pscheadstart.com>                              Mon, Dec 13, 2021 at 2:25 PM
To: "Harold J. Schwartz" <haroldjschwartz@gmail.com>, Izzy Handler <isidorehandler@gmail.com>

Hi Heshy and Sruly,

We have made a few additional changes to the response letter to the complaint submitted to Head Start (December 7, 2021). These changes include input provided by yourselves as well as the Head Start lawyers and the administrative team here at PSCHS.

We are required to respond by tomorrow. We will be submitting the document to the Head Start lawyers today at 4:30 for the final review.

Please review the letter as soon as possible and make any changes you see fit.

Thank you,

-Arie

📧 **AMY 12.2.21 Complaint Grant # 02HP000274.docx**
   23K


GOVERNMENT
EXHIBIT
809
23 Cr. 004 (JHR)

81

### Re: 12.2.21 Complaint Grant # 02HP000274
1 message

**Izzy Handler** <isidorehandler@gmail.com>                                Mon, Dec 13, 2021 at 3:14 PM
To: Arie Rangott <Arie@pscheadstart.com>
Cc: "Harold J. Schwartz" <haroldjschwartz@gmail.com>

Please review my proposed edits.

On Mon, Dec 13, 2021 at 2:25 PM Arie Rangott <Arie@pscheadstart.com> wrote:

Hi Heshy and Sruly,

We have made a few additional changes to the response letter to the complaint submitted to Head Start (December 7, 2021). These changes include input provided by yourselves as well as the Head Start lawyers and the administrative team here at PSCHS.

We are required to respond by tomorrow. We will be submitting the document to the Head Start lawyers today at 4:30 for the final review.

Please review the letter as soon as possible and make any changes you see fit.

Thank you,

-Arie

📄 **AMY 12.2.21 Complaint Grant # 02HP000274.docx**
27K

---

### Please Review
1 message

**Izzy Handler** <isidorehandler@gmail.com>                                Mon, Dec 13, 2021 at 5:32 PM
To: Arie Rangott <Arie@pscheadstart.com>, "Harold J. Schwartz" <haroldjschwartz@gmail.com>

📄 **AMY 12.2.21 Complaint Grant # 02HP000274.docx**
32K



GOVERNMENT
EXHIBIT
811
23 Cr. 004 (JHR)



GOVERNMENT
EXHIBIT
810
23 Cr. 004 (JHR)

82

Q.   And did you, in fact, understand Mr. Rangott to be the

point person?

A.   Yes.

Q.   Mr. Escoriaza, later on, on December 9, 2021, did you

participate in a videoconference call in connection with the

matter we've been discussing?

A.   On December 9, yes, I did.  By the time of the call, I knew

this was a Head Start program in New York.

Q.   Who else participated in this meeting?

A.   On our end at Feldesman, it was Ted Waters and I, and on

the other end from Project Social Care, there were three

individuals: Arie Rangott; Yehuda Zorger, the chairman of the

board of directors for that Head Start program; and Max

Lieberman.

Escoriaza Testimony — PP. 780-781    84

Q.  Based on that meeting, what was your understanding at that time, by the end of it, I should say, about whether you would need to conduct an internal investigation?

A.  By the end of the meeting, it was clear to me that that was not going to be my task, if at all, in regards to Project Social Care Head Start.

Q.  Why not?

A.  Because the three gentlemen from Project Social Care were pretty clear that they had already investigated the items and they had all the facts that needed to be uncovered or discovered, for lack of a better word, and I would not be interviewing anybody or going up there to do any type of investigation of the type that I thought I would have been going to — there for.

Escoriaza Testimony — PP. 782

85

| | |
|---|---|
| **From:** | Arie Rangott |
| **To:** | Yehuda Zorger; Harold Schwartz |
| **Cc:** | Waters, Ted; Escoriaza, Phillip A. |
| **Subject:** | RE: Notification of Complaint - December 7, 2021 |
| **Date:** | Monday, December 13, 2021 6:13:41 PM |
| **Attachments:** | image003.png |
| | 02HP000274 Complaint.pdf |
| | 12.2.21 Complaint Grant # 02HP000274 V2.docx |
| | 20210201183433.pdf |

Hi Ted and Phillip,

As discussed at our meeting last week, I am attaching a copy of the document we prepared in response to the letter we received from Head Start (December 7 ,2021).
I am also including a copy of the complaint and a copy of the 3 quotes/bids received for transportation services.

Please review the attached and let us know if there any changes to be made.
The deadline to respond is Tuesday December 14, 2021.

Thank you,
-Arie Rangott



GOVERNMENT
EXHIBIT
1402
23 Cr. 004 (JHR)

87

| | |
|---|---|
| **From:** | Arie Rangott |
| **To:** | Escoriaza, Phillip A.; Waters, Ted; Yehuda Zorger; Harold Schwartz |
| **Subject:** | RE: Notification of Complaint - December 7, 2021 |
| **Date:** | Monday, December 20, 2021 5:43:51 PM |
| **Attachments:** | image001.jpg |
| | image002.png |
| | image003.jpg |
| | image004.jpg |
| | image005.jpg |
| | image006.jpg |

Hi Ted and Phillip,

The letter looks good to us.

We are waiting for Harold to review the letter and then we will send it to Head start.

We will keep you posted.

Thank you again,

-Arie

GOVERNMENT
EXHIBIT
1406
23 Cr. 004 (JHR)

88

```
Exhibit Number:              GX 106

Date of Recording:           September 2, 2022

Participants:

    Speaker 1: Michelle Sperruggia

    Speaker 2: Arie Rangott

    Speaker 3: Marissa Hill

    Speaker 4: Mindy Pava
```

**GOVERNMENT EXHIBIT 106-T**
23 Cr. 004 (JHR)

| Sperruggia: | Have you been involved in dealing with any of the complaints that Head Start is sent in to Social Care? |
|---|---|
| Rangott: | No, not directly. Like I said, I was only aware of one of them, um, that was in the past. Otherwise, no, I'm too new. Like I said, unfortunately, um, I wish. |



89

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes

2. He Was Hired to Be Lieberman's Inside Man

3. He Acted Like Lieberman Was His Boss

4. His Lies to OIG About Lieberman

5. His Lies to OIG About Isidore Handler

6. He Tampered with Zhang's OIG Interview and Helped Coordinate Everyone's Lies

7. He and Schwartz Altered Fake Board Minutes to Send to OIG

8. He Was Involved in the December 2021 Letter and then Lied About It to OIG

90

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes

2. He Was Hired to Be Lieberman's Inside Man

3. He Acted Like Lieberman Was His Boss

4. His Lies to OIG About Lieberman

5. His Lies to OIG About Isidore Handler

6. He Tampered with Zhang's OIG Interview and Helped Coordinate Everyone's Lies

7. He and Schwartz Altered Fake Board Minutes to Send to OIG

8. He Was Involved in the December 2021 Letter and then Lied About It to OIG

9. His Role at Project Social Care

91

| 4 | July 6, 2021 | 8:39:48 PM | A. Rangott | M. Handler | Email chain beginning with Rangott requesting M. Handler confirming if meeting between M. Handler and Rangott was still on at which they would discuss "Sara's sudden departure."  M. Handler responds that he is out of town and that "I believe that you shoud meet with Izzy."  Rangott then responds stating he "met with Sruly today and we will be working together to address some of the issues that have come up" and that "we can all meet together again" when M. Handler was in town. (GX 439) |
| 5 | July 6, 2021 | 5:33:23 PM | I. Handler | A. Rangott | Voice Note: "Arie, um, regarding Chelsea, did you talk to her already? Um, stepping in meanwhile for, um, for fiscal officer, I just spoke to Harold and he made a good point. He says maybe I should talk to Suri first to like, she should know that she shouldn't be, uh, be bad mouthing the company or whatever. Uh, I wanna hope to go talk to Suri. I'm gonna text her and ask her if she can talk tomorrow or whatever, and then I can, um, then hopefully Chelsea won't hear back bad things and it'll go smoother. My, right now basically Chelsea could fill in, as if Suri's on vacation, but, um, before making anything like official or permanent, uh, not even permanent. I was saying even interim. Let me talk to Suri first." (GX 243A) |
| 6 | July 6, 2021 | 5:35:31 PM | A. Rangott | I. Handler | Voice Note: "I spoke to Chelsea, not about, uh, stepping in, in the interim at all. Just told her to step up. Just means I just told her that I need her to, uh, assist me more for the moment since, uh, Sarah's not here. And, uh, and I'm gonna count on her to help me a bit more. I didn't offer anything at all other than simply that, those words for now, like, uh, we discussed earlier, I want to give it a couple of days. Let the dust settle before anything else happens." (GX 243B)  |

GOVERNMENT
EXHIBIT
1302
23 Cr. 004 (JHR)

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes

2. He Was Hired to Be Lieberman's Inside Man

3. He Acted Like Lieberman Was His Boss

4. His Lies to OIG About Lieberman

5. His Lies to OIG About Isidore Handler

6. He Tampered with Zhang's OIG Interview and Helped Coordinate Everyone's Lies

7. He and Schwartz Altered Fake Board Minutes to Send to OIG

8. He Was Involved in the December 2021 Letter and then Lied About It to OIG

9. His Role at Project Social Care

94

# Reasons You Know the Defendant Is Guilty

1. His Voice Notes with Isidore Handler About Making Up Board Minutes

2. He Was Hired to Be Lieberman's Inside Man

3. He Acted Like Lieberman Was His Boss

4. His Lies to OIG About Lieberman

5. His Lies to OIG About Isidore Handler

6. He Tampered with Zhang's OIG Interview and Helped Coordinate Everyone's Lies

7. He and Schwartz Altered Fake Board Minutes to Send to OIG

8. He Was Involved in the December 2021 Letter and then Lied About It to OIG

9. His Role at Project Social Care

95

# Elements of Each Count

 1. Existence of an Agreement to Commit the Crime

 2. The Defendant Knowingly and Willfully Joined

 3. Overt Act in Furtherance

96

# Venue

- Standard: Preponderance of the Evidence

- Any Act in Furtherance Occurred in S.D.N.Y.

- Office of Head Start Region II Offices – Manhattan

- Yehuda Zorger's Home – Rockland County

**Court Exhibit #21**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -v.- | 23 Cr. 004 (JHR) |
| ARIE RANGOTT, | |
| Defendant. | |

JENNIFER H. REARDEN, District Judge:

### JURY CHARGE

AUGUST 1, 2024

[1]

## Contents

**I.  General Instructions** .................................................................................... **4**

    A.  Introductory Remarks ............................................................................ 4

    B.  Role of the Court .................................................................................. 5

    C.  Role of the Jury ................................................................................... 5

    D.  Role of Counsel ................................................................................... 6

    E.  Sympathy or Bias ................................................................................ 6

    F.  All Persons Equal Before the Law ........................................................... 8

    G.  Presumption of Innocence and Burden of Proof ......................................... 8

    H.  Proof Beyond a Reasonable Doubt ........................................................... 9

    I.  Number of Witnesses and Uncontradicted Testimony ................................. 10

    J.  What Is and Is Not Evidence ................................................................. 11

    K.  Direct and Circumstantial Evidence ....................................................... 12

    L.  Inferences ......................................................................................... 13

    M.  Credibility of Witnesses ...................................................................... 14

    N.  Bias/Interest of Witnesses ................................................................... 16

    O.  Preparation of Witnesses ..................................................................... 17

    P.  Law Enforcement or Government Witnesses ............................................ 17

    Q.  Cooperating Witnesses Testimony ......................................................... 18

    R.  Character Witnesses ........................................................................... 20

    S.  Stipulations of Fact ............................................................................ 20

    T.  Stipulations of Testimony .................................................................... 20

    U.  Summary Charts ................................................................................. 21

    V.  Redaction of Evidence ........................................................................ 21

    W.  Use of Audio and Video Recordings and Transcripts ................................ 21

    X.  Use of Evidence Obtained Pursuant to Searches ....................................... 22

    Y.  Uncalled Witnesses—Equally Available or Unavailable ............................. 22

    Z.  Immunized Witnesses ......................................................................... 23

    AA. Defendant's Right Not to Testify .......................................................... 24

**II.  Substantive Instructions** ............................................................................ **24**

    A.  The Indictment .................................................................................. 24

    B.  All Three Counts: Conspiracy Offenses ................................................. 26

        1.  Background and Elements of Conspiracy ........................................... 26

        2.  First Element: Existence of a Conspiracy ........................................... 27

3.   Second Element: Participation ................................................................. 29

4.   Third Element: Overt Act ......................................................................... 32

C.  Count One: Conspiracy to Defraud the United States ................................. 32

1.   Additional Instructions Regarding Count One ....................................... 34

D.  Count Two: Conspiracy to Falsify Documents and Records ......................... 36

1.   First Element: Falsification of Document ............................................... 37

2.   Second Element: Knowing Conduct ........................................................ 37

3.   Third Element: Intent to Impede a Matter ............................................. 37

E.  Count Three: Conspiracy to Obstruct an Agency Proceeding ...................... 38

1.   First Element: Proceeding Was Pending .................................................. 39

2.   Second Element: Knowledge of Proceeding ............................................ 39

3.   Third Element: Act of Obstructing or Impeding ..................................... 39

F.  Conscious Avoidance ...................................................................................... 40

G.  18 U.S.C. § 1001 Not Charged ....................................................................... 43

H.  Motive ............................................................................................................. 43

I.   Attorney Involvement Not Itself a Defense .................................................. 43

J.   Variance in Dates ........................................................................................... 43

K.  Venue .............................................................................................................. 44

**III. Deliberations of the Jury ................................................................................. 45**

A.  Right to See Exhibits and Hear Testimony ................................................... 45

B.  Communication with the Court ...................................................................... 45

C.  Notes ............................................................................................................... 45

D.  Duty to Deliberate; Unanimous Verdict ....................................................... 46

E.  Verdict Form .................................................................................................. 47

F.  Duties of Foreperson ...................................................................................... 47

G.  Return of Verdict ........................................................................................... 47

H.  Alternate Jurors ............................................................................................. 48

**IV.  Conclusion ...................................................................................................... 49**

# I.    GENERAL INSTRUCTIONS

## A.    Introductory Remarks

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties.  We have reached the point where you are about to undertake your final function as jurors.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case.  There are three parts to these instructions.  First, I am going to give you general instructions about your role and about how you are to decide the facts of the case, including the burden of proof you must apply.  Many of these instructions would apply to any trial.  Second, I will give you some more specific instructions about the legal rules applicable to this particular case, including a description of the elements of the charges against the defendant.  Third, I will give you instructions on the rules governing your deliberations.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You will notice that I am reading these instructions from a prepared text.  As I said earlier, it would be livelier, no doubt, if I just improvised.  But it is important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So, when I tell you the law, it is critical that I use exactly the right words.

Because my instructions cover many points, I have given you a copy of them so that you may follow along.  In addition, you will have a copy of these instructions with you in the jury room, so you can refer to them if you want to re-read any portion to facilitate your deliberations.

You should not single out any instruction as alone stating the law; instead, you should consider my instructions as a whole when you retire to deliberate in the jury room.

You will also have with you in the jury room a verdict form on which to record your verdict. That form will list the questions you should consider.

### B.    Role of the Court

I have instructed you during the trial as to various matters, and you should of course continue to follow those instructions. My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them. With respect to legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You must not substitute your own notions or opinions of what the law is or ought to be.

### C.    Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts. Any opinion I might have regarding the facts is of absolutely no consequence.

[5]

### D.    Role of Counsel

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. It is my job to rule on those objections. Therefore, why an objection was made or why I ruled on it the way I did is not your business. You should draw no inference from the fact that an attorney objects to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

From time to time, the lawyers and I had conferences out of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

### E.    Sympathy or Bias

Under your oath as jurors, you are not to be swayed by sympathy or prejudice. All of us, no matter how hard we try, tend to look at others and weigh what they have to say through the lens of our own experience and background. We each have a tendency to stereotype others and make assumptions about them. Often, we see life and evaluate evidence through a clouded filter that tends to favor those like ourselves. You must do the best you can to put aside such stereotypes, for all litigants and witnesses are entitled to a level playing field in which we do the best we can to put aside our stereotypes and prejudices. You are to be guided solely by the evidence in this

case, and the crucial, bottom-line question that you must ask yourselves as you sift through the evidence is: has the Government proven the guilt of the defendant beyond a reasonable doubt?

It is for you alone to decide whether the Government has proven that the defendant is guilty of the crimes charged.  You must decide solely on the basis of the evidence presented, subject to the law as I explain it to you.  It must be clear to you that once you let fear or prejudice, or bias or sympathy, interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt, you should not hesitate for any reason to find a verdict of acquittal for the defendant.  But on the other hand, if you should find that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate, because of sympathy or any other reason, to render a verdict of guilty.

The question of possible punishment of the defendant is of no concern to the jury and should not enter into or influence your deliberations.  The duty of imposing sentence rests exclusively upon the Court.  Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence.  Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

Similarly, it would be improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process.  Your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

### F.      All Persons Equal Before the Law

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States.  The fact that the Government is a party, and the prosecution is brought in the name of the United States, does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party.  By the same token, you must give it no less deference.  The Government and the defendant stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the defendant's race, religion, national origin, sex, or age.  All persons are entitled to the same presumption of innocence, and the Government has the same burden of proof with respect to all persons.  Your verdict must be based solely on the evidence or the lack of evidence.

### G.      Presumption of Innocence and Burden of Proof

Now I will instruct you on the presumption of innocence and the Government's burden of proof in this case.  The defendant has pleaded not guilty to the charges in the Indictment.  In so doing, he has denied every allegation charged against him.  As a result of the defendant's plea of not guilty, the Government has the burden of proving each charge in the Indictment beyond a reasonable doubt.  This burden never shifts to the defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of testifying, or calling any witnesses, or locating or producing any evidence.

The law presumes the defendant to be innocent of the charges against him.  I therefore instruct you that he is to be presumed by you to be innocent throughout your deliberations.

The defendant does not have to prove his innocence.  To the contrary, the law presumes the defendant to be innocent of the charges against him.  This presumption of innocence alone is

sufficient to acquit him unless you as jurors are unanimously convinced beyond a reasonable doubt of his guilt, after a careful and impartial consideration of all the evidence in this case.  If the Government fails to sustain its burden as to a particular charge in the Indictment, then you must find the defendant not guilty of that charge.

This presumption of innocence was in the defendant's favor at the start of the trial; it continued in his favor throughout the entire trial; it is in his favor even as I instruct you now; and it continues in his favor during the course of your deliberations.  I therefore instruct you that the defendant is to be presumed by you to be innocent throughout your deliberations in the jury room. That presumption is removed if and only if you, as members of the jury, are satisfied that the Government has sustained its burden of proving the guilt of the defendant beyond a reasonable doubt.

### H.    Proof Beyond a Reasonable Doubt

The question that naturally arises is, "What is a reasonable doubt?"  The words almost define themselves.  It is a doubt that a reasonable person has after carefully weighing all of the evidence, or lack of evidence. It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life.  Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, and your common sense.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.  A reasonable doubt is not caprice or whim.  It is not speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty.  And it is not sympathy.

At the same time, reasonable doubt does not mean beyond all possible doubt.  It is practically impossible for a person to be absolutely and completely convinced of any disputed fact

that by its nature is not susceptible of mathematical certainty. In consequence, the law in a criminal case is that it is sufficient if the guilt of a defendant is established beyond a reasonable doubt, not beyond all possible doubt.

If, after a fair and impartial consideration of all the evidence, you are not satisfied of the defendant's guilt, if you do not have an abiding conviction of the defendant's guilt—in sum, if you have such a doubt as would cause you, as prudent persons, to hesitate before acting in in important matters in the personal affairs of your own life—then you have a reasonable doubt, and in that circumstance it is your duty to acquit the defendant.

On the other hand, if after a fair and impartial consideration of all the evidence you are convinced of the defendant's guilt of a particular charge beyond a reasonable doubt, then you must convict him of that charge.

## I.     Number of Witnesses and Uncontradicted Testimony

The fact that one party called more witnesses or introduced more evidence does not mean that you should necessarily find the facts in favor of the side offering the most witnesses and the most evidence. By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness to be not credible. You must decide which witnesses to believe and determine which facts are true. To do this, you must look at all the evidence or lack of evidence, drawing upon your own common sense and personal experience. After examining all the evidence, you may decide that the party calling the most witnesses has not persuaded you because you do not believe its witnesses, or because you do believe the fewer witnesses called by the other side.

Again, you should also keep in mind that the burden of proof is always on the Government. The defendant is not required to call any witnesses or offer any evidence, since he is presumed to

be innocent. On the other hand, the Government is not required to prove each element of the offense by any particular number of witnesses. The testimony of a single witness may be enough to convince you beyond a reasonable doubt of the existence of the elements of the charged offenses—if you believe that the witness has truthfully and accurately related what he or she has told you. The testimony of a single witness may also be enough to convince you that reasonable doubt exists, in which case you must find the defendant not guilty.

### J.     What Is and Is Not Evidence

In determining the facts, you must rely upon your own recollection of the evidence. The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, and the stipulations of the parties.

However, testimony that I have stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the purpose I indicated.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

As I told you at the start of this case, statements and arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

[11]

For the same reasons, you are not to consider a lawyer's questions as evidence.  It is the witnesses' answers that are evidence, not the lawyers' questions.

Finally, any statements that I may have made do not constitute evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

### K.        Direct and Circumstantial Evidence

Generally, as I mentioned at the start of the case, there are two types of evidence that you may consider in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence is testimony by a witness about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard.  For example, if a witness testified that when he left his house this morning, it was raining, that would be direct evidence about the weather.

The second type of evidence is circumstantial evidence.  Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts. There is a simple example of circumstantial evidence that is frequently used in this Courthouse.  Assume that when you came into the Courthouse this morning, the sun was shining and it was a nice day outdoors. Also assume that the courtroom blinds were drawn, and you could not look outside.  Assume further that, as you were sitting here, someone walked in with an umbrella that was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.  Now, because you could not look outside the courtroom, and you could not see whether it was raining, you would have no direct evidence of the fact that it was raining.  But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.  That is all there is to circumstantial evidence.  You infer on the

basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Many facts, such as a person's state of mind, can only rarely be proven by direct evidence. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that in order to convict a defendant, the jury must be convinced of that defendant's guilt beyond a reasonable doubt from the evidence in the case.

### L.    Inferences

You just heard me refer a moment ago to "inferences" to be drawn from the evidence, and you may have also heard the attorney use that term throughout this trial—specifically, the attorneys have asked you to "infer" on the basis of your reason, experience, and commonsense from one or more established facts the existence of some other fact. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted to draw—but are not required to draw—from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

You do not leave your common sense, good judgment, or life experiences behind you when you walk into the Courtroom. You carry that background into the jury room during your deliberations. While you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience. Please remember, however, that you may not use your experience and common sense to fill in or create evidence that does not exist. You use them only to draw reasonable inferences from proven facts or to weigh and evaluate the evidence provided during the trial.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The Government may ask you to draw one set of inferences, while the defendant may ask you to draw another.

Some inferences, however, are impermissible.  For example, you may not infer that a defendant is guilty of participating in criminal conduct if you find merely that he or she was present at the time the crime was being committed and had knowledge that it was being committed. Likewise, you may not infer that a defendant is guilty of participating in criminal conduct merely from the fact that he or she may have associated with other people who were guilty of wrongdoing, or merely because he or she may have had knowledge of the wrongdoing of others.  Nor may you use evidence that I have instructed you was admitted for a limited purpose for any inference beyond that limited purpose.

Here again, let me remind you that, whether based upon direct or circumstantial evidence, or upon the logical, reasonable inferences drawn from such evidence, you must be satisfied that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt before you may convict him of the particular count that you are considering.

Ultimately, it is for you, and you alone, to decide what reasonable inferences to draw.

## M.     Credibility of Witnesses

You have had the opportunity to observe the witnesses testify at this trial.  It is now your job to decide how credible, or believable, each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

How do you evaluate the credibility, or believability, of the witnesses?  The answer is that you use your common sense, your good judgment, and your experience.

[14]

First, consider how well the witness was able to observe or hear what he or she testified about.  The witness may be honest, but mistaken.  How did the witness's testimony impress you?  Did the witness appear to be testifying honestly, openly, and candidly?  Were the witness's answers direct or were they evasive?  How responsive was the witness to the questions asked on direct examination and on cross-examination?  Consider the witness's demeanor, manner of testifying, and the strength and accuracy of the witness's recollection.  Consider whether any outside factors might have affected a witness's ability to perceive events.

Consider also the substance of the testimony.  How does the witness's testimony compare with other proof in the case?  Does it seem implausible or otherwise unworthy of belief?  Is it corroborated or is it contradicted by other evidence?  If there is a conflict, does any version appear reliable, and if so, which version seems more reliable?

In addition, you should specifically note any evidence of hostility or affection that the witness may have had for or against the Government or the defendant.  Likewise, you should consider evidence of any interest or motive that the witness may have had in cooperating with or helping either party.  It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  If you find that a witness is biased or interested, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in this case does not mean the witness has not told the truth.  It is for you to decide from your observations, applying your common sense and experience, and all the other considerations mentioned, whether an interest has intentionally or otherwise colored or distorted the witness's testimony.  You are not required to believe or

[15]

disbelieve a biased or an interested witness; you may accept as much of the testimony as you deem reliable and reject as much as you deem unworthy of belief.

If a witness made statements in the past that are inconsistent with his or her trial testimony concerning facts that are at issue here, you may consider that fact in deciding how much of the witness's testimony, if any, to believe. In making this determination, you may consider whether the witness purposely made a false statement, or whether it was an innocent mistake. You may also consider whether the inconsistency concerns an important fact or merely a small detail, as well as whether the witness had an explanation for the inconsistency, and, if so, whether that explanation appealed to your common sense.

If you find that a witness has testified falsely as to any material fact, or if you find that a witness has been previously untruthful when testifying under oath or otherwise, you may reject that witness's testimony in its entirety or you may accept only those parts that you believe to be truthful or that are corroborated by other independent evidence in the case.

It is for you, the jury, and for you alone, not the lawyers, or the witnesses, or me as the judge, to decide the credibility of the witnesses who testified and the weight that their testimony deserves.

### N.    Bias/Interest of Witnesses

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witnesses may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party. You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny. Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### O.    Preparation of Witnesses

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### P.    Law Enforcement or Government Witnesses

You have heard the testimony of law enforcement and other government witnesses. The fact that a witness may be employed as a law enforcement official or government employee does

not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

It is your decision, after reviewing all the evidence, whether to accept all, part of, or none of the testimony of the law enforcement witness or government witnesses—as it is with every other type of witness—and to give to that testimony the weight you find it deserves.

### Q.    Cooperating Witnesses Testimony

You have heard from a witness who testified pursuant to a cooperation agreement with the Government.

The law allows the use of the testimony of cooperators and other witnesses who have participated in crimes. Indeed, in federal courts, the law is that the testimony of even one such witness in itself may be enough for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt. The testimony of such witnesses is properly considered by the jury.

However, because of the possible interest a witness with a cooperation agreement may have in testifying, the witness's testimony should be examined with additional scrutiny because such witnesses may believe that it is in their interest to give testimony favorable to the Government. The fact that a witness has an agreement with the Government can be considered by you as bearing upon his or her credibility. It does not follow, however, that simply because a person has participated in a crime or has entered into such an agreement, he is incapable of telling the truth, and it is no concern of yours why the Government made an agreement with the witness. Your sole concern is whether a witness has given truthful testimony here in this courtroom before you.

In evaluating the testimony of such a witness, you should ask yourselves whether the witness would benefit more by lying, or by telling the truth. Was his or her testimony made up in

any way because he or she believed or hoped that he or she would somehow receive favorable treatment by testifying falsely? Or did he or she believe that his or her interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him or her to lie, or was it one that would cause him or her to tell the truth? And did this motivation color his or her testimony?

You may also consider whether an accomplice witness has an interest in the outcome of the case and, if so, whether it has affected the witness's testimony. For instance, you may consider whether the witness believes the government has provided him or her with any benefits or promises, and whether that belief provides the witness with a motive to testify either falsely or truthfully at this trial.

If you find that the testimony was false, you should reject it. However, if, after a cautious and careful examination of the witness's testimony and demeanor upon the witness stand, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion. Even if you find that a witness testified falsely in one part, you still may accept his or her testimony in other parts or may disregard all of it. That is a determination entirely for you, the jury.

The cooperating witness from whom you heard testimony pleaded guilty to charges arising out of the same facts that are at issue in this case. You are not to draw any inference of any kind about the guilt of the defendant merely from the fact that the witness pleaded guilty to charges similar to those with which the defendant in this case has been charged. The witness made personal

decisions based on their evaluation of the facts and circumstances. A witness's decision to cooperate with the Government is not evidence that the defendant committed a crime.

### R.    Character Witnesses

The defendant has called a witness who has given his opinion of the defendant's character or reputation. This testimony is not to be taken as the witness's opinion as to whether the defendant is guilty or not guilty. That question is for you alone to determine. You should, however, consider this evidence together with all the other facts and evidence in the case in determining whether the defendant is guilty or not guilty of the charges.

Accordingly, if after considering all the evidence including the testimony regarding the witness's opinion of the defendant's character or reputation, you find a reasonable doubt has been created, you must acquit. On the other hand, if after considering all the evidence including the testimony regarding the witness's opinion of the defendant's character or reputation, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should not acquit the defendant merely because you believe the defendant, or the witness believes the defendant, to be a person of good character or to have a good reputation.

### S.    Stipulations of Fact

In this case you have heard evidence in the form of stipulations of fact. A stipulation of fact is an agreement between the parties that a certain fact is true. You must regard such agreed-upon facts as true. However, it is for you to determine the effect to be given to those facts.

### T.    Stipulations of Testimony

In this case you have also heard evidence in the form of stipulations of testimony. A stipulation of testimony is an agreement between the parties that, if called as a witness, the person

would have given certain testimony.  You must accept as true the fact that the witness would have given that testimony.  However, it is for you to determine the effect to be given that testimony.

### U.    Summary Charts

Some of the exhibits that were admitted into evidence were in the form of summary charts. I decided to admit these charts in order to save time and avoid unnecessary inconvenience.  The charts themselves do not constitute independent evidence, and it is the jury's duty to determine that the charts actually reflect the evidence on which they are based.

### V.    Redaction of Evidence

Some of the exhibits received in evidence have been redacted.  "Redacted" means that part of the underlying item was removed or covered.  You are to concern yourself only with the part of the item that has been admitted into evidence.  You should not consider any possible reason why the other part has been redacted.

### W.    Use of Audio and Video Recordings and Transcripts

Audio and video recordings have been admitted into evidence and transcripts of those recordings were provided to use as aids.

Whether you approve or disapprove of the recording of the activity may not enter your deliberations.  I instruct you that these recordings were made in a lawful manner and that no one's rights were violated, and that the Government's use of this evidence is entirely lawful, and it was properly admitted into evidence at this trial.

You must, therefore, regardless of any personal opinions about this type of evidence, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proved beyond a reasonable doubt the guilt of the defendant.

In connection with the recordings that you have heard, you were provided with transcripts of the conversations to assist you while listening to the recordings.  Transcripts were provided only as an aid to you in listening to the English-language recordings.  It is for you to decide whether the transcripts correctly present the conversations recorded on the recordings that you heard.

If you wish to hear any of the recordings again, they will be made available to you during your deliberations.

### X.    Use of Evidence Obtained Pursuant to Searches

You have heard testimony about evidence seized in connection with certain searches or seizures conducted by law enforcement officers, and in particular, of email and other electronic evidence obtained pursuant to court-approved search warrants.  Evidence obtained from these searches and seizures was properly admitted in this case and may be properly considered by you.  Such searches and seizures were entirely appropriate law enforcement actions.  Whether you approve or disapprove of how evidence was obtained should not enter into your deliberations, because I instruct you that the Government's use of the evidence is entirely lawful.

You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proven the defendant's guilt beyond a reasonable doubt.

### Y.    Uncalled Witnesses—Equally Available or Unavailable

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

[22]

You should remember that there is no duty on either side to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence.  Please also remember my instruction that the law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence, and that the burden always rests with the Government to prove the defendant's guilt beyond a reasonable doubt.

### Z.        Immunized Witnesses

You have heard the testimony of witnesses who have testified under a grant of immunity from this court.  What this means is that the testimony of those witnesses may not be used against them in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of this court.

You are instructed that the Government is entitled to call, as a witness, a person who has been granted immunity by order of this court and that you may convict a defendant on the basis of such a witness's testimony alone, if you find that the testimony proves the defendant guilty beyond a reasonable doubt.

Such testimony should be scrutinized with great care.  You should examine it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness's own interests.  If you believe the testimony to be true and determine to accept it, you may give it such weight, if any, as you believe it deserves.

It is no concern of yours why a witness received court-ordered immunity.  Your sole concern is whether the witness has given truthful testimony in this trial. That is a determination entirely for you, the jury.

[23]

### AA.     Defendant's Right Not to Testify

The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence.  This is because, as I have told you, it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to a defendant.   A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that the defendant did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this against the defendant in any way in your deliberations.

## II.     SUBSTANTIVE INSTRUCTIONS

I will turn now to my instructions relating to the charges brought against the defendant in this case.

### A.     The Indictment

The defendant, Arie Rangott, has been formally charged in what is called an Indictment. An indictment is simply an accusation.  It is not evidence of the crimes charged; it is not proof of a defendant's guilt.  It is simply a procedure by which the Government presents charges in a criminal case.

Before you begin your deliberations, you will be provided a copy of the Indictment.  I will not read the entire Indictment to you at this time.  For now, I will summarize the offenses charged in the Indictment and then explain in detail the elements of each offense.

The Indictment contains three counts against the defendant.  Each count constitutes a separate offense which must be considered separately by you, and for which you must return a

separate verdict. I am briefly going to summarize each count, and then will give you the law in greater detail.

Count One charges the defendant with conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371. This count alleges that, between in or about 2019 to in or about January 2023, the defendant agreed with others to impair, impede, or obstruct the lawful functions of the U.S. Department of Health and Human Services, often known as "HHS," including by impairing, impeding, or obstructing HHS's function to conduct appropriate oversight of, and ensure compliance by, organizations receiving funding pursuant to the federal Head Start and Early Head Start programs.

Count Two charges the defendant with conspiracy to falsify documents, in violation of Title 18, United States Code, Sections 371 and 1519. This count alleges that, in or about December 2021, the defendant agreed with others to knowingly alter, destroy, mutilate, conceal, cover up, falsify, or make a false entry in a record or document with the intent to impede, obstruct, or influence any matter within the jurisdiction of a department or agency of the United States, specifically by submitting a letter to HHS that he knew contained false statements and denials in response to an HHS inquiry.

Count Three charges the defendant with conspiracy to obstruct an official agency investigation, in violation of Title 18, United States Code, Sections 371 and 1505. This count alleges that, in or about August and September 2022, the defendant agreed with others to corruptly influence, obstruct, or impede the due and proper administration of the law under which a pending proceeding was being had before any department or agency of the United States, specifically by obstructing an investigation by the HHS Office of Inspector General.

[25]

All you may have just noted, Counts One, Two, and Three all charge conspiracy offenses, so let me explain to you what a conspiracy is. These instructions about conspiracy apply to all three Counts. After instructing you on what a conspiracy is, I will instruct you on the specific law governing each of the three Counts.

**B.      All Three Counts: Conspiracy Offenses**

**1.      Background and Elements of Conspiracy**

A conspiracy is a kind of criminal partnership—a combination or agreement of two or more persons to join together to accomplish some unlawful purpose. The crime of conspiracy to violate a federal law is an independent offense. It is separate and distinct from the violation of any specific federal laws, which the law refers to as "substantive crimes."

If a conspiracy exists, even if it should fail in its purpose, it is still punishable as a crime. Indeed, you may find a defendant guilty of conspiracy to commit an offense even though the substantive crime which was the object of the conspiracy was not actually committed. Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful. This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture.

In order for a defendant to be guilty of conspiracy, the Government must prove beyond a reasonable doubt the following three elements:

*first*, that the charged conspiracy existed;

*second*, that at some point during the conspiracy's existence the defendant knowingly and willfully joined the alleged conspiracy with the intent to accomplish the conspiracy's unlawful purpose; and

_third_, that that at least one overt act occurred, that is, some member of the conspiracy—not necessarily the defendant—knowingly took some action in furtherance of the conspiracy.

### 2.    First Element: Existence of a Conspiracy

Starting with the first element, what is a conspiracy?  A conspiracy is an agreement or an understanding between two or more people to violate the law.

The gist, or the essence, of the crime of conspiracy is the unlawful agreement of two or more people to violate the law.  As I mentioned earlier, the ultimate success of the conspiracy, or the actual commission of the crime that is the object of the conspiracy, is not required for a conspiracy to have existed.  Rather, the Government is required to prove beyond a reasonable doubt only that two or more persons, in some way or manner, explicitly or implicitly, came to an understanding to accomplish the unlawful object.

To prove the existence of a conspiracy, the Government is not required to show that two or more people sat around a table and entered into solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out who would do what in order to carry out the unlawful project.  Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished.  What the Government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

A conspiracy need not be proven by direct evidence of an explicit agreement.  Rather, in determining whether there has been an unlawful agreement as alleged in the Indictment, you may consider the actions and conduct of all the alleged co-conspirators that were taken to carry out the apparent criminal purpose.  The old adage, "actions speak louder than words," applies here.  Often,

the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators. When taken all together and considered as a whole, however, these acts and conduct may warrant the inference that a conspiracy existed just as conclusively as more direct proof, such as evidence of an express agreement.

The object of a conspiracy is the illegal goal that the co-conspirators hoped to achieve.

The object of the conspiracy charged in Count One is to defraud the United States or an agency thereof, specifically HHS.

The object of the conspiracy charged in Count Two is to falsify a letter to HHS in or about December 2021 in response to an HHS inquiry.

The object of the conspiracy charged in Count Three is to obstruct an investigation by the HHS Office of Inspector General.

You should keep in mind that you need not find the conspirators accomplished the object or goal of each conspiracy. Instead, an agreement to accomplish the goal of defrauding the United States or an agency thereof is sufficient with respect to finding the first element of a conspiracy has been satisfied for Count One; an agreement to accomplish the goal of falsifying a letter to HHS in response to an HHS inquiry in or about December 2021 is sufficient with respect to finding the first element of a conspiracy has been satisfied for Count Two; and an agreement to accomplish the goal of obstructing an investigation by the HHS Office of Inspector General is sufficient with respect to finding the first element of a conspiracy has been satisfied for Count Three.

Further, it is not essential that the Government prove that the conspiracy in question started and ended on the specific dates alleged in the Indictment or that it existed throughout that entire

period. Rather, it is sufficient to satisfy the first element if you find that in fact the charged conspiracy was formed and that it existed for any time within the charged period.

Liability for Acts and Declarations of Co-Conspirators

First you must determine whether or not the proof established beyond a reasonable doubt the existence of the conspiracy charged. In considering the first element of conspiracy generally, you will recall that I have admitted into evidence against the defendant the acts and statements of others because these acts and statements were committed or made by persons who, the Government alleges, were also confederates or co-conspirators of the defendant.

The reason for allowing this evidence to be received against the defendant has to do, in part, with the nature of the crime of conspiracy. As I have said, a conspiracy is often referred to as a partnership in crime: as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Therefore, the reasonably foreseeable declarations, statements, and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

If you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by a person also found by you to have been a member of the same conspiracy may be considered against the defendant. This is so even if such acts were committed or such statements were made in the defendant's absence, and/or without his knowledge.

**3.    Second Element: Participation**

If you conclude that the Government has proven beyond a reasonable doubt that a charged

[29]

conspiracy existed, then you must consider the second element: whether the defendant knowingly and willfully became a member of the conspiracy.

To act "knowingly" means to act voluntarily and deliberately rather than mistakenly or inadvertently.

To act "willfully" means to act voluntarily and with a wrongful purpose.

Put differently, an act is done knowingly and willfully if it is done purposefully and deliberately with an intent to do something the law forbids, that is, a defendant's act must have been the product of that defendant's conscious determination rather than the product of a mistake, accident, mere negligence, or some other innocent reason.

Now, science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking.  However, you have before you evidence of certain acts, conversations, and statements alleged to have been made by, with, or in the presence of the defendant, and others.  The ultimate facts of knowledge and criminal intent may be established by words and conduct and all the surrounding circumstances, as well as acts, and all of the circumstances disclosed by the evidence and logical and reasonable inferences from them.  It is for you to determine whether the Government has established beyond a reasonable doubt such knowledge and intent on the part of the defendant.

It is not necessary for the Government to show that a defendant was fully informed as to all the details of the conspiracy in order for you to infer knowledge on his part.  Nor does the defendant need to know the full extent of the conspiracy or all its participants.  Indeed, it is not necessary that a defendant know more than one other member of the conspiracy.  It is also not necessary that the defendant receive any monetary benefit from participating in the conspiracy.  It is enough if he participated in the conspiracy willfully and knowingly, as I have defined those

terms.  While proof of a financial interest in the outcome of the scheme is not essential, if you find that the defendant had such an interest, that is a factor you may properly consider in determining whether he was a member of the conspiracy.  The presence or absence of motive, however, is a circumstance that you may consider as bearing on the intent of the defendant.

If you determine that the defendant became a member of the conspiracy, the duration and extent of the defendant's participation has no bearing on the issue of that defendant's guilt.  Some conspirators play major roles, while others play minor roles.  An equal role is not required.  In fact, even a single act may be sufficient to draw a defendant within the ambit of the conspiracy if it meets the elements I have described.  Moreover, a defendant need not have joined the conspiracy at the outset.  He may have joined it at any time—at the beginning, in the middle, or at the end.  And if he joined, he will still be held responsible for all that was done before he joined as well as all that was done during the conspiracy's existence while the defendant was a member.

However, I want to caution you that mere association with a member of a conspiracy by one person with another person does not make that first person a member of the conspiracy, even when that association is coupled with knowledge that the second person is committing a crime.  Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction.  Similarly, a defendant's mere position, employment, or supervisory authority at an organization by itself is not participation.  In other words, knowledge without participation is not sufficient to satisfy the second element.  What is necessary is that the defendant participated in the conspiracy with knowledge of its unlawful purpose and with intent to aid in that accomplishment of its unlawful object or objects.

In sum, if you find the defendant, with an understanding of the unlawful nature of the charged conspiracy, intentionally engaged, advised, or assisted in the conspiracy for the purpose

of furthering the illegal undertaking, you should conclude that the defendant became a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.

### 4.    Third Element: Overt Act

The third element that the Government must prove beyond a reasonable doubt for all three counts is that at least one member of the conspiracy, not necessarily the defendant, knowingly committed at least one overt act in furtherance of the conspiracy. There must have been something more than mere agreement; some overt step or action must have been taken by at least one of the conspirators in furtherance of the conspiracy.

In order for the Government to satisfy its burden of proof with respect to the overt act requirement, it is not necessary for the Government to prove all or even any of the particular overt acts alleged in the Indictment. Nor must you find that the defendant himself committed any overt act, since such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

You should bear in mind that an innocent lawful act, standing alone, can constitute an overt act. An apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding, or assisting the conspiratorial scheme to violate the law. Therefore, an overt act does not have to be an act that is in and of itself criminal. Similarly, an overt act does not itself have to constitute the objective of the conspiracy, but it does have to be committed by a conspirator in furtherance of the conspiracy.

### C.    Count One: Conspiracy to Defraud the United States

I have just instructed you on the elements of a conspiracy charge generally. I will now instruct you how those instructions apply to Counts One, Two, and Three, starting with Count One and focusing on the object of each conspiracy.

The object of the conspiracy charged in Count One is to defraud the United States or its government agencies, by impairing, impeding, and obstructing the lawful functions of HHS. Please bear in mind that the actual commission of an objective of the conspiracy—here, defrauding the United States and its government agencies, by impairing, impeding, and obstructing the lawful functions of HHS—is not an element of the crime of conspiracy. Thus, you need not find that the conspirators actually impaired, impeded, and obstructed the lawful functions of HHS, but only that they agreed to do so.

In order to find that a person conspired to "impair, impede, or obstruct" a legitimate governmental function, you must find beyond a reasonable doubt that the object of the conspiracy was to interfere with or obstruct one or more of the United States' lawful governmental functions by deceit, craft, or trickery, or by means that are dishonest. Obstructing a lawful governmental function, for purposes of the object of the conspiracy charged in Count One, includes making it more difficult for an agency of the U.S. government to carry out its lawful functions by dishonest or deceitful means. Actual contact between the defendant and an official of the U.S. government is not an element of the crime, nor is it necessary for you to find that the government was subjected to any loss of money or property as a result of the conspiracy. It also is not necessary for you to find that the impairment violated any separate law, or that the U.S. government's lawful functions were in fact impaired, impeded, or obstructed. All that is required is that the object of the conspiracy was to interfere with or obstruct one of the United States' lawful governmental functions by deceit, craft, or trickery, or by means that are dishonest.

The lawful governmental functions that the Government alleges the charged conspiracy intended to interfere with or obstruct are certain functions of HHS. I am instructing you as a matter of law that HHS is a government agency of the United States, and that one of HHS's lawful

functions is to administer the federal Head Start program.  By law, that program is designed "to promote the school readiness of low-income children by enhancing their cognitive, social, and emotional development."  To exercise that function, HHS issues grants to entities known as "agencies," such as non-profit corporations, for the purpose of having those agencies deliver Head Start services.  HHS sets and enforces standards for agencies to deliver Head Start services, as well as administrative and financial management standards for agencies to meet.  HHS is responsible for monitoring agencies to ensure that the goals of the Head Start program are met, and that agencies adhere to standards for the delivery of educational services, the administration of grants, and the fiscal management of grants.

Among other things, Head Start grantees must have in place a "governing body" with "legal and fiscal responsibility for the Head Start agency," comprised of members who do "not have a financial conflict of interest with the Head Start agency."  In addition, Head Start agencies are prohibited from earning *any* profit from grant proceeds or from using grant proceeds for personal gain.  Rather, the proceeds of Head Start grants must be expended in a "reasonable" manner with "reasonableness" considered by assessing, among other factors, whether the individuals concerned engaged in "arm's-length bargaining."

I also instruct you that, under the laws governing not-for-profit entities in New York, not-for-profit corporations do not have any owners or shareholders. There is no concept under the law of "ownership" of a not-for-profit corporation. Rather, not-for-profit corporations exist solely to serve the public interest, and control of such organizations rests with a board of directors that is subject to a number of procedural rules to ensure the organization is run according to law.

### 1.    Additional Instructions Regarding Count One

I have two additional instructions with respect to Count One.

### a. Good Faith

First, a defendant's good faith is an absolute defense to a charge of conspiracy to defraud the United States. This is because good faith is inconsistent with the intent to defraud, which is an essential part of the Count One charge.

Under the statute governing Count One, even false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith. If the defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there is no crime.

Yet if the defendant knew that his representations were false and material, it is not a defense that he believed that the victim would recognize their falsity and decide not to rely on those statements.

Likewise, a venture commenced in good faith may become fraudulent if it is continued after a fraudulent intent has been formed. Therefore, good faith is no defense when the defendant first made representations in good faith but later, during the time charged in the Indictment, the defendant realized that the representations were false and nevertheless deliberately continued to make them. You must review and put together all the circumstances in deciding whether it has been established beyond a reasonable doubt that the defendant devised or participated in a scheme to defraud knowingly, willfully, and with the intent to defraud, or whether he acted in good faith.

Furthermore, if the defendant participated in the scheme to defraud, then the defendant's belief, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith. If the defendant participated in the scheme for the purpose of causing financial or property loss to another, then no

amount of honest belief on the part of the defendant that the scheme will cause ultimately make a profit or cause no harm will excuse fraudulent actions or false representations by him.

The burden of establishing a defendant's lack of good faith and criminal intent rests upon the Government. Stated another way, a defendant is under no burden to prove his good faith; rather, the prosecution must prove bad faith or knowledge of falsity beyond a reasonable doubt.

### b. Negligence of the Alleged Victim

Second, it does not matter whether any particular victim might have discovered the fraud had it probed further or been more careful. If you find that a scheme to defraud existed, it is irrelevant whether you believe that any alleged victims were careless, gullible, or even negligent.

That concludes my instructions on Count One.

### D.     Count Two: Conspiracy to Falsify Documents and Records

I will now turn to Count Two of the Indictment. Count Two charges the defendant with conspiring to falsify documents. As I told you before, you need not find that the defendant actually committed the crime of falsifying documents, but only that he agreed with others to do so.

The object of the conspiracy charged in Count Two is the crime of falsification of documents, which is set forth in Title 18, United States Code, Section 1519. Section 1519 provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . , or in relation to or contemplation of any such matter . . . , shall be [guilty of a crime].

In order to sustain its burden of proof against the defendant with respect to Count Two, the Government must prove beyond a reasonable doubt the following three elements:

*first*, that the defendant falsified or caused the falsification of a document;

[36]

*second*, that the defendant acted knowingly; and

*third*, that the defendant acted with the intent to impede, obstruct, or influence any matter within the jurisdiction of a department or agency of the United States Government.

As I did with Count One, I will explain each of these elements in more detail.

### 1.      First Element: Falsification of Document

The first element the Government must prove on Count Two is that the defendant falsified any document.  Both tampering with preexisting documents and creating a new document may constitute falsifying a document.  A document may be "falsified" if it contains a misrepresentation or false denial.

### 2.      Second Element: Knowing Conduct

The second element that the Government must prove is that the defendant acted knowingly.  A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness.  Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.  In determining whether the defendant acted knowingly, you may consider evidence of the defendant's words, acts, and omissions, along with all of the facts and circumstances surrounding the case.

### 3.      Third Element: Intent to Impede a Matter

The third and final element of Count Two that the Government must prove beyond a reasonable doubt is that the defendant acted with the intent to impede, obstruct, or influence any matter within the jurisdiction of an agency of the United States Government.  I instruct you as a matter of law that HHS is an agency of the United States and that monitoring compliance by recipients of Head Start funding with Head Start standards are matters within the jurisdiction of that Office.

The Government is not required to prove that the defendant knew that the investigation was a federal investigation, or that a federal investigation would take place, or that the matter was within the jurisdiction of a federal agency.  However, the Government is required to prove that the investigation that the defendant intended to impede, obstruct, or influence did, in fact, concern a matter within the jurisdiction of an agency of the United States.

### E.    Count Three: Conspiracy to Obstruct an Agency Proceeding

As noted, Count Three charges the defendant with conspiring to obstruct an agency proceeding.  As I told you before, you need not find that the defendant actually committed the obstruction of an agency proceeding that is the object of the conspiracy, but only that he agreed with others to do so.

The object of the conspiracy charged in Count Three is the crime of obstruction of an agency proceeding, which is set forth in Title 18, United States Code, Section 1505.  Section 1505 provides:

> Whoever corruptly, or by threats of force, or by any threatening letter or communication influences, obstructs, or impedes, or endeavors to influence, obstruct or impede the due and proper administration of law under which any proceeding is being held before any department or agency of the United States . . . [shall be guilty of a crime].

The elements of obstruction of an agency proceeding, each of which must be proved beyond a reasonable doubt, are as follows:

*first*, that on or about the date set forth in the Indictment, a proceeding was pending before an agency of the United States;

*second*, that the defendant knew that a proceeding was pending before an agency of the United States; and

[38]

_third_, that the defendant corruptly endeavored to influence, obstruct or impede the due and proper administration of the law under which the proceeding was being conducted.

### 1.    First Element: Proceeding Was Pending

The first element of the object of the conspiracy charged in Count Three is that at or about the date set forth in the Indictment, a proceeding was pending before an agency of the United States.  In this regard, you are instructed that HHS is an agency of the United States and that a proceeding includes an HHS Office of Inspector General investigation.  The question for you with respect to this element is whether that proceeding was pending in or about August and September 2022.

### 2.    Second Element: Knowledge of Proceeding

The second element of the object of the conspiracy charged in Count Three is that the defendant knew that the administrative proceeding was in progress.  In order to satisfy this element, you need only determine that the defendant knew at or about the date charged that the HHS Office of Inspector General was investigating Project Social Care Head Start for alleged whistleblower retaliation.  In this regard, you may consider all of the facts and circumstances surrounding the conduct with which the defendant is charged in order to determine whether he knew or had a reasonable basis for belief that a proceeding was pending.

### 3.    Third Element: Act of Obstructing or Impeding

The third element of the object of the conspiracy charged in Count Three is that the defendant did corruptly obstruct or impede, or endeavor to obstruct or impede the administrative proceeding.  The term "endeavor" is designed to reach all conduct that is aimed at influencing, intimidating, or impeding the proceedings.  Thus, it is sufficient to satisfy this element if you find that the defendant corruptly made any effort or did any act for the purpose of obstructing or

[39]

impeding the proceeding. The word "corruptly" means that the defendant acted voluntarily, deliberately, and dishonestly with the specific intent to sway, change, or prevent an action likely to be taken in the proceeding. So a defendant who has acted inadvertently or with an innocent motive has not obstructed justice.

Obstructing justice need not have been the sole motivation for the defendant's conduct as long as the defendant acted, at least in part, with that improper purpose. If you are considering whether the defendant may have had multiple motives, you should ask whether the defendant's motives were *primarily* corrupt—in other words, whether the bad motive outweighed the innocent motive. A defendant who has acted inadvertently or with an innocent motive has not obstructed justice.

When you consider whether the defendant committed obstruction of justice, I instruct you that it is not, by itself, illegal in New York or New Jersey to record a conversation or meeting with another person without consent and without disclosing that you are doing so—even if that conversation or meeting is with a law enforcement officer conducting an investigation. Similarly, it is not, by itself, illegal for a person to discuss interviews with law enforcement agents with other people, even if the law enforcement agent has asked him not to do so. But as with any other conduct that, absent a corrupt intent, would not be illegal standing alone, if these actions are engaged in with corrupt intent to obstruct an investigation, they can constitute obstruction of justice.

### F.    Conscious Avoidance

As I have explained, each of the counts charged in the Indictment requires the Government to prove that the defendant acted knowingly, as I have already defined that term.

[40]

If a person is actually aware of a fact, then he knows that fact. But, in determining whether the defendant acted knowingly, you may also consider whether the defendant deliberately closed his eyes to what otherwise would have been obvious. This because of a concept in the law called "conscious avoidance" or "willful blindness."

To be clear, the necessary knowledge on the part of the defendant with respect to any particular charge cannot be established by showing that that defendant was careless, negligent, or foolish. However, one may not willfully and intentionally remain ignorant of a fact material and important to one's conduct in order to escape the consequences of criminal law. In other words, a defendant cannot avoid criminal responsibility for his own conduct by "deliberately closing his eyes," or remaining purposefully ignorant of facts which would confirm to him that he was engaged in unlawful conduct.

Thus, if you find beyond a reasonable doubt that the defendant was aware that there was a high probability a crime was being committed, but that the defendant deliberately and consciously avoided confirming this fact, such as by purposely closing his or her eyes to it or intentionally failing to investigate it, then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge, unless you find that the defendant actually believed that he was not engaged in such unlawful behavior.

As I have instructed you, the Government must prove beyond a reasonable doubt that the defendant joined each of the conspiracies with knowledge of their unlawful objectives. In determining whether a defendant joined a conspiracy with knowledge of its unlawful objective, you may consider whether the defendant deliberately closed his eyes to what otherwise would have been obvious. In other words, if you find beyond a reasonable doubt that the defendant was aware of a high probability that the object of the conspiracy was the object alleged in the Indictment but

deliberately and consciously avoided confirming that fact, then you should treat this deliberate avoidance of positive knowledge as the equivalent of knowledge, unless you find that the defendant actually believed that this was not the object of the conspiracy.

You must keep in mind that there is an important difference between willfully and intentionally joining a conspiracy—which I previously explained to you—and knowing the specific object of a conspiracy. You may consider conscious avoidance in deciding whether the defendant knew the object of a conspiracy, that is, whether he reasonably believed that there was a high probability that a goal of the conspiracy was to commit the alleged object of the conspiracy and took deliberate and conscious action to avoid confirming that fact but participated in the conspiracy anyway. But "conscious avoidance" cannot be used as a substitute for finding that a defendant willfully and intentionally joined the conspiracy in the first place. It is logically impossible for a defendant to intend and agree to join a conspiracy if he or she does not actually know it exists or does not intend to join it. However, if you find beyond a reasonable doubt that the defendant willfully chose to participate in such a joint undertaking, you may consider whether the defendant took deliberate and conscious action to avoid confirming otherwise obvious facts about the purpose of that undertaking.

In sum, if you find that a defendant believed there was a high probability that a fact was so and that the defendant took deliberate and conscious action to avoid learning the truth of that fact, you may find that the defendant acted knowingly with respect to that fact. However, if you find that the defendant actually believed the fact was not so, then you may not find that he acted knowingly with respect to that fact.

### G. 18 U.S.C. § 1001 Not Charged

You have heard reference in some of the transcripts to another federal crime, 18 U.S.C. § 1001. I am instructing you that that crime is not charged in this case.

### H. Motive

Proof of motive is not a necessary element of the crimes with which the defendant is charged. Proof of motive does not establish guilt, nor does the lack of proof of motive establish that the defendant is not guilty.

If the guilt of the defendant is shown beyond a reasonable doubt, it is immaterial what the defendant's motive for the crime or crimes may be, or whether the defendant's motive was shown at all. The presence or absence of motive is, however, a circumstance that you may consider as bearing on the intent of the defendant.

### I. Attorney Involvement Not Itself a Defense

An attorney's involvement with an individual or entity does not itself constitute a defense to any of the charges in this case. The defense has not claimed, and cannot claim, that the defendant's conduct was lawful because he acted in good faith on the advice of one or more attorneys.

### J. Variance in Dates

The Indictment charges that certain acts occurred on or about a date or in or about a particular period of time. It is not essential that the Government prove that the crimes happened on any specific dates. It does not matter if a specific event is alleged to have occurred on or about a certain date, but the evidence at trial indicates that in fact it was a different date. The law requires only a substantial similarity between the dates alleged in the Indictment and the dates established by the testimony and other evidence.

[43]

### K.    Venue

As to each charge, the Government, in addition to proving the essential elements of that charge, must also establish that venue was proper in the Southern District of New York, which includes all of Manhattan and the Bronx, as well as Westchester, Rockland, Putnam, Dutchess, Orange, and Sullivan Counties.  Unlike the elements of the offenses, which must be proven beyond a reasonable doubt, the Government is only required to prove venue by a preponderance of the evidence.  A preponderance of the evidence means that it is more probable than not that something occurred.

The Government does not have to prove that a completed crime was committed within the Southern District of New York, or that the defendant was ever in the Southern District of New York.  It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred in this District.  The act itself may not be a criminal act.  And the act need not have been taken by the defendant, so long as the act was part of the crime that you find the defendant committed.

The defendant's presence in this district to further the charged crime is sufficient but not necessary to establish venue. For instance, if communications in furtherance of the charged scheme were transmitted into or out of this District, that is sufficient to establish venue.

With respect to Counts One, Two, and Three, you need to find that it is more likely than not that an act in furtherance of the charged conspiracy was committed or caused to be committed in the Southern District of New York by the defendant or a coconspirator during the life of the conspiracy.

## III.    DELIBERATIONS OF THE JURY

### A.    Right to See Exhibits and Hear Testimony

Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions to you. You are about to go into the jury room and begin your deliberations. If during deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony. And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you with a list of witnesses, in the order in which they testified; a list of exhibits; a verdict form, which I will discuss in a moment; and a copy of these instructions. There is one of each of these for each juror. I am also providing you with a copy of the Indictment. I remind you that the Indictment is not evidence.

### B.    Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court— should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### C.    Notes

Some of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes

that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. All jurors' recollections are equal. If you cannot agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.     Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the case. Your function is to weigh the evidence in this case and to determine the guilt or lack of guilt of the defendant with respect to the count charged in the Indictment. You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

When you are deliberating, all 12 jurors must be present in the jury room. If a juror is absent, you must stop deliberations.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision

[46]

about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do <u>not</u> report how the vote stands. If you reach a verdict, do not report what it is until you are asked in open court.

### E.    Verdict Form

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict.

### F.    Duties of Foreperson

Finally, I referred a moment ago to a foreperson. The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the court. He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.    Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you. All jurors must sign the form reflecting each juror's agreement with the verdict.

[47]

The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

### H.    Alternate Jurors

At this time, the first twelve jurors will begin their deliberations in the case. The final three—all of whom are alternates—will not deliberate at this time. Nevertheless, the alternate jurors are not quite excused. While the jury conducts its deliberations, you do not have to be in court, but you should give Ms. Williams phone numbers where you can be reached, because it is possible that one or more of you could be needed to deliberate if a juror is unable to continue. Ms. Williams will call you when deliberations are completed so that you will know you are completely finished. Between now and then, you must continue to observe all the restrictions I have instructed you on throughout the trial. That is, you must not discuss this case with anyone, including your fellow alternate jurors, the other jurors, other people involved in the trial, members of your family, friends, co-workers, or anyone else. And until a verdict is reached, as I have already instructed, you may not communicate with anyone about the case in any way. If anyone approaches you and tries to talk to you about the case, please report that to me, through Ms. Williams or through the contact information for the Court with which you were provided, immediately.

Do not listen to or watch or read any news reports concerning this trial if there were to be any; do not do any research on the Internet or otherwise. The reason for this of course is that

[48]

should you be asked to participate in reaching a verdict in this case, the only information you will be allowed to consider is what you learned in this Courtroom during the trial.  Please accept my heartfelt gratitude for your service.

I am sorry that you may miss the experience of deliberating with the jury but the law provides for a jury of twelve persons in this case.  So before the rest of the jury retires to the jury room, if you have any clothing or objects there, you are asked to pick them up and to withdraw before any deliberations start.  Without discussing the case, you may also say your goodbyes to your fellow jurors.

(Alternates excused)

## IV.    CONCLUSION

Members of the jury, that concludes my instructions to you.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

Members of the jury, you may now retire.  The marshal will be sworn before we retire.

(Marshal sworn)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v.-

ARIE RANGOTT,

Defendant.

23 Cr. 004 (JHR)

JENNIFER H. REARDEN, District Judge:

**JURY CHARGE**

AUGUST 1, 2024





[I]

# CONTENTS

I.   **General Instructions** ............................................................................................. **4**

   A.   Introductory Remarks ................................................................................... 4

   B.   Role of the Court .......................................................................................... 5

   C.   Role of the Jury ............................................................................................ 5

   D.   Role of Counsel ............................................................................................ 6

   E.   Sympathy or Bias ......................................................................................... 6

   F.   All Persons Equal Before the Law ............................................................... 8

   G.   Presumption of Innocence and Burden of Proof .......................................... 8

   H.   Proof Beyond a Reasonable Doubt ............................................................... 9

   I.   Number of Witnesses and Uncontradicted Testimony ............................... 10

   J.   What Is and Is Not Evidence ...................................................................... 11

   K.   Direct and Circumstantial Evidence ........................................................... 12

   L.   Inferences ................................................................................................... 13

   M.   Credibility of Witnesses ............................................................................. 14

   N.   Bias/Interest of Witnesses .......................................................................... 16

   O.   Preparation of Witnesses ............................................................................ 17

   P.   Law Enforcement or Government Witnesses .............................................. 17

   Q.   Cooperating Witnesses Testimony ............................................................. 18

   R.   Character Witnesses ................................................................................... 20

   S.   Stipulations of Fact .................................................................................... 20

   T.   Stipulations of Testimony .......................................................................... 20

   U.   Summary Charts ......................................................................................... 21

   V.   Redaction of Evidence ............................................................................... 21

   W.   Use of Audio and Video Recordings and Transcripts ................................ 21

   X.   Use of Evidence Obtained Pursuant to Searches ........................................ 22

   Y.   Uncalled Witnesses—Equally Available or Unavailable ............................ 22

   Z.   Immunized Witnesses ................................................................................ 23

   AA. Defendant's Right Not to Testify ................................................................ 24

II.  **Substantive Instructions** .................................................................................. **24**

   A.   The Indictment ........................................................................................... 24

   B.   All Three Counts: Conspiracy Offenses .................................................... 26

     1.   Background and Elements of Conspiracy ............................................. 26

     2.   First Element: Existence of a Conspiracy ............................................ 27

3.    Second Element: Participation ................................................. 29

4.    Third Element: Overt Act ..................................................... 32

C.    Count One: Conspiracy to Defraud the United States ....................... 32

1.    Additional Instructions Regarding Count One .......................... 34

D.    Count Two: Conspiracy to Falsify Documents and Records.................. 36

1.    First Element: Falsification of Document................................. 37

2.    Second Element: Knowing Conduct ..................................... 37

3.    Third Element: Intent to Impede a Matter .............................. 37

E.    Count Three: Conspiracy to Obstruct an Agency Proceeding .............. 38

1.    First Element: Proceeding Was Pending................................. 39

2.    Second Element: Knowledge of Proceeding ............................. 39

3.    Third Element: Act of Obstructing or Impeding......................... 39

F.    Conscious Avoidance.......................................................... 40

G.    18 U.S.C. § 1001 Not Charged .............................................. 43

H.    Motive ...................................................................... 43

I.    Attorney Involvement Not Itself a Defense ................................ 43

J.    Variance in Dates .......................................................... 43

K.    Venue ...................................................................... 44

**III. Deliberations of the Jury........................................................ 45**

A.    Right to See Exhibits and Hear Testimony ................................ 45

B.    Communication with the Court.............................................. 45

C.    Notes ...................................................................... 45

D.    Duty to Deliberate; Unanimous Verdict .................................. 46

E.    Verdict Form .............................................................. 47

F.    Duties of Foreperson...................................................... 47

G.    Return of Verdict ........................................................ 47

H.    Alternate Jurors.......................................................... 48

**IV.  Conclusion ................................................................... 49**

# I.     GENERAL INSTRUCTIONS

## A.     Introductory Remarks

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. We have reached the point where you are about to undertake your final function as jurors. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I am going to give you general instructions about your role and about how you are to decide the facts of the case, including the burden of proof you must apply. Many of these instructions would apply to any trial. Second, I will give you some more specific instructions about the legal rules applicable to this particular case, including a description of the elements of the charges against the defendant. Third, I will give you instructions on the rules governing your deliberations.

Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You will notice that I am reading these instructions from a prepared text. As I said earlier, it would be livelier, no doubt, if I just improvised. But it is important that I not do that. The law is made up of words, and those words are very carefully chosen. So, when I tell you the law, it is critical that I use exactly the right words.

Because my instructions cover many points, I have given you a copy of them so that you may follow along. In addition, you will have a copy of these instructions with you in the jury room, so you can refer to them if you want to re-read any portion to facilitate your deliberations.

You should not single out any instruction as alone stating the law; instead, you should consider my instructions as a whole when you retire to deliberate in the jury room.

You will also have with you in the jury room a verdict form on which to record your verdict. That form will list the questions you should consider.

### B.    Role of the Court

I have instructed you during the trial as to various matters, and you should of course continue to follow those instructions. My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them. With respect to legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You must not substitute your own notions or opinions of what the law is or ought to be.

### C.    Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts. Any opinion I might have regarding the facts is of absolutely no consequence.

**D.      Role of Counsel**

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. It is my job to rule on those objections. Therefore, why an objection was made or why I ruled on it the way I did is not your business. You should draw no inference from the fact that an attorney objects to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

From time to time, the lawyers and I had conferences out of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

**E.      Sympathy or Bias**

Under your oath as jurors, you are not to be swayed by sympathy or prejudice. All of us, no matter how hard we try, tend to look at others and weigh what they have to say through the lens of our own experience and background. We each have a tendency to stereotype others and make assumptions about them. Often, we see life and evaluate evidence through a clouded filter that tends to favor those like ourselves. You must do the best you can to put aside such stereotypes, for all litigants and witnesses are entitled to a level playing field in which we do the best we can to put aside our stereotypes and prejudices. You are to be guided solely by the evidence in this

case, and the crucial, bottom-line question that you must ask yourselves as you sift through the evidence is: has the Government proven the guilt of the defendant beyond a reasonable doubt?

It is for you alone to decide whether the Government has proven that the defendant is guilty of the crimes charged. You must decide solely on the basis of the evidence presented, subject to the law as I explain it to you. It must be clear to you that once you let fear or prejudice, or bias or sympathy, interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt, you should not hesitate for any reason to find a verdict of acquittal for the defendant. But on the other hand, if you should find that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate, because of sympathy or any other reason, to render a verdict of guilty.

The question of possible punishment of the defendant is of no concern to the jury and should not enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the Court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

Similarly, it would be improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process. Your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

### F.     All Persons Equal Before the Law

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. The fact that the Government is a party, and the prosecution is brought in the name of the United States, does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party. By the same token, you must give it no less deference. The Government and the defendant stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the defendant's race, religion, national origin, sex, or age. All persons are entitled to the same presumption of innocence, and the Government has the same burden of proof with respect to all persons. Your verdict must be based solely on the evidence or the lack of evidence.

### G.     Presumption of Innocence and Burden of Proof

Now I will instruct you on the presumption of innocence and the Government's burden of proof in this case. The defendant has pleaded not guilty to the charges in the Indictment. In so doing, he has denied every allegation charged against him. As a result of the defendant's plea of not guilty, the Government has the burden of proving each charge in the Indictment beyond a reasonable doubt. This burden never shifts to the defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of testifying, or calling any witnesses, or locating or producing any evidence.

The law presumes the defendant to be innocent of the charges against him. I therefore instruct you that he is to be presumed by you to be innocent throughout your deliberations.

The defendant does not have to prove his innocence. To the contrary, the law presumes the defendant to be innocent of the charges against him. This presumption of innocence alone is

sufficient to acquit him unless you as jurors are unanimously convinced beyond a reasonable doubt of his guilt, after a careful and impartial consideration of all the evidence in this case. If the Government fails to sustain its burden as to a particular charge in the Indictment, then you must find the defendant not guilty of that charge.

This presumption of innocence was in the defendant's favor at the start of the trial; it continued in his favor throughout the entire trial; it is in his favor even as I instruct you now; and it continues in his favor during the course of your deliberations. I therefore instruct you that the defendant is to be presumed by you to be innocent throughout your deliberations in the jury room. That presumption is removed if and only if you, as members of the jury, are satisfied that the Government has sustained its burden of proving the guilt of the defendant beyond a reasonable doubt.

### H.    Proof Beyond a Reasonable Doubt

The question that naturally arises is, "What is a reasonable doubt?" The words almost define themselves. It is a doubt that a reasonable person has after carefully weighing all of the evidence, or lack of evidence. It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, and your common sense. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs. A reasonable doubt is not caprice or whim. It is not speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And it is not sympathy.

At the same time, reasonable doubt does not mean beyond all possible doubt. It is practically impossible for a person to be absolutely and completely convinced of any disputed fact

[9]

that by its nature is not susceptible of mathematical certainty. In consequence, the law in a criminal case is that it is sufficient if the guilt of a defendant is established beyond a reasonable doubt, not beyond all possible doubt.

If, after a fair and impartial consideration of all the evidence, you are not satisfied of the defendant's guilt, if you do not have an abiding conviction of the defendant's guilt—in sum, if you have such a doubt as would cause you, as prudent persons, to hesitate before acting in in important matters in the personal affairs of your own life—then you have a reasonable doubt, and in that circumstance it is your duty to acquit the defendant.

On the other hand, if after a fair and impartial consideration of all the evidence you are convinced of the defendant's guilt of a particular charge beyond a reasonable doubt, then you must convict him of that charge.

## I.    Number of Witnesses and Uncontradicted Testimony

The fact that one party called more witnesses or introduced more evidence does not mean that you should necessarily find the facts in favor of the side offering the most witnesses and the most evidence. By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness to be not credible. You must decide which witnesses to believe and determine which facts are true. To do this, you must look at all the evidence or lack of evidence, drawing upon your own common sense and personal experience. After examining all the evidence, you may decide that the party calling the most witnesses has not persuaded you because you do not believe its witnesses, or because you do believe the fewer witnesses called by the other side.

Again, you should also keep in mind that the burden of proof is always on the Government. The defendant is not required to call any witnesses or offer any evidence, since he is presumed to

be innocent. On the other hand, the Government is not required to prove each element of the offense by any particular number of witnesses. The testimony of a single witness may be enough to convince you beyond a reasonable doubt of the existence of the elements of the charged offenses—if you believe that the witness has truthfully and accurately related what he or she has told you. The testimony of a single witness may also be enough to convince you that reasonable doubt exists, in which case you must find the defendant not guilty.

**J.      What Is and Is Not Evidence**

In determining the facts, you must rely upon your own recollection of the evidence. The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, and the stipulations of the parties.

However, testimony that I have stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the purpose I indicated.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

As I told you at the start of this case, statements and arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

[11]

For the same reasons, you are not to consider a lawyer's questions as evidence. It is the witnesses' answers that are evidence, not the lawyers' questions.

Finally, any statements that I may have made do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

### K.     Direct and Circumstantial Evidence

Generally, as I mentioned at the start of the case, there are two types of evidence that you may consider in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard. For example, if a witness testified that when he left his house this morning, it was raining, that would be direct evidence about the weather.

The second type of evidence is circumstantial evidence. Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts. There is a simple example of circumstantial evidence that is frequently used in this Courthouse. Assume that when you came into the Courthouse this morning, the sun was shining and it was a nice day outdoors. Also assume that the courtroom blinds were drawn, and you could not look outside. Assume further that, as you were sitting here, someone walked in with an umbrella that was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet. Now, because you could not look outside the courtroom, and you could not see whether it was raining, you would have no direct evidence of the fact that it was raining. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining. That is all there is to circumstantial evidence. You infer on the

basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Many facts, such as a person's state of mind, can only rarely be proven by direct evidence. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that in order to convict a defendant, the jury must be convinced of that defendant's guilt beyond a reasonable doubt from the evidence in the case.

### L.    Inferences

You just heard me refer a moment ago to "inferences" to be drawn from the evidence, and you may have also heard the attorney use that term throughout this trial—specifically, the attorneys have asked you to "infer" on the basis of your reason, experience, and commonsense from one or more established facts the existence of some other fact. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted to draw—but are not required to draw—from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

You do not leave your common sense, good judgment, or life experiences behind you when you walk into the Courtroom. You carry that background into the jury room during your deliberations. While you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience. Please remember, however, that you may not use your experience and common sense to fill in or create evidence that does not exist. You use them only to draw reasonable inferences from proven facts or to weigh and evaluate the evidence provided during the trial.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The Government may ask you to draw one set of inferences, while the defendant may ask you to draw another.

Some inferences, however, are impermissible. For example, you may not infer that a defendant is guilty of participating in criminal conduct if you find merely that he or she was present at the time the crime was being committed and had knowledge that it was being committed. Likewise, you may not infer that a defendant is guilty of participating in criminal conduct merely from the fact that he or she may have associated with other people who were guilty of wrongdoing, or merely because he or she may have had knowledge of the wrongdoing of others. Nor may you use evidence that I have instructed you was admitted for a limited purpose for any inference beyond that limited purpose.

Here again, let me remind you that, whether based upon direct or circumstantial evidence, or upon the logical, reasonable inferences drawn from such evidence, you must be satisfied that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt before you may convict him of the particular count that you are considering.

Ultimately, it is for you, and you alone, to decide what reasonable inferences to draw.

## M.    Credibility of Witnesses

You have had the opportunity to observe the witnesses testify at this trial. It is now your job to decide how credible, or believable, each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

How do you evaluate the credibility, or believability, of the witnesses? The answer is that you use your common sense, your good judgment, and your experience.

[14]

First, consider how well the witness was able to observe or hear what he or she testified about. The witness may be honest, but mistaken. How did the witness's testimony impress you? Did the witness appear to be testifying honestly, openly, and candidly? Were the witness's answers direct or were they evasive? How responsive was the witness to the questions asked on direct examination and on cross-examination? Consider the witness's demeanor, manner of testifying, and the strength and accuracy of the witness's recollection. Consider whether any outside factors might have affected a witness's ability to perceive events.

Consider also the substance of the testimony. How does the witness's testimony compare with other proof in the case? Does it seem implausible or otherwise unworthy of belief? Is it corroborated or is it contradicted by other evidence? If there is a conflict, does any version appear reliable, and if so, which version seems more reliable?

In addition, you should specifically note any evidence of hostility or affection that the witness may have had for or against the Government or the defendant. Likewise, you should consider evidence of any interest or motive that the witness may have had in cooperating with or helping either party. It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. If you find that a witness is biased or interested, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in this case does not mean the witness has not told the truth. It is for you to decide from your observations, applying your common sense and experience, and all the other considerations mentioned, whether an interest has intentionally or otherwise colored or distorted the witness's testimony. You are not required to believe or

[15]

disbelieve a biased or an interested witness; you may accept as much of the testimony as you deem reliable and reject as much as you deem unworthy of belief.

If a witness made statements in the past that are inconsistent with his or her trial testimony concerning facts that are at issue here, you may consider that fact in deciding how much of the witness's testimony, if any, to believe. In making this determination, you may consider whether the witness purposely made a false statement, or whether it was an innocent mistake. You may also consider whether the inconsistency concerns an important fact or merely a small detail, as well as whether the witness had an explanation for the inconsistency, and, if so, whether that explanation appealed to your common sense.

If you find that a witness has testified falsely as to any material fact, or if you find that a witness has been previously untruthful when testifying under oath or otherwise, you may reject that witness's testimony in its entirety or you may accept only those parts that you believe to be truthful or that are corroborated by other independent evidence in the case.

It is for you, the jury, and for you alone, not the lawyers, or the witnesses, or me as the judge, to decide the credibility of the witnesses who testified and the weight that their testimony deserves.

### N.    Bias/Interest of Witnesses

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witnesses may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party. You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny. Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

**O.    Preparation of Witnesses**

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

**P.    Law Enforcement or Government Witnesses**

You have heard the testimony of law enforcement and other government witnesses. The fact that a witness may be employed as a law enforcement official or government employee does

[17]

not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

It is your decision, after reviewing all the evidence, whether to accept all, part of, or none of the testimony of the law enforcement witness or government witnesses—as it is with every other type of witness—and to give to that testimony the weight you find it deserves.

## Q.    Cooperating Witnesses Testimony

You have heard from a witness who testified pursuant to a cooperation agreement with the Government.

The law allows the use of the testimony of cooperators and other witnesses who have participated in crimes. Indeed, in federal courts, the law is that the testimony of even one such witness in itself may be enough for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt. The testimony of such witnesses is properly considered by the jury.

However, because of the possible interest a witness with a cooperation agreement may have in testifying, the witness's testimony should be examined with additional scrutiny because such witnesses may believe that it is in their interest to give testimony favorable to the Government. The fact that a witness has an agreement with the Government can be considered by you as bearing upon his or her credibility. It does not follow, however, that simply because a person has participated in a crime or has entered into such an agreement, he is incapable of telling the truth, and it is no concern of yours why the Government made an agreement with the witness. Your sole concern is whether a witness has given truthful testimony here in this courtroom before you.

In evaluating the testimony of such a witness, you should ask yourselves whether the witness would benefit more by lying, or by telling the truth. Was his or her testimony made up in

any way because he or she believed or hoped that he or she would somehow receive favorable treatment by testifying falsely? Or did he or she believe that his or her interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him or her to lie, or was it one that would cause him or her to tell the truth? And did this motivation color his or her testimony?

You may also consider whether an accomplice witness has an interest in the outcome of the case and, if so, whether it has affected the witness's testimony. For instance, you may consider whether the witness believes the government has provided him or her with any benefits or promises, and whether that belief provides the witness with a motive to testify either falsely or truthfully at this trial.

If you find that the testimony was false, you should reject it. However, if, after a cautious and careful examination of the witness's testimony and demeanor upon the witness stand, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion. Even if you find that a witness testified falsely in one part, you still may accept his or her testimony in other parts or may disregard all of it. That is a determination entirely for you, the jury.

The cooperating witness from whom you heard testimony pleaded guilty to charges arising out of the same facts that are at issue in this case. You are not to draw any inference of any kind about the guilt of the defendant merely from the fact that the witness pleaded guilty to charges similar to those with which the defendant in this case has been charged. The witness made personal

decisions based on their evaluation of the facts and circumstances. A witness's decision to cooperate with the Government is not evidence that the defendant committed a crime.

### R.    Character Witnesses

The defendant has called a witness who has given his opinion of the defendant's character or reputation. This testimony is not to be taken as the witness's opinion as to whether the defendant is guilty or not guilty. That question is for you alone to determine. You should, however, consider this evidence together with all the other facts and evidence in the case in determining whether the defendant is guilty or not guilty of the charges.

Accordingly, if after considering all the evidence including the testimony regarding the witness's opinion of the defendant's character or reputation, you find a reasonable doubt has been created, you must acquit. On the other hand, if after considering all the evidence including the testimony regarding the witness's opinion of the defendant's character or reputation, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should not acquit the defendant merely because you believe the defendant, or the witness believes the defendant, to be a person of good character or to have a good reputation.

### S.    Stipulations of Fact

In this case you have heard evidence in the form of stipulations of fact. A stipulation of fact is an agreement between the parties that a certain fact is true. You must regard such agreed-upon facts as true. However, it is for you to determine the effect to be given to those facts.

### T.    Stipulations of Testimony

In this case you have also heard evidence in the form of stipulations of testimony. A stipulation of testimony is an agreement between the parties that, if called as a witness, the person

would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the effect to be given that testimony.

### U.    Summary Charts

Some of the exhibits that were admitted into evidence were in the form of summary charts. I decided to admit these charts in order to save time and avoid unnecessary inconvenience. The charts themselves do not constitute independent evidence, and it is the jury's duty to determine that the charts actually reflect the evidence on which they are based.

### V.    Redaction of Evidence

Some of the exhibits received in evidence have been redacted. "Redacted" means that part of the underlying item was removed or covered. You are to concern yourself only with the part of the item that has been admitted into evidence. You should not consider any possible reason why the other part has been redacted.

### W.    Use of Audio and Video Recordings and Transcripts

Audio and video recordings have been admitted into evidence and transcripts of those recordings were provided to use as aids.

Whether you approve or disapprove of the recording of the activity may not enter your deliberations. I instruct you that these recordings were made in a lawful manner and that no one's rights were violated, and that the Government's use of this evidence is entirely lawful, and it was properly admitted into evidence at this trial.

You must, therefore, regardless of any personal opinions about this type of evidence, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proved beyond a reasonable doubt the guilt of the defendant.

In connection with the recordings that you have heard, you were provided with transcripts of the conversations to assist you while listening to the recordings. Transcripts were provided only as an aid to you in listening to the English-language recordings. It is for you to decide whether the transcripts correctly present the conversations recorded on the recordings that you heard.

If you wish to hear any of the recordings again, they will be made available to you during your deliberations.

## X.    Use of Evidence Obtained Pursuant to Searches

You have heard testimony about evidence seized in connection with certain searches or seizures conducted by law enforcement officers, and in particular, of email and other electronic evidence obtained pursuant to court-approved search warrants. Evidence obtained from these searches and seizures was properly admitted in this case and may be properly considered by you. Such searches and seizures were entirely appropriate law enforcement actions. Whether you approve or disapprove of how evidence was obtained should not enter into your deliberations, because I instruct you that the Government's use of the evidence is entirely lawful.

You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proven the defendant's guilt beyond a reasonable doubt.

## Y.    Uncalled Witnesses—Equally Available or Unavailable

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify. I instruct you that each party had an equal opportunity, or lack of opportunity, to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called. Their absence should not affect your judgment in any way.

[22]

You should remember that there is no duty on either side to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence. Please also remember my instruction that the law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence, and that the burden always rests with the Government to prove the defendant's guilt beyond a reasonable doubt.

### Z.    Immunized Witnesses

You have heard the testimony of witnesses who have testified under a grant of immunity from this court. What this means is that the testimony of those witnesses may not be used against them in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of this court.

You are instructed that the Government is entitled to call, as a witness, a person who has been granted immunity by order of this court and that you may convict a defendant on the basis of such a witness's testimony alone, if you find that the testimony proves the defendant guilty beyond a reasonable doubt.

Such testimony should be scrutinized with great care. You should examine it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness's own interests. If you believe the testimony to be true and determine to accept it, you may give it such weight, if any, as you believe it deserves.

It is no concern of yours why a witness received court-ordered immunity. Your sole concern is whether the witness has given truthful testimony in this trial. That is a determination entirely for you, the jury.

### AA.    Defendant's Right Not to Testify

The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence.  This is because, as I have told you, it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to a defendant.  A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that the defendant did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this against the defendant in any way in your deliberations.

## II.    SUBSTANTIVE INSTRUCTIONS

I will turn now to my instructions relating to the charges brought against the defendant in this case.

### A.    The Indictment

The defendant, Arie Rangott, has been formally charged in what is called an Indictment. An indictment is simply an accusation.  It is not evidence of the crimes charged; it is not proof of a defendant's guilt.  It is simply a procedure by which the Government presents charges in a criminal case.

Before you begin your deliberations, you will be provided a copy of the Indictment.  I will not read the entire Indictment to you at this time.  For now, I will summarize the offenses charged in the Indictment and then explain in detail the elements of each offense.

The Indictment contains three ~~counts~~ _charges_ against the defendant.  Each count constitutes a separate offense which must be considered separately by you, and for which you must return a

separate verdict. I am briefly going to summarize each count, and then will give you the law in greater detail.

Count One charges the defendant with conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371. This count alleges that, between in or about 2019 to in or about January 2023, the defendant agreed with others to impair, impede, or obstruct the lawful functions of the U.S. Department of Health and Human Services, often known as "HHS," including by impairing, impeding, or obstructing HHS's function to conduct appropriate oversight of, and ensure compliance by, organizations receiving funding pursuant to the federal Head Start and Early Head Start programs.

Count Two charges the defendant with conspiracy to falsify documents, in violation of Title 18, United States Code, Sections 371 and 1519. This count alleges that, in or about December 2021, the defendant agreed with others to knowingly alter, destroy, mutilate, conceal, cover up, falsify, or make a false entry in a record or document with the intent to impede, obstruct, or influence any matter within the jurisdiction of a department or agency of the United States, specifically by submitting a letter to HHS that he knew contained false statements and denials in response to an HHS inquiry.

Count Three charges the defendant with conspiracy to obstruct an official agency investigation, in violation of Title 18, United States Code, Sections 371 and 1505. This count alleges that, in or about August and September 2022, the defendant agreed with others to corruptly influence, obstruct, or impede the due and proper administration of the law under which a pending proceeding was being had before any department or agency of the United States, specifically by obstructing an investigation by the HHS Office of Inspector General.

As you may have just noted, Counts One, Two, and Three all charge conspiracy offenses, so let me explain to you what a conspiracy is. These instructions about conspiracy apply to all three Counts. After instructing you on what a conspiracy is, I will instruct you on the specific law governing each of the three Counts.

**B.    All Three Counts: Conspiracy Offenses**

**1.    Background and Elements of Conspiracy**

A conspiracy is a kind of criminal partnership—a combination or agreement of two or more persons to join together to accomplish some unlawful purpose. The crime of conspiracy to violate a federal law is an independent offense. It is separate and distinct from the violation of any specific federal laws, which the law refers to as "substantive crimes."

If a conspiracy exists, even if it should fail in its purpose, it is still punishable as a crime. Indeed, you may find a defendant guilty of conspiracy to commit an offense even though the substantive crime which was the object of the conspiracy was not actually committed. Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful. This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture.

In order for a defendant to be guilty of conspiracy, the Government must prove beyond a reasonable doubt the following three elements:

*first*, that the charged conspiracy existed;

*second*, that at some point during the conspiracy's existence the defendant knowingly and willfully joined the alleged conspiracy with the intent to accomplish the conspiracy's unlawful purpose; and

[26]

*third,* ~~that~~ that at least one overt act occurred, that is, some member of the conspiracy—not necessarily the defendant—knowingly took some action in furtherance of the conspiracy.

## 2.    First Element: Existence of a Conspiracy

Starting with the first element, what is a conspiracy?  A conspiracy is an agreement or an understanding between two or more people to violate the law.

The gist, or the essence, of the crime of conspiracy is the unlawful agreement of two or more people to violate the law.  As I mentioned earlier, the ultimate success of the conspiracy, or the actual commission of the crime that is the object of the conspiracy, is not required for a conspiracy to have existed.  Rather, the Government is required to prove beyond a reasonable doubt only that two or more persons, in some way or manner, explicitly or implicitly, came to an understanding to accomplish the unlawful object.

To prove the existence of a conspiracy, the Government is not required to show that two or more people sat around a table and entered into solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out who would do what in order to carry out the unlawful project.  Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished.  What the Government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

A conspiracy need not be proven by direct evidence of an explicit agreement.  Rather, in determining whether there has been an unlawful agreement as alleged in the Indictment, you may consider the actions and conduct of all the alleged co-conspirators that were taken to carry out the apparent criminal purpose.  The old adage, "actions speak louder than words," applies here.  Often,

the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators. When taken all together and considered as a whole, however, these acts and conduct may warrant the inference that a conspiracy existed just as conclusively as more direct proof, such as evidence of an express agreement.

The object of a conspiracy is the illegal goal that the co-conspirators hoped to achieve.

The object of the conspiracy charged in Count One is to defraud the United States or an agency thereof, specifically HHS.

The object of the conspiracy charged in Count Two is to falsify a letter to HHS in or about December 2021 in response to an HHS inquiry.

The object of the conspiracy charged in Count Three is to obstruct an investigation by the HHS Office of Inspector General.

You should keep in mind that you need not find the conspirators accomplished the object or goal of each conspiracy. Instead, an agreement to accomplish the goal of defrauding the United States or an agency thereof is sufficient with respect to finding the first element of a conspiracy has been satisfied for Count One; an agreement to accomplish the goal of falsifying a letter to HHS in response to an HHS inquiry in or about December 2021 is sufficient with respect to finding the first element of a conspiracy has been satisfied for Count Two; and an agreement to accomplish the goal of obstructing an investigation by the HHS Office of Inspector General is sufficient with respect to finding the first element of a conspiracy has been satisfied for Count Three.

Further, it is not essential that the Government prove that the conspiracy in question started and ended on the specific dates alleged in the Indictment or that it existed throughout that entire

period. Rather, it is sufficient to satisfy the first element if you find that in fact the charged conspiracy was formed and that it existed for any time within the charged period.

<u>Liability for Acts and Declarations of Co-Conspirators</u>

First you must determine whether or not the proof established beyond a reasonable doubt the existence of the conspiracy charged. In considering the first element of conspiracy generally, you will recall that I have admitted into evidence against the defendant the acts and statements of others because these acts and statements were committed or made by persons who, the Government alleges, were also confederates or co-conspirators of the defendant.

The reason for allowing this evidence to be received against the defendant has to do, in part, with the nature of the crime of conspiracy. As I have said, a conspiracy is often referred to as a partnership in crime: as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Therefore, the reasonably foreseeable declarations, statements, and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

If you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by a person also found by you to have been a member of the same conspiracy may be considered against the defendant. This is so even if such acts were committed or such statements were made in the defendant's absence, and/or without his knowledge.

### 3.    Second Element: Participation

If you conclude that the Government has proven beyond a reasonable doubt that a charged

conspiracy existed, then you must consider the second element: whether the defendant knowingly and willfully became a member of the conspiracy.

To act "knowingly" means to act voluntarily and deliberately rather than mistakenly or inadvertently.

To act "willfully" means to act voluntarily and with a wrongful purpose.

Put differently, an act is done knowingly and willfully if it is done purposefully and deliberately with an intent to do something the law forbids, that is, a defendant's act must have been the product of that defendant's conscious determination rather than the product of a mistake, accident, mere negligence, or some other innocent reason.

Now, science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking. However, you have before you evidence of certain acts, conversations, and statements alleged to have been made by, with, or in the presence of the defendant, and others. The ultimate facts of knowledge and criminal intent may be established by words and conduct and all the surrounding circumstances, as well as acts, and all of the circumstances disclosed by the evidence and logical and reasonable inferences from them. It is for you to determine whether the Government has established beyond a reasonable doubt such knowledge and intent on the part of the defendant.

It is not necessary for the Government to show that a defendant was fully informed as to all the details of the conspiracy in order for you to infer knowledge on his part. Nor does the defendant need to know the full extent of the conspiracy or all its participants. Indeed, it is not necessary that a defendant know more than one other member of the conspiracy. It is also not necessary that the defendant receive any monetary benefit from participating in the conspiracy. It is enough if he participated in the conspiracy willfully and knowingly, as I have defined those

terms. While proof of a financial interest in the outcome of the scheme is not essential, if you find that the defendant had such an interest, that is a factor you may properly consider in determining whether he was a member of the conspiracy. The presence or absence of motive, however, is a circumstance that you may consider as bearing on the intent of the defendant.

If you determine that the defendant became a member of the conspiracy, the duration and extent of the defendant's participation has no bearing on the issue of that defendant's guilt. Some conspirators play major roles, while others play minor roles. An equal role is not required. In fact, even a single act may be sufficient to draw a defendant within the ambit of the conspiracy if it meets the elements I have described. Moreover, a defendant need not have joined the conspiracy at the outset. He may have joined it at any time—at the beginning, in the middle, or at the end. And if he joined, he will still be held responsible for all that was done before he joined as well as all that was done during the conspiracy's existence while the defendant was a member.

However, I want to caution you that mere association with a member of a conspiracy by one person with another person does not make that first person a member of the conspiracy, even when that association is coupled with knowledge that the second person is committing a crime. Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction. Similarly, a defendant's mere position, employment, or supervisory authority at an organization by itself is not participation. In other words, knowledge without participation is not sufficient to satisfy the second element. What is necessary is that the defendant participated in the conspiracy with knowledge of its unlawful purpose and with intent to aid in that accomplishment of its unlawful object or objects.

In sum, if you find the defendant, with an understanding of the unlawful nature of the charged conspiracy, intentionally engaged, advised, or assisted in the conspiracy for the purpose

of furthering the illegal undertaking, you should conclude that the defendant became a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.

### 4.    Third Element: Overt Act

The third element that the Government must prove beyond a reasonable doubt for all three counts is that at least one member of the conspiracy, not necessarily the defendant, knowingly committed at least one overt act in furtherance of the conspiracy. There must have been something more than mere agreement; some overt step or action must have been taken by at least one of the conspirators in furtherance of the conspiracy.

In order for the Government to satisfy its burden of proof with respect to the overt act requirement, it is not necessary for the Government to prove all or even any of the particular overt acts alleged in the Indictment. Nor must you find that the defendant himself committed any overt act, since such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

You should bear in mind that an innocent lawful act, standing alone, can constitute an overt act. An apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding, or assisting the conspiratorial scheme to violate the law. Therefore, an overt act does not have to be an act that is in and of itself criminal. Similarly, an overt act does not itself have to constitute the objective of the conspiracy, but it does have to be committed by a conspirator in furtherance of the conspiracy.

### C.    Count One: Conspiracy to Defraud the United States

I have just instructed you on the elements of a conspiracy charge generally. I will now instruct you how those instructions apply to Counts One, Two, and Three, starting with Count One and focusing on the object of each conspiracy.

The object of the conspiracy charged in Count One is to defraud the United States or its government agencies, by impairing, impeding, and obstructing the lawful functions of HHS. Please bear in mind that the actual commission of an objective of the conspiracy—here, defrauding the United States and its government agencies, by impairing, impeding, and obstructing the lawful functions of HHS—is not an element of the crime of conspiracy. Thus, you need not find that the conspirators actually impaired, impeded, and obstructed the lawful functions of HHS, but only that they agreed to do so.

In order to find that a person conspired to "impair, impede, or obstruct" a legitimate governmental function, you must find beyond a reasonable doubt that the object of the conspiracy was to interfere with or obstruct one or more of the United States' lawful governmental functions by deceit, craft, or trickery, or by means that are dishonest. Obstructing a lawful governmental function, for purposes of the object of the conspiracy charged in Count One, includes making it more difficult for an agency of the U.S. government to carry out its lawful functions by dishonest or deceitful means. Actual contact between the defendant and an official of the U.S. government is not an element of the crime, nor is it necessary for you to find that the government was subjected to any loss of money or property as a result of the conspiracy. It also is not necessary for you to find that the impairment violated any separate law, or that the U.S. government's lawful functions were in fact impaired, impeded, or obstructed. All that is required is that the object of the conspiracy was to interfere with or obstruct one of the United States' lawful governmental functions by deceit, craft, or trickery, or by means that are dishonest.

The lawful governmental functions that the Government alleges the charged conspiracy intended to interfere with or obstruct are certain functions of HHS. I am instructing you as a matter of law that HHS is a government agency of the United States, and that one of HHS's lawful

[33]

functions is to administer the federal Head Start program. By law, that program is designed "to promote the school readiness of low-income children by enhancing their cognitive, social, and emotional development." To exercise that function, HHS issues grants to entities known as "agencies," such as non-profit corporations, for the purpose of having those agencies deliver Head Start services. HHS sets and enforces standards for agencies to deliver Head Start services, as well as administrative and financial management standards for agencies to meet. HHS is responsible for monitoring agencies to ensure that the goals of the Head Start program are met, and that agencies adhere to standards for the delivery of educational services, the administration of grants, and the fiscal management of grants.

Among other things, Head Start grantees must have in place a "governing body" with "legal and fiscal responsibility for the Head Start agency," comprised of members who do "not have a financial conflict of interest with the Head Start agency." In addition, Head Start agencies are prohibited from earning *any* profit from grant proceeds or from using grant proceeds for personal gain. Rather, the proceeds of Head Start grants must be expended in a "reasonable" manner with "reasonableness" considered by assessing, among other factors, whether the individuals concerned engaged in "arm's-length bargaining."

I also instruct you that, under the laws governing not-for-profit entities in New York, not-for-profit corporations do not have any owners or shareholders. There is no concept under the law of "ownership" of a not-for-profit corporation. Rather, not-for-profit corporations exist solely to serve the public interest, and control of such organizations rests with a board of directors that is subject to a number of procedural rules to ensure the organization is run according to law.

### 1.    Additional Instructions Regarding Count One

I have two additional instructions with respect to Count One.

### a. *Good Faith*

First, a defendant's good faith is an absolute defense to a charge of conspiracy to defraud the United States. This is because good faith is inconsistent with the intent to defraud, which is an essential part of the Count One charge.

Under the statute governing Count One, even false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith. If the defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there is no crime.

Yet if the defendant knew that his representations were false and material, it is not a defense that he believed that the victim would recognize their falsity and decide not to rely on those statements.

Likewise, a venture commenced in good faith may become fraudulent if it is continued after a fraudulent intent has been formed. Therefore, good faith is no defense when the defendant first made representations in good faith but later, during the time charged in the Indictment, the defendant realized that the representations were false and nevertheless deliberately continued to make them. You must review and put together all the circumstances in deciding whether it has been established beyond a reasonable doubt that the defendant devised or participated in a scheme to defraud knowingly, willfully, and with the intent to defraud, or whether he acted in good faith.

Furthermore, if the defendant participated in the scheme to defraud, then the defendant's belief, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith. If the defendant participated in the scheme for the purpose of causing financial or property loss to another, then no

amount of honest belief on the part of the defendant that the scheme will cause ultimately make a profit or cause no harm will excuse fraudulent actions or false representations by him.

The burden of establishing a defendant's lack of good faith and criminal intent rests upon the Government. Stated another way, a defendant is under no burden to prove his good faith; rather, the prosecution must prove bad faith or knowledge of falsity beyond a reasonable doubt.

### b. Negligence of the Alleged Victim

Second, it does not matter whether any particular victim might have discovered the fraud had it probed further or been more careful. If you find that a scheme to defraud existed, it is irrelevant whether you believe that any alleged victims were careless, gullible, or even negligent.

That concludes my instructions on Count One.

### D.    Count Two: Conspiracy to Falsify Documents and Records

I will now turn to Count Two of the Indictment. Count Two charges the defendant with conspiring to falsify documents. As I told you before, you need not find that the defendant actually committed the crime of falsifying documents, but only that he agreed with others to do so.

The object of the conspiracy charged in Count Two is the crime of falsification of documents, which is set forth in Title 18, United States Code, Section 1519. Section 1519 provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . , or in relation to or contemplation of any such matter . . . , shall be [guilty of a crime].

In order to sustain its burden of proof against the defendant with respect to Count Two, the Government must prove beyond a reasonable doubt the following three elements:

*first*, that the defendant falsified or caused the falsification of a document;

[36]

The elements
of the
object of
Count Two
are:

*second*, that the defendant acted knowingly; and

*third*, that the defendant acted with the intent to impede, obstruct, or influence any matter within the jurisdiction of a department or agency of the United States Government.

As I did with Count One, I will explain each of these elements in more detail.

### 1.    First Element: Falsification of Document

The first element the Government must prove on Count Two is that the defendant falsified any document. Both tampering with preexisting documents and creating a new document may constitute falsifying a document. A document may be "falsified" if it contains a misrepresentation or false denial.

### 2.    Second Element: Knowing Conduct

The second element that the Government must prove is that the defendant acted knowingly. A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case. In determining whether the defendant acted knowingly, you may consider evidence of the defendant's words, acts, and omissions, along with all of the facts and circumstances surrounding the case.

### 3.    Third Element: Intent to Impede a Matter

The third and final element of Count Two that the Government must prove beyond a reasonable doubt is that the defendant acted with the intent to impede, obstruct, or influence any matter within the jurisdiction of an agency of the United States Government. I instruct you as a matter of law that HHS is an agency of the United States and that monitoring compliance by recipients of Head Start funding with Head Start standards are matters within the jurisdiction of that Office.

The Government is not required to prove that the defendant knew that the investigation was a federal investigation, or that a federal investigation would take place, or that the matter was within the jurisdiction of a federal agency. However, the Government is required to prove that the investigation that the defendant intended to impede, obstruct, or influence did, in fact, concern a matter within the jurisdiction of an agency of the United States.

### E.    Count Three: Conspiracy to Obstruct an Agency Proceeding

As noted, Count Three charges the defendant with conspiring to obstruct an agency proceeding. As I told you before, you need not find that the defendant actually committed the obstruction of an agency proceeding that is the object of the conspiracy, but only that he agreed with others to do so.

The object of the conspiracy charged in Count Three is the crime of obstruction of an agency proceeding, which is set forth in Title 18, United States Code, Section 1505. Section 1505 provides:

> Whoever corruptly, or by threats of force, or by any threatening letter or communication influences, obstructs, or impedes, or endeavors to influence, obstruct or impede the due and proper administration of law under which any proceeding is being held before any department or agency of the United States . . . [shall be guilty of a crime].

The elements of obstruction of an agency proceeding, each of which must be proved beyond a reasonable doubt, are as follows:

*first*, that on or about the date set forth in the Indictment, a proceeding was pending before an agency of the United States;

*second*, that the defendant knew that a proceeding was pending before an agency of the United States; and

[38]

*third*, that the defendant corruptly endeavored to influence, obstruct or impede the due and proper administration of the law under which the proceeding was being conducted.

### 1.    First Element: Proceeding Was Pending

The first element of the object of the conspiracy charged in Count Three is that at or about the date set forth in the Indictment, a proceeding was pending before an agency of the United States. In this regard, you are instructed that HHS is an agency of the United States and that a proceeding includes an HHS Office of Inspector General investigation. The question for you with respect to this element is whether that proceeding was pending in or about August and September 2022.

### 2.    Second Element: Knowledge of Proceeding

The second element of the object of the conspiracy charged in Count Three is that the defendant knew that the administrative proceeding was in progress. In order to satisfy this element, you need only determine that the defendant knew at or about the date charged that the HHS Office of Inspector General was investigating Project Social Care Head Start for alleged whistleblower retaliation. In this regard, you may consider all of the facts and circumstances surrounding the conduct with which the defendant is charged in order to determine whether he knew or had a reasonable basis for belief that a proceeding was pending.

### 3.    Third Element: Act of Obstructing or Impeding

The third element of the object of the conspiracy charged in Count Three is that the defendant did corruptly obstruct or impede, or endeavor to obstruct or impede the administrative proceeding. The term "endeavor" is designed to reach all conduct that is aimed at influencing, intimidating, or impeding the proceedings. Thus, it is sufficient to satisfy this element if you find that the defendant corruptly made any effort or did any act for the purpose of obstructing or

[39]

impeding the proceeding. The word "corruptly" means that the defendant acted voluntarily, deliberately, and dishonestly with the specific intent to sway, change, or prevent an action likely to be taken in the proceeding. So a defendant who has acted inadvertently or with an innocent motive has not obstructed justice.

Obstructing justice need not have been the sole motivation for the defendant's conduct as long as the defendant acted, at least in part, with that improper purpose. If you are considering whether the defendant may have had multiple motives, you should ask whether the defendant's motives were *primarily* corrupt—in other words, whether the bad motive outweighed the innocent motive. A defendant who has acted inadvertently or with an innocent motive has not obstructed justice.

When you consider whether the defendant committed obstruction of justice, I instruct you that it is not, by itself, illegal in New York or New Jersey to record a conversation or meeting with another person without consent and without disclosing that you are doing so—even if that conversation or meeting is with a law enforcement officer conducting an investigation. Similarly, it is not, by itself, illegal for a person to discuss interviews with law enforcement agents with other people, even if the law enforcement agent has asked him not to do so. But as with any other conduct that, absent a corrupt intent, would not be illegal standing alone, if these actions are engaged in with corrupt intent to obstruct an investigation, they can constitute obstruction of justice.

### F.    Conscious Avoidance

As I have explained, each of the counts charged in the Indictment requires the Government to prove that the defendant acted knowingly, as I have already defined that term.

[40]

If a person is actually aware of a fact, then he knows that fact. But, in determining whether the defendant acted knowingly, you may also consider whether the defendant deliberately closed his eyes to what otherwise would have been obvious. This because of a concept in the law called "conscious avoidance" or "willful blindness."

To be clear, the necessary knowledge on the part of the defendant with respect to any particular charge cannot be established by showing that that defendant was careless, negligent, or foolish. However, one may not willfully and intentionally remain ignorant of a fact material and important to one's conduct in order to escape the consequences of criminal law. In other words, a defendant cannot avoid criminal responsibility for his own conduct by "deliberately closing his eyes," or remaining purposefully ignorant of facts which would confirm to him that he was engaged in unlawful conduct.

Thus, if you find beyond a reasonable doubt that the defendant was aware that there was a high probability a crime was being committed, but that the defendant deliberately and consciously avoided confirming this fact, such as by purposely closing his or her eyes to it or intentionally failing to investigate it, then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge, unless you find that the defendant actually believed that he was not engaged in such unlawful behavior.

As I have instructed you, the Government must prove beyond a reasonable doubt that the defendant joined each of the conspiracies with knowledge of their unlawful objectives. In determining whether a defendant joined a conspiracy with knowledge of its unlawful objective, you may consider whether the defendant deliberately closed his eyes to what otherwise would have been obvious. In other words, if you find beyond a reasonable doubt that the defendant was aware of a high probability that the object of the conspiracy was the object alleged in the Indictment but

deliberately and consciously avoided confirming that fact, then you should treat this deliberate avoidance of positive knowledge as the equivalent of knowledge, unless you find that the defendant actually believed that this was not the object of the conspiracy.

You must keep in mind that there is an important difference between willfully and intentionally joining a conspiracy—which I previously explained to you—and knowing the specific object of a conspiracy. You may consider conscious avoidance in deciding whether the defendant knew the object of a conspiracy, that is, whether he reasonably believed that there was a high probability that a goal of the conspiracy was to commit the alleged object of the conspiracy and took deliberate and conscious action to avoid confirming that fact but participated in the conspiracy anyway. But "conscious avoidance" cannot be used as a substitute for finding that a defendant willfully and intentionally joined the conspiracy in the first place. It is logically impossible for a defendant to intend and agree to join a conspiracy if he or she does not actually know it exists or does not intend to join it. However, if you find beyond a reasonable doubt that the defendant willfully chose to participate in such a joint undertaking, you may consider whether the defendant took deliberate and conscious action to avoid confirming otherwise obvious facts about the purpose of that undertaking.

In sum, if you find that a defendant believed there was a high probability that a fact was so and that the defendant took deliberate and conscious action to avoid learning the truth of that fact, you may find that the defendant acted knowingly with respect to that fact. However, if you find that the defendant actually believed the fact was not so, then you may not find that he acted knowingly with respect to that fact.

### G.    18 U.S.C. § 1001 Not Charged

You have heard reference in some of the transcripts to another federal crime, 18 U.S.C. § 1001. I am instructing you that that crime is not charged in this case.

### H.    Motive

Proof of motive is not a necessary element of the crimes with which the defendant is charged. Proof of motive does not establish guilt, nor does the lack of proof of motive establish that the defendant is not guilty.

If the guilt of the defendant is shown beyond a reasonable doubt, it is immaterial what the defendant's motive for the crime or crimes may be, or whether the defendant's motive was shown at all. The presence or absence of motive is, however, a circumstance that you may consider as bearing on the intent of the defendant.

### I.    Attorney Involvement Not Itself a Defense

An attorney's involvement with an individual or entity does not itself constitute a defense to any of the charges in this case. The defense has not claimed, and cannot claim, that the defendant's conduct was lawful because he acted in good faith on the advice of one or more attorneys.

### J.    Variance in Dates

The Indictment charges that certain acts occurred on or about a date or in or about a particular period of time. It is not essential that the Government prove that the crimes happened on any specific dates. It does not matter if a specific event is alleged to have occurred on or about a certain date, but the evidence at trial indicates that in fact it was a different date. The law requires only a substantial similarity between the dates alleged in the Indictment and the dates established by the testimony and other evidence.

### K.    Venue

As to each charge, the Government, in addition to proving the essential elements of that charge, must also establish that venue was proper in the Southern District of New York, which includes all of Manhattan and the Bronx, as well as Westchester, Rockland, Putnam, Dutchess, Orange, and Sullivan Counties. Unlike the elements of the offenses, which must be proven beyond a reasonable doubt, the Government is only required to prove venue by a preponderance of the evidence. A preponderance of the evidence means that it is more probable than not that something occurred.

The Government does not have to prove that a completed crime was committed within the Southern District of New York, or that the defendant was ever in the Southern District of New York. It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred in this District. The act itself may not be a criminal act. And the act need not have been taken by the defendant, so long as the act was part of the crime that you find the defendant committed.

The defendant's presence in this district to further the charged crime is sufficient but not necessary to establish venue. For instance, if communications in furtherance of the charged scheme were transmitted into or out of this District, that is sufficient to establish venue.

With respect to Counts One, Two, and Three, you need to find that it is more likely than not that an act in furtherance of the charged conspiracy was committed or caused to be committed in the Southern District of New York by the defendant or a coconspirator during the life of the conspiracy.

[44]

### III.    DELIBERATIONS OF THE JURY

#### A.    Right to See Exhibits and Hear Testimony

Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions to you. You are about to go into the jury room and begin your deliberations. If during deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony. And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you with a list of witnesses, in the order in which they testified; a list of exhibits; a verdict form, which I will discuss in a moment; and a copy of these instructions. There is one of each of these for each juror. I am also providing you with a copy of the Indictment. I remind you that the Indictment is not evidence.

#### B.    Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court—should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

#### C.    Notes

Some of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes

[45]

that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. All jurors' recollections are equal. If you cannot agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.    Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the case. Your function is to weigh the evidence in this case and to determine the guilt or lack of guilt of the defendant with respect to the count charged in the Indictment. You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

When you are deliberating, all 12 jurors must be present in the jury room. If a juror is absent, you must stop deliberations.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision

[46]

about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do <u>not</u> report how the vote stands. If you reach a verdict, do not report what it is until you are asked in open court.

### E.    Verdict Form

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict.

### F.    Duties of Foreperson

Finally, I referred a moment ago to a foreperson. The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the court. He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.    Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you. All jurors must sign the form reflecting each juror's agreement with the verdict.

[47]

The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

### H.    Alternate Jurors

At this time, the first twelve jurors will begin their deliberations in the case. The final three—all of whom are alternates—will not deliberate at this time. Nevertheless, the alternate jurors are not quite excused. While the jury conducts its deliberations, you do not have to be in court, but you should give Ms. Williams phone numbers where you can be reached, because it is possible that one or more of you could be needed to deliberate if a juror is unable to continue. Ms. Williams will call you when deliberations are completed so that you will know you are completely finished. Between now and then, you must continue to observe all the restrictions I have instructed you on throughout the trial. That is, you must not discuss this case with anyone, including your fellow alternate jurors, the other jurors, other people involved in the trial, members of your family, friends, co-workers, or anyone else. And until a verdict is reached, as I have already instructed, you may not communicate with anyone about the case in any way. If anyone approaches you and tries to talk to you about the case, please report that to me, through Ms. Williams or through the contact information for the Court with which you were provided, immediately.

Do not listen to or watch or read any news reports concerning this trial if there were to be any; do not do any research on the Internet or otherwise. The reason for this of course is that

should you be asked to participate in reaching a verdict in this case, the only information you will be allowed to consider is what you learned in this Courtroom during the trial. Please accept my heartfelt gratitude for your service.

I am sorry that you may miss the experience of deliberating with the jury but the law provides for a jury of twelve persons in this case. So before the rest of the jury retires to the jury room, if you have any clothing or objects there, you are asked to pick them up and to withdraw before any deliberations start. Without discussing the case, you may also say your goodbyes to your fellow jurors.

(Alternates excused)

## IV.  CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

Members of the jury, you may now retire. The marshal will be sworn before we retire.

(Marshal sworn)

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)
August 1, 2024 Deliberations

### Government Witness List in Order of Appearance

1. **Yehuda Zorger**

2. **Ananya Sankar (Summary Witness)**

3. **Tanesha Peralta**

4. **Chelsea Zhang**

5. **Eric Knapp (Summary Witness)**

6. **Phillip Escoriaza**

7. **Michelle Sperruggia**

8. **Harold Schwartz**

9. **Sara Neuman**

10. **Courtney O'Donnell (Summary Witness)**

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)    **Court Exhibit #24**
August 1, 2024 Deliberations

**Government Exhibit List**

| GX Number | Description | Date |
|---|---|---|
| | **000 Series - Pictures** | |
| 2 | Isidore Handler Picture | 7/29/2024 |
| 3 | Martin Handler Picture | 7/29/2024 |
| 4 | Menachem Lieberman Picture | 7/22/2024 |
| 5 | Project Social Care Head Start Office Picture | 7/22/2024 |
| 6 | Harold Schwartz Picture | 7/22/2024 |
| | **100 Series – HHS Materials** | |
| 101 | Email and attachments from C. Zhang to M. Sperruggia (Aug. 5, 2022) | 7/22/2024 |
| 102 | HHS OIG recording of C. Zhang interview | 7/25/2024 |
| 103 | HHS OIG recording of J. Restivo interview | 7/26/2024 |
| 104 | Email from M. Pava to M. Sperruggia et ano. (Sept. 1, 2022) | 7/22/2024 |
| 105 | Email from M. Pava to M. Sperruggia (Sept. 2, 2022) | 7/22/2024 |
| 106 | HHS OIG recording of A. Rangott interview | 7/26/2024 |
| 107 | HHS OIG recording of H. Schwartz interview | 7/26/2024 |
| 108 | Email from M. Pava to M. Sperruggia (Sept. 12, 2022) | 7/22/2024 |
| 109 | HHS OIG recording of Y. Zorger interview | 7/22/2024 |
| 110 | Email from M. Pava to M. Sperruggia (Sept. 14, 2022) | 7/22/2024 |
| 111 | Email from M. Pava to M. Sperruggia (Sept. 14, 2022) | 7/22/2024 |
| 112 | Application for Federal Assistance by PSCHS (May 1, 2019) | 7/24/2024 |
| 113 | Application for Federal Assistance by PSCHS (May 1, 2020) | 7/24/2024 |
| 114 | Application for Federal Assistance by PSCHS (May 15, 2020) | 7/24/2024 |
| 115 | Application for Federal Assistance by PSCHS (Apr. 30, 2021) | 7/24/2024 |
| 116 | Application for Federal Assistance by PSCHS (June 10, 2021) | 7/24/2024 |
| 117 | Application for Federal Assistance by PSCHS (Oct. 1, 2021) | 7/24/2024 |
| 118 | Application for Federal Assistance by PSCHS (Feb. 17, 2022) | 7/24/2024 |
| 119 | Application for Federal Assistance by PSCHS (Apr. 29, 2022) | 7/24/2024 |
| 120 | Application for Federal Assistance by PSCHS (May 19, 2022) | 7/24/2024 |
| 121 | Application for Federal Assistance by PSCHS (May 24, 2022) | 7/24/2024 |
| 122 | Application for Federal Assistance by PSCHS (May 24, 2022) | 7/24/2024 |
| 123 | Ltr. from HHS ACF to Y. Zorger (Dec. 7, 2021) | 7/23/2024 |
| 124 | Ltr. from Y. Zorger to HHS ACF (Dec. 14, 2021) | 7/23/2024 |
| 125 | Email from H. Schwartz to HHS ACF (Dec. 21, 2021) | 7/23/2024 |
| 126 | Ltr. from Y. Zorger to HHS ACF (Dec. 21, 2021) | 7/23/2024 |
| 127 | Ltr. from Y. Zorger to HHS ACF (Jan. 12, 2022) | 7/23/2024 |
| 128 | Amendment to EHS-CCP (Jul. 1, 2019) | 7/24/2024 |
| 129 | PSCHS & Brightside Partnership (Aug 1, 2019) | 7/24/2024 |
| | **200 Series – I. Handler Cellphone** | |
| 201 | Chat b/t A. Rangott and I. Handler (June 2021) | |
| 202 | Chat b/t A. Rangott and I. Handler (July 2021) | 7/23/2024 |

1

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)
August 1, 2024 Deliberations

| | | |
|---|---|---|
| 203 | Chat b/t S. Neuman and I. Handler (July 2021) | 7/23/2024 |
| 204 | Chat b/t S. Neuman and I. Handler (July 2021) | 7/23/2024 |
| 205 | Chat b/t S. Neuman and I. Handler (July 2021) | 7/23/2024 |
| 208 | Chat b/t S. Neuman and I. Handler (August 2021) | 7/23/2024 |
| 209 | Chat b/t A. Rangott and I. Handler (August 2021) | 7/23/2024 |
| 209A | Voice note attached to GX 209 | 7/23/2024 |
| 209B | Voice note attached to GX 209 | 7/23/2024 |
| 211 | Chat b/t M. Lieberman and I. Handler (August 2021) | 7/23/2024 |
| 213 | Chat b/t A. Rangott and I. Handler (September 2021) | 7/23/2024 |
| 213A | Voice note attached to GX 213 | 7/23/2024 |
| 213B | Voice note attached to GX 213 | 7/23/2024 |
| 213C | Voice note attached to GX 213 | 7/23/2024 |
| 213D | Voice note attached to GX 213 | 7/23/2024 |
| 213E | Voice note attached to GX 213 | 7/23/2024 |
| 213F | Voice note attached to GX 213 | 7/23/2024 |
| 214 | Chat b/t A. Rangott and I. Handler (September 2021) | 7/23/2024 |
| 214A | Voice note attached to GX 214 | 7/23/2024 |
| 214B | Voice note attached to GX 214 | 7/23/2024 |
| 214C | Voice note attached to GX 214 | 7/23/2024 |
| 214D | Voice note attached to GX 214 | 7/23/2024 |
| 214E | Voice note attached to GX 214 | 7/23/2024 |
| 214F | Voice note attached to GX 214 | 7/23/2024 |
| 216 | Chat b/t A. Rangott and I. Handler (November 2021) | 7/23/2024 |
| 217 | Chat b/t A. Rangott and I. Handler (December 2021) | 7/23/2024 |
| 217A | Voice note attached to GX 217 | 7/23/2024 |
| 219 | Chat b/t A. Rangott and I. Handler (December 2021) | 7/23/2024 |
| 219A | Voice note attached to GX 219 | 7/23/2024 |
| 219B | Voice note attached to GX 219 | 7/23/2024 |
| 219C | Voice note attached to GX 219 | 7/23/2024 |
| 219D | Voice note attached to GX 219 | 7/23/2024 |
| 220 | Chat b/t A. Rangott and I. Handler (December 2021) | 7/23/2024 |
| 220A | Voice note attached to GX 220 | 7/23/2024 |
| 220B | Voice note attached to GX 220 | 7/23/2024 |
| 221 | Chat b/t A. Rangott and I. Handler (December 2021) | 7/23/2024 |
| 221A | Voice note attached to GX 221 | 7/23/2024 |
| 222 | Chat b/t A. Rangott and I. Handler (December 2021) | 7/23/2024 |
| 222A | Voice note attached to GX 222 | 7/23/2024 |
| 222B | Voice note attached to GX 222 | 7/23/2024 |
| 222C | Voice note attached to GX 222 | 7/23/2024 |
| 222D | Voice note attached to GX 222 | 7/23/2024 |
| 222E | Voice note attached to GX 222 | 7/23/2024 |
| 222F | Voice note attached to GX 222 | 7/23/2024 |

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)
August 1, 2024 Deliberations

| 223 | Chat b/t A. Rangott and I. Handler (December 2021) | 7/23/2024 |
|------|----------------------------------------------------|-----------|
| 223A | Voice note attached to GX 223 | 7/23/2024 |
| 223B | Voice note attached to GX 223 | 7/23/2024 |
| 223C | Voice note attached to GX 223 | 7/23/2024 |
| 223D | Voice note attached to GX 223 | 7/23/2024 |
| 223E | Voice note attached to GX 223 | 7/23/2024 |
| 223F | Voice note attached to GX 223 | 7/23/2024 |
| 224 | Chat b/t A. Rangott and I. Handler (January 2022) | 7/23/2024 |
| 224A | Voice note attached to GX 224 | 7/23/2024 |
| 224B | Voice note attached to GX 224 | 7/23/2024 |
| 224C | Voice note attached to GX 224 | 7/23/2024 |
| 224D | Voice note attached to GX 224 | 7/23/2024 |
| 224E | Voice note attached to GX 224 | 7/23/2024 |
| 225 | Chat b/t A. Rangott and I. Handler (January 2022) | 7/23/2024 |
| 225A | Voice note attached to GX 225 | 7/23/2024 |
| 225B | Voice note attached to GX 225 | 7/23/2024 |
| 225C | Voice note attached to GX 225 | 7/23/2024 |
| 225D | Voice note attached to GX 225 | 7/23/2024 |
| 225E | Voice note attached to GX 225 | 7/23/2024 |
| 225F | Voice note attached to GX 225 | 7/23/2024 |
| 225G | Voice note attached to GX 225 | 7/23/2024 |
| 226 | Chat b/t A. Rangott and I. Handler (January 2022) | 7/23/2024 |
| 227 | Chat b/t A. Rangott and I. Handler (January 2022) | 7/23/2024 |
| 227A | Voice note attached to GX 227 | 7/23/2024 |
| 227B | Voice note attached to GX 227 | 7/23/2024 |
| 228 | Chat b/t A. Rangott and I. Handler (February 2022) | 7/23/2024 |
| 229 | Chat b/t A. Rangott and I. Handler (February 2022) | 7/23/2024 |
| 229A | Voice note attached to GX 229 | 7/23/2024 |
| 229B | Voice note attached to GX 229 | 7/23/2024 |
| 229C | Voice note attached to GX 229 | 7/23/2024 |
| 229D | Voice note attached to GX 229 | 7/23/2024 |
| 229E | Voice note attached to GX 229 | 7/23/2024 |
| 230 | Chat b/t A. Rangott and I. Handler (February 2022) | 7/23/2024 |
| 231 | Chat b/t A. Rangott and I. Handler (February 2022) | 7/23/2024 |
| 231A | Voice note attached to GX 231 | 7/23/2024 |
| 231B | Voice note attached to GX 231 | 7/23/2024 |
| 232 | Chat b/t A. Rangott and I. Handler (March 2022) | 7/23/2024 |
| 232A | Voice note attached to GX 232 | 7/23/2024 |
| 232B | Voice note attached to GX 232 | 7/23/2024 |
| 232C | Voice note attached to GX 232 | 7/23/2024 |
| 232D | Voice note attached to GX 232 | 7/23/2024 |
| 232E | Voice note attached to GX 232 | 7/23/2024 |

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)
August 1, 2024 Deliberations

| 232F | Voice note attached to GX 232 | 7/23/2024 |
|------|------------------------------|-----------|
| 232G | Voice note attached to GX 232 | 7/23/2024 |
| 232H | Voice note attached to GX 232 | 7/23/2024 |
| 232I | Voice note attached to GX 232 | 7/23/2024 |
| 232J | Voice note attached to GX 232 | 7/23/2024 |
| 232K | Voice note attached to GX 232 | 7/23/2024 |
| 232L | Voice note attached to GX 232 | 7/23/2024 |
| 232M | Voice note attached to GX 232 | 7/23/2024 |
| 232N | Voice note attached to GX 232 | 7/23/2024 |
| 232O | Voice note attached to GX 232 | 7/23/2024 |
| 232P | Voice note attached to GX 232 | 7/23/2024 |
| 232Q | Voice note attached to GX 232 | 7/23/2024 |
| 240 | Chat b/t A. Rangott and I. Handler (September 2022) | 7/23/2024 |
| 240A | Voice note attached to GX 240 | 7/23/2024 |
| 240B | Voice note attached to GX 240 | 7/23/2024 |
| 240C | Voice note attached to GX 240 | 7/23/2024 |
| 240D | Voice note attached to GX 240 | 7/23/2024 |
| 242 | Chat b/t A. Rangott and I. Handler (January 2022) | 7/23/2024 |
| 242A | Voice note attached to GX 242 | 7/23/2024 |
| 242B | Voice note attached to GX 242 | 7/23/2024 |
| 242C | Voice note attached to GX 242 | 7/23/2024 |
| 243 | Chat b/t A. Rangott and I. Handler (July 2021) | 7/23/2024 |
| 243A | Voice note attached to GX 243 | 7/23/2024 |
| 243B | Voice note attached to GX 243 | 7/23/2024 |
| 243C | Voice note attached to GX 243 | 7/23/2024 |
| 244 | Chat b/t A. Rangott and I. Handler (February 2022) | 7/23/2024 |
| **300 Series – M. Handler Cellphone** | | |
| 302 | Chat b/t M. Handler and M. Lieberman (Apr. 2019) | 7/30/2024 |
| 307 | Chat b/t M. Handler and S. Neuman (June 2021) | 7/31/2024 |
| 309 | Chat b/t M. Handler and M. Lieberman (June 2021) | 7/30/2024 |
| 310 | Chat b/t M. Handler and M. Lieberman (July 2021) | 7/30/2024 |
| 311 | Chat b/t M. Handler and I. Handler (July 2021) | 7/30/2024 |
| 312 | Chat b/t M. Handler and M. Lieberman (Dec. 2021) | 7/30/2024 |
| 312A | Document attached to GX312 | 7/30/2024 |
| 313 | Chat b/t M. Handler and M. Lieberman (Dec. 2021) | 7/30/2024 |
| 316 | Chat b/t M. Handler and M. Lieberman (Aug. 2021) | 7/30/2024 |
| 317 | Chat b/t M. Handler and M. Lieberman (Aug. 2021) | 7/30/2024 |
| 318 | Chat b/t M. Handler and M. Lieberman (Aug. 2021) | 7/30/2024 |
| **400 Series – Arangott@gmail.com Account** | | |
| 401 | Email from A. Rangott to C. Adler (May 16, 2021) | 7/23/2024 |
| 402 | Email and attachment from M. Lieberman to A. Rangott and M. Handler (June 8, 2021) | 7/23/2024 |
| 404 | Email and attachment from M. Handler to A. Rangott (June 11, 2021) | 7/23/2024 |

4

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)
August 1, 2024 Deliberations

| 405 | Email and attachment from M. Handler to A. Rangott (May 24, 2021) | 7/23/2024 |
|---|---|---|
| 407 | Email and attachment from A. Rangott to M. Lieberman (June 29, 2021) | 7/23/2024 |
| 408 | Email and attachment from M. Lieberman to A. Rangott (August 27, 2021) | 7/31/2024 |
| 409 | Email and attachment from I. Handler to M. Lieberman (August 31, 2021) | 7/23/2024 |
| 410 | Email and attachment from M. Lieberman to A. Rangott & H. Karpen (August 31, 2021) | 7/23/2024 |
| 411 | Email and attachment from M. Lieberman to A. Rangott & H. Karpen (August 31, 2021) | 7/23/2024 |
| 412 | Email and attachment from M. Lieberman to A. Rangott & H. Karpen (August 31, 2021) | 7/23/2024 |
| 414 | Email and attachment from A. Rangott to M. Lieberman (October 4, 2021) | 7/23/2024 |
| 415 | Email and attachment from A. Rangott to M. Lieberman (August 31, 2021) | 7/23/2024 |
| 417 | Email from M. Lieberman to A. Rangott & H. Karpen (August 31, 2021) | 7/23/2024 |
| 419 | Email and attachment from A. Rangott to M. Lieberman (September 1, 2021) | 7/23/2024 |
| 420 | Email and attachment from A. Rangott to M. Lieberman (November 16, 2021) | 7/23/2024 |
| 421 | Email and attachment from A. Rangott to M. Lieberman (September 2, 2021) | 7/23/2024 |
| 422 | Email and attachment from A. Rangott to M. Lieberman (November 16, 2021) | 7/23/2024 |
| 423 | Email and attachment from A. Rangott to M. Lieberman (September 9, 2021) | 7/23/2024 |
| 424 | Email and attachment from A. Rangott to M. Lieberman (December 8, 2021) | 7/23/2024 |
| 425 | Email and attachment from A. Rangott to M. Lieberman (September 12, 2021) | 7/23/2024 |
| 426 | Email and attachment from A. Rangott to M. Lieberman (December 29, 2021) | 7/23/2024 |
| 427 | Email and attachment from A. Rangott to M. Lieberman (September 30, 2021) | 7/23/2024 |
| 430 | Email from A. Rangott to M. Lieberman (February 7, 2022) | 7/23/2024 |
| 432 | Email and attachment from A. Rangott to M. Lieberman (February 7, 2022) | 7/23/2024 |
| 434 | Email from A. Rangott to M. Lieberman (February 14, 2022) | 7/23/2024 |
| 435 | Email from A. Rangott to M. Lieberman (April 5, 2022) | 7/23/2024 |
| 436 | A. Rangott Resume | 7/31/2024 |
| 439 | Email and attachment from A. Rangott to M. Handler (July 7, 2021) | 7/23/2024 |
| 440 | Email from Rev Support to A. Rangott (August 24, 2022) | 7/23/2024 |
| 441 | Email from Rev Support to A. Rangott (August 24, 2022) | 7/23/2024 |
| 442 | Email from Rev Support to A. Rangott (August 24, 2022) | 7/23/2024 |
| 443 | Email from Rev Support to A. Rangott (August 29, 2022) | 7/23/2024 |
| 444 | Email from Rev Support to A. Rangott (August 29, 2022) | 7/23/2024 |
| 445 | Email from Rev Support to A. Rangott (September 2, 2022) | 7/23/2024 |
| 446 | Email from Rev Support to A. Rangott (September 2, 2022) | 7/23/2024 |
| 447 | Email from Rev Support to A. Rangott (September 9, 2022) | 7/23/2024 |
| 448 | Email from Rev Support to A. Rangott (September 9, 2022) | 7/23/2024 |
| 450 | Email from A. Rangott to M. Lieberman (September 6, 2021) | 7/23/2024 |
| 451 | Email from A. Rangott to M. Lieberman (September 9, 2021) | 7/23/2024 |
| 453 | Email from A. Rangott to M. Lieberman (October 4, 2021) | 7/23/2024 |
| 454 | Email from A. Rangott to M. Lieberman (October 14, 2021) | 7/23/2024 |
| 455 | Email from A. Rangott to M. Lieberman (November 10, 2021) | 7/23/2024 |
| 456 | Email from A. Rangott to M. Lieberman (December 21, 2021) | 7/23/2024 |

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)
August 1, 2024 Deliberations

| 457 | Attachment to GX456 | 7/23/2024 |
|---|---|---|
| 458 | Email from A. Rangott to M. Lieberman (December 21, 2021) | 7/23/2024 |
| 459 | Attachment to GX458 | 7/23/2024 |
| 460 | Email from A. Rangott to self (June 23, 2021) | 7/26/2024 |
| 461 | Email from A. Rangott to self (June 23, 2021) | 7/26/2024 |
| 462 | Email re: Mortgage (June 28, 2021) | 7/31/2024 |
| 463 | Email re: Pay Stubs (June 29, 2021) | 7/31/2024 |
| 464 | Email re: Mortgage (August 8, 2021) | 7/31/2024 |
| **600 Series – Maxlieberman@yahoo.com Account** | | |
| 601 | Hebrew contract b/t M. Handler and M. Lieberman | 7/22/2024 |
| 602 | Translation of Hebrew contract b/t M. Handler and M. Lieberman | 7/22/2024 |
| 603 | Email and attachment from I. Handler to M. Lieberman (Aug. 30, 2021) | 7/22/2024 |
| 604 | Email and attachment from C. Zhang to M. Lieberman (Aug. 30, 2021) | 7/22/2024 |
| 605 | Email from I. Handler to M. Lieberman (Aug. 31, 2021) | 7/22/2024 |
| 606 | Email from M. Lieberman to C. Zhang (Aug. 31, 2021) | 7/22/2024 |
| 607 | Email and attachment from M. Lieberman to C. Zhang (Aug. 31, 2021) | 7/22/2024 |
| 608 | Email and attachments from I. Handler to M. Lieberman (Sept. 1, 2021) | 7/22/2024 |
| 609 | Email and attachment from M. Lieberman to Y. Zorger (Sept. 1, 2021) | 7/22/2024 |
| 610 | Email and attachments from M. Lieberman to Y. Zorger (Sept. 1, 2021) | 7/22/2024 |
| 613 | Email and attachment from M. Lieberman to Y. Zorger (Dec. 14, 2021) | 7/22/2024 |
| 614 | Email and attachment from M. Lieberman to A. Rangott (June 16, 2021) | 7/26/2024 |
| 615 | Email from A. Rangott to M. Lieberman (February 14, 2022) | 7/22/2024 |
| 616 | Email and attachment from M. Lieberman to A. Rangott (August 31, 2021) | 7/22/2024 |
| 617 | Scan from KinderCare to M. Lieberman (June 16, 2021) | 7/22/2024 |
| **700 Series – Harold@pscheadstart.com Account** | | |
| 701 | Email from H. Schwartz to A. Rangott and I. Handler (July 22, 2021) | 7/25/2024 |
| 702 | Email from. C. Zhang to E. Nerantzis et al. (July 26, 2021) | 7/25/2024 |
| 703 | Email from. M Berger to H. Schwartz (Aug. 30, 2021) | 7/25/2024 |
| 704 | Email from PMS to H. Schwartz (Sept. 1, 2021) | 7/25/2024 |
| 705 | Email from H. Schwartz to I. Handler (Sept. 13, 2021) | 7/25/2024 |
| 708 | Email and attachment from S. Neuman to H. Schwartz (June 30, 2021) | 7/25/2024 |
| 709 | Email from H. Schwartz to C. Adler et al. (July 30, 2021) | 7/25/2024 |
| 710 | Email from H. Schwartz to A. Rangott et al. (October 21, 2021) | 7/25/2024 |
| 711 | Email from A. Rangott to H. Schwartz (August 29, 2022) | 7/25/2024 |
| 712 | Email from A. Rangott to H. Schwartz (August 30, 2022) | 7/25/2024 |
| 713 | Email from A. Rangott to H. Schwartz (August 30, 2022) | 7/25/2024 |
| 714 | Email from M. Sperruggia to H. Schwartz (Sept. 8, 2022 | 7/25/2024 |
| 715 | Email from M. Pava to A. Rangott (Sept. 13, 2022) | 7/25/2024 |
| 716 | Email from I. Handler to H Schwartz and A. Rangott (Dec. 7, 2021) | 7/29/2024 |
| **800 Series – H. Schwartz Documents** | | |
| 802 | Draft Separation Agreement and General Release | 7/26/2024 |

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)
August 1, 2024 Deliberations

| 803 | Email from M. Sperruggia to C. Zhang (Aug 24, 2022) | 7/26/2024 |
| 804 | Email re: Draft Transcript (Sept 7, 2022) | 7/26/2024 |
| 805 | Email re: WeTransfer link (Sept 8, 2022) | 7/26/2024 |
| 806 | Email re: Ltr. from M. Weiss (Aug. 30, 2021) – Emailed Sept 12, 2022 | 7/26/2024 |
| 807 | Email re: Eli Lefkowitz Employee File (Sept 13, 2022) | 7/26/2024 |
| 808 | Email re: Meeting Minutes (Sept 15, 2022) | 7/26/2024 |
| 809 | Email re: complaint (Dec 13, 2021) | 7/29/2024 |
| 810 | Email re: complaint (Dec 13, 2021) | 7/29/2024 |
| 811 | Email re: complaint response for review (Dec 13, 2021) | 7/29/2024 |
| 812 | Email re: notification of complaint (Dec 20, 2021) | 7/29/2024 |
| 813 | Email re: notification of complaint (Dec 20, 2021) | 7/29/2024 |
| 814 | Email re: notification of complaint (Dec 20, 2021) | 7/29/2024 |
| **900 Series – Yehuda@precisionpaintplus.com Account** | | |
| 901 | Email from A. Rangott to Y. Zorger (Sept. 30, 2021) | 7/22/2024 |
| 902 | Email from. A. Rangott to Y. Zorger (Oct. 14, 2021) | 7/22/2024 |
| 903 | Email from C. Zhang to Y. Zorger (Nov. 1, 2021) | 7/22/2024 |
| 904 | Email from. A. Rangott to Y. Zorger (Oct. 14, 2021) | 7/22/2024 |
| 905 | Email from. A. Rangott to Y. Zorger (Dec. 21, 2021) | 7/22/2024 |
| 906 | Email from. A. Rangott to Y. Zorger (Mar. 14, 2022) | 7/22/2024 |
| 907 | Email from. A. Rangott to Y. Zorger and H. Schwartz (Sept. 05, 2022) | 7/22/2024 |
| 908 | Email from. A. Rangott to Y. Zorger (Sept. 6, 2022) | 7/22/2024 |
| 908A | Attachment to GX 908 | 7/22/2024 |
| 909 | Email from. A. Rangott to Y. Zorger (Oct. 24, 2022) | 7/22/2024 |
| **1000 Series – Rev.com** | | |
| 1001 | 2024.08.24 Rev Recording | 7/26/2024 |
| 1002 | 2024.08.24 Rev Recording | 7/26/2024 |
| 1003 | 2024.08.24 Rev Recording | 7/26/2024 |
| 1004 | 2024.08.24 Rev Recording | 7/26/2024 |
| 1005 | 2024.08.24 Rev Recording | 7/26/2024 |
| 1006 | 2024.08.24 Rev Recording | 7/26/2024 |
| 1007 | 2024.08.24 Rev Transcript | 7/26/2024 |
| 1008 | 2024.08.24 Rev Transcript | 7/26/2024 |
| 1009 | 2024.08.29 Rev Recording | 7/26/2024 |
| 1010 | 2024.08.29 Rev Transcript | 7/26/2024 |
| 1011 | 2024.09.02 Rev Recording | 7/26/2024 |
| 1012 | 2024.09.02 Rev Transcript | 7/26/2024 |
| 1013 | 2024.09.09 Rev Recording | 7/26/2024 |
| 1014 | 2024.09.09 Rev Transcript | 7/26/2024 |
| 1015 | Excel Records | 7/26/2024 |
| 1016 | Excel Records | 7/26/2024 |
| 1017 | Excel Records | 7/26/2024 |
| 1018 | Excel Records | 7/26/2024 |

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)
August 1, 2024 Deliberations

| 1100 Series – Bank Records | | |
|---|---|---|
| 1101 | Bank of America Document | 7/30/2024 |
| **1200 Series – S. Neuman PSC Account** | | |
| 1201 | Email from C. Adler to S. Neuman (May 1, 2019) | 7/30/2024 |
| 1202 | Email from I. Handler to S. Neuman (April 30, 2020) | 7/30/2024 |
| 1203 | Email from S. Neuman to C. Zhang (April 29, 2021) | 7/30/2024 |
| 1204 | Email from S. Neuman to A. Rangott (June 15, 2021) | 7/30/2024 |
| 1205 | Email from S. Neuman to C. Adler (June 16, 2021) | 7/30/2024 |
| 1206 | Email from S. Neuman to J. Restivo (June 25, 2021) | 7/30/2024 |
| **1300 Series – Summary Charts** | | |
| 1301 | Summary Chart of Texts, Emails, etc. | 7/26/2024 |
| 1302 | Summary Chart of Texts, Emails, etc. | 7/30/2024 |
| 1303 | Summary Chart of Texts, Emails, etc. | 7/30/2024 |
| 1304 | Summary Chart of Texts, Emails, etc. | 7/26/2024 |
| 1305 | Summary Chart of Texts, Emails, etc. | 7/30/2024 |
| 1306 | Summary Chart of Texts, Emails, etc. | 7/23/2024 |
| 1307 | Summary Chart of Texts, Emails, etc. | 7/30/2024 |
| 1308 | Summary Chart of Texts, Emails, etc. | 7/30/2024 |
| 1309 | Summary Chart of Texts, Emails, etc. | 7/31/2024 |
| **1400 Series – Feldesman Emails** | | |
| 1401 | Email from M. Pava to A. Rangott (Sept 14, 2022) | 7/26/2024 |
| 1402 | Email from A. Rangott to Y. Zorger, et. al. (Dec. 13, 2021) | 7/26/2024 |
| 1403 | Email from A. Rangott to Y. Zorger, et. al. (Dec. 20, 2021) | 7/26/2024 |
| 1404 | Email from A. Rangott to Y. Zorger, et. al. (Dec. 20, 2021) | 7/26/2024 |
| 1405 | Email from A. Rangott to Y. Zorger, et. al. (Dec. 21, 2021) | 7/26/2024 |
| 1406 | Email from A. Rangott to Y. Zorger, et. al. (Dec. 20, 2021) | 7/26/2024 |
| **1600 Series – Miscellaneous** | | |
| 1601 | Zorger Immunity Order | 7/22/2024 |
| 1602 | Neuman Immunity Order | 7/30/2024 |
| 1603 | Zhang Immunity Order | 7/25/2024 |
| 1604 | Harold Schwartz Cooperation Agreement | 7/30/2024 |
| 1605 | DOL Records | 7/31/2024 |
| **S Series – Stipulations** | | |
| S1 | I. Handler Cellphone Stipulation | 7/23/2024 |
| S2 | M. Handler Cellphone Stipulation | 7/30/2024 |
| S3 | Email Account Stipulation | 7/22/2024 |
| S4 | Bank of America Stipulation | 7/30/2024 |
| S5 | Rev.com Stipulation | 7/26/2024 |
| S6 | Hebrew Translation Stipulation | 7/24/2024 |
| S7 | HHS Document Stipulation | 7/22/2024 |

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)
August 1, 2024 Deliberations

**Defense Exhibit List**

| Exhibit # | Description | Date |
|---|---|---|
| | 100 Series | |
| 106 | Email 9/20/18 re: HS non-completing continuation application | 7/25/2024 |
| 112 | Email 6/24/21 re: Invoices | 7/25/2024 |
| | 200 Series | |
| 201N | Native version of GX809 | 7/30/2024 |
| 204Z | Redline comparison of GX811 to GX1402 | 7/30/2024 |
| 206Z | Redline comparison of GX1402 to GX1404 | 7/26/2024 |
| 207Z | Redline comparison of GX1404 to GX812 | 7/30/2024 |
| 211Z | Redline comparison of GX1404 to GX1405 | 7/30/2024 |
| | 300 Series | |
| 301 | Email 9/30/21 re: Please sign and return today | 7/23/2024 |
| 303 | Email 10/14/21 re: BOD/PC minutes and approval letter-Consolidated Continuation Application (Grants 1&3) | 7/23/2024 |
| 304 | Email 10/18/21 re:  Grant 3 Meeting with | 7/23/2024 |
| 305 | Email 11/1/21 re: Drawdown 11.1.21 | 7/23/2024 |
| 307 | Email 12/22/21 re: PSC food delivery | 7/23/2024 |
| 308-R | Email 3/3/22 re: Board Minutes – Redacted | 7/23/2024 |
| 309 | Email 3/3/22 re: Enrollment Report | 7/23/2024 |
| 310 | Email 3/9/22 re:  Focus Area Two Questions | 7/23/2024 |
| 311 | Email 5/2/22 re: PIR | 7/25/2024 |
| 313 | Email 5/19/22 re:  Governance Manual | 7/23/2024 |
| 314 | Email 5/26/22 re:  weekly enrollment reports | 7/23/2024 |
| 315 | Email 6/27/22 re:  Union Ave Permit Application Affidavit | 7/23/2024 |
| 318 | Email 9/21/22 re: BOD and PC Carryover and Continuation Application Approval Letter | 7/23/2024 |
| 320 | Email 12/14/22 re:  Status Update for New Center Location Grant #02CH010936 and Annual Self-Assessment | 7/25/2024 |
| 322 | Email 12/22/22 re: Statement | 7/23/2024 |
| | 500 Series | |
| 501 | Harold Gmail re: Sandy Disaster Project (Jul 20, 2021) | 7/30/2024 |
| 502 | Gmail from Josephine re: slots (Aug 4, 2021) | 7/30/2024 |
| 503 | Harold Gmail re: Monthly PSCHS Call (Jan 19, 2022) | 7/30/2024 |
| 505 | Harold Gmail re: Plan Restatement (Jun 7, 2022) | 7/30/2024 |
| 506 | Harold Gmail re: Audit (Jun 9, 2022) | 7/30/2024 |
| | 700 Series | |
| 701 | Email from A. Rangott to C. Zhang re: Training course (Feb 17, 2022) | 7/25/2024 |
| 703 | Email from A. Rangott to Y. Zorger re: training course (Apr. 26, 2022) | 7/25/2024 |
| 706 | Email from C. Zhang to S. Neuman re: Board minutes (Jun 10, 2021) | 7/25/2024 |
| 707 | Consulting Invoice (Jun 18, 2021) | 7/25/2024 |
| 708 | Consultant Contract (May 3, 3031) | 7/25/2024 |
| | 900 Series | |
| 901 | Customs and Border Protection Records | 7/31/2024 |

*United States v. Arie Rangott,* 23 Cr. 004 (JHR)
August 1, 2024 Deliberations

| Exhibit # | Description | Date |
|-----------|-------------|------|
| S Series | | |
| S1 | Redlines Stipulation | 7/30/2024 |
| S2 | Native Document Stipulation | 7/30/2024 |
| S3 | Family Circumstance Stipulation | 7/31/2024 |
| S4 | Customs and Border Protection Record Stipulation | 7/31/2024 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ARIE RANGOTT,

Defendant.

**SUPERSEDING INDICTMENT**

S8 23 Cr. 004 (JHR)

### COUNT ONE
### (Conspiracy to Defraud the United States)

The Grand Jury charges:

1. From at least in or about 2019, up to and including in or about January 2023, ARIE RANGOTT, the defendant, and others known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States and an agency thereof, to wit, the U.S. Department of Health and Human Services ("HHS"), in violation of Title 18, United States Code, Section 371.

2. It was a part and object of the conspiracy that ARIE RANGOTT, the defendant, and others known and unknown, would and did defraud the United States, and an agency thereof, by impairing, impeding, and obstructing the lawful functions of HHS, to wit, HHS's function to administer the federal Head Start program, with respect to a particular daycare company ("Daycare Provider-1") that received federal funds to administer Head Start services, by monitoring and ensuring Daycare Provider-1's compliance with administrative and fiscal management standards set forth in the Head Start Act, 42 U.S.C. §§ 9836a, 9837(c)(1), and 9839(a)(3), and its implementing regulations, 45 C.F.R. §§ 75.100(c), 75.402–75.405.

Overt Acts

3. In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.        From in or about April 2019, up to and including in or about January 2023, a co-conspirator not named herein ("CC-1") who owned a for-profit daycare company ("Daycare Provider-2") caused Daycare Provider-1 to enter into non-arm's length transactions with Daycare Provider-2 for the operation of daycare centers in Brooklyn, New York, without disclosing to HHS CC-1's secret ownership and control of Daycare Provider-1.

b.        From in or about 2021, up to and including in or about January 2023, ARIE RANGOTT, the defendant, created and caused to be created documents, including minutes of "board meetings" that never occurred, falsely reflecting that the statutorily required governing body of Daycare Provider-1 had taken various actions, and then caused those fictitious documents to be submitted to HHS when, in truth and in fact, the governing body had not engaged in such actions.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Conspiracy to Falsify Documents and Records)

The Grand Jury further charges:

4. In or about December 2021, in the Southern District of New York and elsewhere, ARIE RANGOTT, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 1519.

2

5. It was a part and object of the conspiracy that ARIE RANGOTT, the defendant, and others known and unknown, would and did knowingly alter, destroy, mutilate, conceal, cover up, falsify, and make a false entry in a record and document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States in violation of Title 18, United States Code, Section 1519.

## Overt Act

6. In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a. On or about December 21, 2021, ARIE RANGOTT, the defendant, and others known and unknown, caused Daycare Provider-1 to submit a letter to the regional HHS office in New York, New York that falsely denied CC-1's less-than-arm's length relationship with Daycare Provider-1 and falsely denied allegations concerning Daycare Provider-1's oversight of federal funds.

(Title 18, United States Code, Section 371.)

## COUNT THREE
### (Conspiracy to Obstruct Agency Proceeding)

The Grand Jury further charges:

7. In or about August and September 2022, in the Southern District of New York and elsewhere, ARIE RANGOTT, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, obstruction of a pending proceeding, in violation Title 18, United States Code, Section 1505.

3

8. It was a part and an object of the conspiracy that ARIE RANGOTT, the defendant, and others known and unknown, would and did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of the law under which a pending proceeding was being had before any department or agency of the United States, in violation of Title 18, United States Code, Section 1505.

## Overt Acts

9. In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about August 5, 2022, ARIE RANGOTT, the defendant, knowingly and intentionally tampered with a witness interview conducted by HHS Office of the Inspector General ("HHS OIG") investigators by surreptitiously feeding answers to the witness to relay to investigators during the interview.

b. On or about September 2, 2022, ARIE RANGOTT, the defendant, knowingly and intentionally made false statements to HHS OIG investigators during an interview being conducted as part of the HHS OIG investigation into alleged wrongdoing at Daycare Provider-1.

(Title 18, United States Code, Section 371.)

FOREPERSON
5/29/24

Damian Williams
DAMIAN WILLIAMS
United States Attorney

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    -v.-                          23 Cr. 004 (JHR)

ARIE RANGOTT,

                              Defendant.

## JURY VERDICT

*Please answer the questions below with a check mark ( ✔).   Do not write anything on this form,*
*except to check your responses and to sign and date the form.*

*All answers to all questions must be unanimous.*

### COUNT ONE: Conspiracy to Defraud the United States

How do you find the Defendant, Arie Rangott, with respect to Count One?

Not Guilty _____      Guilty _____

### COUNT TWO: Conspiracy to Falsify Documents and Records

How do you find the Defendant, Arie Rangott, with respect to Count Two?

Not Guilty _____      Guilty _____

### COUNT THREE: Conspiracy to Obstruct an Agency Proceeding

How do you find the Defendant, Arie Rangott, with respect to Count Three?

Not Guilty _____      Guilty _____

*After completing the Verdict Form, each juror who agrees with this verdict must sign below:*

_____        _____
**FOREPERSON**

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

**DATED:** _____

***Once you have signed the Verdict Form, please give a note—NOT the Verdict Form itself—to the Court Security Officer stating that the jury has reached a verdict.***

Aug 1, 2024    4:21 pm

Christine Martin — Foreperson

Court Ex. #27



It is 5:30. Karol cannot stay
longer. Katie & William can only
be here until noon tomorrow.

Court Ex.
#28

Your Honor,

Just a reminder that I have a Doc's Apt @ 4pm tomorrow, August 2nd,

Thank you,
Karol
Juror #6

8/1 24
Court EX
#29



August 1, 2024

To the members of the jury:

(1) You are free to advise us if
    You are willing to deliberate
    past 5:30 this evening. (All jurors
    would need to agree.)

(2) To those who have previously
    raised scheduling issues as to
    —Jurors 5, 7, and 12
    tomorrow^ — please write me a note
    detailing when you will become
    unavailable, the nature of your plans,
    and when your period of unavailability
    will conclude.

8/1/2024 @
   5:45
      Court Ex. #30

Juror # 5

I will be able To come
in Tomorrow, Friday.

Beyond Friday, I am unavailable.
as I have travel plans to
Europe, followed by Travel to
~~visit~~ India.

Thanks

Bala Kastun.

8/1/2024 @ 5:45
Court Ex. # 31

Judge,

I fly to Paris tomorrow (8/2) night. I need to leave by 4 pm. I return from France on 8/11.

Best, Christine Martin

Court Ex. # 32

8/1/24

Good afternoon

As previously discussed with Mrs Williams, I am unavailable starting Aug 2, 2024 through Aug 7, 2024 due to previously scheduled travel out of town. I will not be able to come in again ~~too~~ tomorrow, regrettably

Thank you

Katherine Ni
Juror #7

Court Ex.#
33

To Juror #11

Could you please write
a note explaining your need to
leave at noon tomorrow?

---

I have to head to Albany
For physical Exam preparations.
I am scheduled to take the
NY State Trooper Exam.
AKA. — P.A.T

Thank you. We will be ending at 3 p.m. tomorrow.
Could you possibly stay until then? Also, when will your
period of Unavailability end?

8/1/2024
Court Ex. 34   5:52

**Khalilah Williams**

| | |
|---|---|
| **From:** | Ian Unterman███████████████ |
| **Sent:** | Thursday, August 1, 2024 6:40 PM |
| **To:** | Khalilah Williams |
| **Subject:** | Jury Question |

**CAUTION - EXTERNAL:**

Hello Ms. Williams, this is Ian Unterman again. I just wanted to clarify that my jury duty service isn't technically done until the verdict is given even if I'm not needed at the courthouse correct? I just don't want to give my job my availability until the jury duty service is officially done

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

#35

8/2/2024
Court Ex.
#35

1

3/2    11:49 am

We have reached a verdict.

A—Mc— (Juror 12)

Court EX.#
36.

EXHIBIT

*Court Ex. 37*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v.-

ARIE RANGOTT,

Defendant.

23 Cr. 004 (JHR)

## JURY VERDICT

*Please answer the questions below with a check mark (✓).   Do not write anything on this form,
except to check your responses and to sign and date the form.*

*All answers to all questions must be unanimous.*

**COUNT ONE: Conspiracy to Defraud the United States**

How do you find the Defendant, Arie Rangott, with respect to Count One?

      Not Guilty _____    Guilty _✗_

**COUNT TWO: Conspiracy to Falsify Documents and Records**

How do you find the Defendant, Arie Rangott, with respect to Count Two?

      Not Guilty _____    Guilty _✗_

**COUNT THREE: Conspiracy to Obstruct an Agency Proceeding**

How do you find the Defendant, Arie Rangott, with respect to Count Three?

      Not Guilty _____    Guilty _✗_

*After completing the Verdict Form, each juror who agrees with this verdict must sign below:*

_____

**FOREPERSON**

DATED: Aug 2, 2024

*Once you have signed the Verdict Form, please give a note—NOT the Verdict Form itself—to the Court Security Officer stating that the jury has reached a verdict.*

2

